1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

HAGENS BERMAN SOBOL SHAPIRO LLP
STEVE W. BERMAN (*pro hac vice to be filed*)
THOMAS E. LOESER (BAR NO. 202724)
1918 Eighth Avenue, Suite 330
Seattle, WA  98101
Telephone:  (206) 623-7292
Facsimile:  (206) 623-0594
steve@hbsslaw.com
toml@hbsslaw.com

QUINN EMANUEL URQUHART & SULLIVAN, LLP
JOHN B. QUINN (BAR NO. 090378)
SHON MORGAN (BAR NO. 187736)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone:  (213) 443 3000
Facsimile:   (213) 443 3100
shonmorgan@quinnemanuel.com

### UNITED STATES DISTRICT COURT

### CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| JESS HILL, KEVIN JENTES, MALIA SIAS, ARTHUR SCHAREIN, MICHAEL BOZINE, CLIFFORD BROUSSARD, VICTORIA MCCLELLAND, JEREMIAH HOLDEN, HILDEGARD REISER, M.D., SPENCER MOORE, JOHN GAUGER, HANAA RIFAEY, DEBORAH MARKWARD, JOHN BROWN, CHRISTINA PAOLICCHI, ADAM FRUGOLI, TRACEY ROSEN, JEFFREY BRADY, BOUALIVANH PHANHPHONGSANE, BRENDA PENNEY, MICHAEL ANTIS, ALEX ARCENEAUX, G. KEATING PEPPER, DEVAN WANG, ROBERT HOOKER, MATTHEW OLOVSON, WILLIAM | No. _____

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED** |

**CLASS ACTION COMPLAINT**

010549-11  816608 V1

MACKEY, EDWARD SIMMONS, CHARLES HALL, KOTAB HOLDINGS LLC, ALAN BRANTING, CHAD RAMOS, STEVEN BOLDUC, JOSEPH AVENA, ANDREW MASTERS, STEVEN KOLPAN, PAUL PURYEAR, MICHELLE GRAMLING, DAVID PYLE, HEATHER GREENFIELD, KYLE BOYLAN, RALPH MENDENHALL, ALEXANDER BAITTINGER, ANDREW BELL, GARY VAN GUILDER, BARRY CROSS, JUSTIN HOLLOWAY, KELLY KING, KAREN NORMAN, ANDREW VENTURA, TROY PONTO, SCOTT TAYLOR, CARLOS ORTIZ, and BRIAN MILLS, on behalf of themselves and all others similarly situated,

                              Plaintiffs,

     v.

VOLKSWAGEN GROUP OF AMERICA, INC., a New Jersey Corporation, and VOLKSWAGEN AG, a corporation organized under the laws of Germany,

                              Defendants.

CLASS ACTION COMPLAINT

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION .................................................................................. 1

II.    FACTUAL ALLEGATIONS ................................................................. 3

    A.   EPA and State Regulations Place a Premium on the
        Reduction of Pollutants that Cause Smog and Are
        Harmful to Human Health ........................................................... 3

    B.   Volkswagen Falsely Pitched Itself as a Leader in
        Environmental Issues .................................................................. 4

    C.   Volkswagen Falsely Marketed its Diesel Engine Systems
        as Clean and Green ..................................................................... 5

    D.   Volkswagen's CleanDiesel Engine Systems Were a
        Fraud ......................................................................................... 13

    E.   Volkswagen Profited From its Fraud ....................................... 16

    F.   Volkswagen's False Advertising and Fraud Has
        Profoundly Harmed Owners of Affected Vehicles ................... 17

III.   JURISDICTION ................................................................................. 20

IV.    VENUE ............................................................................................... 20

V.     PARTIES ............................................................................................ 20

    A.   California Plaintiffs ................................................................... 20

        1.   Jess Hill ......................................................................... 20

        2.   Kevin Jentes .................................................................. 21

        3.   Malia Sias ...................................................................... 22

    B.   Alabama Plaintiffs ................................................................... 22

        1.   Arthur Scharein ............................................................. 22

    C.   Alaska Plaintiffs ...................................................................... 23

        1.   Michael Bozine .............................................................. 23

    D.   Arizona Plaintiffs .................................................................... 23

        1.   Clifford Broussard ........................................................ 23

    E.   Arkansas Plaintiffs .................................................................. 24

        1.   Victoria McClelland ...................................................... 24

F.   Colorado Plaintiffs .................................................................. 25
    1.   Jeremiah Holden ....................................................... 25
    2.   Hildegard Reiser, M.D. .............................................. 25
G.   Connecticut Plaintiffs ............................................................ 26
    1.   Spencer Moore .......................................................... 26
H.   Delaware Plaintiffs ................................................................ 26
    1.   John Gauger .............................................................. 26
I.   District of Columbia Plaintiffs ............................................... 27
    1.   Hanaa Rifaey ............................................................. 27
J.   Florida Plaintiffs ................................................................... 28
    1.   Deborah Markward .................................................... 28
K.   Georgia Plaintiffs .................................................................. 28
    1.   John Brown ............................................................... 28
L.   Hawaii Plaintiffs ................................................................... 29
    1.   Christina Paolicchi .................................................... 29
M.   Idaho Plaintiffs ..................................................................... 30
    1.   Adam Frugoli ............................................................ 30
N.   Illinois Plaintiffs .................................................................. 30
    1.   Tracey Rosen ............................................................ 30
O.   Indiana Plaintiffs .................................................................. 31
    1.   Jeffrey Brady ............................................................ 31
P.   Iowa Plaintiffs ...................................................................... 31
    1.   Boualivanh Phanhphongsane ...................................... 31
Q.   Kansas Plaintiffs ................................................................... 32
    1.   Brenda Penney ........................................................... 32
R.   Kentucky Plaintiffs ............................................................... 33
    1.   Michael Antis ............................................................ 33
S.   Louisiana Plaintiffs ............................................................... 33

| | | 1. | Alex Arceneaux ........................................................... | 33 |
| T. | Maine Plaintiffs ................................................................ | | | 34 |
| | | 1. | G. Keating Pepper ...................................................... | 34 |
| U. | Maryland Plaintiffs .......................................................... | | | 35 |
| | | 1. | Devan Wang ............................................................... | 35 |
| V. | Massachusetts Plaintiffs ................................................... | | | 35 |
| | | 1. | Robert Hooker ............................................................ | 35 |
| W. | Michigan Plaintiffs .......................................................... | | | 36 |
| | | 1. | Matthew Olovson ........................................................ | 36 |
| X. | Minnesota Plaintiffs ........................................................ | | | 36 |
| | | 1. | William Mackey ......................................................... | 36 |
| Y. | Mississippi Plaintiffs ....................................................... | | | 37 |
| | | 1. | Edward Simmons ........................................................ | 37 |
| Z. | Missouri Plaintiffs ........................................................... | | | 38 |
| | | 1. | Charles Hall ............................................................... | 38 |
| AA. | Montana Plaintiffs ........................................................... | | | 38 |
| | | 1. | Kotab Holdings LLC ................................................... | 38 |
| BB. | Nebraska Plaintiffs .......................................................... | | | 39 |
| | | 1. | Alan Branting ............................................................. | 39 |
| CC. | Nevada Plaintiffs ............................................................. | | | 40 |
| | | 1. | Chad Ramos ............................................................... | 40 |
| DD. | New Hampshire Plaintiffs ................................................ | | | 40 |
| | | 1. | Steven Bolduc ............................................................ | 40 |
| EE. | New Jersey Plaintiffs ....................................................... | | | 41 |
| | | 1. | Joseph Avena ............................................................. | 41 |
| FF. | New Mexico Plaintiffs ...................................................... | | | 41 |
| | | 1. | Andrew Masters .......................................................... | 41 |
| GG. | New York Plaintiffs ......................................................... | | | 42 |

1                  1.     Steven Kolpan ....................................................................... 42

HH.  North Carolina Plaintiffs ...................................................... 43

      1.     Paul Puryear ...................................................................... 43

II.   North Dakota Plaintiffs ......................................................... 43

      1.     Michelle Gramling ............................................................. 43

JJ.   Ohio Plaintiffs ....................................................................... 44

      1.     David Pyle .......................................................................... 44

KK.  Oklahoma Plaintiffs .............................................................. 44

      1.     Heather Greenfield ........................................................... 44

LL.   Oregon Plaintiffs ................................................................... 45

      1.     Kyle Boylan ....................................................................... 45

MM. Pennsylvania Plaintiffs ......................................................... 46

      1.     Ralph Mendenhall ............................................................. 46

NN.  Rhode Island Plaintiffs .......................................................... 46

      1.     Alexander Baittinger ........................................................ 46

OO.  South Carolina Plaintiffs ....................................................... 47

      1.     Andrew Bell ....................................................................... 47

PP.   South Dakota Plaintiffs ......................................................... 47

      1.     Gary Van Guilder .............................................................. 47

QQ.  Tennessee Plaintiffs .............................................................. 48

      1.     Barry Cross ....................................................................... 48

RR.   Texas Plaintiffs...................................................................... 49

      1.     Justin Holloway ................................................................ 49

SS.   Utah Plaintiffs ....................................................................... 49

      1.     Kelly King .......................................................................... 49

TT.   Vermont Plaintiffs ................................................................. 50

      1.     Karen Norman ................................................................... 50

UU.  Virginia Plaintiffs .................................................................. 51

010549-11  816608 V1

1.     Andrew Ventura..................................................51

VV.  Washington Plaintiffs...................................................51

1.     Troy Ponto ...................................................51

WW. West Virginia Plaintiffs .................................................52

1.     Scott Taylor...................................................52

XX.  Wisconsin Plaintiffs ......................................................52

1.     Carlos Ortiz...................................................52

YY.  Wyoming Plaintiffs .......................................................53

1.     Brian Mills...................................................53

ZZ.  Defendants.....................................................................54

VI.     TOLLING OF THE STATUTE OF LIMITATIONS .......................................55

A.   Discovery Rule Tolling ..................................................55

B.   Fraudulent Concealment Tolling .....................................56

C.   Estoppel.........................................................................56

VII.    CLASS ALLEGATIONS ...............................................................57

VIII.  VIOLATIONS ALLEGED ............................................................70

A.   Claims Brought on Behalf of the Nationwide Class and the Virginia Subclass Under Virginia Law ......................70

B.   Claims on Behalf of the Alabama Subclass ..........................78

C.   Claims on Behalf of the Alaska Subclass ............................84

D.   Claims Brought on Behalf of the Arizona Subclass .............90

E.   Claims on Behalf of the Arkansas Subclass ........................95

F.   Claims Brought on Behalf of the California Subclass........105

G.   Claims Brought on Behalf of the Colorado Subclass .........116

H.   Claims Brought on Behalf of the Connecticut Subclass.....123

I.   Claims Brought on Behalf of the Delaware Subclass..........128

J.   Claims Brought on Behalf of the District of Columbia Subclass........................................................................138

K.   Claims Brought on Behalf of the Florida Subclass.............147

L.      Claims Brought on Behalf of the Georgia Subclass ............................ 155

M.      Claims Brought on Behalf of the Hawaii Subclass.............................. 165

N.      Claims Brought on Behalf of the Idaho Subclass ................................ 174

O.      Claims Brought on Behalf of the Illinois Subclass............................. 184

P.      Claims Brought on Behalf of the Indiana Subclass ............................ 194

Q.      Claims Brought on Behalf of the Iowa Subclass ................................ 200

R.      Claims Brought on Behalf of the Kansas Subclass............................. 205

S.      Claims Brought on Behalf of the Kentucky Subclass.......................... 215

T.      Claims Brought on Behalf of the Louisiana Subclass ........................ 225

U.      Claims Brought on Behalf of the Maine Subclass .............................. 235

V.      Claims Brought on Behalf of the Maryland Subclass.......................... 241

W.      Claims Brought on Behalf of the Massachusetts Subclass.................. 250

X.      Claims Brought on Behalf of the Michigan Subclass.......................... 254

Y.      Claims Brought on Behalf of the Minnesota Subclass ....................... 264

Z.      Claims Brought on Behalf of the Mississippi Subclass...................... 278

AA.     Claims Brought on Behalf of the Missouri Subclass .......................... 288

BB.     Claims Brought on Behalf of the Montana Subclass .......................... 298

CC.     Claims Brought on Behalf of the Nebraska Subclass ......................... 308

DD.     Claims Brought on Behalf of the Nevada Subclass ............................ 317

EE.     Claims on Behalf of the New Hampshire Subclass ............................ 326

FF.     Claims Brought on Behalf of the New Jersey Subclass....................... 336

GG.     Claims Brought on Behalf of the New Mexico Subclass .................... 340

HH.     Claims Brought on Behalf of the New York Subclass ........................ 350

II.     Claims Brought on Behalf of the North Carolina Subclass................ 356

JJ.     Claims Brought on Behalf of the North Dakota Subclass .................. 360

KK.     Claims Brought on Behalf of the Ohio Subclass ................................ 370

LL.     Claims Brought on Behalf of the Oklahoma Subclass ....................... 376

MM.     Claims Brought on Behalf of the Oregon Subclass ............................ 386

NN.   Claims Brought on Behalf of the Pennsylvania Subclass ................... 395

OO.   Claims Brought on Behalf of the Rhode Island Subclass ................... 405

PP.   Claims on Behalf of the South Carolina Subclass .............................. 414

QQ.   Claims on Behalf of the South Dakota Subclass ................................ 425

RR.   Claims Brought on Behalf of the Tennessee Subclass ....................... 434

SS.   Claims Brought on Behalf of the Texas Subclass ............................... 443

TT.   Claims Brought on Behalf of the Utah Subclass ................................ 449

UU.   Claims Brought on Behalf of the Vermont Subclass .......................... 459

VV.   Claims Brought on Behalf of the Washington Subclass ..................... 468

WW. Claims Brought on Behalf of the West Virginia Subclass ................. 477

XX.   Claims Brought on Behalf of the Wisconsin Subclass ....................... 483

YY.   Claims Brought on Behalf of the Wyoming Subclass ........................ 493

REQUEST FOR RELIEF ................................................................................ 499

DEMAND FOR JURY TRIAL ........................................................................ 499

010549-11  816608 V1

Plaintiffs Jess Hill, Kevin Jentes, Malia Sias, Arthur Scharein, Michael Bozine, Clifford Broussard, Victoria McClelland, Jeremiah Holden, Hildegard Reiser, M.D., Spencer Moore, John Gauger, Hanaa Rifaey, Deborah Markward, John Brown, Christina Paolicchi, Adam Frugoli, Tracey Rosen, Jeffrey Brady, Boualivanh Phanphphongsane, Brenda Penney, Michael Antis, Alex Arceneaux, G. Keating Pepper, Devan Wang, Robert Hooker, Matthew Olovson, William Mackey, Edward Simmons, Charles Hall, Katob Holdings LLC, Alan Branting, Chad Ramos, Steven Bolduc, Joseph Avena, Andrew Masters, Steven Kolpan, Paul Puryear, Michelle Gramling, David Pyle, Heather Greenfield, Kyle Boylan, Ralph Mendenhall, Alexander Baittinger, Andrew Bell, Gary Van Guilder, Barry Cross, Justin Holloway, Kelly King, Karen Norman, Andrew Ventura, Troy Ponto, Scott Taylor, Carlos Ortiz, and Brian Mills ("Plaintiffs"), individually and on behalf of all others similarly situated (the "Class"), allege the following:

## I.    INTRODUCTION

1.      The United States Government, through the Environmental Protection Agency, as well as individual state regulators, have passed and enforced laws designed to protect their citizens from pollution and in particular, certain chemicals and agents known to cause disease in humans.  Automobile manufacturers must abide by these laws and must adhere to state and EPA rules and regulations.  This case arises because Defendants Volkswagen AG and Volkswagen Group of America (collectively, "Volkswagen") purposefully and intentionally breached the laws of the United States and the rules and regulations of various states and the EPA by selling in the United States Volkswagen and Audi vehicles that purposefully evaded federal and state laws. As stated by Cynthia Giles, Assistant Administrator for the Office of Enforcement and Compliance Assurance at the EPA:  "Using a defeat device in cars to evade clean air

standards is illegal and a threat to public health."  Yet that is exactly what Volkswagen did in its 2009-2015 Volkswagen and Audi CleanDiesel vehicles.[1]

2.     As detailed in the EPA's Notice of Violation ("NOV"), sophisticated software in the Volkswagen and Audi diesel vehicles sold by Volkswagen in the United States detects when the vehicle is undergoing official emissions testing and turns full emissions controls on during the test.  But otherwise, at all other times that the vehicle is running, the emissions controls are suppressed.  This results in cars that meet emissions standards in the laboratory or testing station, but during normal operation emit nitrogen oxides (NOx) at up to 40 times the standard allowed under federal and state laws and regulations.  The software produced and used by Volkswagen is a defeat device as defined by the Clean Air Act.

3.     By manufacturing and selling cars with defeat devices that allowed for higher levels of emissions than what was certified to EPA, and higher levels than state and federal regulations allow, Volkswagen violated the Clean Air Act and state regulations, defrauded its customers, and engaged in unfair competition under state and federal law.

4.     According the EPA NOV and admitted by Volkswagen, Volkswagen installed its defeat device in at least the following diesel models of its vehicles (the "Affected Vehicles"): MY 2009-2015 VW Jetta; MY 2009-2015 VW Beetle; MY 2009-2015 VW Golf; MY 2012-2015 VW Passat; and MY 2009-2015 Audi A3. Discovery may reveal that additional vehicle models and model years are properly included as Affected Vehicles.

5.     Plaintiffs bring this action individually and on behalf of all other current and former owners or lessees of Affected Vehicles.  Plaintiffs seek damages, injunctive relief, and equitable relief for the conduct of Volkswagen related to the defeat device, as alleged in this Complaint. Specifically, Plaintiffs seek: the return of

---

[1] *See* Sept. 18, 2015 EPA News Release.

-2-

010549-11  816608 V1

the premium that they paid for a CleanDiesel over the cost of the same model and trim of car with a gasoline engine; restitution of the purchase price of their car should any "fix" installed by Volkswagen result in a degradation of performance and/or fuel efficiency; compensation for any additional sums spent of fuel or maintenance as a result of any "fix"; restitution for purchase of extended warranties that will go unused; and a lump sum for remediation of the environmental damage Plaintiffs and the Class unwittingly contributed to by driving cars that they believed were clean, but were in fact in violation of state and EPA regulations and the Clean Air Act.

## II.    FACTUAL ALLEGATIONS

### A.    EPA and State Regulations Place a Premium on the Reduction of Pollutants that Cause Smog and Are Harmful to Human Health

6.    The Clean Air Act, enacted in 1970, is a comprehensive federal law that regulates air emissions from stationary and mobile sources. 42 U.S.C. § 7401, et seq. (1970).  Congress determined that "the increasing use of motor vehicles . . . has resulted in mounting dangers to the public health and welfare." CAA § 101(a)(2), 42 U.S.C. § 7401(a)(2).  The Clean Air Act and the regulations under it, as well as state regulations, were passed and are intended to reduce the emission of NOx and other pollutants, thereby protecting human health and the environment.

7.    NOx contributes to nitrogen dioxide, ground-level ozone, and fine particulate matter. When humans are exposed to nitrogen dioxide, they may be at a greater risk for serious health dangers, including asthma attacks and other respiratory illness requiring hospitalization. Ozone and particulate matter exposure have been associated with premature death due to respiratory-related or cardiovascular-related effects. Children, the elderly, and people with pre-existing respiratory illness are at an elevated risk for adverse health consequences associated with these pollutants.

8.    The Clean Air Act requires car makers to certify that vehicles sold in the United States meet federal emissions standards. The EPA certifies conformity with

-3-

regulations to car makers for vehicles that satisfy emissions regulations. To be sold in the United States, a vehicle must be certified by the EPA to comply with its regulations.

9.      The Clean Air Act makes it a violation for "any person to manufacture or sell, or offer to sell, or install, any part or component intended for use with, or as part of, any motor vehicle or motor vehicle engine, where a principal effect of the part or component is to bypass, defeat, or render inoperative any device or element of design installed on or in a motor vehicle or motor vehicle engine in compliance with regulations under this subchapter, and where the person knows or should know that such part or component is being offered for sale or installed for such use or put to such use."

10.      The Clean Air Act defines a "defeat device" as one "that reduces the effectiveness of the emission control system under conditions which may reasonably be expected to be encountered in normal vehicle operation use." When a defeat device is in place, it can bypass, defeat, or render inoperative elements of the vehicle's emission control system that are put in place to ensure compliance with the Clean Air Act. Motor vehicles that are equipped with defeat devices cannot be certified by the EPA.[2]

11.      California's emission standards are even more stringent than EPA standards. Several states have adopted California's standards and also demand even more from car makers than the EPA.  The California emissions regulator is called the California Air Resources Board, or CARB.

**B.      Volkswagen Falsely Pitched Itself as a Leader in Environmental Issues**

12.      Volkswagen is a German automotive company that manufactures and sells vehicles under the Volkswagen, Audi, Porsche and other brand names with operations in approximately 150 countries, including the United States. In the first half

---

[2] EPA, Advisory Circular Number 24: Prohibition on use of Emission Control Defeat Device (Dec. 11, 1972).

-4-

of 2015, Volkswagen surpassed Toyota as the world's largest automaker by sales, selling 5.04 million vehicles in the first six months of the year. By July 2015, Volkswagen ranked eighth on the Fortune Global 500 list of the world's largest companies.

13.     Despite Volkswagen's ascension to become the world's biggest automaker, Volkswagen sales lagged in the United States. Volkswagen has sought to improve sales in the United States by touting the performance and reliability of its vehicles and its environmental leadership. Volkswagen's 2013 Annual Report emphasizes that "Volkswagen intends to become the global economic and environmental leader among automobile manufactures by 2018" and that "[w]e are focusing in particular on the environmentally friendly orientation and profitability of our vehicle projects."

## C.     Volkswagen Falsely Marketed its Diesel Engine Systems as Clean and Green

14.     Volkswagen broadly boasted about the performance and environmental cleanliness of its engine systems.  In an October 2008 press release, Volkswagen bragged:

> The Jetta TDI is amongst the ten most fuel efficient vehicles on the US market. In the recently published "Fuel Economy Guide 2009" the EPA (Environmental Protection Agency) listed the Jetta TDI in the top ten low consumption and low emissions vehicles.
>
> In the current edition of the publication, the Jetta 2.0 l Clean TDI, introduced to the market two months ago, is praised particularly for its excellent consumption figures - it has a fuel consumption of 5.7 litre per 100 kilometre. Moreover, the Jetta Clean TDI also fulfils stringent Californian emission standards. This was achieved through modifications within the engine and *by implementing an exhaust treatment system developed especially by Volkswagen and which reduces nitrogen oxide emissions (NOx) by up to 90 percent*. The central element of the

-5-

exhaust treatment system is the NOx storage catalytic converter.[3]

15.     Since introducing the 2.0L TDI CleanDiesel engine in 2008, Volkswagen has touted it as a "fantastic power train" that "gives very good fuel economy" and "is also good for the environment because it puts out 25% less greenhouse gas emissions than what a gasoline engine would . . . cuts out the particulate emissions by 90% and the emissions of nitrous oxide are cut by 95% . . . [and is] clean enough to be certified in all 50 states."[4]

16.     The TDI CleanDiesel engines are turbocharged and directly inject fuel into each cylinder via fuel injectors.  Volkswagen has stated, "[t]he superior qualities of the 2.0 Liter TDI engine with common rail injection systems are oriented towards future challenges in acoustics, comfort, and exhaust gas after-treatment . . . confirming Volkswagen's role as a pioneer in diesel technology."

17.     Volkswagen has marketed and advertised its CleanDiesel models as extraordinarily clean, EPA certified in all 50 states, and powerful.  For example, the following promotional material was used in 2010, and similar materials have been used across the spectrum of models using the CleanDiesel engine system:

---

[3] *See* http://www.volkswagenag.com/content/vwcorp/info_center/en/news/2008/10/vw_in_fuel_economy_guide.html (last accessed Sept. 23, 2015) (emphasis added).

[4] Statement of Volkswagen Group of America, Inc.'s Chief Operating Officer Mark Barnes, to The Business Insider, October 9, 2009.

-6-




**Burn rubber, not money.**

The all-new 2010 Golf TDI Clean Diesel offers fuel efficiency,* power, and performance. Or, in other words, it's a lean, mean, cleaner-burning machine. The Volkswagen TDI engine is cleaner than conventional diesels, emitting as much as 95% fewer sooty emissions than previous diesel engines, as well as a reduction in oxides of nitrogen and sulfur. It's powerful, with the kind of street-savvy torque that brings a smile to every stoplight. It's efficient, using a turbocharger and smart exhaust design to use fuel more effectively. So much so, in fact, that Volkswagen was the first automaker to make clean diesel cars that are certified in all 50 states. And best of all, it will help save you money, with an out-of-this-world EPA-estimated mileage of 30 city/42 highway mpg (automatic)* and over 594 miles on a single tank of fuel.**

If efficiency and savings weren't enough, the Golf TDI model also gives you premium features like the multi-function leather steering wheel, the touchscreen Premium VIII radio with a Media Device Interface (MDI) and iPod® cable, SIRIUS® Satellite Radio, a 6-speed manual transmission, fog lights, and the optional navigation package with touchscreen navigation to efficiently find your way to the bank.

"Good, clean fun" takes on a whole new meaning.

18.     Volkswagen's advertising, which keyed on the unique combination of clean, efficient and highly performing, was very effective.  In fact, Volkswagen has become the largest seller of diesel passenger vehicles in the United States.

19.     In an October 2009 interview with Business Insider, when asked "[w]hat is the advantage of a diesel over a hybrid," VW of America's Chief Operating officer, Mark Barnes, stated: "It's also good for the environment because it puts out 25% less greenhouse gas emissions than what a gasoline engine would. And thanks to the uniqueness of the TDI motor, it cuts out the particulate emissions by 90% and the emissions of nitrous oxide are cut by 95%. So, a very very clean running engine. Clean enough to be certified in all 50 states."[5]

---

[5] Gayathri Vaidyanathan, *Volkswagen Preps for a Diesel Revolution,* The Business Insider, Oct. 9, 2009, http://www.businessinsider.com/volkswagen-preps-for-adiesel-revolution-2009-10.

010549-11  816608 V1

1    20.    Volkswagen doubled-down on "clean" and "green" vehicles. Being

2  highly efficient, fun, and "clean" are the central messages for Volkswagen's diesel

3  engine campaign.

4    21.    Volkswagen also touted the performance characteristics of the TDI

5  CleanDiesel, claiming that clean emission technology did not sacrifice its 236 lbs/ft of

6  torque and turbocharged CleanDiesel engine. In a recent 2015 Volkswagen Golf sales

7  brochure, Volkswagen stated "With the 2.0L TDI engine, you'll appreciate every fuel-

8  efficient mile with the EPA-estimated 45 hwy mpg. But that's only half the story. Step

9  on the pedal and feel the 236 lb-ft of torque and let the performance tell the other

10  half."





22.    Volkswagen also claimed that TDI Clean Diesel models "typically have a

higher resale value versus comparable gasoline vehicles":

-8-



23.     But even when Volkswagen knew that EPA investigators had discovered—or at the very least suspected—their fraud and the defeat device, it continued to deceive its customers through false recalls and false advertising.

24.     Beginning in April 2015, Volkswagen issued VW Action Code 2306, which was a recall for CleanDiesel equipped vehicles.  Volkswagen claimed that the recall was a "repair" and that it "improved" the engine management system.  But many owners recorded a marked decrease in fuel efficiency and performance after the recall was completed.

25.     Below is a copy of the Recall Notice sent to CleanDiesel owners in April 2015:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



Das Auto.

Volkswagen of America, Inc.
3800 Hamlin Road
Auburn Hills, MI 48326

April 2015

JAN HUDSON
5121 DEL MAR MESA RD
SAN DIEGO, CA 92130-6812

**This notice applies to your vehicle:** 3VWPL7AJXEM600919

**Subject:** **Emissions Service Action 23O6 – ECM Software**
**Certain 2010-2014 Model Year Volkswagen Vehicles Equipped with a 2.0L TDI®**
**Clean Diesel Engine**

Dear Volkswagen Owner,

As part of Volkswagen's ongoing commitment to our environment, and in cooperation with the United States Environmental Protection Agency and the California Air Resources Board, we are informing you of our decision to conduct an emissions service action on certain 2010-2014 model year Volkswagen vehicles equipped with a 2.0L TDI® Clean Diesel engine. Our records show that you are the owner of a vehicle affected by this action.

| | |
|---|---|
| **What is the issue, and what will we do?** | The vehicle's engine management software has been improved to assure your vehicle's tailpipe emissions are optimized and operating efficiently. Under certain operating conditions, the earlier strategy may have increased the chance of the vehicle's MIL light illuminating. If the MIL illuminates for any reason, your vehicle will not pass an IM emissions inspection in some regions. |
| | To address this issue, your authorized Volkswagen dealer will update the ECM software in your vehicle. This work will take about one hour to complete and will be performed for you free of charge. Please keep in mind that your dealer may need additional time for the preparation of the repair, as well as to accommodate their daily workshop schedule. |

**IMPORTANT!**
**Please note that if the ECM in your vehicle has been "chipped," "tuned," or otherwise modified from original factory specifications with aftermarket components and/or software, work needed to repair, replace, or return the ECM to original factory specifications is NOT covered under this action.**

| | |
|---|---|
| **What should you do?** | In order to limit any possible inconvenience, please contact your authorized Volkswagen dealer as soon as possible to schedule this service. |

23O6/D8 CALI

00004946

> 26.    But after having the recall installed, A3 owners made posts on enthusiast blogs such as the following two posts:

> Had my update done couple weeks ago and I've noticed a sizable performance hit afterwards, compared to previous tanks pre-update.
> 38.00 MPG
> 36.42 MPG

010549-11  816608 V1

37.77 MPG
37.51 MPG
37.05 MPG
//////Recall performed
34.13 MPG
33.12 MPG

edt: real data...
bought car in jan in CA (first two is drive back)
38.14
36.63
32.10
32.99
32.77
32.15
29.94 (recall done during this tank)
26.67
25.79
26.10

27.    Volkswagen continued its aggressive campaign to dupe its customers into believing its cars were clean and environmentally friendly. In advertisements appearing on its webpage as recent as September 21, 2015, Volkswagen extended the deceit. These ads are only now being stripped from Volkswagen's websites.



28.    Volkswagen's now dubious concern for the environment extended beyond its CleanDiesel campaigns. On the "Environment" page of its website, Volkswagen claims that it takes "environmental responsibility very seriously. When it comes to making our cars as green as possible, Volkswagen has an integrated strategy

-11-

focused on reducing fuel consumption and emissions, building the world's cleanest diesel engines and developing totally new power systems, which utilize new fuel alternatives."

29.     Volkswagen trumpeted its apparent environmental *bone fides* when the Audi A3 TDI and VW Jetta TDI were named the 2010 Green Car of the Year and the 2009 Green Car of the Year.  Ironically, a key feature of the most recent CleanDiesel advertisements was "***Promise kept***."[6]

30.     On the Volkswagen CleanDiesel webpage, it continued to mislead consumers, touting the supposedly reduced greenhouse gas emission of the CleanDiesel engine system.[7]



31.     Through its "Think Blue" program, Volkswagen claimed to have a policy of being "more responsible on the road and more environmentally conscious—not just in our cars." But whether Volkswagen had any care at all for the environment is now, at best, debatable.

---

[6] *See* http://www.vw.com/features/clean-diesel/ (last visited Sept. 21, 2015). The content has since been removed.

[7] *See* http://www.audiusa.com/technology/efficiency/tdi?csref=116751439289858719 (last visited Sept. 21, 2015). The content has since been removed.

-12-

32.     On its website to promote its "clean" diesel technology, www.clearlybetterdiesel.org, Volkswagen falsely claimed that its CleanDiesel engine system reduces smog and "meets the highest standards in all 50 states, thanks to ultra-low sulfur diesel (ULSD) fuel and innovative engine technology that burns cleaner."

**D.     Volkswagen's CleanDiesel Engine Systems Were a Fraud**

33.     The EPA's investigation of Volkswagen was prompted by a May 15, 2014, publication titled "In-Use Emissions Testing of Light-Duty Diesel Vehicles in the United States" by the Center for Alternative Fuels, Engines & Emissions ("CAFEE") of West Virginia University ("the CAFEE Report").

34.     The International Council of Clean Transportation ("ICCT") hired CAFEE to conduct in-use testing of three light-duty diesel vehicles. According to the CAFEE Report, in the tested vehicles "real-world NOx emissions were found to exceed the US-EPA ... standard by a factor[s] of 5 to 35."

35.     Those findings led the EPA to conduct its own further investigation, which ultimately revealed that, contrary to Volkswagen's vigorous efforts to promote itself as a "green" company with an extraordinary commitment to environmental protection, it was instead a liar and a cheat—its CleanDiesel technology was a fraud and its cars were gross polluters that were, in fact, not even legal to drive on U.S. roadways.

36.     On September 18, 2015, the EPA issued to Volkswagen and its parent Volkswagen AG and Audi AG a Notice of Violation ("NOV"). The NOV explained the EPA's allegations that Volkswagen installed sophisticated software in the Volkswagen and Audi diesel vehicles sold by Volkswagen in the United States that detects when the vehicle is undergoing official emissions testing and turns full emissions controls on only during the test. At all other times that the vehicle is running, however, the emissions controls are deactivated, meaning that pollution is freely released into the environment at levels that exceed those allowed by federal and

-13-

state laws and regulations. The software produced and used by Volkswagen falls under the legal description of a defeat device, which is prohibited by the Clean Air Act.

37.     Because modern cars include sophisticated computers and sensors throughout the car, modern emissions testing uses the car's own sensors and computer controls to measure the presence of pollutants and track compliance with EPA and state emissions standards. Emissions testing stations plug a diagnostic device into the car's on-board diagnostics ("OBD II") port and use the exhaust sensors installed in the car to measure the substances emitted. Some states, instead of or in addition to an OBD II diagnostic device, use a probe inserted into the exhaust pipe to measure emissions.

38.     Volkswagen's defeat device used software and sophisticated algorithms to detect when the cars were undergoing emissions testing, and only then engaged pollution suppression systems to ensure that emissions complied with regulatory standards. When the car was not being emissions tested—that is, under all other operating conditions—the electronic engine control systems operated the vehicle with no regard for regulatory emissions restrictions.

39.     The result is that Volkswagen's CleanDiesel vehicles would meet emissions standards in labs or testing stations, but at all other times emit NOx at *up to 40 times the standard* allowed under United States laws and regulations.

40.     As the journal *Popular Mechanics* reported, non-Volkswagen diesels commonly use urea injection to "neutralize" NOx emission, but those systems add weight and complexity to the engine. "Everyone wondered how VW met emissions standards while foregoing urea injection. As it turns out, they didn't. It wasn't magical German engineering. Just plain old fraud."

41.     Remarkably, Volkswagen has done this before.  As reported in *USA Today* and the *Los Angeles Times*, Volkswagen was accused of using a defeat device to pass emissions standards in vehicles it made in 1972-73.  While Volkswagen denied

-14-

wrongdoing, it paid a $120,000 fine in 1974 in order to settle charges that "it gamed pollution control systems in four models by changing carburetor settings and shutting off an emissions-control system at low temperatures."  Volkswagen also agreed to install corporate controls to prevent a future similar occurrence.  Apparently those controls were not effective.

42.    On September 20, 2015, Volkswagen admitted that the EPA allegations were true.  It admitted using a defeat device in the Affected Vehicles.  Prior to his resignation as a result of the disclosure of the emissions fraud, Volkswagen's CEO Martin Winterkorn stated:  "I personally am deeply sorry that we have broken the trust of our customers and the public."

43.    Michael Horn, President and CEO of Volkswagen Group of America, reportedly admitted on September 21, 2015:

> As you have seen since Friday, the EPA, the Environmental Protection Agency, has issued a statement and reality that Volkswagen Group manipulated engine software in our TDI diesel cars, and we violated emissions standards. The CEO of our parent company, Dr. Martin Winterkorn, said yesterday Volkswagen will fully cooperate with the responsible agencies, and much much more important as I see it, he stated that he was personally and deeply sorry for this—that Volkswagen has broken the trust of our customers, and the public here in America. And lastly he stated that this matter, and this is I think common sense, now this is the first priority for him personally and for the entire [board]. So let's be clear about this: our company was dishonest with the EPA and the California Air Resources Board, and with all of you. And in my German words, we've totally screwed up. We must fix those cars, and prevent this from ever happening again, and we have to make things right—with the government, the public, our customers, our employees, and also very importantly our dealers. This kind of behavior, I can tell you out of my heart, is completely inconsistent with our core values. The three core values of our brand are value, innovation, and in this context very importantly, responsibility: for our employees, for our stakeholders, and for the environment. So it goes totally against what we believe is right. Along with our German headquarters, we are committed to do what must be done, and to begin to restore your trust.

-15-

44.     In what will perhaps prove to be the automotive understatement of the decade, Mr. Horn said Volkswagen "screwed up."

45.     By manufacturing and selling cars with "defeat devices" that allowed for higher levels of emissions than were certified to the EPA, Volkswagen violated the Clean Air Act, defrauded its customers, placed in commerce vehicles that were illegal to drive on U.S. roadways, and engaged in unfair competition and false advertising under state and federal laws.

46.     Moreover, Volkswagen's fraud harmed not just the customers it duped into buying its heavily polluting—not so—CleanDiesels, but it harmed the environment.  Through six years of fraud, Volkswagen put on the United States roadways over 483,000 cars that spewed up to 40 times the permitted level of NOx and other pollutants.  These emissions invariably have harmed the air quality and environment and, as a result, harmed the United States and its citizens.

**E.     Volkswagen Profited From its Fraud**

47.     Volkswagen has charged a substantial premium for the Affected Vehicles, ironically marketed by Volkswagen as "CleanDiesel."  For example, for the 2015 Volkswagen Jetta, the base S model has a starting MSRP of $18,780.  The base TDI S CleanDiesel, however, has a starting MSRP of $21,640, a price premium of $2,860.  The CleanDiesel premium for the highest trim Jetta model is substantially higher.  The highest level gas Jetta SE has a starting MSRP of $20,095, while the CleanDiesel TDI SEL MSRP is $26,410, a staggering $6,315 premium.

48.     These premiums occur across all of the vehicles lines in which Volkswagen installed its defeat device for emissions testing.  The table below sets forth the price premium in 2015 for each base, mid-level and top-line trim for each affected model.  Similar premiums existed for each Affected Vehicle for every model year:

-16-

**2015 CleanDiesel Price Premiums**

| Model | Base | Mid-level | Top-line |
|-------|------|-----------|----------|
| *VW Jetta* | $2,860 | $4,300 | $6,315 |
| *VW Beetle* | $4,635 | n/a | $2,640 |
| *VW Golf* | $2,950 | $1,000 | $1,000 |
| *VW Passat* | $5,755 | $4,750 | $6,855 |
| *Audi A3* | $2,805 | $3,095 | $2,925 |

**F.    Volkswagen's False Advertising and Fraud Has Profoundly Harmed Owners of Affected Vehicles**

49.    As set forth above, Class members paid large premiums to purchase Affected Vehicles.  They paid these premiums as a result of Volkswagen's false claims that the CleanDiesel engine system was environmentally friendly, clean, efficient and EPA complaint.  Class members were harmed because from the day they drove their Affected Vehicle off the lot, they did not get what they paid for.

50.    In addition, as a direct result of the disclosure of Volkswagen's CleanDiesel fraud, Affected Vehicles have sharply decreased in value and are presently unsalable.  In fact, Volkswagen has halted all sales of Affected Vehicles, new or used, so that even its dealers are stuck with Affected Vehicles that they cannot sell.  Each Class member therefore suffered a direct pecuniary loss in the form of the decreased value of their Affected Vehicle.

51.    The loss in value is particularly acute and affects Class members because they do not want to own cars that pollute and harm the environment.  Cleanliness was the core of Volkswagen's marketing efforts and a driving factor in purchase decisions.  Class members want to sell their Affected Vehicles but they cannot without incurring substantial losses.

-17-

52.     Moreover, many Class members purchased their vehicles with financing in the form of car loans or leases.  The drop in value of Affected Vehicles has caused the financing to be underwater, meaning that Class members will have to pay money, over and above whatever they can sell their car for, in order to get into a car that is actually legal to drive on United States roadways.

53.     Volkswagen has been ordered by the EPA to recall the Affected Vehicles and repair them so that they comply with EPA emissions requirements at all times during normal operation.  However, Volkswagen will not be able to make the Affected Vehicles comply with emissions standards without substantially degrading their performance characteristics, including their horsepower and their efficiency.  As a result, even if Volkswagen is able to make the Affected Vehicles EPA compliant, Class members will nonetheless suffer actual harm and damages because their vehicles will no longer perform as they did when purchased and as advertised.  This will necessarily result in a diminution in value of every Affected Vehicle and it will cause owners of Affected Vehicles to pay more for fuel while using their affected vehicles.

54.     The harm described immediately above is not at all speculative.  In April 2015, Volkswagen issued a recall for one line of Affected Vehicles, the Audi A3 diesel.  Volkswagen claimed this was a "repair" that "improved" engine management software.  But scores of Class members reported that immediately after having the recall repair performed, their vehicle performance and fuel efficiency precipitously dropped 10-20%.  These owners have already suffered harm to the value of their cars and have been harmed from having to pay additional sums for fuel.

55.     In addition, many Class members purchased very expensive extended warranties for their Affected Vehicles, intending to own the vehicles for many years beyond the initial warranty.  However, as a result of Volkswagen's fraud, Class members no longer want to own the Affected Vehicles and when they sell them, in

-18-

addition to losses from the cars being worth much less as a result of Volkswagen's fraud, they will lose the value of the extended warranties that they purchased.

56.    Further compounding the harm to Class members is that as of the date of this filing, Volkswagen has provided no guidance directly to customers or to its dealer network.  Concerned owners of Affected Vehicles have been told absolutely nothing about what will happen to their cars, whether they are legal to drive in their states, what Volkswagen intends to do, or what owners should do.  Instead, calls to dealers and Volkswagen itself either go unanswered, or are answered with "we don't know."

57.    As a result of Volkswagen's unfair, deceptive, and/or fraudulent business practices, and its failure to disclose that under normal operating conditions the Affected Vehicles emit up to 40 times the allowed levels, owners and/or lessees of the Affected Vehicles have suffered losses in money and/or property.  Had Plaintiffs and Class members known of the defeat device at the time they purchased or leased their Affected Vehicles, they would not have purchased or leased those vehicles, or would have paid substantially less for the vehicles than they did.  Moreover, when and if Volkswagen recalls Affected Vehicles, in addition to its prior recall of the Audi A3, and degrades the CleanDiesel engine performance in order to make the Affected Vehicles compliant with EPA standards, all Plaintiffs and Class members will be required to pay extra for fuel and will not obtain the performance characteristics of their vehicles when purchased.  Affected Vehicles will necessarily be worth less in the marketplace because of the decrease in performance and efficiency.

58.    As a result of Volkswagen's unfair, deceptive, and/or fraudulent business practices, and its failure to disclose that under normal operating conditions the Affected Vehicles emit up to 40 times the allowed levels of pollutants, the environment and air quality in the United States has been harmed.  If the EPA and other regulators had known of the true nature of the CleanDiesel engine system and the true levels of pollutants it emitted, it would not have certified it for use on the

-19-

United States roadways and the air quality and environment in the United States would not have been harmed.

### III.   JURISDICTION

59.     This Court has jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because the proposed Class consists of 100 or more members; the amount in controversy exceeds $5,000,000, exclusive of costs and interest; and minimal diversity exists.  This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

### IV.   VENUE

60.     Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.  Plaintiffs Sias and Hill are domiciled in this District and purchased their Affected Vehicles in this District.  Volkswagen has its Test Center California located in this District "with a primary focus on powertrain and systems development, government compliance, and field quality testing."[8] Volkswagen has marketed, advertised, sold, and leased the Affected Vehicles within this District.

### V.   PARTIES

**A.    California Plaintiffs**

**1.    Jess Hill**

61.     Plaintiff Jess Hill is an individual domiciled in Los Angeles, California.  In January, 2012, Plaintiff purchased a new 2012 VW Golf TDI 4D CleanDiesel from Volkswagen of Downtown LA, an authorized Volkswagen dealer in Los Angeles, California.  Plaintiff purchased, and still owns, this vehicle.  Unknown to Plaintiff at the time the vehicle was purchased, the vehicle was equipped with an emissions

---

[8] *See* http://www.volkswagenag.com/content/vwcorp/info_center/en/themes/2012/08/Test_Center_California.html

-20-

1    control defeat device which caused the vehicle to get an undue EPA certification and

2    pass emissions tests, but at all other times emit up to 40 times the allowed level of

3    pollutants, including NOx.  The use of the defeat device by Volkswagen has caused

4    Plaintiff out-of-pocket loss, future attempted repairs, future additional fuel costs, loss

5    of warranty value, and diminished value of his vehicle.  Volkswagen knew about and

6    purposefully used the defeat device, but did not disclose the defeat device and its

7    effects to Plaintiff, so Plaintiff purchased the vehicle on the reasonable, but mistaken,

8    belief that the vehicle complied with United States emissions standards, was properly

9    EPA certified, and would retain all of its operating characteristics throughout its useful

10    life.

11            **2.**     **Kevin Jentes**

12         62.     Plaintiff Kevin Jentes is an individual domiciled in Ben Lomond,

13    California.  In December, 2014, Plaintiff purchased a used 2014 VW Passat TDI SE

14    Sedan 4D CleanDiesel from Santa Cruz Volkswagen the SuperStore, an authorized

15    Volkswagen dealer in Santa Cruz, California.  Plaintiff purchased, and still owns, this

16    vehicle.  Unknown to Plaintiff at the time the vehicle was purchased, the vehicle was

17    equipped with an emissions control defeat device which caused the vehicle to get an

18    undue EPA certification and pass emissions tests, but at all other times emit up to 40

19    times the allowed level of pollutants, including NOx.  The use of the defeat device by

20    Volkswagen has caused Plaintiff out-of-pocket loss, future attempted repairs, future

21    additional fuel costs, loss of warranty value, and diminished value of his vehicle.

22    Volkswagen knew about and purposefully used the defeat device, but did not disclose

23    the defeat device and its effects to Plaintiff, so Plaintiff purchased his vehicle on the

24    reasonable, but mistaken, belief that his vehicle complied with United States emissions

25    standards, was properly EPA certified, and would retain all of its operating

26    characteristics throughout its useful life.

27

28

010549-11  816608 V1

1

2

### 3.  Malia Sias

63.  Plaintiff Malia Sias is an individual domiciled in Los Angeles, California. In April, 2011, Plaintiff purchased a new 2011 VW Golf TDI CleanDiesel from Commonwealth Volkswagen, an authorized Volkswagen dealer in Santa Ana, California.  Plaintiff purchased, and still owns, this vehicle.  Unknown to Plaintiff at the time the vehicle was purchased, the vehicle was equipped with an emissions control defeat device which caused the vehicle to get an undue EPA certification and pass emissions tests, but at all other times emit up to 40 times the allowed level of pollutants, including NOx.  The use of the defeat device by Volkswagen has caused Plaintiff out-of-pocket loss, future attempted repairs, future additional fuel costs, loss of warranty value, and diminished value of the vehicle.  Volkswagen knew about and purposefully used the defeat device, but did not disclose the defeat device and its effects to Plaintiff, so Plaintiff purchased the vehicle on the reasonable, but mistaken, belief that his vehicle complied with United States emissions standards, was properly EPA certified, and would retain all of its operating characteristics throughout its useful life.

### B.  Alabama Plaintiffs

### 1.  Arthur Scharein

64.  Plaintiff Arthur Scharein is an individual domiciled in Decatur, Alabama. In November, 2014, Plaintiff purchased a new 2014 VW Beetle Convertible TDI Premium CleanDiesel from Hiley Volkswagen of Huntsville, an authorized Volkswagen dealer in Huntsville, Alabama.  Plaintiff purchased, and still owns, this vehicle.  Unknown to Plaintiff at the time the vehicle was purchased, the vehicle was equipped with an emissions control defeat device which caused the vehicle to get an undue EPA certification and pass emissions tests, but at all other times emit up to 40 times the allowed level of pollutants, including NOx.  The use of the defeat device by Volkswagen has caused Plaintiff out-of-pocket loss, future attempted repairs, future

-22-

additional fuel costs, loss of warranty value, and diminished value of his vehicle.
Volkswagen knew about and purposefully used the defeat device, but did not disclose
the defeat device and its effects to Plaintiff, so Plaintiff purchased his vehicle on the
reasonable, but mistaken, belief that his vehicle complied with United States emissions
standards, was properly EPA certified, and would retain all of its operating
characteristics throughout its useful life.

**C.     Alaska Plaintiffs**

**1.      Michael Bozine**

65.     Plaintiff Michael Bozine is an individual domiciled in Eagle River,
Alaska.  In February, 2015, Plaintiff purchased a new 2015 VW Jetta TDI CleanDiesel
from Kendall Volkswagen of Anchorage, an authorized Volkswagen dealer in
Anchorage, Alaska.  Plaintiff purchased, and still owns, this vehicle.  Unknown to
Plaintiff at the time the vehicle was purchased, the vehicle was equipped with an
emissions control defeat device which caused the vehicle to get an undue EPA
certification and pass emissions tests, but at all other times emit up to 40 times the
allowed level of pollutants, including NOx.  The use of the defeat device by
Volkswagen has caused Plaintiff out-of-pocket loss, future attempted repairs, future
additional fuel costs, loss of warranty value, and diminished value of his vehicle.
Volkswagen knew about and purposefully used the defeat device, but did not disclose
the defeat device and its effects to Plaintiff, so Plaintiff purchased his vehicle on the
reasonable, but mistaken, belief that his vehicle complied with United States emissions
standards, was properly EPA certified, and would retain all of its operating
characteristics throughout its useful life.

**D.     Arizona Plaintiffs**

**1.      Clifford Broussard**

66.     Plaintiff Clifford Broussard is an individual domiciled in Mesa, Arizona.
In August, 2013, Plaintiff purchased a new 2013 VW Jetta TDI CleanDiesel from Bob

-23-

Baker Volkswagen, an authorized Volkswagen dealer in Carlsbad, California. Plaintiff purchased, and still owns, this vehicle. Unknown to Plaintiff at the time the vehicle was purchased, the vehicle was equipped with an emissions control defeat device which caused the vehicle to get an undue EPA certification and pass emissions tests, but at all other times emit up to 40 times the allowed level of pollutants, including NOx. The use of the defeat device by Volkswagen has caused Plaintiff out-of-pocket loss, future attempted repairs, future additional fuel costs, loss of warranty value, and diminished value of his vehicle. Volkswagen knew about and purposefully used the defeat device, but did not disclose the defeat device and its effects to Plaintiff, so Plaintiff purchased his vehicle on the reasonable, but mistaken, belief that his vehicle complied with United States emissions standards, was properly EPA certified, and would retain all of its operating characteristics throughout its useful life.

**E.     Arkansas Plaintiffs**

**1.     Victoria McClelland**

67.     Plaintiff Victoria McClelland is an individual domiciled in Bentonville, Arkansas. In July, 2009, Plaintiff purchased a new 2009 VW Jetta TDI CleanDiesel from Northwest Arkansas VW (now Crain Volkswagen), an authorized Volkswagen dealer in Rogers, Arkansas. Plaintiff purchased, and still owns this vehicle. Unknown to Plaintiff at the time the vehicle was purchased, the vehicle was equipped with an emissions control defeat device which caused the vehicle to get an undue EPA certification and pass emissions tests, but at all other times emit up to 40 times the allowed level of pollutants, including NOx. The use of the defeat device by Volkswagen has caused. Volkswagen knew about and purposefully used the defeat device, but did not disclose the defeat device and its effects to Plaintiff, so Plaintiff purchased her vehicle on the reasonable, but mistaken, belief that her vehicle complied with United States emissions standards, was properly EPA certified, and would retain all of its operating characteristics throughout its useful life.

-24-

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**F.      Colorado Plaintiffs**

**1.      Jeremiah Holden**

68.      Plaintiff Jeremiah Holden is an individual domiciled in Denver, Colorado.  In December, 2014, Plaintiff purchased a new 2014 VW Jetta Sportwagen TDI CleanDiesel from Emich Volkswagen, an authorized Volkswagen dealer in Denver, Colorado.  Plaintiff purchased, and still owns, this vehicle.  Unknown to Plaintiff at the time the vehicle was purchased, the vehicle was equipped with an emissions control defeat device which caused the vehicle to get an undue EPA certification and pass emissions tests, but at all other times emit up to 40 times the allowed level of pollutants, including NOx.  The use of the defeat device by Volkswagen has caused Plaintiff out-of-pocket loss, future attempted repairs, future additional fuel costs, loss of warranty value, and diminished value of his vehicle. Volkswagen knew about and purposefully used the defeat device, but did not disclose the defeat device and its effects to Plaintiff, so Plaintiff purchased his vehicle on the reasonable, but mistaken, belief that his vehicle complied with United States emissions standards, was properly EPA certified, and would retain all of its operating characteristics throughout its useful life.

**2.      Hildegard Reiser, M.D.**

69.      Plaintiff Hildegard Reiser, M.D. is an individual domiciled in Loveland, Colorado.  In August, 2015, Plaintiff purchased a new VW Golf TDI SE CleanDiesel from Ed Carroll Motor Company, an authorized Volkswagen dealer in Fort Collins, Colorado.  Plaintiff purchased, and still owns, this vehicle.  Unknown to Plaintiff at the time the vehicle was purchased, the vehicle was equipped with an emissions control defeat device which caused the vehicle to get an undue EPA certification and pass emissions tests, but at all other times emit up to 40 times the allowed level of pollutants, including NOx.  The use of the defeat device by Volkswagen has caused Plaintiff out-of-pocket loss, future attempted repairs, future additional fuel costs, loss

-25-

of warranty value, and diminished value of his vehicle.  Volkswagen knew about and purposefully used the defeat device, but did not disclose the defeat device and its effects to Plaintiff, so Plaintiff purchased her vehicle on the reasonable, but mistaken, belief that her vehicle complied with United States emissions standards, was properly EPA certified, and would retain all of its operating characteristics throughout its useful life.

**G.     Connecticut Plaintiffs**

**1.     Spencer Moore**

70.     Plaintiff Spencer Moore is an individual domiciled in Windsor, Connecticut.  In September, 2010, Plaintiff purchased a new 2010 VW Jetta TDI CleanDiesel from Lia Volkswagen, an authorized Volkswagen dealer in Enfield, Connecticut.  Plaintiff purchased, and still owns, this vehicle.  Unknown to Plaintiff at the time the vehicle was purchased, the vehicle was equipped with an emissions control defeat device which caused the vehicle to get an undue EPA certification and pass emissions tests, but at all other times emit up to 40 times the allowed level of pollutants, including NOx.  The use of the defeat device by Volkswagen has caused Plaintiff out-of-pocket loss, future attempted repairs, future additional fuel costs, loss of warranty value, and diminished value of his vehicle.  Volkswagen knew about and purposefully used the defeat device, but did not disclose the defeat device and its effects to Plaintiff, so Plaintiff purchased his vehicle on the reasonable, but mistaken, belief that his vehicle complied with United States emissions standards, was properly EPA certified, and would retain all of its operating characteristics throughout its useful life.

**H.     Delaware Plaintiffs**

**1.     John Gauger**

71.     Plaintiff John Gauger is an individual domiciled in Odessa, Delaware.  In November, 2012, Plaintiff purchased a new 2013 Jetta Sportswagen TDI CleanDiesel

-26-

from Smith Volkswagen, an authorized Volkswagen dealer in Wilmington, Delaware. Plaintiff purchased, and still owns, this vehicle.  Unknown to Plaintiff at the time the vehicle was purchased, the vehicle was equipped with an emissions control defeat device which caused the vehicle to get an undue EPA certification and pass emissions tests, but at all other times emit up to 40 times the allowed level of pollutants, including NOx.  The use of the defeat device by Volkswagen has caused Plaintiff out-of-pocket loss, future attempted repairs, future additional fuel costs, loss of warranty value, and diminished value of his vehicle.  Volkswagen knew about and purposefully used the defeat device, but did not disclose the defeat device and its effects to Plaintiff, so Plaintiff purchased his vehicle on the reasonable, but mistaken, belief that his vehicle complied with United States emissions standards, was properly EPA certified, and would retain all of its operating characteristics throughout its useful life.

I.      **District of Columbia Plaintiffs**

        1.      **Hanaa Rifaey**

        72.     Plaintiff Hanaa Rifaey is an individual domiciled in Washington, DC.  In April, 2010, Plaintiff purchased a new 2010 VW Jetta Sportwagen TDI CleanDiesel from Wes Greenway's Alexandria Volkswagen, an authorized Volkswagen dealer in Alexandria, Virginia.  Plaintiff purchased, and still owns, this vehicle.  Unknown to Plaintiff at the time the vehicle was purchased, the vehicle was equipped with an emissions control defeat device which caused the vehicle to get an undue EPA certification and pass emissions tests, but at all other times emit up to 40 times the allowed level of pollutants, including NOx.  The use of the defeat device by Volkswagen has caused Plaintiff out-of-pocket loss, future attempted repairs, future additional fuel costs, loss of warranty value, and diminished value of his vehicle. Volkswagen knew about and purposefully used the defeat device, but did not disclose the defeat device and its effects to Plaintiff, so Plaintiff purchased her vehicle on the reasonable, but mistaken, belief that her vehicle complied with United States

-27-

emissions standards, was properly EPA certified, and would retain all of its operating characteristics throughout its useful life.

## J. Florida Plaintiffs

### 1. Deborah Markward

73.    Plaintiff Deborah Markward is an individual domiciled in Orlando, Florida.  In March, 2010, Plaintiff purchased a new 2010 VW Jetta TDI CleanDiesel from Aristocrat Volkswagen, an authorized Volkswagen dealer in Sanford, Florida. Plaintiff purchased, and still owns, this vehicle.  Unknown to Plaintiff at the time the vehicle was purchased, the vehicle was equipped with an emissions control defeat device which caused the vehicle to get an undue EPA certification and pass emissions tests, but at all other times emit up to 40 times the allowed level of pollutants, including NOx.  The use of the defeat device by Volkswagen has caused Plaintiff out-of-pocket loss, future attempted repairs, future additional fuel costs, loss of warranty value, and diminished value of his vehicle.  Volkswagen knew about and purposefully used the defeat device, but did not disclose the defeat device and its effects to Plaintiff, so Plaintiff purchased her vehicle on the reasonable, but mistaken, belief that her vehicle complied with United States emissions standards, was properly EPA certified, and would retain all of its operating characteristics throughout its useful life.

## K. Georgia Plaintiffs

### 1. John Brown

74.    Plaintiff John Brown is an individual domiciled in Macon, Georgia.  In April, 2012, Plaintiff purchased a used 2011 VW Jetta TDI CleanDiesel from Volkswagen of Macon, an authorized Volkswagen dealer in Macon, Georgia.  In August, 2014, Plaintiff purchased a new 2014 VW Passat TDI CleanDiesel from Volkswagen of Macon, an authorized Volkswagen dealer in Macon, Georgia.  Plaintiff purchased, and still owns, these vehicles.  Unknown to Plaintiff at the time the vehicles were purchased, the vehicles were equipped with an emissions control defeat

-28-

device which caused the vehicles to get an undue EPA certification and pass emissions tests, but at all other times emit up to 40 times the allowed level of pollutants, including NOx.  The use of the defeat device by Volkswagen has caused Plaintiff out-of-pocket loss, future attempted repairs, future additional fuel costs, loss of warranty value, and diminished value of his vehicles.  Volkswagen knew about and purposefully used the defeat device, but did not disclose the defeat device and its effects to Plaintiff, so Plaintiff purchased his vehicles on the reasonable, but mistaken, belief that his vehicles complied with United States emissions standards, was properly EPA certified, and would retain all of its operating characteristics throughout their useful life.

## L.    Hawaii Plaintiffs

### 1.    Christina Paolicchi

75.    Plaintiff Christina Paolicchi is an individual domiciled in Katy, Texas.  In August, 2011, Plaintiff purchased a new 2011 VW Jetta TDI CleanDiesel from Tony Automotive Group dba Tony Volkswagen #207508, an authorized Volkswagen dealer in Waipahu, Hawaii.  Plaintiff purchased, and still owns, this vehicle.  Unknown to Plaintiff at the time the vehicle was purchased, the vehicle was equipped with an emissions control defeat device which caused the vehicle to get an undue EPA certification and pass emissions tests, but at all other times emit up to 40 times the allowed level of pollutants, including NOx.  The use of the defeat device by Volkswagen has caused Plaintiff out-of-pocket loss, future attempted repairs, future additional fuel costs, loss of warranty value, and diminished value of his vehicle.  Volkswagen knew about and purposefully used the defeat device, but did not disclose the defeat device and its effects to Plaintiff, so Plaintiff purchased her vehicle on the reasonable, but mistaken, belief that her vehicle complied with United States emissions standards, was properly EPA certified, and would retain all of its operating characteristics throughout its useful life.

-29-

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**M.      Idaho Plaintiffs**

    **1.      Adam Frugoli**

76.      Plaintiff Adam Frugoli is an individual domiciled in Idaho Falls, Idaho. In April 2015, Plaintiff purchased a new 2015 VW Passat TDI CleanDiesel from Teton Volkswagen an authorized Volkswagen dealer in Idaho Falls, Idaho.  Plaintiff purchased, and still owns, this vehicle.  Unknown to Plaintiff at the time the vehicle was purchased, the vehicle was equipped with an emissions control defeat device which caused the vehicle to get an undue EPA certification and pass emissions tests, but at all other times emit up to 40 times the allowed level of pollutants, including NOx.  The use of the defeat device by Volkswagen has caused Plaintiff out-of-pocket loss, future attempted repairs, future additional fuel costs, loss of warranty value, and diminished value of his vehicle.  Volkswagen knew about and purposefully used the defeat device, but did not disclose the defeat device and its effects to Plaintiff, so Plaintiff purchased his vehicle on the reasonable, but mistaken, belief that his vehicle complied with United States emissions standards, was properly EPA certified, and would retain all of its operating characteristics throughout its useful life.

**N.      Illinois Plaintiffs**

    **1.      Tracey Rosen**

77.      Plaintiff Tracey Rosen is an individual domiciled in Chicago, Illinois.  In August, 2012, Plaintiff purchased a new 2012 VW Golf TDI CleanDiesel from Autobarn of Evanston, an authorized Volkswagen dealer in Evanston, Illinois. Plaintiff purchased, and still owns, this vehicle.  Unknown to Plaintiff at the time the vehicle was purchased, the vehicle was equipped with an emissions control defeat device which caused the vehicle to get an undue EPA certification and pass emissions tests, but at all other times emit up to 40 times the allowed level of pollutants, including NOx.  The use of the defeat device by Volkswagen has caused Plaintiff out-of-pocket loss, future attempted repairs, future additional fuel costs, loss of warranty

value, and diminished value of his vehicle.  Volkswagen knew about and purposefully used the defeat device, but did not disclose the defeat device and its effects to Plaintiff, so Plaintiff purchased her vehicle on the reasonable, but mistaken, belief that her vehicle complied with United States emissions standards, was properly EPA certified, and would retain all of its operating characteristics throughout its useful life.

**O.    Indiana Plaintiffs**

**1.    Jeffrey Brady**

78.    Plaintiff Jeffrey Brady is an individual domiciled in Jeffersonville, Indiana.  In June, 2014, Plaintiff purchased a new 2014 VW Passat TDI SE CleanDiesel from Sam Swope Volkswagen of Clarksville, an authorized Volkswagen dealer in Clarksville, Indiana.  Plaintiff purchased, and still owns, this vehicle. Unknown to Plaintiff at the time the vehicle was purchased, the vehicle was equipped with an emissions control defeat device which caused the vehicle to get an undue EPA certification and pass emissions tests, but at all other times emit up to 40 times the allowed level of pollutants, including NOx.  The use of the defeat device by Volkswagen has caused Plaintiff out-of-pocket loss, future attempted repairs, future additional fuel costs, loss of warranty value, and diminished value of his vehicle. Volkswagen knew about and purposefully used the defeat device, but did not disclose the defeat device and its effects to Plaintiff, so Plaintiff purchased his vehicle on the reasonable, but mistaken, belief that his vehicle complied with United States emissions standards, was properly EPA certified, and would retain all of its operating characteristics throughout its useful life.

**P.    Iowa Plaintiffs**

**1.    Boualivanh Phanhphongsane**

79.    Plaintiff Boualivanh Phanhphongsane is an individual domiciled in Ottumwa, Iowa.  In August, 2014, Plaintiff purchased a new 2015 VW Golf TDI CleanDiesel from Carousel Motors Volkswagen, an authorized Volkswagen dealer in

-31-

Iowa City, Iowa.  Plaintiff purchased, and still owns, this vehicle.  Unknown to Plaintiff at the time the vehicle was purchased, the vehicle was equipped with an emissions control defeat device which caused the vehicle to get an undue EPA certification and pass emissions tests, but at all other times emit up to 40 times the allowed level of pollutants, including NOx.  The use of the defeat device by Volkswagen has caused Plaintiff out-of-pocket loss, future attempted repairs, future additional fuel costs, loss of warranty value, and diminished value of his vehicle. Volkswagen knew about and purposefully used the defeat device, but did not disclose the defeat device and its effects to Plaintiff, so Plaintiff purchased his vehicle on the reasonable, but mistaken, belief that his vehicle complied with United States emissions standards, was properly EPA certified, and would retain all of its operating characteristics throughout its useful life.

Q.    **Kansas Plaintiffs**

1.    **Brenda Penney**

80.    Plaintiff Brenda Penney is an individual domiciled in Wichita, Kansas. In June, 2015, Plaintiff purchased a new 2015 VW Golf Sportwagen TDI CleanDiesel from Northtowne Auto and completed her transaction in Witchita, Kansas.  Plaintiff purchased, and still owns, this vehicle.  Unknown to Plaintiff at the time the vehicle was purchased, the vehicle was equipped with an emissions control defeat device which caused the vehicle to get an undue EPA certification and pass emissions tests, but at all other times emit up to 40 times the allowed level of pollutants, including NOx.  The use of the defeat device by Volkswagen has caused Plaintiff out-of-pocket loss, future attempted repairs, future additional fuel costs, loss of warranty value, and diminished value of his vehicle.  Volkswagen knew about and purposefully used the defeat device, but did not disclose the defeat device and its effects to Plaintiff, so Plaintiff purchased her vehicle on the reasonable, but mistaken, belief that her vehicle

-32-

complied with United States emissions standards, was properly EPA certified, and would retain all of its operating characteristics throughout its useful life.

**R.      Kentucky Plaintiffs**

**1.      Michael Antis**

81.      Plaintiff Michael Antis is an individual domiciled in Louisville, Kentucky.  In June, 2015, Plaintiff purchased a new 2015 VW Jetta SEL TDI CleanDiesel from Bachman Volkswagen, an authorized Volkswagen dealer in Louisville, Kentucky.  Plaintiff purchased, and still owns, this vehicle.  Unknown to Plaintiff at the time the vehicle was purchased, the vehicle was equipped with an emissions control defeat device which caused the vehicle to get an undue EPA certification and pass emissions tests, but at all other times emit up to 40 times the allowed level of pollutants, including NOx.  The use of the defeat device by Volkswagen has caused Plaintiff out-of-pocket loss, future attempted repairs, future additional fuel costs, loss of warranty value, and diminished value of his vehicle. Volkswagen knew about and purposefully used the defeat device, but did not disclose the defeat device and its effects to Plaintiff, so Plaintiff purchased his vehicle on the reasonable, but mistaken, belief that his vehicle complied with United States emissions standards, was properly EPA certified, and would retain all of its operating characteristics throughout its useful life.

**S.      Louisiana Plaintiffs**

**1.      Alex Arceneaux**

82.      Plaintiff Alex Arceneaux is an individual domiciled in Geismar, Louisiana.  In July, 2015, Plaintiff purchased a new 2015 VW Passat TDI CleanDiesel from Southpoint Volkswagen, an authorized Volkswagen dealer in Baton Rouge, Louisiana.  Plaintiff purchased, and still owns, this vehicle.  Unknown to Plaintiff at the time the vehicle was purchased, the vehicle was equipped with an emissions control defeat device which caused the vehicle to get an undue EPA certification and

-33-

pass emissions tests, but at all other times emit up to 40 times the allowed level of pollutants, including NOx.  The use of the defeat device by Volkswagen has caused Plaintiff out-of-pocket loss, future attempted repairs, future additional fuel costs, loss of warranty value, and diminished value of his vehicle.  Volkswagen knew about and purposefully used the defeat device, but did not disclose the defeat device and its effects to Plaintiff, so Plaintiff purchased his vehicle on the reasonable, but mistaken, belief that his vehicle complied with United States emissions standards, was properly EPA certified, and would retain all of its operating characteristics throughout its useful life.

**T.**     **Maine Plaintiffs**

     **1.**     **G. Keating Pepper**

     83.     Plaintiff G. Keating Pepper is an individual domiciled in Northeast Harbor, Maine.  In March, 2015, Plaintiff purchased a new 2015 VW Passat TDI CleanDiesel from Darlings Volkswagen, an authorized Volkswagen dealer in Bangor, Maine.  Plaintiff purchased, and still owns, this vehicle.  Unknown to Plaintiff at the time the vehicle was purchased, the vehicle was equipped with an emissions control defeat device which caused the vehicle to get an undue EPA certification and pass emissions tests, but at all other times emit up to 40 times the allowed level of pollutants, including NOx.  The use of the defeat device by Volkswagen has caused Plaintiff out-of-pocket loss, future attempted repairs, future additional fuel costs, loss of warranty value, and diminished value of his vehicle.  Volkswagen knew about and purposefully used the defeat device, but did not disclose the defeat device and its effects to Plaintiff, so Plaintiff purchased his vehicle on the reasonable, but mistaken, belief that his vehicle complied with United States emissions standards, was properly EPA certified, and would retain all of its operating characteristics throughout its useful life.

-34-

U.      **Maryland Plaintiffs**

   1.      **Devan Wang**

   84.      Plaintiff Devan Wang is an individual domiciled in Ellicott City, Maryland.  In January, 2014, Plaintiff purchased a new 2013 VW Golf TDI CleanDiesel from Russel Volkswagen, an authorized Volkswagen dealer in Baltimore, Maryland.  Plaintiff purchased, and still owns, this vehicle.  Unknown to Plaintiff at the time the vehicle was purchased, the vehicle was equipped with an emissions control defeat device which caused the vehicle to get an undue EPA certification and pass emissions tests, but at all other times emit up to 40 times the allowed level of pollutants, including NOx.  The use of the defeat device by Volkswagen has caused Plaintiff out-of-pocket loss, future attempted repairs, future additional fuel costs, loss of warranty value, and diminished value of his vehicle.  Volkswagen knew about and purposefully used the defeat device, but did not disclose the defeat device and its effects to Plaintiff, so Plaintiff purchased his vehicle on the reasonable, but mistaken, belief that his vehicle complied with United States emissions standards, was properly EPA certified, and would retain all of its operating characteristics throughout its useful life.

V.      **Massachusetts Plaintiffs**

   1.      **Robert Hooker**

   85.      Plaintiff Robert Hooker is an individual domiciled in Newburyport, Massachusetts.  In October, 2014, Plaintiff purchased a new 2015 Audi A3 TDI CleanDiesel from Audi Natick, an authorized Audi dealer in Natick, Massachusetts.  Plaintiff purchased, and still owns, this vehicle.  Unknown to Plaintiff at the time the vehicle was purchased, the vehicle was equipped with an emissions control defeat device which caused the vehicle to get an undue EPA certification and pass emissions tests, but at all other times emit up to 40 times the allowed level of pollutants, including NOx.  The use of the defeat device by Volkswagen has caused Plaintiff out-

-35-

of-pocket loss, future attempted repairs, future additional fuel costs, loss of warranty value, and diminished value of his vehicle. Volkswagen knew about and purposefully used the defeat device, but did not disclose the defeat device and its effects to Plaintiff, so Plaintiff purchased his vehicle on the reasonable, but mistaken, belief that his vehicle complied with United States emissions standards, was properly EPA certified, and would retain all of its operating characteristics throughout its useful life.

**W.    Michigan Plaintiffs**

      **1.    Matthew Olovson**

86.    Plaintiff Matthew Olovson is an individual domiciled in Grand Rapids, Michigan. In September, 2012, Plaintiff purchased a new 2013 Audi A3 TDICleanDiesel from Delta Imports, an authorized Volkswagen dealer in Grand Rapids, Michigan. Plaintiff purchased, and still owns, this vehicle. Unknown to Plaintiff at the time the vehicle was purchased, the vehicle was equipped with an emissions control defeat device which caused the vehicle to get an undue EPA certification and pass emissions tests, but at all other times emit up to 40 times the allowed level of pollutants, including NOx. The use of the defeat device by Volkswagen has caused Plaintiff out-of-pocket loss, future attempted repairs, future additional fuel costs, loss of warranty value, and diminished value of his vehicle. Volkswagen knew about and purposefully used the defeat device, but did not disclose the defeat device and its effects to Plaintiff, so Plaintiff purchased his vehicle on the reasonable, but mistaken, belief that his vehicle complied with United States emissions standards, was properly EPA certified, and would retain all of its operating characteristics throughout its useful life.

**X.    Minnesota Plaintiffs**

      **1.    William Mackey**

87.    Plaintiff William Mackey is an individual domiciled in Saint Louis, Missouri. In December, 2010, Plaintiff purchased a new 2011 VW Golf TDI

-36-

CleanDiesel from Schmelz Countryside Volkswagen, an authorized Volkswagen dealer in Saint Paul, Minnesota.  Plaintiff purchased, and still owns, this vehicle. Unknown to Plaintiff at the time the vehicle was purchased, the vehicle was equipped with an emissions control defeat device which caused the vehicle to get an undue EPA certification and pass emissions tests, but at all other times emit up to 40 times the allowed level of pollutants, including NOx.  The use of the defeat device by Volkswagen has caused Plaintiff out-of-pocket loss, future attempted repairs, future additional fuel costs, loss of warranty value, and diminished value of his vehicle. Volkswagen knew about and purposefully used the defeat device, but did not disclose the defeat device and its effects to Plaintiff, so Plaintiff purchased his vehicle on the reasonable, but mistaken, belief that his vehicle complied with United States emissions standards, was properly EPA certified, and would retain all of its operating characteristics throughout its useful life.

**Y.      Mississippi Plaintiffs**

**1.      Edward Simmons**

88.      Plaintiff Edward Simmons is an individual domiciled in Ridgeland, Mississippi.  In February, 2011, Plaintiff purchased a used 2009 VW Jetta TDI CleanDiesel from Gorman McCracken Volkswagen, an authorized Volkswagen dealer in Longview, Texas.  Plaintiff purchased, and still owns, this vehicle.  Unknown to Plaintiff at the time the vehicle was purchased, the vehicle was equipped with an emissions control defeat device which caused the vehicle to get an undue EPA certification and pass emissions tests, but at all other times emit up to 40 times the allowed level of pollutants, including NOx.  The use of the defeat device by Volkswagen has caused Plaintiff out-of-pocket loss, future attempted repairs, future additional fuel costs, loss of warranty value, and diminished value of his vehicle. Volkswagen knew about and purposefully used the defeat device, but did not disclose the defeat device and its effects to Plaintiff, so Plaintiff purchased her vehicle on the

-37-

reasonable, but mistaken, belief that his vehicle complied with United States emissions standards, was properly EPA certified, and would retain all of its operating characteristics throughout its useful life.

**Z.     Missouri Plaintiffs**

    **1.     Charles Hall**

89.     Plaintiff Charles Hall is an individual domiciled in Saint Louis Missouri. In July, 2009, Plaintiff purchased a new 2009 VW Jetta TDI CleanDiesel from Dean Team Volkswagen of Kirkwood, an authorized Volkswagen dealer in Kirkwood, Missouri.  Plaintiff purchased, and still owns, this vehicle.  Unknown to Plaintiff at the time the vehicle was purchased, the vehicle was equipped with an emissions control defeat device which caused the vehicle to get an undue EPA certification and pass emissions tests, but at all other times emit up to 40 times the allowed level of pollutants, including NOx.  The use of the defeat device by Volkswagen has caused Plaintiff out-of-pocket loss, future attempted repairs, future additional fuel costs, loss of warranty value, and diminished value of his vehicle.  Volkswagen knew about and purposefully used the defeat device, but did not disclose the defeat device and its effects to Plaintiff, so Plaintiff purchased his vehicle on the reasonable, but mistaken, belief that his vehicle complied with United States emissions standards, was properly EPA certified, and would retain all of its operating characteristics throughout its useful life.

**AA.   Montana Plaintiffs**

    **1.     Kotab Holdings LLC**

90.     Plaintiff Kotab Holdings LLC is a limited liability company organized under the laws of the State of Montana with its principal office address in Whitefish, Montana.  In April, 2015, Plaintiff purchased a used 2011 Audi A3 TDI from Sweet Rides, LLC, a used car dealer in Greer, South Carolina.  Plaintiff purchased, and still owns, this vehicle.  Unknown to Plaintiff at the time the vehicle was purchased, the

-38-

1    vehicle was equipped with an emissions control defeat device which caused the

2    vehicle to get an undue EPA certification and pass emissions tests, but at all other

3    times emit up to 40 times the allowed level of pollutants, including NOx.  The use of

4    the defeat device by Volkswagen has caused Plaintiff out-of-pocket loss, future

5    attempted repairs, future additional fuel costs, loss of warranty value, and diminished

6    value of his vehicle.  Volkswagen knew about and purposefully used the defeat device,

7    but did not disclose the defeat device and its effects to Plaintiff, so Plaintiff purchased

8    the vehicle on the reasonable, but mistaken, belief that the vehicle complied with

9    United States emissions standards, was properly EPA certified, and would retain all of

10   its operating characteristics throughout its useful life.

**BB.    Nebraska Plaintiffs**

**1.    Alan Branting**

91.    Plaintiff Alan Branting is an individual domiciled in Lincoln, Nebraska.
In September, 2010, Plaintiff purchased a new 2010 VW Jetta TDI Cup Edition
CleanDiesel from Schwörer Volkswagen, an authorized Volkswagen dealer in
Lincoln, Nebraska.  In April, 2015, Plaintiff purchased a new 2015 VW Passat TDI
CleanDiesel from Performance Volkswagen, an authorized Volkswagen dealer in La
Vista, Nebraska.  Plaintiff purchased, and still owns, these vehicles.  Unknown to
Plaintiff at the time the vehicles were purchased, the vehicles were equipped with an
emissions control defeat device which caused the vehicles to get an undue EPA
certification and pass emissions tests, but at all other times emit up to 40 times the
allowed level of pollutants, including NOx.  The use of the defeat device by
Volkswagen has caused Plaintiff out-of-pocket loss, future attempted repairs, future
additional fuel costs, loss of warranty value, and diminished value of his vehicles.
Volkswagen knew about and purposefully used the defeat device, but did not disclose
the defeat device and its effects to Plaintiff, so Plaintiff purchased his vehicles on the
reasonable, but mistaken, belief that his vehicles complied with United States

-39-

emissions standards, was properly EPA certified, and would retain all of thier operating characteristics throughout their useful life.

## CC.   Nevada Plaintiffs

### 1.   Chad Ramos

92.     Plaintiff Chad Ramos is an individual domiciled in Eagle Mountain, Utah.  In June, 2014, Plaintiff purchased a used 2012 VW Jetta TDI CleanDiesel from AutoNation Volkswagen, an authorized Volkswagen dealer in Las Vegas, Nevada. Plaintiff purchased, and still owns, this vehicle.  Unknown to Plaintiff at the time the vehicle was purchased, the vehicle was equipped with an emissions control defeat device which caused the vehicle to get an undue EPA certification and pass emissions tests, but at all other times emit up to 40 times the allowed level of pollutants, including NOx.  The use of the defeat device by Volkswagen has caused Plaintiff out-of-pocket loss, future attempted repairs, future additional fuel costs, loss of warranty value, and diminished value of his vehicle.  Volkswagen knew about and purposefully used the defeat device, but did not disclose the defeat device and its effects to Plaintiff, so Plaintiff purchased his vehicle on the reasonable, but mistaken, belief that his vehicle complied with United States emissions standards, was properly EPA certified, and would retain all of its operating characteristics throughout its useful life.

## DD.   New Hampshire Plaintiffs

### 1.   Steven Bolduc

93.     Plaintiff Steven Bolduc is an individual domiciled in Brentwood, NH.  In June, 2013, Plaintiff purchased a used 2010 VW Jetta TDI CleanDiesel from Glen's Auto Sales, an authorized Volkswagen dealer in Fremont, NH  Plaintiff purchased, and still owns, This vehicle.  Unknown to Plaintiff at the time the vehicle was purchased, the vehicle was equipped with an emissions control defeat device which caused the vehicle to get an undue EPA certification and pass emissions tests, but at all other times emit up to 40 times the allowed level of pollutants, including NOx.

-40-

The use of the defeat device by Volkswagen has caused Plaintiff out-of-pocket loss, future attempted repairs, and diminished value of his vehicle. Volkswagen knew about and purposefully used the defeat device, but did not disclose the defeat device and its effects to Plaintiff, so Plaintiff purchased his vehicle on the reasonable, but mistaken, belief that his vehicle complied with United States emissions standards, was properly EPA certified, and would retain all of its operating characteristics throughout its useful life.

### EE.   New Jersey Plaintiffs

#### 1.   Joseph Avena

94.   Plaintiff Joseph Avena is an individual domiciled in Hamilton Square, NJ. In December, 2014, Plaintiff purchased a new 2015 VW Golf TDI SE CleanDiesel from VW of Hamilton, an authorized Volkswagen dealer in Hamilton, NJ. Plaintiff purchased, and still owns, this vehicle. Unknown to Plaintiff at the time the vehicle was purchased, the vehicle was equipped with an emissions control defeat device which caused the vehicle to get an undue EPA certification and pass emissions tests, but at all other times emit up to 40 times the allowed level of pollutants, including NOx. The use of the defeat device by Volkswagen has caused Plaintiff out-of-pocket loss, future attempted repairs, and diminished value of his vehicle. Volkswagen knew about and purposefully used the defeat device, but did not disclose the defeat device and its effects to Plaintiff, so Plaintiff purchased his vehicle on the reasonable, but mistaken, belief that his vehicle complied with United States emissions standards, was properly EPA certified, and would retain all of its operating characteristics throughout its useful life.

### FF.   New Mexico Plaintiffs

#### 1.   Andrew Masters

95.   Plaintiff Andrew Masters is an individual domiciled in Saratoga Springs, NY. In May, 2013, Plaintiff purchased a used VW Passat TDI SEL CleanDiesel from

-41-

Uptown Volkswagen, an authorized Volkswagen dealer in Albuquerque, NM. Plaintiff purchased, and still owns, this vehicle.  Unknown to Plaintiff at the time the vehicle was purchased, the vehicle was equipped with an emissions control defeat device which caused the vehicle to get an undue EPA certification and pass emissions tests, but at all other times emit up to 40 times the allowed level of pollutants, including NOx.  The use of the defeat device by Volkswagen has caused Plaintiff out-of-pocket loss, future attempted repairs, and diminished value of his vehicle. Volkswagen knew about and purposefully used the defeat device, but did not disclose the defeat device and its effects to Plaintiff, so Plaintiff purchased his vehicle on the reasonable, but mistaken, belief that his vehicle complied with United States emissions standards, was properly EPA certified, and would retain all of its operating characteristics throughout its useful life.

**GG.   New York Plaintiffs**

**1.   Steven Kolpan**

96.     Plaintiff Steven Kolpan is an individual domiciled in West Hurley, NY. In February, 2015, Plaintiff purchased a new 2015 VW Passat 2.0L TDI SEL CleanDiesel from VW of Kingston, an authorized Volkswagen dealer in Kingston, NY.  Plaintiff purchased, and still owns, this vehicle.  Unknown to Plaintiff at the time the vehicle was purchased, the vehicle was equipped with an emissions control defeat device which caused the vehicle to get an undue EPA certification and pass emissions tests, but at all other times emit up to 40 times the allowed level of pollutants, including NOx.  The use of the defeat device by Volkswagen has caused Plaintiff out-of-pocket loss, future attempted repairs, and diminished value of his vehicle. Volkswagen knew about and purposefully used the defeat device, but did not disclose the defeat device and its effects to Plaintiff, so Plaintiff purchased his vehicle on the reasonable, but mistaken, belief that his vehicle complied with United States emissions

-42-

standards, was properly EPA certified, and would retain all of its operating characteristics throughout its useful life.

**HH.  North Carolina Plaintiffs**

    **1.  Paul Puryear**

97.  Plaintiff Paul Puryear is an individual domiciled in Apex, NC.  In March, 2013, Plaintiff purchased a used VW Jetta TDI CleanDiesel in Cary, North Carolina. Plaintiff purchased, and still owns, this vehicle.  Unknown to Plaintiff at the time the vehicle was purchased, the vehicle was equipped with an emissions control defeat device which caused the vehicle to get an undue EPA certification and pass emissions tests, but at all other times emit up to 40 times the allowed level of pollutants, including NOx.  The use of the defeat device by Volkswagen has caused Plaintiff out-of-pocket loss, future attempted repairs, and diminished value of his vehicle. Volkswagen knew about and purposefully used the defeat device, but did not disclose the defeat device and its effects to Plaintiff, so Plaintiff purchased his vehicle on the reasonable, but mistaken, belief that his vehicle complied with United States emissions standards, was properly EPA certified, and would retain all of its operating characteristics throughout its useful life.

**II.  North Dakota Plaintiffs**

    **1.  Michelle Gramling**

98.  Plaintiff Michelle Gramling is an individual domiciled in Bismarck, North Dakota.  In September, 2015, Plaintiff purchased a new 2015 VW Jetta TDI CleanDiesel from an authorized Volkswagen dealer in Bismarck, North Dakota. Plaintiff purchased, and still owns, this vehicle.  Unknown to Plaintiff at the time the vehicle was purchased, the vehicle was equipped with an emissions control defeat device which caused the vehicle to get an undue EPA certification and pass emissions tests, but at all other times emit up to 40 times the allowed level of pollutants, including NOx.  The use of the defeat device by Volkswagen has caused Plaintiff out-

-43-

of-pocket loss, future attempted repairs, future additional fuel costs, loss of warranty value, and diminished value of his vehicle. Volkswagen knew about and purposefully used the defeat device, but did not disclose the defeat device and its effects to Plaintiff, so Plaintiff purchased her vehicle on the reasonable, but mistaken, belief that her vehicle complied with United States emissions standards, was properly EPA certified, and would retain all of its operating characteristics throughout its useful life.

**JJ.**   **Ohio Plaintiffs**

**1.**   **David Pyle**

99.   Plaintiff David Pyle is an individual domiciled in Fredericktown, OH. In January, 2012, Plaintiff purchased a new 2012 VW Jetta TDI CleanDiesel from Hatfield Volkswagen, an authorized Volkswagen dealer in Columbus, OH. Plaintiff purchased, and still owns, this vehicle. Unknown to Plaintiff at the time the vehicle was purchased, the vehicle was equipped with an emissions control defeat device which caused the vehicle to get an undue EPA certification and pass emissions tests, but at all other times emit up to 40 times the allowed level of pollutants, including NOx. The use of the defeat device by Volkswagen has caused Plaintiff out-of-pocket loss, future attempted repairs, and diminished value of his vehicle. Volkswagen knew about and purposefully used the defeat device, but did not disclose the defeat device and its effects to Plaintiff, so Plaintiff purchased his vehicle on the reasonable, but mistaken, belief that his vehicle complied with United States emissions standards, was properly EPA certified, and would retain all of its operating characteristics throughout its useful life.

**KK.**   **Oklahoma Plaintiffs**

**1.**   **Heather Greenfield**

100.   Plaintiff Heather Greenfield is an individual domiciled in Norman, OK. In August, 2010, Plaintiff purchased a new VW Jetta TDI CleanDiesel from Volkswagen of Tulsa, an authorized Volkswagen dealer in Tulsa,OK. Plaintiff

-44-

purchased, and still owns, this vehicle.  Unknown to Plaintiff at the time the vehicle was purchased, the vehicle was equipped with an emissions control defeat device which caused the vehicle to get an undue EPA certification and pass emissions tests, but at all other times emit up to 40 times the allowed level of pollutants, including NOx.  The use of the defeat device by Volkswagen has caused Plaintiff out-of-pocket loss, future attempted repairs, and diminished value of her vehicle.  Volkswagen knew about and purposefully used the defeat device, but did not disclose the defeat device and its effects to Plaintiff, so Plaintiff purchased her vehicle on the reasonable, but mistaken, belief that her vehicle complied with United States emissions standards, was properly EPA certified, and would retain all of its operating characteristics throughout its useful life.

## LL.     Oregon Plaintiffs

### 1.     Kyle Boylan

101.   Plaintiff Kyle Boylan is an individual domiciled in Sherwood, OR.  In March, 2013, Plaintiff purchased a new VW Jetta TDI CleanDiesel from Armstrong Volkswagen, an authorized Volkswagen dealer in Gladstone, OR.  Plaintiff purchased, and still owns, this vehicle.  Unknown to Plaintiff at the time the vehicle was purchased, the vehicle was equipped with an emissions control defeat device which caused the vehicle to get an undue EPA certification and pass emissions tests, but at all other times emit up to 40 times the allowed level of pollutants, including NOx. The use of the defeat device by Volkswagen has caused Plaintiff out-of-pocket loss, future attempted repairs, and diminished value of his vehicle.  Volkswagen knew about and purposefully used the defeat device, but did not disclose the defeat device and its effects to Plaintiff, so Plaintiff purchased his vehicle on the reasonable, but mistaken, belief that his vehicle complied with United States emissions standards, was properly EPA certified, and would retain all of its operating characteristics throughout its useful life.

-45-

MM.   **Pennsylvania Plaintiffs**

    1.    **Ralph Mendenhall**

    102.   Plaintiff Ralph Mendenhall is an individual domiciled in Downington, PA.  In February, 2015, Plaintiff purchased a new 2014 VW Jetta TDI CleanDiesel from Jeff D'Ambrosio Volkswagen, an authorized Volkswagen dealer in Downington, PA.  Plaintiff purchased, and still owns, this vehicle.  Unknown to Plaintiff at the time the vehicle was purchased, the vehicle was equipped with an emissions control defeat device which caused the vehicle to get an undue EPA certification and pass emissions tests, but at all other times emit up to 40 times the allowed level of pollutants, including NOx.  The use of the defeat device by Volkswagen has caused Plaintiff out-of-pocket loss, future attempted repairs, and diminished value of his vehicle. Volkswagen knew about and purposefully used the defeat device, but did not disclose the defeat device and its effects to Plaintiff, so Plaintiff purchased his vehicle on the reasonable, but mistaken, belief that his vehicle complied with United States emissions standards, was properly EPA certified, and would retain all of its operating characteristics throughout its useful life.

NN.   **Rhode Island Plaintiffs**

    1.    **Alexander Baittinger**

    103.   Plaintiff Alexander Baittinger is an individual domiciled in North Kingstown, RI.  In May, 2013, Plaintiff purchased a new VW Jetta SportWagen TDI CleanDiesel from Scott VW, an authorized Volkswagen dealer in East Providence, RI. Plaintiff purchased, and still owns, this vehicle.  Unknown to Plaintiff at the time the vehicle was purchased, the vehicle was equipped with an emissions control defeat device which caused the vehicle to get an undue EPA certification and pass emissions tests, but at all other times emit up to 40 times the allowed level of pollutants, including NOx.  The use of the defeat device by Volkswagen has caused Plaintiff out-of-pocket loss, future attempted repairs, and diminished value of his vehicle.

-46-

Volkswagen knew about and purposefully used the defeat device, but did not disclose the defeat device and its effects to Plaintiff, so Plaintiff purchased his vehicle on the reasonable, but mistaken, belief that his vehicle complied with United States emissions standards, was properly EPA certified, and would retain all of its operating characteristics throughout its useful life.

**OO.    South Carolina Plaintiffs**

**1.    Andrew Bell**

104.    Plaintiff Andrew Bell is an individual domiciled in Charlestown, SC.  In August, 2011, Plaintiff purchased a new Jetta SportWagen TDI CleanDiesel from Low Country VW, an authorized Volkswagen dealer in Mt. Pleasant, SC.  Plaintiff purchased, and still owns, this vehicle.  Unknown to Plaintiff at the time the vehicle was purchased, the vehicle was equipped with an emissions control defeat device which caused the vehicle to get an undue EPA certification and pass emissions tests, but at all other times emit up to 40 times the allowed level of pollutants, including NOx.  The use of the defeat device by Volkswagen has caused Plaintiff out-of-pocket loss, future attempted repairs, and diminished value of his vehicle.  Volkswagen knew about and purposefully used the defeat device, but did not disclose the defeat device and its effects to Plaintiff, so Plaintiff purchased his vehicle on the reasonable, but mistaken, belief that his vehicle complied with United States emissions standards, was properly EPA certified, and would retain all of its operating characteristics throughout its useful life.

**PP.    South Dakota Plaintiffs**

**1.    Gary Van Guilder**

105.    Plaintiff Gary Van Guilder is an individual domiciled in Brookings, SD. In August 2010, Plaintiff purchased a new VW Jetta TDI 4 door sedan CleanDiesel from Ken Vance Volkswagen, an authorized Volkswagen dealer in Eau Claire, WI. Plaintiff purchased, and still owns, this vehicle.  Unknown to Plaintiff at the time the

-47-

vehicle was purchased, the vehicle was equipped with an emissions control defeat device which caused the vehicle to get an undue EPA certification and pass emissions tests, but at all other times emit up to 40 times the allowed level of pollutants, including NOx.  The use of the defeat device by Volkswagen has caused Plaintiff out-of-pocket loss, future attempted repairs, and diminished value of his vehicle. Volkswagen knew about and purposefully used the defeat device, but did not disclose the defeat device and its effects to Plaintiff, so Plaintiff purchased his vehicle on the reasonable, but mistaken, belief that his vehicle complied with United States emissions standards, was properly EPA certified, and would retain all of its operating characteristics throughout its useful life.

## QQ.   Tennessee Plaintiffs

### 1.      Barry Cross

106.   Plaintiff Barry Cross is an individual domiciled in Jackson, Tennessee. In March, 2011, Plaintiff purchased a new VW Jetta TDI CleanDiesel from Gary Matthews VW, an authorized Volkswagen dealer in Clarksville, Tennessee.  Plaintiff purchased, and still owns, this vehicle.  Unknown to Plaintiff at the time the vehicle was purchased, the vehicle was equipped with an emissions control defeat device which caused the vehicle to get an undue EPA certification and pass emissions tests, but at all other times emit up to 40 times the allowed level of pollutants, including NOx.  The use of the defeat device by Volkswagen has caused Plaintiff out-of-pocket loss, future attempted repairs, and diminished value of his vehicle.  Volkswagen knew about and purposefully used the defeat device, but did not disclose the defeat device and its effects to Plaintiff, so Plaintiff purchased his vehicle on the reasonable, but mistaken, belief that his vehicle complied with United States emissions standards, was properly EPA certified, and would retain all of its operating characteristics throughout its useful life.

-48-

### RR.   Texas Plaintiffs

#### 1.   Justin Holloway

107.   Plaintiff Justin Holloway is an individual domiciled in Abilene, TX.  In September, 2015, Plaintiff purchased a new VW Passat TDI CleanDiesel from Volkswagen of Corpus Christi, an authorized Volkswagen dealer in Corpus Christi, TX.  Plaintiff purchased, and still owns, this vehicle.  Unknown to Plaintiff at the time the vehicle was purchased, the vehicle was equipped with an emissions control defeat device which caused the vehicle to get an undue EPA certification and pass emissions tests, but at all other times emit up to 40 times the allowed level of pollutants, including NOx.  The use of the defeat device by Volkswagen has caused Plaintiff out-of-pocket loss, future attempted repairs, and diminished value of his vehicle.  Volkswagen knew about and purposefully used the defeat device, but did not disclose the defeat device and its effects to Plaintiff, so Plaintiff purchased his vehicle on the reasonable, but mistaken, belief that his vehicle complied with United States emissions standards, was properly EPA certified, and would retain all of its operating characteristics throughout its useful life.

### SS.   Utah Plaintiffs

#### 1.   Kelly King

108.   Plaintiff Kelly King is an individual domiciled in Centerville, Utah.  In August, 2010, Plaintiff purchased a new VW Jetta TDI CleanDiesel from Strong Volkswagen, an authorized Volkswagen dealer in Salt Lake City, Utah.  Plaintiff purchased, and still owns, this vehicle.  Unknown to Plaintiff at the time the vehicle

-49-

was purchased, the vehicle was equipped with an emissions control defeat device which caused the vehicle to get an undue EPA certification and pass emissions tests, but at all other times emit up to 40 times the allowed level of pollutants, including NOx.  The use of the defeat device by Volkswagen has caused Plaintiff out-of-pocket loss, future attempted repairs, and diminished value of his vehicle.  Volkswagen knew about and purposefully used the defeat device, but did not disclose the defeat device and its effects to Plaintiff, so Plaintiff purchased his vehicle on the reasonable, but mistaken, belief that his vehicle complied with United States emissions standards, was properly EPA certified, and would retain all of its operating characteristics throughout its useful life.

**TT.    Vermont Plaintiffs**

**1.    Karen Norman**

109.   Plaintiff Karen Norman is an individual domiciled in Jericho, Vermont. In June, 2009, Plaintiff purchased a new VW Jetta TDI CleanDiesel from Lewis Motors n/k/a Shearer Auto Group, an authorized Volkswagen dealer in South Burlington, Vermont.  Plaintiff purchased, and still owns, this vehicle.  Unknown to Plaintiff at the time the vehicle was purchased, the vehicle was equipped with an emissions control defeat device which caused the vehicle to get an undue EPA certification and pass emissions tests, but at all other times emit up to 40 times the allowed level of pollutants, including NOx.  The use of the defeat device by Volkswagen has caused Plaintiff out-of-pocket loss, future attempted repairs, and diminished value of her vehicle.  Volkswagen knew about and purposefully used the defeat device, but did not disclose the defeat device and its effects to Plaintiff, so Plaintiff purchased her vehicle on the reasonable, but mistaken, belief that her vehicle complied with United States emissions standards, was properly EPA certified, and would retain all of its operating characteristics throughout its useful life.

-50-

## UU.   Virginia Plaintiffs

### 1.     Andrew Ventura

110.   Plaintiff Andrew Ventura is an individual domiciled in Stuarts Draft, Virginia.  In November 2008, Plaintiff purchased a new 2009 Jetta TDI CleanDiesel from Karen Radley Volkswagen, an authorized Volkswagen dealer in Woodbridge, Virginia.  Plaintiff purchased, and still owns, this vehicle.  Unknown to Plaintiff at the time the vehicle was purchased, the vehicle was equipped with an emissions control defeat device which caused the vehicle to get an undue EPA certification and pass emissions tests, but at all other times emit up to 40 times the allowed level of pollutants, including NOx.  The use of the defeat device by Volkswagen has caused Plaintiff out-of-pocket loss, future attempted repairs, future additional fuel costs, loss of warranty value, and diminished value of his vehicle.  Volkswagen knew about and purposefully used the defeat device, but did not disclose the defeat device and its effects to Plaintiff, so Plaintiff purchased his vehicle on the reasonable, but mistaken, belief that his vehicle complied with United States emissions standards, was properly EPA certified, and would retain all of its operating characteristics throughout its useful life.

## VV.   Washington Plaintiffs

### 1.     Troy Ponto

111.   Plaintiff Troy Ponto is an individual domiciled in Graham, WA.  In May, 2013, Plaintiff purchased a new VW Passat TDI CleanDiesel from Auburn Volkswagen, an authorized Volkswagen dealer in Auburn, WA.  Plaintiff purchased, and still owns, this vehicle.  Unknown to Plaintiff at the time the vehicle was purchased, the vehicle was equipped with an emissions control defeat device which caused the vehicle to get an undue EPA certification and pass emissions tests, but at all other times emit up to 40 times the allowed level of pollutants, including NOx. The use of the defeat device by Volkswagen has caused Plaintiff out-of-pocket loss,

-51-

future attempted repairs, and diminished value of his vehicle.  Volkswagen knew about and purposefully used the defeat device, but did not disclose the defeat device and its effects to Plaintiff, so Plaintiff purchased his vehicle on the reasonable, but mistaken, belief that his vehicle complied with United States emissions standards, was properly EPA certified, and would retain all of its operating characteristics throughout its useful life.

## WW.   West Virginia Plaintiffs

### 1.   Scott Taylor

112.   Plaintiff Scott Taylor is an individual domiciled in Martinsburg, West Virginia.  In April, 2014, Plaintiff purchased a used 2011 Jetta TDI CleanDiesel from a used car dealer in Martinsburg, West Virginia.  Plaintiff purchased, and still owns, this vehicle.  Unknown to Plaintiff at the time the vehicle was purchased, the vehicle was equipped with an emissions control defeat device which caused the vehicle to get an undue EPA certification and pass emissions tests, but at all other times emit up to 40 times the allowed level of pollutants, including NOx.  The use of the defeat device by Volkswagen has caused Plaintiff out-of-pocket loss, future attempted repairs, future additional fuel costs, loss of warranty value, and diminished value of his vehicle.  Volkswagen knew about and purposefully used the defeat device, but did not disclose the defeat device and its effects to Plaintiff, so Plaintiff purchased his vehicle on the reasonable, but mistaken, belief that his vehicle complied with United States emissions standards, was properly EPA certified, and would retain all of its operating characteristics throughout its useful life.

## XX.   Wisconsin Plaintiffs

### 1.   Carlos Ortiz

113.   Plaintiff Carlos Ortiz is an individual domiciled in West Allis, Wisconsin. In May 2012, Plaintiff purchased a new 2012 VW Golf TDI CleanDiesel from Boucher Volkswagen - Racine, an authorized Volkswagen dealer in Racine, WI.

-52-

Plaintiff purchased, and still owns, this vehicle.  Unknown to Plaintiff at the time the vehicle was purchased, the vehicle was equipped with an emissions control defeat device which caused the vehicle to get an undue EPA certification and pass emissions tests, but at all other times emit up to 40 times the allowed level of pollutants, including NOx.  The use of the defeat device by Volkswagen has caused Plaintiff out-of-pocket loss, future attempted repairs, and diminished value of his vehicle. Volkswagen knew about and purposefully used the defeat device, but did not disclose the defeat device and its effects to Plaintiff, so Plaintiff purchased his vehicle on the reasonable, but mistaken, belief that his vehicle complied with United States emissions standards, was properly EPA certified, and would retain all of its operating characteristics throughout its useful life.

**YY.**   **Wyoming Plaintiffs**

   **1.**   **Brian Mills**

   114.   Plaintiff Brian Mills is an individual domiciled in Cheyenne, Wyoming. In September, 2015, Plaintiff purchased a new 2015 VW Passat CleanDiesel from Greeley Volkswagen, an authorized Volkswagen dealer in Greeley, Colorado. Plaintiff purchased, and still owns, this vehicle.  Unknown to Plaintiff at the time the vehicle was purchased, the vehicle was equipped with an emissions control defeat device which caused the vehicle to get an undue EPA certification and pass emissions tests, but at all other times emit up to 40 times the allowed level of pollutants, including NOx.  The use of the defeat device by Volkswagen has caused Plaintiff out-of-pocket loss, future attempted repairs, and diminished value of his vehicle. Volkswagen knew about and purposefully used the defeat device, but did not disclose the defeat device and its effects to Plaintiff, so Plaintiff purchased his vehicle on the reasonable, but mistaken, belief that his vehicle complied with United States emissions standards, was properly EPA certified, and would retain all of its operating characteristics throughout its useful life.

-53-

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## ZZ.    Defendants

115.   Volkswagen Group of America, Inc., is a corporation doing business in all 50 states (including the District of Columbia) and is organized under the laws of the State of New Jersey, with its principal place of business located at 2200 Ferdinand Porsche Dr., Herndon, Virginia 20171.

116.  Volkswagen Aktiengesellschaft, doing business as Volkswagen Group and/or Volkswagen AG ("Volkswagen AG"), has its principal place of business in Wolfsburg, Germany.  Volkswagen AG is a corporation organized under the laws of Germany and it is the parent corporation of Volkswagen Group of America, Inc.

117.   Volkswagen Group of American, Inc., and Volkswagen AG were and are at all times relevant to the allegations in this complaint working in concert under the common objective to engage in the emissions scheme described in this complaint. Each of Volkswagen Group of America and Volkswagen AG were and are the agents of each other and have acted and act for their common goals and profit.  Therefore, all acts and knowledge ascribed to one of Volkswagen Group of America or Volkswagen AG are properly imputed to the other.  Volkswagen Group of America and Volkswagen AG are referred to collectively herein as Volkswagen or "VW."

118.   At all times relevant to this action, Volkswagen manufactured, distributed, sold, leased, and warranted the Affected Vehicles under the Volkswagen and Audi brand names throughout the United States.  Volkswagen and/or its parents, affiliates and agents designed, manufactured, and installed the CleanDiesel engine systems in the Affected Vehicles, which included the "defeat device."  Volkswagen and/or its parents, affiliates and agents developed and disseminated the owner's manuals and warranty booklets, advertisements, and other promotional materials relating to the Affected Vehicles.

-54-

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# VI.   TOLLING OF THE STATUTE OF LIMITATIONS

## A.   Discovery Rule Tolling

119.   Class Members had no way of knowing about Volkswagen's deception with respect to its CleanDiesel engine system and "defeat device."  It took federal EPA and California Air Resources Board investigations to uncover Volkswagen's deception, which involved sophisticated software manipulation on Volkswagen's part.  As reported by the *Los Angeles Times* on September 18, 2015, it took California Air Resources Board testing on a special dynamometer in a laboratory, open road testing using portable equipment, and the use of special testing devised by the Board to uncover Volkswagen's scheme and to detect how software on the engine's electronic control module was deceiving emissions certifications tests.  Plainly, Volkswagen was intent on expressly hiding its behavior from regulators and consumers.  This is the quintessential case for tolling.

120.   Within the time period of any applicable statutes of limitation, Plaintiffs and members of the proposed classes could not have discovered through the exercise of reasonable diligence that Volkswagen was concealing the conduct complained of herein and misrepresenting the Company's true position with respect to the emission qualities of its vehicles.

121.   Plaintiffs and the other Class members did not discover, and did not know of facts that would have caused a reasonable person to suspect, that Volkswagen did not report information within its knowledge to federal and state authorities, its dealerships, or consumers; nor would a reasonable and diligent investigation have disclosed that Volkswagen had information in its possession about the existence of its sophisticated emissions scheme and that it opted to conceal that information, which was discovered by Plaintiffs only shortly before this action was filed.  Nor in any event would such an investigation on the part of Plaintiffs and other Class members have disclosed that Volkswagen valued profits over compliance with federal and state

-55-

law, or the trust that Plaintiffs and other Class members had placed in its representations, or that, necessarily, Volkswagen actively discouraged its personnel from raising or disclosing issues with regard to the true quality and quantity of the emissions, and the emissions software, of its vehicles, or of Volkswagen's emissions scheme.

122.   For these reasons, all applicable statutes of limitation have been tolled by operation of the discovery rule with respect to claims as to all vehicles identified herein.

**B.    Fraudulent Concealment Tolling**

123.   All applicable statutes of limitation have also been tolled by Volkswagen's knowing and active fraudulent concealment and denial of the facts alleged herein throughout the time period relevant to this action.

124.   Instead of disclosing its emissions scheme, or that the quality and quantity of emissions from the subject vehicles were far worse than represented, and of its disregard of federal and state law, Volkswagen falsely represented that its vehicles complied with federal and state emissions standards, and that it was a reputable manufacturer whose representations could be trusted.

**C.    Estoppel**

125.   Volkswagen was under a continuous duty to disclose to Plaintiffs and the other Class members the true character, quality, and nature of emissions from the vehicles at issue, and of those vehicles' emissions systems, and of the compliance of those systems with applicable federal and state law.

126.   Volkswagen knowingly, affirmatively, and actively concealed the true nature, quality, and character of the emissions systems, and the emissions, of the vehicles at issue.

127.   Volkswagen was also under a continuous duty to disclose to Plaintiffs and Class members that it had engaged in the scheme complained of herein to evade

-56-

federal and state emissions and clean air standards, and that it systematically devalued compliance with, and deliberately flouted, federal and state laws regulating vehicle emissions and clean air.

128.   Based on the foregoing, Volkswagen is estopped from relying on any statutes of limitations in defense of this action.

## VII.   CLASS ALLEGATIONS

129.   Plaintiffs bring this action pursuant to the provisions of Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, on behalf of themselves and the following class and subclasses (collectively, the "Classes"):

**The Nationwide Class**

All persons or entities in the United States who owned and/or leased an "Affected Vehicle" as of September 18, 2015.  Affected Vehicles include, without limitation, the diesel-powered: MY 2009-2015 VW Jetta; MY 2009-2015 VW Beetle; MY 2009-2015 VW Golf; MY 2012-2015 VW Passat; and MY 2009-2015 Audi A3.

**The Alabama Subclass**

All persons or entities in the state of Alabama who owned and/or leased an "Affected Vehicle" as of September 18, 2015.  Affected Vehicles include, without limitation, the diesel-powered: MY 2009-2015 VW Jetta; MY 2009-2015 VW Beetle; MY 2009-2015 VW Golf; MY 2012-2015 VW Passat; and MY 2009-2015 Audi A3.

**The Alaska Subclass**

All persons or entities in the state of Alaska who owned and/or leased an "Affected Vehicle" as of September 18, 2015.  Affected Vehicles include, without limitation, the diesel-powered: MY 2009-2015 VW Jetta; MY 2009-2015 VW Beetle; MY 2009-2015 VW Golf; MY 2012-2015 VW Passat; and MY 2009-2015 Audi A3.

**The Arizona Subclass**

All persons or entities in the state of Arizona who owned and/or leased an "Affected Vehicle" as of September 18,

-57-

2015.  Affected Vehicles include, without limitation, the diesel-powered: MY 2009-2015 VW Jetta; MY 2009-2015 VW Beetle; MY 2009-2015 VW Golf; MY 2012-2015 VW Passat; and MY 2009-2015 Audi A3.

**The Arkansas Subclass**

All persons or entities in the state of Arkansas who owned and/or leased an "Affected Vehicle" as of September 18, 2015.  Affected Vehicles include, without limitation, the diesel-powered: MY 2009-2015 VW Jetta; MY 2009-2015 VW Beetle; MY 2009-2015 VW Golf; MY 2012-2015 VW Passat; and MY 2009-2015 Audi A3.

**The California Subclass**

All persons or entities in the state of California who owned and/or leased an "Affected Vehicle" as of September 18, 2015.  Affected Vehicles include, without limitation, the diesel-powered: MY 2009-2015 VW Jetta; MY 2009-2015 VW Beetle; MY 2009-2015 VW Golf; MY 2012-2015 VW Passat; and MY 2009-2015 Audi A3.

**The Colorado Subclass**

All persons or entities in the state of Colorado who owned and/or leased an "Affected Vehicle" as of September 18, 2015.  Affected Vehicles include, without limitation, the diesel-powered: MY 2009-2015 VW Jetta; MY 2009-2015 VW Beetle; MY 2009-2015 VW Golf; MY 2012-2015 VW Passat; and MY 2009-2015 Audi A3.

**The Connecticut Subclass**

All persons or entities in the state of Connecticut who owned and/or leased an "Affected Vehicle" as of September 18, 2015.  Affected Vehicles include, without limitation, the diesel-powered: MY 2009-2015 VW Jetta; MY 2009-2015 VW Beetle; MY 2009-2015 VW Golf; MY 2012-2015 VW Passat; and MY 2009-2015 Audi A3.

**The Delaware Subclass**

All persons or entities in the state of Delaware who owned and/or leased an "Affected Vehicle" as of September 18, 2015.  Affected Vehicles include, without limitation, the diesel-powered: MY 2009-2015 VW Jetta; MY 2009-2015

VW Beetle; MY 2009-2015 VW Golf; MY 2012-2015 VW Passat; and MY 2009-2015 Audi A3.

**The Florida Subclass**

All persons or entities in the state of Florida who owned and/or leased an "Affected Vehicle" as of September 18, 2015. Affected Vehicles include, without limitation, the diesel-powered: MY 2009-2015 VW Jetta; MY 2009-2015 VW Beetle; MY 2009-2015 VW Golf; MY 2012-2015 VW Passat; and MY 2009-2015 Audi A3.

**The Georgia Subclass**

All persons or entities in the state of Georgia who owned and/or leased an "Affected Vehicle" as of September 18, 2015. Affected Vehicles include, without limitation, the diesel-powered: MY 2009-2015 VW Jetta; MY 2009-2015 VW Beetle; MY 2009-2015 VW Golf; MY 2012-2015 VW Passat; and MY 2009-2015 Audi A3.

**The Hawaii Subclass**

All persons or entities in the state of Hawaii who owned and/or leased an "Affected Vehicle" as of September 18, 2015. Affected Vehicles include, without limitation, the diesel-powered: MY 2009-2015 VW Jetta; MY 2009-2015 VW Beetle; MY 2009-2015 VW Golf; MY 2012-2015 VW Passat; and MY 2009-2015 Audi A3.

**The Idaho Subclass**

All persons or entities in the state of Idaho who owned and/or leased an "Affected Vehicle" as of September 18, 2015. Affected Vehicles include, without limitation, the diesel-powered: MY 2009-2015 VW Jetta; MY 2009-2015 VW Beetle; MY 2009-2015 VW Golf; MY 2012-2015 VW Passat; and MY 2009-2015 Audi A3.

**The Illinois Subclass**

All persons or entities in the state of Illinois who owned and/or leased an "Affected Vehicle" as of September 18, 2015. Affected Vehicles include, without limitation, the diesel-powered: MY 2009-2015 VW Jetta; MY 2009-2015 VW Beetle; MY 2009-2015 VW Golf; MY 2012-2015 VW Passat; and MY 2009-2015 Audi A3.

-59-

**The Indiana Subclass**

All persons or entities in the state of Indiana who owned and/or leased an "Affected Vehicle" as of September 18, 2015.  Affected Vehicles include, without limitation, the diesel-powered: MY 2009-2015 VW Jetta; MY 2009-2015 VW Beetle; MY 2009-2015 VW Golf; MY 2012-2015 VW Passat; and MY 2009-2015 Audi A3.

**The Iowa Subclass**

All persons or entities in the state of Iowa who owned and/or leased an "Affected Vehicle" as of September 18, 2015. Affected Vehicles include, without limitation, the diesel-powered: MY 2009-2015 VW Jetta; MY 2009-2015 VW Beetle; MY 2009-2015 VW Golf; MY 2012-2015 VW Passat; and MY 2009-2015 Audi A3.

**The Kansas Subclass**

All persons or entities in the state of Kansas who owned and/or leased an "Affected Vehicle" as of September 18, 2015.  Affected Vehicles include, without limitation, the diesel-powered: MY 2009-2015 VW Jetta; MY 2009-2015 VW Beetle; MY 2009-2015 VW Golf; MY 2012-2015 VW Passat; and MY 2009-2015 Audi A3.

**The Kentucky Subclass**

All persons or entities in the state of Kentucky who owned and/or leased an "Affected Vehicle" as of September 18, 2015.  Affected Vehicles include, without limitation, the diesel-powered: MY 2009-2015 VW Jetta; MY 2009-2015 VW Beetle; MY 2009-2015 VW Golf; MY 2012-2015 VW Passat; and MY 2009-2015 Audi A3.

**The Louisiana Subclass**

All persons or entities in the state of Louisiana who owned and/or leased an "Affected Vehicle" as of September 18, 2015.  Affected Vehicles include, without limitation, the diesel-powered: MY 2009-2015 VW Jetta; MY 2009-2015 VW Beetle; MY 2009-2015 VW Golf; MY 2012-2015 VW Passat; and MY 2009-2015 Audi A3.

-60-

**The Maine Subclass**

All persons or entities in the state of Maine who owned and/or leased an "Affected Vehicle" as of September 18, 2015.  Affected Vehicles include, without limitation, the diesel-powered: MY 2009-2015 VW Jetta; MY 2009-2015 VW Beetle; MY 2009-2015 VW Golf; MY 2012-2015 VW Passat; and MY 2009-2015 Audi A3.

**The Maryland Subclass**

All persons or entities in the state of Maryland who owned and/or leased an "Affected Vehicle" as of September 18, 2015.  Affected Vehicles include, without limitation, the diesel-powered: MY 2009-2015 VW Jetta; MY 2009-2015 VW Beetle; MY 2009-2015 VW Golf; MY 2012-2015 VW Passat; and MY 2009-2015 Audi A3.

**The Massachusetts Subclass**

All persons or entities in the state of Massachusetts who owned and/or leased an "Affected Vehicle" as of September 18, 2015.  Affected Vehicles include, without limitation, the diesel-powered: MY 2009-2015 VW Jetta; MY 2009-2015 VW Beetle; MY 2009-2015 VW Golf; MY 2012-2015 VW Passat; and MY 2009-2015 Audi A3.

**The Michigan Subclass**

All persons or entities in the state of Michigan who owned and/or leased an "Affected Vehicle" as of September 18, 2015.  Affected Vehicles include, without limitation, the diesel-powered: MY 2009-2015 VW Jetta; MY 2009-2015 VW Beetle; MY 2009-2015 VW Golf; MY 2012-2015 VW Passat; and MY 2009-2015 Audi A3.

**The Minnesota Subclass**

All persons or entities in the state of Minnesota who owned and/or leased an "Affected Vehicle" as of September 18, 2015.  Affected Vehicles include, without limitation, the diesel-powered: MY 2009-2015 VW Jetta; MY 2009-2015 VW Beetle; MY 2009-2015 VW Golf; MY 2012-2015 VW Passat; and MY 2009-2015 Audi A3.

-61-

**The Mississippi Subclass**

All persons or entities in the state of Mississippi who owned and/or leased an "Affected Vehicle" as of September 18, 2015. Affected Vehicles include, without limitation, the diesel-powered: MY 2009-2015 VW Jetta; MY 2009-2015 VW Beetle; MY 2009-2015 VW Golf; MY 2012-2015 VW Passat; and MY 2009-2015 Audi A3.

**The Missouri Subclass**

All persons or entities in the state of Missouri who owned and/or leased an "Affected Vehicle" as of September 18, 2015. Affected Vehicles include, without limitation, the diesel-powered: MY 2009-2015 VW Jetta; MY 2009-2015 VW Beetle; MY 2009-2015 VW Golf; MY 2012-2015 VW Passat; and MY 2009-2015 Audi A3.

**The Montana Subclass**

All persons or entities in the state of Montana who owned and/or leased an "Affected Vehicle" as of September 18, 2015. Affected Vehicles include, without limitation, the diesel-powered: MY 2009-2015 VW Jetta; MY 2009-2015 VW Beetle; MY 2009-2015 VW Golf; MY 2012-2015 VW Passat; and MY 2009-2015 Audi A3.

**The Nebraska Subclass**

All persons or entities in the state of Nebraska who owned and/or leased an "Affected Vehicle" as of September 18, 2015. Affected Vehicles include, without limitation, the diesel-powered: MY 2009-2015 VW Jetta; MY 2009-2015 VW Beetle; MY 2009-2015 VW Golf; MY 2012-2015 VW Passat; and MY 2009-2015 Audi A3.

**The Nevada Subclass**

All persons or entities in the state of Nevada who owned and/or leased an "Affected Vehicle" as of September 18, 2015. Affected Vehicles include, without limitation, the diesel-powered: MY 2009-2015 VW Jetta; MY 2009-2015 VW Beetle; MY 2009-2015 VW Golf; MY 2012-2015 VW Passat; and MY 2009-2015 Audi A3.

**The New Hampshire Subclass**

All persons or entities in the state of New Hampshire who owned and/or leased an "Affected Vehicle" as of September 18, 2015.  Affected Vehicles include, without limitation, the diesel-powered: MY 2009-2015 VW Jetta; MY 2009-2015 VW Beetle; MY 2009-2015 VW Golf; MY 2012-2015 VW Passat; and MY 2009-2015 Audi A3.

**The New Jersey Subclass**

All persons or entities in the state of New Jersey who owned and/or leased an "Affected Vehicle" as of September 18, 2015.  Affected Vehicles include, without limitation, the diesel-powered: MY 2009-2015 VW Jetta; MY 2009-2015 VW Beetle; MY 2009-2015 VW Golf; MY 2012-2015 VW Passat; and MY 2009-2015 Audi A3.

**The New Mexico Subclass**

All persons or entities in the state of New Mexico who owned and/or leased an "Affected Vehicle" as of September 18, 2015.  Affected Vehicles include, without limitation, the diesel-powered: MY 2009-2015 VW Jetta; MY 2009-2015 VW Beetle; MY 2009-2015 VW Golf; MY 2012-2015 VW Passat; and MY 2009-2015 Audi A3.

**The New York Subclass**

All persons or entities in the state of New York who owned and/or leased an "Affected Vehicle" as of September 18, 2015.  Affected Vehicles include, without limitation, the diesel-powered: MY 2009-2015 VW Jetta; MY 2009-2015 VW Beetle; MY 2009-2015 VW Golf; MY 2012-2015 VW Passat; and MY 2009-2015 Audi A3.

**The North Carolina Subclass**

All persons or entities in the state of North Carolina who owned and/or leased an "Affected Vehicle" as of September 18, 2015.  Affected Vehicles include, without limitation, the diesel-powered: MY 2009-2015 VW Jetta; MY 2009-2015 VW Beetle; MY 2009-2015 VW Golf; MY 2012-2015 VW Passat; and MY 2009-2015 Audi A3.

010549-11  816608 V1

**The North Dakota Subclass**

All persons or entities in the state of North Dakota who owned and/or leased an "Affected Vehicle" as of September 18, 2015. Affected Vehicles include, without limitation, the diesel-powered: MY 2009-2015 VW Jetta; MY 2009-2015 VW Beetle; MY 2009-2015 VW Golf; MY 2012-2015 VW Passat; and MY 2009-2015 Audi A3.

**The Ohio Subclass**

All persons or entities in the state of Ohio who owned and/or leased an "Affected Vehicle" as of September 18, 2015. Affected Vehicles include, without limitation, the diesel-powered: MY 2009-2015 VW Jetta; MY 2009-2015 VW Beetle; MY 2009-2015 VW Golf; MY 2012-2015 VW Passat; and MY 2009-2015 Audi A3.

**The Oklahoma Subclass**

All persons or entities in the state of Oklahoma who owned and/or leased an "Affected Vehicle" as of September 18, 2015. Affected Vehicles include, without limitation, the diesel-powered: MY 2009-2015 VW Jetta; MY 2009-2015 VW Beetle; MY 2009-2015 VW Golf; MY 2012-2015 VW Passat; and MY 2009-2015 Audi A3.

**The Oregon Subclass**

All persons or entities in the state of Oregon who owned and/or leased an "Affected Vehicle" as of September 18, 2015. Affected Vehicles include, without limitation, the diesel-powered: MY 2009-2015 VW Jetta; MY 2009-2015 VW Beetle; MY 2009-2015 VW Golf; MY 2012-2015 VW Passat; and MY 2009-2015 Audi A3.

**The Pennsylvania Subclass**

All persons or entities in the state of Pennsylvania who owned and/or leased an "Affected Vehicle" as of September 18, 2015. Affected Vehicles include, without limitation, the diesel-powered: MY 2009-2015 VW Jetta; MY 2009-2015 VW Beetle; MY 2009-2015 VW Golf; MY 2012-2015 VW Passat; and MY 2009-2015 Audi A3.

-64-

1

**The Rhode Island Subclass**

All persons or entities in the state of Rhode Island who owned and/or leased an "Affected Vehicle" as of September 18, 2015. Affected Vehicles include, without limitation, the diesel-powered: MY 2009-2015 VW Jetta; MY 2009-2015 VW Beetle; MY 2009-2015 VW Golf; MY 2012-2015 VW Passat; and MY 2009-2015 Audi A3.

**The South Carolina Subclass**

All persons or entities in the state of South Carolina who owned and/or leased an "Affected Vehicle" as of September 18, 2015. Affected Vehicles include, without limitation, the diesel-powered: MY 2009-2015 VW Jetta; MY 2009-2015 VW Beetle; MY 2009-2015 VW Golf; MY 2012-2015 VW Passat; and MY 2009-2015 Audi A3.

**The South Dakota Subclass**

All persons or entities in the state of South Dakota who owned and/or leased an "Affected Vehicle" as of September 18, 2015. Affected Vehicles include, without limitation, the diesel-powered: MY 2009-2015 VW Jetta; MY 2009-2015 VW Beetle; MY 2009-2015 VW Golf; MY 2012-2015 VW Passat; and MY 2009-2015 Audi A3.

**The Tennessee Subclass**

All persons or entities in the state of Tennessee who owned and/or leased an "Affected Vehicle" as of September 18, 2015. Affected Vehicles include, without limitation, the diesel-powered: MY 2009-2015 VW Jetta; MY 2009-2015 VW Beetle; MY 2009-2015 VW Golf; MY 2012-2015 VW Passat; and MY 2009-2015 Audi A3.

**The Texas Subclass**

All persons or entities in the state of Texas who owned and/or leased an "Affected Vehicle" as of September 18, 2015. Affected Vehicles include, without limitation, the diesel-powered: MY 2009-2015 VW Jetta; MY 2009-2015 VW Beetle; MY 2009-2015 VW Golf; MY 2012-2015 VW Passat; and MY 2009-2015 Audi A3.

-65-

1

### The Utah Subclass

All persons or entities in the state of Utah who owned and/or leased an "Affected Vehicle" as of September 18, 2015. Affected Vehicles include, without limitation, the diesel-powered: MY 2009-2015 VW Jetta; MY 2009-2015 VW Beetle; MY 2009-2015 VW Golf; MY 2012-2015 VW Passat; and MY 2009-2015 Audi A3.

### The Vermont Subclass

All persons or entities in the state of Vermont who owned and/or leased an "Affected Vehicle" as of September 18, 2015.  Affected Vehicles include, without limitation, the diesel-powered: MY 2009-2015 VW Jetta; MY 2009-2015 VW Beetle; MY 2009-2015 VW Golf; MY 2012-2015 VW Passat; and MY 2009-2015 Audi A3.

### The Virginia Subclass

All persons or entities in the state of Virginia who owned and/or leased an "Affected Vehicle" as of September 18, 2015.  Affected Vehicles include, without limitation, the diesel-powered: MY 2009-2015 VW Jetta; MY 2009-2015 VW Beetle; MY 2009-2015 VW Golf; MY 2012-2015 VW Passat; and MY 2009-2015 Audi A3.

### The Washington Subclass

All persons or entities in the state of Washington who owned and/or leased an "Affected Vehicle" as of September 18, 2015.  Affected Vehicles include, without limitation, the diesel-powered: MY 2009-2015 VW Jetta; MY 2009-2015 VW Beetle; MY 2009-2015 VW Golf; MY 2012-2015 VW Passat; and MY 2009-2015 Audi A3.

### The West Virginia Subclass

All persons or entities in the state of West Virginia who owned and/or leased an "Affected Vehicle" as of September 18, 2015.  Affected Vehicles include, without limitation, the diesel-powered: MY 2009-2015 VW Jetta; MY 2009-2015 VW Beetle; MY 2009-2015 VW Golf; MY 2012-2015 VW Passat; and MY 2009-2015 Audi A3.

-66-

**The Wisconsin Subclass**

All persons or entities in the state of Wisconsin who owned and/or leased an "Affected Vehicle" as of September 18, 2015.  Affected Vehicles include, without limitation, the diesel-powered: MY 2009-2015 VW Jetta; MY 2009-2015 VW Beetle; MY 2009-2015 VW Golf; MY 2012-2015 VW Passat; and MY 2009-2015 Audi A3.

**The Wyoming Subclass**

All persons or entities in the state of Wyoming who owned and/or leased an "Affected Vehicle" as of September 18, 2015.  Affected Vehicles include, without limitation, the diesel-powered: MY 2009-2015 VW Jetta; MY 2009-2015 VW Beetle; MY 2009-2015 VW Golf; MY 2012-2015 VW Passat; and MY 2009-2015 Audi A3.

**The District of Columbia Subclass**

All persons or entities in the District of Columbia who owned and/or leased an "Affected Vehicle" as of September 18, 2015.  Affected Vehicles include, without limitation, the diesel-powered: MY 2009-2015 VW Jetta; MY 2009-2015 VW Beetle; MY 2009-2015 VW Golf; MY 2012-2015 VW Passat; and MY 2009-2015 Audi A3.

130.   Excluded from the Class are individuals who have personal injury claims resulting from the installation of the defeat device in the CleanDiesel engine system. Also excluded from the Class are Volkswagen and its subsidiaries and affiliates; all persons who make a timely election to be excluded from the Class; governmental entities; and the judge to whom this case is assigned and his/her immediate family. Plaintiffs reserve the right to revise the Class definition based upon information learned through discovery.

131.   Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claim.

-67-

1    132.   This action has been brought and may be properly maintained on behalf

2    of each of the Classes proposed herein under Federal Rule of Civil Procedure 23.

3    133.   Numerosity.  Federal Rule of Civil Procedure 23(a)(1):  The members of

4    the Classes are so numerous and geographically dispersed that individual joinder of all

5    Class members is impracticable.  While Plaintiffs are informed and believe that there

6    are not less than hundreds of thousands of members of the Class, and at least hundreds

7    of members of each subclass, the precise number of Class and Subclass members is

8    unknown to Plaintiffs, but may be ascertained from Volkswagen's books and records.

9    Class members may be notified of the pendency of this action by recognized, Court-

10   approved notice dissemination methods, which may include U.S. mail, electronic mail,

11   Internet postings, and/or published notice.

12   134.   Commonality and Predominance:  Federal Rule of Civil Procedure

13   23(a)(2) and 23(b)(3):  This action involves common questions of law and fact, which

14   predominate over any questions affecting individual Class members, including,

15   without limitation:

16        a)    Whether Volkswagen engaged in the conduct alleged herein;

17        b)    Whether Volkswagen designed, advertised, marketed, distributed,

18              leased, sold, or otherwise placed Affected Vehicles into the stream

19              of commerce in the United States;

20        c)    Whether the CleanDiesel engine system in the Affected Vehicles

21              contains a defect in that it does not comply with U.S. EPA

22              requirements and federal and state emissions regulations;

23        d)    Whether the CleanDiesel engine systems in Affected Vehicles can

24              be made to comply with EPA and state standards without

25              substantially degrading the performance and/or efficiency of the

26              Affected Vehicles;

27

28

-68-

010549-11  816608 V1

e)  Whether Volkswagen knew about the defeat device and, if so, how long Volkswagen has known;

f)  Whether Volkswagen designed, manufactured, marketed, and distributed Affected Vehicles with a defeat device;

g)  Whether Volkswagen's conduct violates consumer protection statutes, false advertising laws, sales contracts, warranty laws, and other laws as asserted herein;

h)  Whether Plaintiffs and the other Class members overpaid for their Affected Vehicles;

i)  Whether Plaintiffs and the other Class members are entitled to equitable relief, including, but not limited to, restitution or injunctive relief; and

j)  Whether Plaintiffs and the other Class members are entitled to damages and other monetary relief and, if so, in what amount.

135.  <u>Typicality</u>:  Federal Rule of Civil Procedure 23(a)(3): Plaintiffs' claims are typical of the other Class members' claims because, among other things, all Class members were comparably injured through Volkswagen's wrongful conduct as described above.

136.  <u>Adequacy</u>:  Federal Rule of Civil Procedure 23(a)(4):  Plaintiffs are adequate Class representative because their interests do not conflict with the interests of the other members of the Classes they seek to represent; Plaintiffs have retained counsel competent and experienced in complex class action litigation; and Plaintiffs intend to prosecute this action vigorously.  The Classes' interests will be fairly and adequately protected by Plaintiffs and their counsel.

137.  <u>Declaratory and Injunctive Relief</u>:  Federal Rule of Civil Procedure 23(b)(2):  Volkswagen has acted or refused to act on grounds generally applicable to Plaintiffs and the other members of the Classes, thereby making appropriate final

-69-

injunctive relief and declaratory relief, as described below, with respect to the Class as a whole.

138.   Superiority:  Federal Rule of Civil Procedure 23(b)(3): A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action.  The damages or other financial detriment suffered by Plaintiffs and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Volkswagen, so it would be impracticable for the members of the Classes to individually seek redress for Volkswagen's wrongful conduct.  Even if Class members could afford individual litigation, the court system could not.  Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system.  By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

# VIII.  VIOLATIONS ALLEGED

**A.   Claims Brought on Behalf of the Nationwide Class and the Virginia Subclass Under Virginia Law**

## COUNT I
## FRAUD BY CONCEALMENT UNDER VIRGINIA LAW

139.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

140.   This claim is brought on behalf of the Nationwide Class and the Virginia Subclass.

141.   Volkswagen intentionally concealed and suppressed material facts concerning the quality of the Affected Vehicles.  As alleged in this Complaint, notwithstanding references in the very model names of the subject vehicles as "Clean Diesel," or to their engines as "TDI Clean Diesel" engines, Volkswagen engaged in a

-70-

secret scheme to evade federal and state vehicle emissions standards by installing software designed to conceal its vehicles' emissions of the pollutant nitrogen oxide, which contributes to the creation of ozone and smog.  The software installed on the vehicles at issue was designed nefariously to kick-in during emissions certification testing, such that the vehicles would show far lower emissions than when actually operating on the road.  The result was what Volkswagen intended: vehicles passed emissions certifications by way of deliberately induced false readings.  Reportedly, Volkswagen's deliberate, secret scheme resulted in noxious emissions from these vehicles at up to 40 times applicable standards.

142.   Plaintiffs and Class members reasonably relied upon Volkswagen's false representations.  They had no way of knowing that Volkswagen's representations were false and gravely misleading.  As alleged herein, Volkswagen employed extremely sophisticated methods of deception.  Plaintiffs and Class members did not, and could not, unravel Volkswagen's deception on their own.

143.   Volkswagen concealed and suppressed material facts concerning what is evidently the true culture of Volkswagen – one characterized by an emphasis on profits and sales above compliance with federal and state clean air laws, and emissions regulations that are meant to protect the public and consumers.  It also emphasized profits and sales over the trust that Plaintiffs and Class members placed in its representations.  As one customer, Priya Shah, put it in a quotation cited by the *Los Angeles Times* in a September 18, 2015 article, "It's just a blatant disregard and intentional manipulation of the system.  That's just a whole other level of not only lying to the government, but also lying to your consumer.  People buy diesel cars from Volkswagen because they feel they are clean diesel cars."  In the words of Ms. Shah, which no doubt reflect the sentiments of all other CleanDiesel vehicle buyers, "I don't want to be spewing noxious gases into the environment."

-71-

144.   Necessarily, Volkswagen also took steps to ensure that its employees did not reveal the details of its scheme to regulators or consumers, including Plaintiffs and Class members.  Volkswagen did so in order to boost the reputations of its vehicles and to falsely assure purchasers and lessors of its vehicles, including previously owned vehicles, that Volkswagen is a reputable manufacturer that complies with applicable law, including federal and state clean air laws and emissions regulations, and that its vehicles likewise comply with applicable law and regulations.  Volkswagen's false representations were material to consumers, both because they concerned the quality of the affected vehicles, including their compliance with applicable federal and state law and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles.  As Volkswagen well knew, its customers, including Plaintiffs and Class members, highly valued that the vehicles they were purchasing or leasing were *clean* diesel cars, and they paid accordingly.

145.   Volkswagen had a duty to disclose its emissions scheme because knowledge of the scheme and its details were known and/or accessible only to Volkswagen, because Volkswagen had exclusive knowledge as to implementation and maintenance of its scheme, and because Volkswagen knew the facts were not known to or reasonably discoverable by Plaintiffs or Class members.  Volkswagen also had a duty to disclose because it made general affirmative representations about the qualities of its vehicles with respect to emissions standards, starting with references to them as *clean* diesel cars, or cars with *clean* diesel engines, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding its emissions scheme, the actual emissions of its vehicles, its actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and its actual practices with respect to the vehicles at issue.  Having volunteered to provide information to Plaintiffs, Volkswagen had the duty to disclose not just the

-72-

partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiffs and Class members. Whether a manufacturer's products comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certification testing their vehicles must pass. Volkswagen represented to Plaintiffs and Class members that they were purchasing *clean* diesel vehicles, and certification testing appeared to confirm this – except that, secretly, Volkswagen had subverted the testing process thoroughly.

146. Volkswagen actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Volkswagen money, and it did so at the expense of Plaintiffs and Class members.

147. On information and belief, Volkswagen has still not made full and adequate disclosures, and continues to defraud Plaintiffs and Class members by concealing material information regarding the emission qualities of its vehicles and its emissions scheme.

148. Plaintiffs and Class members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly "clean" diesel cars manufactured by Volkswagen, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them. Plaintiffs' and Class Members' actions were justified. Volkswagen was in exclusive control of the material facts, and such facts were not known to the public, Plaintiffs, or Class members.

-73-

010549-11 816608 V1

149.   Because of the concealment and/or suppression of the facts, Plaintiffs and Class members have sustained damage because they own vehicles that are diminished in value as a result of Volkswagen's concealment of the true quality and quantity of those vehicles' emissions and Volkswagen's failure to timely disclose the actual emission qualities and quantities of hundreds of thousands of Volkswagen- and Audi-branded vehicles and the serious issues engendered by Volkswagen's corporate policies.  Had Plaintiffs and Class members been aware of Volkswagen's emissions scheme, and the company's callous disregard for compliance with applicable federal and state law and regulations, Plaintiffs and Class members who purchased or leased new or previously owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

150.   The value of Plaintiffs' and Class Members' vehicles has diminished as a result of Volkswagen's fraudulent concealment of its emissions scheme, which has greatly tarnished the Volkswagen and Audi brand names attached to Plaintiffs' and Class members' vehicles and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.  In addition, Class members are entitled to damages for loss of use, costs of additional fuel, costs of unused warranties, and other damages to be proved at trial.

151.   Accordingly, Volkswagen is liable to Plaintiffs and Class members for damages in an amount to be proven at trial.

152.   Volkswagen's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and Class members' rights and the representations that Volkswagen made to them, in order to enrich Volkswagen.  To the extent permitted under applicable law, Volkswagen's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

-74-

010549-11  816608 V1

153.   Plaintiffs plead this count pursuant to the law of Virginia, where Volkswagen has its United States headquarters, on behalf of all members of the Nationwide Class.  As necessary, and in the alternative, Plaintiffs stand ready to plead sub-classes, based on the domicile at pertinent times of members of the Nationwide Class, to allege fraudulent concealment under the laws of states other than Virginia.

## COUNT II
## VIOLATIONS OF THE VIRGINIA CONSUMER PROTECTION ACT
### (Va. Code Ann. §§ 59.1-196, *et seq.*)

154.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

155.   This claim is brought on behalf of the Nationwide Class and the Virginia Subclass.

156.   The Virginia Consumer Protection Act prohibits "…(5) misrepresenting that goods or services have certain quantities, characteristics, ingredients, uses, or benefits; (6) misrepresenting that goods or services are of a particular standard, quality, grade, style, or model; … (8) advertising goods or services with intent not to sell them as advertised …; [and] (14) using any other deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction[.]"  VA. CODE ANN. § 59.1-200(A).

157.   Defendants are each a "person" as defined by VA. CODE ANN. § 59.1-198. The transactions between Plaintiffs and the other Class members on one hand and Volkswagen on the other, leading to the purchase or lease of the Affected Vehicles by Plaintiffs and the other Class members, are "consumer transactions" as defined by VA. CODE ANN. § 59.1-198, because the Affected Vehicles were purchased or leased primarily for personal, family or household purposes.

158.   In the course of Volkswagen's business, it willfully failed to disclose and actively concealed the defeat device in Affected Vehicles as described above. Accordingly, Volkswagen engaged in acts and practices violating VA. CODE ANN.

-75-

§ 59.1-200(A), including representing that Affected Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that Affected Vehicles are of a particular standard and quality when they are not; advertising Affected Vehicles with the intent not to sell them as advertised; and otherwise engaging in conduct likely to deceive.

159. Volkswagen's actions as set forth above occurred in the conduct of trade or commerce.

160. Volkswagen's conduct proximately caused injuries to Plaintiffs and the other Class members.

161. Plaintiffs and the other Class members were injured as a result of Volkswagen's conduct in that Plaintiffs and the other Class members overpaid for their Affected Vehicles and did not receive the benefit of their bargain, and their Affected Vehicles have suffered a diminution in value. These injuries are the direct and natural consequence of Volkswagen's misrepresentations and omissions.

162. Volkswagen actively and willfully concealed and/or suppressed the material facts regarding the defective and non-EPA compliant CleanDiesel engine system, the defeat device and the Affected Vehicles, in whole or in part, with the intent to deceive and mislead Plaintiffs and the other Class members and to induce Plaintiffs and the other Class members to purchase or lease Affected Vehicles at a higher price, which did not match the Affected Vehicles' true value. Plaintiffs and the other Class members therefore seek treble damages.

### COUNT III
### BREACH OF CONTRACT
### (Based on Virginia Law)

163. Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

164. Plaintiffs bring this Count on behalf new or certified pre-owned purchasers in the Nationwide Class and Virginia Subclass.

-76-

165.   Volkswagen's misrepresentations and omissions alleged herein, including Volkswagen's failure to disclose the CleanDiesel engine system was not EPA-compliant and the existence of the defeat device as alleged herein, caused Plaintiffs and the other Class members to make their purchases or leases of their Affected Vehicles.  Absent those misrepresentations and omissions, Plaintiffs and the other Class members would not have purchased or leased these Affected Vehicles, would not have purchased or leased these Affected Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain non EPA-compliant engine systems and a defeat device.  Accordingly, Plaintiffs and the other Class members overpaid for their Affected Vehicles and did not receive the benefit of their bargain.

166.   Each and every sale or lease of an Affected Vehicle by an authorized Volkswagen dealer constitutes a contract between Volkswagen and the purchaser or lessee.  Volkswagen breached these contracts by selling or leasing Plaintiffs and the other Class members defective Affected Vehicles and by misrepresenting or failing to disclose the CleanDiesel engine system was not EPA-compliant and failing to disclose the existence of the defeat device, including information known to Volkswagen rendering each Affected Vehicle illegal under federal and state environmental laws, and thus less valuable, than vehicles not equipped with CleanDiesel engine systems.

167.   As a direct and proximate result of Volkswagen's breach of contract, Plaintiffs and the Class have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

**B.     Claims on Behalf of the Alabama Subclass**

## COUNT I
## VIOLATION OF ALABAMA DECEPTIVE TRADE PRACTICES ACT
### (ALA. CODE § 8-19-1, *et seq.*)

168.   Plaintiff Arthur Scharein ("Plaintiff," for purposes of all Alabama Subclass Counts) incorporates by reference all preceding allegations as though fully set forth herein.

169.   Plaintiff intends to assert a claim under the Alabama Deceptive Trade Practices Act ("Alabama DTPA") which proscribes:  "(5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities that they do not have," "(7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another," and "(27) Engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce."  ALA. CODE § 8-19-5.  Plaintiff will make a demand in satisfaction of ALA. CODE § 8-19-10(e), and may amend this Complaint to assert claims under the DTPA once the required 15 days have elapsed.  This paragraph is included for purposes of notice only and is not intended to actually assert a claim under the DTPA.

## COUNT II
## FRAUD BY CONCEALMENT

170.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

171.   This claim is brought on behalf of the Alabama Subclass.

172.   Volkswagen intentionally concealed and suppressed material facts concerning the quality of the Affected Vehicles.  As alleged in this Complaint, notwithstanding references in the very model names of the subject vehicles as "Clean Diesel," or to their engines as "TDI Clean Diesel" engines, Volkswagen engaged in a secret scheme to evade federal and state vehicle emissions standards by installing software designed to conceal its vehicles' emissions of the pollutant nitrogen oxide,

-78-

which contributes to the creation of ozone and smog.  The software installed on the vehicles at issue was designed nefariously to kick-in during emissions certification testing, such that the vehicles would show far lower emissions than when actually operating on the road.  The result was what Volkswagen intended: vehicles passed emissions certifications by way of deliberately induced false readings.  Reportedly, Volkswagen's deliberate, secret scheme resulted in noxious emissions from these vehicles at up to 40 times applicable standards.

173.   Plaintiffs and Class members reasonably relied upon Volkswagen's false representations.  They had no way of knowing that Volkswagen's representations were false and gravely misleading.  As alleged herein, Volkswagen employed extremely sophisticated methods of deception.  Plaintiffs and Class members did not, and could not, unravel Volkswagen's deception on their own.

174.   Volkswagen concealed and suppressed material facts concerning what is evidently the true culture of Volkswagen—one characterized by an emphasis on profits and sales above compliance with federal and state clean air laws, and emissions regulations that are meant to protect the public and consumers.  It also emphasized profits and sales over the trust that Plaintiffs and Class members placed in its representations.  As one customer, Priya Shah, put it in a quotation cited by the *Los Angeles Times* in a September 18, 2015 article, "It's just a blatant disregard and intentional manipulation of the system.  That's just a whole other level of not only lying to the government, but also lying to your consumer.  People buy diesel cars from Volkswagen because they feel they are clean diesel cars."  In the words of Ms. Shah, which no doubt reflect the sentiments of all other CleanDiesel vehicle buyers, "I don't want to be spewing noxious gases into the environment."

175.   Necessarily, Volkswagen also took steps to ensure that its employees did not reveal the details of its scheme to regulators or consumers, including Plaintiffs and Class members.  Volkswagen did so in order to boost the reputations of its vehicles

-79-

and to falsely assure purchasers and lessors of its vehicles, including previously owned vehicles, that Volkswagen is a reputable manufacturer that complies with applicable law, including federal and state clean air laws and emissions regulations, and that its vehicles likewise comply with applicable law and regulations. Volkswagen's false representations were material to consumers, both because they concerned the quality of the Affected Vehicles, including their compliance with applicable federal and state laws and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles. As Volkswagen well knew, its customers, including Plaintiffs and Class members, highly valued that the vehicles they were purchasing or leasing were *clean* diesel cars, and they paid accordingly.

176.   Volkswagen had a duty to disclose its emissions scheme because knowledge of the scheme and its details were known and/or accessible only to Volkswagen, because Volkswagen had exclusive knowledge as to implementation and maintenance of its scheme, and because Volkswagen knew the facts were not known to or reasonably discoverable by Plaintiffs or Class members. Volkswagen also had a duty to disclose because it made general affirmative representations about the qualities of its vehicles with respect to emissions standards, starting with references to them as *clean* diesel cars, or cars with *clean* diesel engines, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding its emissions scheme, the actual emissions of its vehicles, its actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and its actual practices with respect to the vehicles at issue. Having volunteered to provide information to Plaintiffs, Volkswagen had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiffs and Class members. Whether a manufacturer's products comply with

-80-

federal and state clean air laws and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certification testing their vehicles must pass.  Volkswagen represented to Plaintiffs and Class members that they were purchasing *clean* diesel vehicles, and certification testing appeared to confirm this—except that, secretly, Volkswagen had subverted the testing process thoroughly.

177.   Volkswagen actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Volkswagen money, and it did so at the expense of Plaintiffs and Class members.

178.   On information and belief, Volkswagen has still not made full and adequate disclosures, and continues to defraud Plaintiffs and Class members by concealing material information regarding the emissions qualities of its vehicles and its emissions scheme.

179.   Plaintiffs and Class members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly "clean" diesel cars manufactured by Volkswagen, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them.  Plaintiffs' and Class Members' actions were justified.  Volkswagen was in exclusive control of the material facts, and such facts were not known to the public, Plaintiffs, or Class members.

180.   Because of the concealment and/or suppression of the facts, Plaintiffs and Class members have sustained damage because they own vehicles that are diminished in value as a result of Volkswagen's concealment of the true quality and quantity of

-81-

those vehicles' emissions and Volkswagen's failure to timely disclose the actual emissions qualities and quantities of hundreds of thousands of Volkswagen- and Audi-branded vehicles and the serious issues engendered by Volkswagen's corporate policies.  Had Plaintiffs and Class members been aware of Volkswagen's emissions scheme, and the company's callous disregard for compliance with applicable federal and state laws and regulations, Plaintiffs and Class members who purchased or leased new or previously owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

181.   The value of Plaintiffs' and Class members' vehicles has diminished as a result of Volkswagen's fraudulent concealment of its emissions scheme, which has greatly tarnished the Volkswagen and Audi brand names attached to Plaintiffs' and Class members' vehicles and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.  In addition, Class members are entitled to damages for loss of use, costs of additional fuel, costs of unused warranties, and other damages to be proved at trial.

182.   Accordingly, Volkswagen is liable to Plaintiffs and Class members for damages in an amount to be proven at trial.

183.   Volkswagen's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and Class members' rights and the representations that Volkswagen made to them, in order to enrich Volkswagen.  To the extent permitted under applicable law, Volkswagen's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

-82-

**COUNT III**
**BREACH OF CONTRACT**
**(BASED ON ALABAMA LAW)**

184.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

185.   Plaintiff brings this Count on behalf of new vehicle or certified pre-owned vehicle purchasers in the Alabama Subclass.

186.   Volkswagen's misrepresentations and omissions alleged herein, including Volkswagen's failure to disclose the existence of the CleanDiesel engine system's defect and/or defective design as alleged herein, caused Plaintiff and the other Alabama Subclass members to make their purchases or leases of their Affected Vehicles.  Absent those misrepresentations and omissions, Plaintiff and the other Alabama Subclass members would not have purchased or leased these Affected Vehicles, would not have purchased or leased these Affected Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain the CleanDiesel engine system and which were not marketed as including such a system.  Accordingly, Plaintiff and the other Alabama Subclass members overpaid for their Affected Vehicles and did not receive the benefit of their bargain.

187.   Each and every sale or lease of an Affected Vehicle by an authorized Volkswagen dealer constitutes a contract between Volkswagen and the purchaser or lessee.  Volkswagen breached these contracts by selling or leasing Plaintiff and the other Alabama Subclass members defective Affected Vehicles and by misrepresenting or failing to disclose the existence of the CleanDiesel engine system's defect and/or defective design, including information known to Volkswagen rendering each Affected Vehicle non EPA-compliant, and thus less valuable, than vehicles not equipped with a CleanDiesel engine system.

-83-

188.   As a direct and proximate result of Volkswagen's breach of contract, Plaintiff and the Alabama Subclass have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## C.   Claims on Behalf of the Alaska Subclass

### COUNT I
### VIOLATION OF THE ALASKA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION ACT
### (ALASKA STAT. ANN. § 45.50.471, *et seq.*)

189.   Plaintiff Michael Bozine ("Plaintiff," for purposes of all Alaska Subclass Counts) incorporates by reference all preceding allegations as though fully set forth herein.

190.   Plaintiff intends to assert a claim under the Alaska Unfair Trade Practices And Consumer Protection Act ("Alaska CPA") which proscribes unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce unlawful, including:  "(4) representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have;" "(6) representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;" "(8) advertising goods or services with intent not to sell them as advertised;" or  "(12) using or employing deception, fraud, false pretense, false promise, misrepresentation, or knowingly concealing, suppressing, or omitting a material fact with intent that others rely upon the concealment, suppression or omission in connection with the sale or advertisement of goods or services whether or not a person has in fact been misled, deceived or damaged."  ALASKA STAT. ANN. § 45.50.471.  Plaintiffs will make a demand in satisfaction of ALASKA STAT. § 45.50.535, and may amend this Complaint to assert claims under the CPA once the

-84-

required notice period has elapsed.  This paragraph is included for purposes of notice only and is not intended to actually assert a claim under the CPA.

## COUNT II
## FRAUD BY CONCEALMENT

191.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

192.   This claim is brought on behalf of the Alaska Subclass.

193.   Volkswagen intentionally concealed and suppressed material facts concerning the quality of the Affected Vehicles.  As alleged in this Complaint, notwithstanding references in the very model names of the subject vehicles as "Clean Diesel," or to their engines as "TDI Clean Diesel" engines, Volkswagen engaged in a secret scheme to evade federal and state vehicle emissions standards by installing software designed to conceal its vehicles' emissions of the pollutant nitrogen oxide, which contributes to the creation of ozone and smog.  The software installed on the vehicles at issue was designed nefariously to kick-in during emissions certification testing, such that the vehicles would show far lower emissions than when actually operating on the road.  The result was what Volkswagen intended: vehicles passed emissions certifications by way of deliberately induced false readings.  Reportedly, Volkswagen's deliberate, secret scheme resulted in noxious emissions from these vehicles at up to 40 times applicable standards.

194.   Plaintiffs and Class members reasonably relied upon Volkswagen's false representations.  They had no way of knowing that Volkswagen's representations were false and gravely misleading.  As alleged herein, Volkswagen employed extremely sophisticated methods of deception.  Plaintiffs and Class members did not, and could not, unravel Volkswagen's deception on their own.

195.   Volkswagen concealed and suppressed material facts concerning what is evidently the true culture of Volkswagen—one characterized by an emphasis on profits and sales above compliance with federal and state clean air laws, and emissions

-85-

regulations that are meant to protect the public and consumers. It also emphasized profits and sales over the trust that Plaintiffs and Class members placed in its representations. As one customer, Priya Shah, put it in a quotation cited by the *Los Angeles Times* in a September 18, 2015 article, "It's just a blatant disregard and intentional manipulation of the system. That's just a whole other level of not only lying to the government, but also lying to your consumer. People buy diesel cars from Volkswagen because they feel they are clean diesel cars." In the words of Ms. Shah, which no doubt reflect the sentiments of all other CleanDiesel vehicle buyers, "I don't want to be spewing noxious gases into the environment."

196.   Necessarily, Volkswagen also took steps to ensure that its employees did not reveal the details of its scheme to regulators or consumers, including Plaintiffs and Class members. Volkswagen did so in order to boost the reputations of its vehicles and to falsely assure purchasers and lessors of its vehicles, including previously owned vehicles, that Volkswagen is a reputable manufacturer that complies with applicable law, including federal and state clean air laws and emissions regulations, and that its vehicles likewise comply with applicable law and regulations. Volkswagen's false representations were material to consumers, both because they concerned the quality of the Affected Vehicles, including their compliance with applicable federal and state laws and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles. As Volkswagen well knew, its customers, including Plaintiffs and Class members, highly valued that the vehicles they were purchasing or leasing were *clean* diesel cars, and they paid accordingly.

197.   Volkswagen had a duty to disclose its emissions scheme because knowledge of the scheme and its details were known and/or accessible only to Volkswagen, because Volkswagen had exclusive knowledge as to implementation and maintenance of its scheme, and because Volkswagen knew the facts were not known

-86-

1    to or reasonably discoverable by Plaintiffs or Class members.  Volkswagen also had a

2    duty to disclose because it made general affirmative representations about the qualities

3    of its vehicles with respect to emissions standards, starting with references to them as

4    *clean* diesel cars, or cars with *clean* diesel engines, which were misleading, deceptive,

5    and incomplete without the disclosure of the additional facts set forth above regarding

6    its emissions scheme, the actual emissions of its vehicles, its actual philosophy with

7    respect to compliance with federal and state clean air laws and emissions regulations,

8    and its actual practices with respect to the vehicles at issue.  Having volunteered to

9    provide information to Plaintiffs, Volkswagen had the duty to disclose not just the

10   partial truth, but the entire truth.  These omitted and concealed facts were material

11   because they directly impact the value of the Affected Vehicles purchased or leased by

12   Plaintiffs and Class members.  Whether a manufacturer's products comply with

13   federal and state clean air laws and emissions regulations, and whether that

14   manufacturer tells the truth with respect to such compliance or non-compliance, are

15   material concerns to a consumer, including with respect to the emissions certification

16   testing their vehicles must pass.  Volkswagen represented to Plaintiffs and Class

17   members that they were purchasing *clean* diesel vehicles, and certification testing

18   appeared to confirm this—except that, secretly, Volkswagen had subverted the testing

19   process thoroughly.

20         198.   Volkswagen actively concealed and/or suppressed these material facts, in

21   whole or in part, to pad and protect its profits and to avoid the perception that its

22   vehicles did not or could not comply with federal and state laws governing clean air

23   and emissions, which perception would hurt the brand's image and cost Volkswagen

24   money, and it did so at the expense of Plaintiffs and Class members.

25         199.   On information and belief, Volkswagen has still not made full and

26   adequate disclosures, and continues to defraud Plaintiffs and Class members by

27

28

-87-

concealing material information regarding the emissions qualities of its vehicles and its emissions scheme.

200.   Plaintiffs and Class members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly "clean" diesel cars manufactured by Volkswagen, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them.  Plaintiffs' and Class Members' actions were justified.  Volkswagen was in exclusive control of the material facts, and such facts were not known to the public, Plaintiffs, or Class members.

201.   Because of the concealment and/or suppression of the facts, Plaintiffs and Class members have sustained damage because they own vehicles that are diminished in value as a result of Volkswagen's concealment of the true quality and quantity of those vehicles' emissions and Volkswagen's failure to timely disclose the actual emissions qualities and quantities of hundreds of thousands of Volkswagen- and Audi-branded vehicles and the serious issues engendered by Volkswagen's corporate policies.  Had Plaintiffs and Class members been aware of Volkswagen's emissions scheme, and the company's callous disregard for compliance with applicable federal and state laws and regulations, Plaintiffs and Class members who purchased or leased new or previously owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

202.   The value of Plaintiffs' and Class members' vehicles has diminished as a result of Volkswagen's fraudulent concealment of its emissions scheme, which has greatly tarnished the Volkswagen and Audi brand names attached to Plaintiffs' and Class members' vehicles and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.  In addition, Class members are entitled to damages for loss of

-88-

use, costs of additional fuel, costs of unused warranties, and other damages to be proved at trial.

203.   Accordingly, Volkswagen is liable to Plaintiffs and Class members for damages in an amount to be proven at trial.

204.   Volkswagen's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and Class members' rights and the representations that Volkswagen made to them, in order to enrich Volkswagen.  To the extent permitted under applicable law, Volkswagen's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT III
## BREACH OF CONTRACT
## (BASED ON ALASKA LAW)

205.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

206.   Plaintiff brings this Count on behalf of new vehicle or certified pre-owned vehicle purchasers in the Alaska Subclass.

207.   Volkswagen's misrepresentations and omissions alleged herein, including Volkswagen's failure to disclose the existence of the CleanDiesel engine system's defect and/or defective design as alleged herein, caused Plaintiff and the other Alaska Subclass members to make their purchases or leases of their Affected Vehicles. Absent those misrepresentations and omissions, Plaintiff and the other Alaska Subclass members would not have purchased or leased these Affected Vehicles, would not have purchased or leased these Affected Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain the CleanDiesel engine system and which were not marketed as including such a system.  Accordingly, Plaintiff and the other Alaska Subclass members overpaid for their Affected Vehicles and did not receive the benefit of their bargain.

-89-

208.   Each and every sale or lease of an Affected Vehicle by an authorized Volkswagen dealer constitutes a contract between Volkswagen and the purchaser or lessee.  Volkswagen breached these contracts by selling or leasing Plaintiff and the other Alaska Subclass members defective Affected Vehicles and by misrepresenting or failing to disclose the existence of the CleanDiesel engine system's defect and/or defective design, including information known to Volkswagen rendering each Affected Vehicle non EPA-compliant, and thus less valuable, than vehicles not equipped with a CleanDiesel engine system.

209.   As a direct and proximate result of Volkswagen's breach of contract, Plaintiff and the Alaska Subclass have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

**D.     Claims Brought on Behalf of the Arizona Subclass**

**COUNT I**
**VIOLATIONS OF THE CONSUMER FRAUD ACT**
**(ARIZ. REV. STAT. §§ 44-1521, *et seq.*)**

210.   Plaintiff Clifford Broussard ("Plaintiff," for purposes of all Arizona Subclass Counts) incorporates by reference all preceding allegations as though fully set forth herein.

211.   Plaintiff brings this Count on behalf of the Arizona Subclass.

212.   Plaintiff and Volkswagen are each "persons" as defined by ARIZ. REV. STAT. § 44-1521(6).  The Affected Vehicles are "merchandise" as defined by ARIZ. REV. STAT. § 44-1521(5).

213.   The Arizona Consumer Fraud Act proscribes "[t]he act, use or employment by any person of any deception, deceptive act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise whether or

-90-

1     not any person has in fact been misled, deceived or damaged thereby."  ARIZ. REV.

2     STAT. § 44-1522(A).

3        214.   By failing to disclose and actively concealing that the CleanDiesel engine

4     systems were not EPA-compliant and used a "defeat device" in the Affected Vehicles,

5     Volkswagen engaged in deceptive business practices prohibited by the Arizona

6     Consumer Fraud Act, ARIZ. REV. STAT. § 44-1522(A), including (1) representing that

7     Affected Vehicles have characteristics, uses, benefits, and qualities which they do not

8     have, (2) representing that Affected Vehicles are of a particular standard, quality, and

9     grade when they are not, (3) advertising Affected Vehicles with the intent not to sell

10    them as advertised, and (4) engaging in acts or practices which are otherwise unfair,

11    misleading, false, or deceptive to the consumer.

12       215.   As alleged above, Volkswagen made numerous material statements about

13    the benefits and characteristics of the CleanDiesel system that were either false or

14    misleading.  Each of these statements contributed to the deceptive context of

15    Volkswagen's unlawful advertising and representations as a whole.

16       216.   Volkswagen knew that the CleanDiesel engine systems in the Affected

17    Vehicles were defectively designed or manufactured, did not comply with EPA

18    regulations, used a "defeat device," and were not suitable for their intended use.

19    Volkswagen nevertheless failed to warn Plaintiff about these defects despite having a

20    duty to do so.

21       217.   Volkswagen owed Plaintiff a duty to disclose the defective nature of the

22    CleanDiesel engine system in the Affected Vehicles, because Volkswagen:

23            i)   Possessed exclusive knowledge of the defects rendering the

24                  Affected Vehicles illegal under EPA regulations;

25            ii)  Intentionally concealed the defects associated with CleanDiesel

26                  engine systems through its deceptive marketing campaigns and use

27

28

of the "defeat device" that it designed to hide the defects in the
CleanDiesel engine system; and/or

    iii)    Made incomplete representations about the characteristics and
performance of the CleanDiesel engine system generally, while
purposefully withholding material facts from Plaintiff that
contradicted these representations.

218.   Volkswagen's unfair or deceptive acts or practices were likely to and did
in fact deceive reasonable consumers, including Plaintiff, about the true performance
and characteristics of the CleanDiesel engine system in Affected Vehicles.

219.   As a result of its violations of the Arizona Consumer Fraud Act detailed
above, Volkswagen caused actual damage to Plaintiff and, if not stopped, will
continue to harm Plaintiff.  Plaintiff currently owns or leases, or within the class
period has owned or leased, an Affected Vehicle that is defective.  Defects associated
with the CleanDiesel engine system have caused the value of Affected Vehicles to
decrease.

220.   Plaintiff and the Class sustained damages as a result of the Volkswagen's
unlawful acts and are, therefore, entitled to damages and other relief as provided under
the Arizona Consumer Fraud Act.

221.   Plaintiff also seeks court costs and attorneys' fees as a result of
Volkswagen's violation of the Arizona Consumer Fraud Act as provided in ARIZ. REV.
STAT. § 12-341.01.

<div align="center">

**COUNT II**
**BREACH OF CONTRACT**
**(Based on Arizona Law)**

</div>

222.   Plaintiff incorporates by reference all preceding allegations as though
fully set forth herein.

223.   Plaintiff brings this Count on behalf of new vehicle or certified pre-
owned vehicle purchasers in the Arizona Subclass.

<div align="center">-92-</div>

224.   Volkswagen's misrepresentations and omissions alleged herein, including Volkswagen's failure to disclose the existence of the CleanDiesel engine system's defect and/or defective design as alleged herein, caused Plaintiff and the other Arizona Subclass members to make their purchases or leases of their Affected Vehicles. Absent those misrepresentations and omissions, Plaintiff and the other Arizona Subclass members would not have purchased or leased these Affected Vehicles, would not have purchased or leased these Affected Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain the CleanDiesel engine system and which were not marketed as including such a system.  Accordingly, Plaintiff and the other Arizona Subclass members overpaid for their Affected Vehicles and did not receive the benefit of their bargain.

225.   Each and every sale or lease of an Affected Vehicle by an authorized Volkswagen dealer constitutes a contract between Volkswagen and the purchaser or lessee.  Volkswagen breached these contracts by selling or leasing Plaintiff and the other Arizona Subclass members defective Affected Vehicles and by misrepresenting or failing to disclose the existence of the CleanDiesel engine system's defect and/or defective design, including information known to Volkswagen rendering each Affected Vehicle non EPA-compliant, and thus less valuable, than vehicles not equipped with a CleanDiesel engine system.

226.   As a direct and proximate result of Volkswagen's breach of contract, Plaintiff and the Arizona Subclass have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## COUNT III
## FRAUDULENT CONCEALMENT
### (Based on Arizona Law)

227.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

-93-

228. Plaintiff brings this Count on behalf of the Arizona Subclass.

229. Volkswagen intentionally concealed that the CleanDiesel engine systems were not EPA-compliant and used a "defeat device," or acted with reckless disregard for the truth, and denied Plaintiff and the other Class members information that is highly relevant to their purchasing decision.

230. Volkswagen further affirmatively misrepresented to Plaintiff in advertising and other forms of communication, including standard and uniform material provided with each car, that the Affected Vehicles it was selling were new, had no significant defects, complied with EPA regulations and would perform and operate properly when driven in normal usage.

231. Volkswagen knew these representations were false when made.

232. The Affected Vehicles purchased or leased by Plaintiff and the other Class members were, in fact, defective, non-EPA compliant, unsafe, and unreliable because the Affected Vehicles contained faulty and defective CleanDiesel engine system, as alleged herein.

233. Volkswagen had a duty to disclose that these Affected Vehicles were defective, unsafe, non-EPA compliant and unreliable in that certain crucial emissions functions of the Affected Vehicles would be rendered inoperative due to the "defeat device" installed in the defective CleanDiesel engine system, because Plaintiff and the other Class members relied on Volkswagen's material representations that the Affected Vehicles they were purchasing were safe, environmentally clean, efficient and free from defects.

234. The aforementioned concealment was material because if it had been disclosed Plaintiff and the other Class members would not have bought or leased the Affected Vehicles, or would not have bought or leased those Vehicles at the prices they paid.

-94-

235.   The aforementioned representations were material because they were facts that would typically be relied on by a person purchasing or leasing a new motor vehicle.  Volkswagen knew or recklessly disregarded that its representations were false because it knew that it had to use the "defeat device" in order for Affected Vehicles to pass EPA emissions requirements.  Volkswagen intentionally made the false statements in order to sell Affected Vehicles.

236.   Plaintiff and the other Class members relied on Volkswagen's reputation – along with Volkswagen's failure to disclose the faulty and defective nature of the CleanDiesel engine system and Volkswagen's affirmative assurance that its Affected Vehicles were safe and reliable, and other similar false statements – in purchasing or leasing Affected Vehicles.

237.   As a result of their reliance, Plaintiff and the other Class members have been injured in an amount to be proven at trial, including, but not limited to, their lost benefit of the bargain and overpayment at the time of purchase or lease and/or the diminished value of their Affected Vehicles.

238.   Volkswagen's conduct was knowing, intentional, with malice, demonstrated a complete lack of care, and was in reckless disregard for the rights of Plaintiff and the other Class members.  Plaintiff and the other Class members are therefore entitled to an award of punitive damages to the extent permitted under applicable law.

**E.     Claims on Behalf of the Arkansas Subclass**

<div align="center">

**COUNT I**
**VIOLATIONS OF THE DECEPTIVE TRADE PRACTICE ACT**
**(ARK. CODE ANN. § 4-88-101, *ET SEQ.*)**

</div>

239.   Plaintiff Victoria McClelland ("Plaintiff," for purposes of all Arkansas Subclass Counts) incorporates by reference all preceding allegations as though fully set forth herein.

240.   This claim is brought only on behalf of the Arkansas Subclass.

<div align="center">-95-</div>

241.   Volkswagen, Plaintiffs, and the Arkansas Subclass are "persons" within the meaning of Arkansas Deceptive Trade Practices Act ("Arkansas DTPA"), ARK. CODE ANN. § 4-88-102(5).

242.   The Affected Vehicles are "goods" within the meaning of ARK. CODE ANN. § 4-88-102(4).

243.   The Arkansas DTPA prohibits "[d]eceptive and unconscionable trade practices," which include, but are not limited to, a list of enumerated items, including "[e]ngaging in any other unconscionable, false, or deceptive act or practice in business, commerce, or trade[.]"  ARK. CODE ANN. § 4-88-107(a)(10).  The Arkansas DTPA also prohibits the following when utilized in connection with the sale or advertisement of any goods:  "(1) The act, use, or employment by any person of any deception, fraud, or false pretense; or (2) The concealment, suppression, or omission of any material fact with intent that others rely upon the concealment, suppression, or omission."  ARK. CODE ANN. § 4-88-108.  Volkswagen violated the Arkansas DTPA and engaged in deceptive and unconscionable trade practices by, among other things, fraudulently installing the "defeat device" to make it appear that its CleanDiesel engine systems complied with EPA regulations and otherwise engaging in activities with a tendency or capacity to deceive.

244.   Volkswagen also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of Affected Vehicles.

245.   Volkswagen's actions as set forth above occurred in the conduct of trade or commerce.

-96-

246.   Volkswagen has known of the true characteristics of its CleanDiesel engine systems for at least six years, but concealed all of that information until recently.

247.   Volkswagen was also aware that it valued profits over environmental cleanliness, efficiency, and lawfulness, and that it was manufacturing, selling and distributing vehicles throughout the United States that did not comply with EPA regulations.  Volkswagen concealed this information as well.

248.   By failing to disclose and by actively concealing the "defeat device" and the true cleanliness and performance of the CleanDiesel engine system, by marketing its vehicles as safe, reliable, environmentally clean, efficient, and of high quality, and by presenting itself as a reputable manufacturer that valued safety, environmental cleanliness and efficiency, and stood behind its vehicles after they were sold, Volkswagen engaged in deceptive and unconscionable business practices in violation of the Arkansas DTPA.

249.   In the course of Volkswagen's business, it willfully failed to disclose and actively concealed the use of the "defeat device" and true cleanliness and efficiency of the CleanDiesel engine system and serious defects discussed above.  Volkswagen compounded the deception by repeatedly asserting that the Affected Vehicles were safe, reliable, environmentally clean, efficient, and of high quality, and by claiming to be a reputable manufacturer that valued safety, environmental cleanliness and efficiency, and stood behind its vehicles once they are on the road.

250.   Volkswagen's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff, about the true cleanliness and efficiency of the CleanDiesel engine system, the quality of the Volkswagen and Audi brands, the devaluing of safety, integrity and lawfulness at Volkswagen, and the true value of the Affected Vehicles.

-97-

251.   Volkswagen intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with an intent to mislead Plaintiff and the Arkansas Subclass.

252.   Volkswagen knew or should have known that its conduct violated the Arkansas DTPA.

253.   As alleged above, Volkswagen made material statements about the safety, cleanliness, efficiency and reliability of the Affected Vehicles and the Volkswagen and Audi brands that were either false or misleading.

254.   Volkswagen owed Plaintiffs a duty to disclose the true safety, cleanliness, efficiency and reliability of the Affected Vehicles and the devaluing of safety, integrity and lawfulness at Volkswagen, because Volkswagen:

  a. Possessed exclusive knowledge that it valued profits over environmental cleanliness, efficiency, and lawfulness, and that it was manufacturing, selling and distributing vehicles throughout the United States that did not comply with EPA regulations;

  b. Intentionally concealed the foregoing from Plaintiffs; and/or

  c. Made incomplete representations about the safety, cleanliness, efficiency and reliability of the Affected Vehicles generally, and the "defeat device" and true nature of the CleanDiesel engine system in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

255.   Because Volkswagen fraudulently concealed the "defeat device" and the true cleanliness and performance of the CleanDiesel engine system, resulting in a raft of negative publicity once the use of the "defeat device" and true characteristics of the CleanDiesel engine system finally began to be disclosed, the value of the Affected Vehicles has greatly diminished.  In light of the stigma attached to those vehicles by Volkswagen's conduct, they are now worth significantly less than they otherwise would be.

-98-

256.   Volkswagen's fraudulent use of the "defeat device" and its concealment of the true characteristics of the CleanDiesel engine system were material to Plaintiffs and the Arkansas Subclass.  A vehicle made by a reputable manufacturer of environmentally friendly vehicles is worth more than an otherwise comparable vehicle made by a disreputable and dishonest manufacturer of polluting vehicles that conceals the amount its cars pollutes rather than make environmentally friendly vehicles.

257.   Plaintiffs and the Arkansas Subclass suffered ascertainable loss caused by Volkswagen's misrepresentations and its concealment of and failure to disclose material information.  Class members who purchased Affected Vehicles either would have paid less for their vehicles or would not have purchased or leased them at all.

258.   Volkswagen had an ongoing duty to all Volkswagen and Audi customers to refrain from unfair and deceptive acts or practices under the Arkansas DTPA.  All owners of Affected Vehicles suffered ascertainable loss in the form of diminished value of their vehicles as a result of Volkswagen's deceptive and unfair acts and practices made in the course of Volkswagen's business.

259.   Volkswagen's violations present a continuing risk to Plaintiffs as well as to the general public.  Volkswagen's unlawful acts and practices complained of herein affect the public interest.

260.   As a direct and proximate result of Volkswagen's violations of the Arkansas DTPA, Plaintiffs and the Arkansas Subclass have suffered injury-in-fact and/or actual damage.

261.   Plaintiffs and the Arkansas Subclass seek monetary relief against Volkswagen in an amount to be determined at trial.  Plaintiffs and the Arkansas Subclass also seek punitive damages because Volkswagen acted wantonly in causing the injury or with such a conscious indifference to the consequences that malice may be inferred.

262.   Plaintiffs also seek an order enjoining Volkswagen's unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under the Arkansas DTPA.

## COUNT II
## FRAUD BY CONCEALMENT

263.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

264.   This claim is brought on behalf of the Aarkansas Subclass.

265.   Volkswagen intentionally concealed and suppressed material facts concerning the quality of the Affected Vehicles.  As alleged in this Complaint, notwithstanding references in the very model names of the subject vehicles as "Clean Diesel," or to their engines as "TDI Clean Diesel" engines, Volkswagen engaged in a secret scheme to evade federal and state vehicle emissions standards by installing software designed to conceal its vehicles' emissions of the pollutant nitrogen oxide, which contributes to the creation of ozone and smog.  The software installed on the vehicles at issue was designed nefariously to kick-in during emissions certification testing, such that the vehicles would show far lower emissions than when actually operating on the road.  The result was what Volkswagen intended: vehicles passed emissions certifications by way of deliberately induced false readings.  Reportedly, Volkswagen's deliberate, secret scheme resulted in noxious emissions from these vehicles at up to 40 times applicable standards.

266.   Plaintiffs and Class members reasonably relied upon Volkswagen's false representations.  They had no way of knowing that Volkswagen's representations were false and gravely misleading.  As alleged herein, Volkswagen employed extremely sophisticated methods of deception.  Plaintiffs and Class members did not, and could not, unravel Volkswagen's deception on their own.

267.   Volkswagen concealed and suppressed material facts concerning what is evidently the true culture of Volkswagen—one characterized by an emphasis on

-100-

profits and sales above compliance with federal and state clean air laws, and emissions regulations that are meant to protect the public and consumers.  It also emphasized profits and sales over the trust that Plaintiffs and Class members placed in its representations.  As one customer, Priya Shah, put it in a quotation cited by the *Los Angeles Times* in a September 18, 2015 article, "It's just a blatant disregard and intentional manipulation of the system.  That's just a whole other level of not only lying to the government, but also lying to your consumer.  People buy diesel cars from Volkswagen because they feel they are clean diesel cars."  In the words of Ms. Shah, which no doubt reflect the sentiments of all other CleanDiesel vehicle buyers, "I don't want to be spewing noxious gases into the environment."

268.   Necessarily, Volkswagen also took steps to ensure that its employees did not reveal the details of its scheme to regulators or consumers, including Plaintiffs and Class members.  Volkswagen did so in order to boost the reputations of its vehicles and to falsely assure purchasers and lessors of its vehicles, including previously owned vehicles, that Volkswagen is a reputable manufacturer that complies with applicable law, including federal and state clean air laws and emissions regulations, and that its vehicles likewise comply with applicable law and regulations.  Volkswagen's false representations were material to consumers, both because they concerned the quality of the Affected Vehicles, including their compliance with applicable federal and state laws and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles.  As Volkswagen well knew, its customers, including Plaintiffs and Class members, highly valued that the vehicles they were purchasing or leasing were *clean* diesel cars, and they paid accordingly.

269.   Volkswagen had a duty to disclose its emissions scheme because knowledge of the scheme and its details were known and/or accessible only to Volkswagen, because Volkswagen had exclusive knowledge as to implementation and

-101-

maintenance of its scheme, and because Volkswagen knew the facts were not known to or reasonably discoverable by Plaintiffs or Class members.  Volkswagen also had a duty to disclose because it made general affirmative representations about the qualities of its vehicles with respect to emissions standards, starting with references to them as *clean* diesel cars, or cars with *clean* diesel engines, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding its emissions scheme, the actual emissions of its vehicles, its actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and its actual practices with respect to the vehicles at issue.  Having volunteered to provide information to Plaintiffs, Volkswagen had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiffs and Class members.  Whether a manufacturer's products comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certification testing their vehicles must pass.  Volkswagen represented to Plaintiffs and Class members that they were purchasing *clean* diesel vehicles, and certification testing appeared to confirm this—except that, secretly, Volkswagen had subverted the testing process thoroughly.

270.   Volkswagen actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Volkswagen money, and it did so at the expense of Plaintiffs and Class members.

271.   On information and belief, Volkswagen has still not made full and adequate disclosures, and continues to defraud Plaintiffs and Class members by

-102-

1
2

concealing material information regarding the emissions qualities of its vehicles and its emissions scheme.

3
4
5
6
7
8
9
10

272.   Plaintiffs and Class members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly "clean" diesel cars manufactured by Volkswagen, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them.  Plaintiffs' and Class Members' actions were justified.  Volkswagen was in exclusive control of the material facts, and such facts were not known to the public, Plaintiffs, or Class members.

11
12
13
14
15
16
17
18
19
20
21

273.   Because of the concealment and/or suppression of the facts, Plaintiffs and Class members have sustained damage because they own vehicles that are diminished in value as a result of Volkswagen's concealment of the true quality and quantity of those vehicles' emissions and Volkswagen's failure to timely disclose the actual emissions qualities and quantities of hundreds of thousands of Volkswagen- and Audi-branded vehicles and the serious issues engendered by Volkswagen's corporate policies.  Had Plaintiffs and Class members been aware of Volkswagen's emissions scheme, and the company's callous disregard for compliance with applicable federal and state laws and regulations, Plaintiffs and Class members who purchased or leased new or previously owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

22
23
24
25
26
27

274.   The value of Plaintiffs' and Class members' vehicles has diminished as a result of Volkswagen's fraudulent concealment of its emissions scheme, which has greatly tarnished the Volkswagen and Audi brand names attached to Plaintiffs' and Class members' vehicles and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.  In addition, Class members are entitled to damages for loss of

28

-103-

use, costs of additional fuel, costs of unused warranties, and other damages to be proved at trial.

275.   Accordingly, Volkswagen is liable to Plaintiffs and Class members for damages in an amount to be proven at trial.

276.   Volkswagen's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and Class members' rights and the representations that Volkswagen made to them, in order to enrich Volkswagen.  To the extent permitted under applicable law, Volkswagen's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT III
## BREACH OF CONTRACT
## (BASED ON ARKANSAS LAW)

277.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

278.   Plaintiff brings this Count on behalf of new vehicle or certified pre-owned vehicle purchasers in the Arkansas Subclass.

279.   Volkswagen's misrepresentations and omissions alleged herein, including Volkswagen's failure to disclose the existence of the CleanDiesel engine system's defect and/or defective design as alleged herein, caused Plaintiff and the other Arkansas Subclass members to make their purchases or leases of their Affected Vehicles.  Absent those misrepresentations and omissions, Plaintiff and the other Arkansas Subclass members would not have purchased or leased these Affected Vehicles, would not have purchased or leased these Affected Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain the CleanDiesel engine system and which were not marketed as including such a system.  Accordingly, Plaintiff and the other Arkansas Subclass

-104-

members overpaid for their Affected Vehicles and did not receive the benefit of their bargain.

280.    Each and every sale or lease of an Affected Vehicle by an authorized Volkswagen dealer constitutes a contract between Volkswagen and the purchaser or lessee.  Volkswagen breached these contracts by selling or leasing Plaintiff and the other Arkansas Subclass members defective Affected Vehicles and by misrepresenting or failing to disclose the existence of the CleanDiesel engine system's defect and/or defective design, including information known to Volkswagen rendering each Affected Vehicle non EPA-compliant, and thus less valuable, than vehicles not equipped with a CleanDiesel engine system.

281.    As a direct and proximate result of Volkswagen's breach of contract, Plaintiff and the Arkansas Subclass have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

**F.      Claims Brought on Behalf of the California Subclass**

<div align="center">

**COUNT I**
**VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW**
**(CAL. BUS. & PROF. CODE §§ 17200, *et seq.*)**

</div>

282.    Plaintiffs Jess Hill, Kevin Jentes and Malia Sias ("Plaintiffs," for purposes of all California Subclass Counts) incorporate by reference all preceding allegations as though fully set forth herein.

283.    Plaintiffs bring this Count on behalf of the California Subclass.

284.    California's Unfair Competition Law ("UCL"), CAL. BUS. & PROF. CODE §§ 17200, *et seq.*, proscribes acts of unfair competition, including "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."

285.    Volkswagen's conduct, as described herein, was and is in violation of the UCL.  Volkswagen's conduct violates the UCL in at least the following ways:

<div align="center">

-105-

</div>

i.   By knowingly and intentionally concealing from Plaintiffs and the other California Subclass members that the Affected Vehicles suffer from a design defect while obtaining money from Plaintiffs and the Class;

ii.   By marketing Affected Vehicles as possessing functional and defect-free, EPA-compliant CleanDiesel engine systems;

iii.   By purposefully installing an illegal "defeat device" in the Affected Vehicles to fraudulently obtain EPA certification and cause Affected Vehicles to pass emissions tests when in truth and fact they did not pass such tests;

iv.   By violating federal laws, including the Clean Air Act; and

v.   By violating other California laws, including California laws governing vehicle emissions and emission testing requirements.

286.   Volkswagen's misrepresentations and omissions alleged herein caused Plaintiffs and the other California Subclass members to make their purchases or leases of their Affected Vehicles.  Absent those misrepresentations and omissions, Plaintiffs and the other California Subclass members would not have purchased or leased these vehicles, would not have purchased or leased these Affected Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain CleanDiesel engine systems that failed to comply with EPA and California emissions standards.

287.   Accordingly, Plaintiffs and the other California Subclass members have suffered injury in fact including lost money or property as a result of Volkswagen's misrepresentations and omissions.

288.   Plaintiffs seek to enjoin further unlawful, unfair, and/or fraudulent acts or practices by Volkswagen under CAL. BUS. & PROF. CODE § 17200.

-106-

289.   Plaintiffs requests that this Court enter such orders or judgments as may be necessary to enjoin Volkswagen from continuing its unfair, unlawful, and/or deceptive practices and to restore to Plaintiffs and members of the Class any money it acquired by unfair competition, including restitution and/or restitutionary disgorgement, as provided in CAL. BUS. & PROF. CODE § 17203 and CAL. BUS. & PROF. CODE § 3345; and for such other relief set forth below.

## COUNT II
## VIOLATION OF CALIFORNIA CONSUMERS LEGAL REMEDIES ACT
### (CAL. BUS. & PROF. CODE §§ 1750, *et seq*.)

290.   Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

291.    Plaintiffs bring this Count on behalf of the California Subclass.

292.   California's Consumers Legal Remedies Act ("CLRA"), Cal. Bus. & Prof. Code §§ 1750, *et seq*., proscribes "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer."

293.   The Affected Vehicles are "goods" as defined in Cal. Bus. & Prof. Code § 1761(a).

294.   Plaintiffs and the other California Subclass members are "consumers" as defined in Cal. Bus. & Prof. Code § 1761(d), and Plaintiffs, the other California Subclass members, and Volkswagen are "persons" as defined in Cal. Bus. & Prof. Code § 1761(c).

295.   As alleged above, Volkswagen made numerous representations concerning the benefits, efficiency, performance and safety features of CleanDiesel engine systems that were misleading.

296.   In purchasing or leasing the Affected Vehicles, Plaintiffs and the other California Subclass members were deceived by Volkswagen's failure to disclose that

-107-

the Affected Vehicles were equipped with defective CleanDiesel engine systems that failed EPA and California emissions standards.

297.   Volkswagen's conduct, as described hereinabove, was and is in violation of the CLRA.  Volkswagen's conduct violates at least the following enumerated CLRA provisions:

i.  Cal. Civ. Code § 1770(a)(2): Misrepresenting the approval or certification of goods;

ii.  Cal. Civ. Code § 1770(a)(3): Misrepresenting the certification by another;

iii.  Cal. Civ. Code § 1770(a)(5): Representing that goods have sponsorship, approval, characteristics, uses, benefits, or quantities which they do not have;

iv.  Cal. Civ. Code § 1770(a)(7): Representing that goods are of a particular standard, quality, or grade, if they are of another;

v.  Cal. Civ. Code § 1770(a)(9): Advertising goods with intent not to sell them as advertised; and

vi.  Cal. Civ. Code § 1770(a)(16): Representing that goods have been supplied in accordance with a previous representation when they have not.

298.   Plaintiffs and the other California Subclass members have suffered injury in fact and actual damages resulting from Volkswagen's material omissions and misrepresentations because they paid an inflated purchase or lease price for the Affected Vehicles and because they stand to pay additional fuel costs if and when their Affected Vehicles are made to comply with emissions standards.

299.   Volkswagen knew, should have known, or was reckless in not knowing of the defective design and/or manufacture of the CleanDiesel engine systems, and that the Affected Vehicles were not suitable for their intended use.

-108-

300.   The facts concealed and omitted by Volkswagen to Plaintiffs and the other California Subclass members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Affected Vehicles or pay a lower price.  Had Plaintiffs and the other California Subclass members known about the defective nature of the Affected Vehicles, they would not have purchased or leased the Affected Vehicles or would not have paid the prices they paid.

301.   In accordance with Cal. Civ. Code § 1780(a), Plaintiffs and members of the Class seek injunctive relief for Volkswagen's violations of the CLRA.

302.   While Plaintiffs do not seek to recover damages under the CLRA in this initial Complaint, after mailing appropriate notice and demand in accordance with Civil Code § 1782(a) & (d), Plaintiffs will subsequently amend this Complaint to also include a request for compensatory and punitive damages.

## COUNT III
## VIOLATION OF CALIFORNIA FALSE ADVERTISING LAW
### (CAL. BUS. & PROF. CODE §§ 17500, *et seq.*)

303.   Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

304.   Plaintiffs bring this Count on behalf of the California Subclass.

305.   California Bus. & Prof. Code § 17500 states:  "It is unlawful for any … corporation … with intent directly or indirectly to dispose of real or personal property … to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated … from this state before the public in any state, in any newspaper or other publication, or any advertising device, … or in any other manner or means whatever, including over the Internet, any statement … which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

-109-

306.   Volkswagen caused to be made or disseminated through California and the United States, through advertising, marketing and other publications, statements that were untrue or misleading, and which were known, or which by the exercise of reasonable care should have been known to Volkswagen, to be untrue and misleading to consumers, including Plaintiffs and the other Class members.

307.   Volkswagen has violated § 17500 because the misrepresentations and omissions regarding the safety, reliability, and functionality of Affected Vehicles as set forth in this Complaint were material and likely to deceive a reasonable consumer.

308.   Plaintiffs and the other Class members have suffered an injury in fact, including the loss of money or property, as a result of Volkswagen's unfair, unlawful, and/or deceptive practices.  In purchasing or leasing their Affected Vehicles, Plaintiffs and the other Class members relied on the misrepresentations and/or omissions of Volkswagen with respect to the safety, performance and reliability of the Affected Vehicles.  Volkswagen's representations turned out not to be true because the Affected Vehicles are distributed with faulty and defective CleanDiesel engine systems, rendering certain safety and emissions functions inoperative.  Had Plaintiffs and the other Class members known this, they would not have purchased or leased their Affected Vehicles and/or paid as much for them.  Accordingly, Plaintiffs and the other Class members overpaid for their Affected Vehicles and did not receive the benefit of their bargain.

309.   All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Volkswagen's business.  Volkswagen's wrongful conduct is part of a pattern or generalized course of conduct that is still perpetuated and repeated, both in the State of California and nationwide.

310.   Plaintiffs, individually and on behalf of the other Class members, requests that this Court enter such orders or judgments as may be necessary to enjoin Volkswagen from continuing their unfair, unlawful, and/or deceptive practices and to

-110-

restore to Plaintiffs and the other Class members any money Volkswagen acquired by unfair competition, including restitution and/or restitutionary disgorgement, and for such other relief set forth below.

## COUNT IV
## BREACH OF CONTRACT
### (Based on California Law)

311.   Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

312.   Plaintiffs bring this Count on behalf of new vehicle or certified pre-owned vehicle purchasers in the California Subclass.

313.   Volkswagen's misrepresentations and omissions alleged herein, including Volkswagen's failure to disclose the existence of the "defeat device" and/or defective design as alleged herein, caused Plaintiffs and the other California Subclass members to make their purchases or leases of their Affected Vehicles.  Absent those misrepresentations and omissions, Plaintiffs and the other California Subclass members would not have purchased or leased these Affected Vehicles, would not have purchased or leased these Affected Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain the CleanDiesel engine system and the "defeat device."  Accordingly, Plaintiffs and the other California Subclass members overpaid for their Affected Vehicles and did not receive the benefit of their bargain.

314.   Each and every sale or lease of an Affected Vehicle by an authorized Volkswagen dealer constitutes a contract between Volkswagen and the purchaser or lessee.  Volkswagen breached these contracts by selling or leasing Plaintiffs and the other California Subclass members defective Affected Vehicles and by misrepresenting or failing to disclose the existence of the "defeat device" and/or defective design, including information known to Volkswagen rendering each

-111-

Affected Vehicle less safe and emissions compliant, and thus less valuable, than vehicles not equipped with CleanDiesel engine systems and "defeat devices."

315.   As a direct and proximate result of Volkswagen's breach of contract, Plaintiffs and the California Subclass have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## COUNT V
## FRAUD BY CONCEALMENT
### (Based on California Law)

316.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

317.   This claim is brought on behalf of California Subclass members.

318.   Volkswagen intentionally concealed and suppressed material facts concerning the quality of the Affected Vehicles.  As alleged in this Complaint, notwithstanding references in the very model names of the subject vehicles as "CleanDiesel," or to their engines as "TDI Clean Diesel" engines, Volkswagen engaged in a secret scheme to evade federal and state vehicle emissions standards by installing software designed to conceal its vehicles' emissions of the pollutant nitrogen oxide, which contributes to the creation of ozone and smog.  The software installed on the vehicles at issue was designed nefariously to kick-in during emissions certification testing, such that the vehicles would show far lower emissions than when actually operating on the road.  The result was what Volkswagen intended: vehicles passed emissions certifications by way of deliberately induced false readings.  Reportedly, Volkswagen's deliberate, secret scheme resulted in noxious emissions from these vehicles at up to 40 times applicable standards.

319.   Plaintiffs and California Subclass members reasonably relied upon Volkswagen's false representations.  They had no way of knowing that Volkswagen's representations were false and gravely misleading.  As alleged herein, Volkswagen

-112-

employed extremely sophisticated methods of deception. Plaintiffs and California Subclass members did not, and could not, unravel Volkswagen's deception on their own.

320. Volkswagen concealed and suppressed material facts concerning what is evidently the true culture of Volkswagen – one characterized by an emphasis on profits and sales above compliance with federal and state clean air laws, and emissions regulations that are meant to protect the public and consumers. It also emphasized profits and sales over the trust that Plaintiffs and California Subclass members placed in its representations. As one customer, Priya Shah, put it in a quotation cited by the *Los Angeles Times* in a September 15, 2015 article, "It's just a blatant disregard and intentional manipulation of the system. That's just a whole other level of not only lying to the government, but also lying to your consumer. People buy diesel cars from Volkswagen because they feel they are clean diesel cars." As Ms. Shah put it, "I don't want to be spewing noxious gases into the environment."

321. Necessarily, Volkswagen also took steps to ensure that its employees did not reveal the details of its scheme to regulators or consumers, including Plaintiffs and California Subclass Members. Volkswagen did so in order to boost the reputations of its vehicles and to falsely assure purchasers and lessors of its vehicles, including previously owned vehicles, that Volkswagen is a reputable manufacturer that complies with applicable law, including federal and state clean air laws and emissions regulations, and that its vehicles likewise comply with applicable law and regulations. Volkswagen's false representations were material to consumers, both because they concerned the quality of the Affected Vehicles, including their compliance with applicable federal and state laws and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles. As Volkswagen well knew, its customers, including Plaintiffs and California

-113-

Subclass Members, highly valued that the vehicles they were purchasing or leasing were *clean* diesel cars, and they paid accordingly.

322.   Volkswagen had a duty to disclose the emissions scheme it engaged in with respect to the Affected Vehicles because knowledge of the scheme and its details were known and/or accessible only to Volkswagen, because Volkswagen had exclusive knowledge as to implementation and maintenance of its scheme, and because Volkswagen knew the facts were not known to or reasonably discoverable by Plaintiffs or California Subclass Members.  Volkswagen also had a duty to disclose because it made general affirmative representations about the qualities of its vehicles with respect to emissions standards, starting with references to them as *clean* diesel cars, or cars with *clean* diesel engines, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding its emissions scheme, the actual emissions of its vehicles, its actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and its actual practices with respect to the vehicles at issue.  Having volunteered to provide information to Plaintiffs, Volkswagen had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiffs and California Subclass members.  Whether a manufacturer's products comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certification testing their vehicles must pass.  Volkswagen represented to Plaintiffs and California Subclass members that they were purchasing *clean* diesel vehicles, and certification testing appeared to confirm this – except that, secretly, Volkswagen had subverted the testing process thoroughly.

-114-

323.   Volkswagen actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Volkswagen money, and it did so at the expense of Plaintiffs and California Subclass members.

324.   On information and belief, Volkswagen has still not made full and adequate disclosures, and continues to defraud Plaintiffs and California Subclass members by concealing material information regarding the emission qualities of its vehicles and its emissions scheme.

325.   Plaintiffs and California Subclass members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly "clean" diesel cars manufactured by Volkswagen, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them.  Plaintiffs' and California Subclass Members' actions were justified.  Volkswagen was in exclusive control of the material facts, and such facts were not known to the public, Plaintiffs, or California Subclass Members.

326.   Because of the concealment and/or suppression of the facts, Plaintiffs and California Subclass members have sustained damage because they own vehicles that are diminished in value as a result of Volkswagen's concealment of the true quality and quantity of those vehicles' emissions and Volkswagen's failure to timely disclose the actual emission qualities and quantities of millions of Volkswagen- and Audi-branded vehicles and the serious issues engendered by Volkswagen's corporate policies.  Had Plaintiffs and California Subclass members been aware of Volkswagen's emissions scheme, and the company's callous disregard for compliance with applicable federal and state laws and regulations, Plaintiffs and California

-115-

Subclass members who purchased or leased new or previously owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

327.  The value of Plaintiffs' and California Subclass Members' vehicles has diminished as a result of Volkswagen's fraudulent concealment of its emissions scheme, which has greatly tarnished the Volkswagen and Audi brand names attached to Plaintiffs' and California Subclass members' vehicles and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.  In addition, Class members are entitled to damages for loss of use, costs of additional fuel, costs of unused warranties, and other damages to be proved at trial.

328.  Accordingly, Volkswagen is liable to Plaintiffs and California Subclass members for damages in an amount to be proven at trial.

329.  Volkswagen's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and California Subclass members' rights and the representations that Volkswagen made to them, in order to enrich Volkswagen.  Volkswagen's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**G.    Claims Brought on Behalf of the Colorado Subclass**

### COUNT I
### VIOLATIONS OF THE COLORADO CONSUMER PROTECTION ACT
(COLO. REV. STAT. §§ 6-1-101, *et seq.*)

330.  Plaintiffs Jeremiah Holden and Hildegard Reiser, M.D. ("Plaintiffs," for purposes of all Colorado Subclass Counts) incorporate by reference all preceding allegations as though fully set forth herein.

331.  Plaintiffs bring this Count on behalf of the Colorado Subclass.

332.  Colorado's Consumer Protection Act (the "CCPA") prohibits a person from engaging in a "deceptive trade practice," which includes knowingly making "a

-116-

false representation as to the source, sponsorship, approval, or certification of goods," or "a false representation as to the characteristics, ingredients, uses, benefits, alterations, or quantities of goods." COLO. REV. STAT. § 6-1-105(1)(b), (e). The CCPA further prohibits "represent[ing] that goods … are of a particular standard, quality, or grade … if he knows or should know that they are of another," and "advertis[ing] goods … with intent not to sell them as advertised." COLO. REV. STAT. § 6-1-105(1)(g), (i).

333. Defendants are each a "person" under § 6-1-102(6) of the Colorado CPA, COL. REV. STAT. § 6-1-101, *et seq.*

334. Plaintiffs and Colorado Class members are "consumers" for the purpose of COL. REV. STAT. § 6-1-113(1)(a) who purchased or leased one or more Affected Vehicles.

335. In the course of Volkswagen's business, it willfully misrepresented and failed to disclose, and actively concealed, that the CleanDiesel Engine System was non-EPA compliant, and the use of the "defeat device" in Affected Vehicles as described above. Accordingly, Volkswagen engaged in unlawful trade practices, including representing that Affected Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that Affected Vehicles are of a particular standard and quality when they are not; advertising Affected Vehicles with the intent not to sell them as advertised; and otherwise engaging in conduct likely to deceive.

336. In purchasing or leasing the Affected Vehicles, Plaintiffs and the other Colorado Subclass members were deceived by Volkswagen's failure to disclose that the Affected Vehicles were equipped with defective CleanDiesel engine systems that failed EPA and Colorado emissions standards.

337. Plaintiffs and Colorado Subclass members reasonably relied upon Volkswagen's false misrepresentations. They had no way of knowing that

-117-

Volkswagen's representations were false and gravely misleading.  As alleged herein, Volkswagen engaged in extremely sophisticated methods of deception.  Plaintiffs and Colorado Subclass members did not, and could not, unravel Volkswagen's deception on their own.

338.   Volkswagen intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with an intent to mislead Plaintiffs and the Colorado Subclass.

339.   Volkswagen knew or should have known that its conduct violated the Colorado CPA.

340.   Volkswagen's actions as set forth above occurred in the conduct of trade or commerce.

341.   Volkswagen's conduct proximately caused injuries to Plaintiffs and the other Class members.

342.   Plaintiffs and the other Class members were injured as a result of Volkswagen's conduct in that Plaintiffs and the other Class members overpaid for their Affected Vehicles and did not receive the benefit of their bargain, and their Affected Vehicles have suffered a diminution in value.  These injuries are the direct and natural consequence of Volkswagen's misrepresentations and omissions.

343.   Pursuant to Col. Rev. Stat. § 6-1-113, Plaintiffs and the Colorado Subclass seek monetary relied against Volkswagen measured as the greater of (a) actual damages in an amount to be determined at trial and the discretionary trebling of such damages, or (b) statutory damages in the amount of $500 for each Plaintiffs and each Colorado Subclass member.

344.   Plaintiffs also seek an order enjoining Volkswagen's unfair, unlawful, and/or deceptive practices, declaratory relief, attorneys' fees, and any other just and proper relief available under the Colorado CPA.

# COUNT II
## STRICT PRODUCT LIABILITY
### (Based on Colorado Law)

345.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

346.    Plaintiffs bring this Count on behalf of the Colorado Subclass.

347.    Colorado law recognizes an action for product defects that complements Colorado's Product Liability Statute, COLO. REV. STAT. TITLE 13, Article 21, Part 4.

348.    Volkswagen is a "manufacturer" and "seller" of the Affected Vehicles within the meaning of COLO. REV. STAT. § 13-21-401(1).

349.    Volkswagen manufactured and sold the Affected Vehicles in a defective condition and in a condition that was unreasonably dangerous to drivers, other motorists, pedestrians, and others or to their property, including persons who may reasonably be expected to use, consume, or be affected by them, in at least the following respects:  (i) the Affected Vehicles were defectively designed, assembled, fabricated, produced, and constructed in that they were not EPA compliant and used a "defeat device"; and (ii) the Affected Vehicles were not accompanied by adequate warnings about their defective nature.

350.    The Affected Vehicles were defective and unreasonably dangerous at the time they were sold by Volkswagen and were intended to and did reach Plaintiffs and the other Class members in substantially the same condition as they were in when they were manufactured, sold, and left the control of Volkswagen.

351.    Plaintiffs and the other Class members are persons who were reasonably expected to use, consume, or be affected by the Affected Vehicles.

352.    As a direct and proximate result of the defective and illegal conditions of the Affected Vehicles, Plaintiffs and the other Class members have suffered damages.

010549-11  816608 V1

**COUNT III**
**BREACH OF CONTRACT**
**(Based on Colorado Law)**

353.   Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

354.   Plaintiffs bring this Count on behalf of new vehicle or certified pre-owned vehicle purchasers in the Colorado Subclass.

355.   Volkswagen's misrepresentations and omissions alleged herein, including Volkswagen's failure to disclose the existence of the CleanDiesel engine system's defect and/or defective design as alleged herein, caused Plaintiffs and the other Colorado Subclass members to make their purchases or leases of their Affected Vehicles.  Absent those misrepresentations and omissions, Plaintiffs and the other Colorado Subclass members would not have purchased or leased these Affected Vehicles, would not have purchased or leased these Affected Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain the CleanDiesel engine system and which were not marketed as including such a system.  Accordingly, Plaintiffs and the other Colorado Subclass members overpaid for their Affected Vehicles and did not receive the benefit of their bargain.

356.   Each and every sale or lease of an Affected Vehicle by an authorized Volkswagen dealer constitutes a contract between Volkswagen and the purchaser or lessee.  Volkswagen breached these contracts by selling or leasing Plaintiffs and the other Colorado Subclass members defective Affected Vehicles and by misrepresenting or failing to disclose the existence of the CleanDiesel engine system's defect and/or defective design, including information known to Volkswagen rendering each Affected Vehicle non EPA-compliant, and thus less valuable, than vehicles not equipped with a CleanDiesel engine system.

010549-11  816608 V1

357.   As a direct and proximate result of Volkswagen's breach of contract, Plaintiffs and the Colorado Subclass have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

<div align="center">

**COUNT IV**
**FRAUDULENT CONCEALMENT**
**(Based on Colorado Law)**

</div>

358.   Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

359.   Plaintiffs bring this Count on behalf of the Colorado Subclass.

360.   Volkswagen concealed and suppressed material facts concerning the quality of its vehicles and the Volkswagen brand.

361.   Volkswagen intentionally concealed that the CleanDiesel engine systems were not EPA-compliant and used a "defeat device", or acted with reckless disregard for the truth, and denied Plaintiffs and the other Class members information that is highly relevant to their purchasing decision.

362.   Volkswagen further affirmatively misrepresented to Plaintiffs in advertising and other forms of communication, including standard and uniform material provided with each car, that the Affected Vehicles it was selling were new, had no significant defects, complied with EPA regulations and would perform and operate properly when driven in normal usage.

363.   Volkswagen knew these representations were false when made.

364.   The Affected Vehicles purchased or leased by Plaintiffs and the other Class members were, in fact, defective, non-EPA compliant, unsafe, and unreliable because the Affected Vehicles contained faulty and defective CleanDiesel engine system, as alleged herein.

365.   Volkswagen had a duty to disclose that these Affected Vehicles were defective, unsafe, non-EPA compliant and unreliable in that certain crucial emissions

<div align="center">-121-</div>

functions of the Affected Vehicles would be rendered inoperative due to the "defeat device" installed in the defective CleanDiesel engine system, because Plaintiffs and the other Class members relied on Volkswagen's material representations that the Affected Vehicles they were purchasing were safe, environmentally clean, efficient and free from defects.

366.   The aforementioned concealment was material because if it had been disclosed Plaintiffs and the other Class members would not have bought or leased the Affected Vehicles, or would not have bought or leased those Vehicles at the prices they paid.

367.   The aforementioned representations were material because they were facts that would typically be relied on by a person purchasing or leasing a new motor vehicle.  Volkswagen knew or recklessly disregarded that its representations were false because it knew that it had to use the "defeat device" in order for Affected Vehicles to pass EPA emissions requirements.  Volkswagen intentionally made the false statements in order to sell Affected Vehicles.

368.   Plaintiffs and the other Class members relied on Volkswagen's reputation – along with Volkswagen's failure to disclose the faulty and defective nature of the CleanDiesel engine system and Volkswagen's affirmative assurance that its Affected Vehicles were safe and reliable, and other similar false statements – in purchasing or leasing Volkswagen's Affected Vehicles.

369.   As a result of their reliance, Plaintiffs and the other Class members have been injured in an amount to be proven at trial, including, but not limited to, their lost benefit of the bargain and overpayment at the time of purchase or lease and/or the diminished value of their Affected Vehicles.

370.   Volkswagen's conduct was knowing, intentional, with malice, demonstrated a complete lack of care, and was in reckless disregard for the rights of Plaintiffs and the other Class members.  Plaintiffs and the other Class members are

-122-

therefore entitled to an award of punitive damages to the extent permitted under applicable law.

**H.    Claims Brought on Behalf of the Connecticut Subclass**

**COUNT I**
**VIOLATIONS OF THE UNFAIR TRADE PRACTICES ACT**
**(CONN. GEN. STAT. ANN. §§ 42-110A, *et seq.*)**

371.    Plaintiff Spencer Moore ("Plaintiff," for purposes of all Connecticut Subclass Counts) incorporates by reference all preceding allegations as though fully set forth herein.

372.    Plaintiff brings this Count on behalf of the Connecticut Subclass.

373.    Plaintiff and Volkswagen are each "persons" as defined by CONN. GEN. STAT. ANN. § 42-110a(3).

374.    The Connecticut Unfair Trade Practices Act ("CUTPA") provides that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." CONN. GEN. STAT. ANN. § 42-110b(a). The CUTPA further provides a private right of action under CONN. GEN. STAT. ANN. § 42-110g(a).

375.    By failing to disclose and actively concealing that the CleanDiesel engine systems were not EPA-compliant and used a "defeat device" in the Affected Vehicles, Volkswagen engaged in deceptive business practices prohibited by the CUTPA, including (1) representing that Affected Vehicles have characteristics, uses, benefits, and qualities which they do not have, (2) representing that Affected Vehicles are of a particular standard, quality, and grade when they are not, (3) advertising Affected Vehicles with the intent not to sell them as advertised, and (4) engaging in acts or practices which are otherwise unfair, misleading, false, or deceptive to the consumer.

376.    As alleged above, Volkswagen made numerous material statements about the benefits and characteristics of the CleanDiesel engine system that were either false

-123-

or misleading.  Each of these statements contributed to the deceptive context of Volkswagen's unlawful advertising and representations as a whole.

377.   Volkswagen knew that the CleanDiesel engine system in the Affected Vehicles were defectively designed or manufactured, were not EPA-compliant, and were not suitable for their intended use.  Volkswagen nevertheless failed to warn Plaintiff about these defects despite having a duty to do so.

378.   Volkswagen owed Plaintiff a duty to disclose the defective nature of the CleanDiesel engine system in the Affected Vehicles, because Volkswagen:

a)   Possessed exclusive knowledge of the defects rendering the Affected Vehicles illegal under EPA standards;

b)   Intentionally concealed the defects associated with CleanDiesel through its deceptive marketing campaigns that it designed to hide the defects in the CleanDiesel engine system; and/or

c)   Made incomplete representations about the characteristics and performance of the CleanDiesel engine system generally, while purposefully withholding material facts from Plaintiff that contradicted these representations.

379.   Volkswagen's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff, about the true performance and characteristics of the CleanDiesel engine system.

380.   As a result of its violations of the CUTPA detailed above, Volkswagen caused actual damage to Plaintiff and, if not stopped, will continue to harm Plaintiff. Plaintiff currently owns or leases, or within the class period has owned or leased, an Affected Vehicle that is defective.  Defects associated with the CleanDiesel engine system have caused the value of Affected Vehicles to decrease.

-124-

381.   Plaintiff and the Class sustained damages as a result of the Volkswagen's unlawful acts and are, therefore, entitled to damages and other relief as provided under the CUTPA.

382.   Plaintiff also seeks court costs and attorneys' fees as a result of Volkswagen's violation of the CUTPA as provided in CONN. GEN. STAT. ANN. § 42-110g(d).  A copy of this Complaint has been mailed to the Attorney General and the Commissioner of Consumer Protection of the State of Connecticut in accordance with CONN. GEN. STAT. ANN. § 42-110g(c).

**COUNT II**
**BREACH OF CONTRACT**
**(Based on Connecticut Law)**

383.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

384.   Plaintiff brings this Count on behalf of new vehicle or certified pre-owned vehicle purchasers in the Connecticut Subclass.

385.   Volkswagen's misrepresentations and omissions alleged herein, including Volkswagen's failure to disclose the existence of the CleanDiesel engine system's defect and/or defective design as alleged herein, caused Plaintiff and the other Connecticut Subclass members to make their purchases or leases of their Affected Vehicles.  Absent those misrepresentations and omissions, Plaintiff and the other Connecticut Subclass members would not have purchased or leased these Affected Vehicles, would not have purchased or leased these Affected Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain the CleanDiesel engine system and which were not marketed as including such a system.  Accordingly, Plaintiff and the other Connecticut Subclass members overpaid for their Affected Vehicles and did not receive the benefit of their bargain.

-125-

386.   Each and every sale or lease of an Affected Vehicle by an authorized Volkswagen dealer constitutes a contract between Volkswagen and the purchaser or lessee.  Volkswagen breached these contracts by selling or leasing Plaintiff and the other Connecticut Subclass members defective Affected Vehicles and by misrepresenting or failing to disclose the existence of the CleanDiesel engine system's defect and/or defective design, including information known to Volkswagen rendering each Affected Vehicle non-EPA-compliant, and thus less valuable, than vehicles not equipped with a CleanDiesel engine system.

387.   As a direct and proximate result of Volkswagen's breach of contract, Plaintiff and the Connecticut Subclass have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## COUNT III
## FRAUDULENT CONCEALMENT
### (Based on Connecticut Law)

388.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

389.   Plaintiff brings this Count on behalf of the Connecticut Subclass.

390.   Volkswagen intentionally concealed that the CleanDiesel engine systems were not EPA-compliant and used a "defeat device," or acted with reckless disregard for the truth, and denied Plaintiff and the other Class members information that is highly relevant to their purchasing decision.

391.   Volkswagen further affirmatively misrepresented to Plaintiff in advertising and other forms of communication, including standard and uniform material provided with each car, that the Affected Vehicles it was selling were new, had no significant defects, complied with EPA regulations and would perform and operate properly when driven in normal usage.

392.   Volkswagen knew these representations were false when made.

393.   The Affected Vehicles purchased or leased by Plaintiff and the other Class members were, in fact, defective, non-EPA compliant, unsafe, and unreliable because the Affected Vehicles contained faulty and defective CleanDiesel engine system, as alleged herein.

394.   Volkswagen had a duty to disclose that these Affected Vehicles were defective, unsafe, non-EPA compliant and unreliable in that certain crucial emissions functions of the Affected Vehicles would be rendered inoperative due to the "defeat device" installed in the defective CleanDiesel engine system, because Plaintiff and the other Class members relied on Volkswagen's material representations that the Affected Vehicles they were purchasing were safe, environmentally clean, efficient and free from defects.

395.   The aforementioned concealment was material because if it had been disclosed Plaintiff and the other Class members would not have bought or leased the Affected Vehicles, or would not have bought or leased those Vehicles at the prices they paid.

396.   The aforementioned representations were material because they were facts that would typically be relied on by a person purchasing or leasing a new motor vehicle.  Volkswagen knew or recklessly disregarded that its representations were false because it knew that it had to use the "defeat device" in order for Affected Vehicles to pass EPA emissions requirements.  Volkswagen intentionally made the false statements in order to sell Affected Vehicles.

397.   Plaintiff and the other Class members relied on Volkswagen's reputation – along with Volkswagen's failure to disclose the faulty and defective nature of the CleanDiesel engine system and Volkswagen's affirmative assurance that its Affected Vehicles were safe and reliable, and other similar false statements – in purchasing or leasing Volkswagen's Affected Vehicles.

-127-

398.   As a result of their reliance, Plaintiff and the other Class members have been injured in an amount to be proven at trial, including, but not limited to, their lost benefit of the bargain and overpayment at the time of purchase or lease and/or the diminished value of their Affected Vehicles.

399.   Volkswagen's conduct was knowing, intentional, with malice, demonstrated a complete lack of care, and was in reckless disregard for the rights of Plaintiff and the other Class members.  Plaintiff and the other Class members are therefore entitled to an award of punitive damages.

**I.      Claims Brought on Behalf of the Delaware Subclass**

**COUNT I**
**VIOLATION OF THE DELAWARE CONSUMER FRAUD ACT**
**(6 DEL. CODE § 2513, *ET SEQ.*)**

400.   Plaintiff John Gauger ("Plaintiff," for purposes of all Delaware Subclass Counts) incorporates by reference all preceding allegations as though fully set forth herein.

401.   This claim is brought only on behalf of the Delaware Subclass.

402.   Defendants are each a "person" within the meaning of 6 DEL. CODE § 2511(7).

403.   The Delaware Consumer Fraud Act ("Delaware CFA") prohibits the "act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale, lease or advertisement of any merchandise, whether or not any person has in fact been misled, deceived or damaged thereby."  6 DEL. CODE § 2513(a).

404.   Volkswagen participated in deceptive trade practices that violated the Delaware CFA as described herein.  In the course of its business, Volkswagen installed the "defeat device" and concealed that its CleanDiesel systems failed EPA

-128-

regulations as described herein and otherwise engaged in activities with a tendency or capacity to deceive.  Volkswagen also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of Affected Vehicles.

405.   Volkswagen has known of the true characteristics of its CleanDiesel engine systems for at least six years, but concealed all of that information until recently.

406.   Volkswagen was also aware that it valued profits over environmental cleanliness, efficiency, and lawfulness, and that it was manufacturing, selling and distributing vehicles throughout the United States that did not comply with EPA regulations.  Volkswagen concealed this information as well.

407.   By failing to disclose and by actively concealing the "defeat device" and the true cleanliness and performance of the CleanDiesel engine system, by marketing its vehicles as safe, reliable, environmentally clean, efficient, and of high quality, and by presenting itself as a reputable manufacturer that valued safety, environmental cleanliness and efficiency, and stood behind its vehicles after they were sold, Volkswagen engaged in deceptive business practices in violation of the Delaware CFA.

408.   In the course of Volkswagen's business, it willfully failed to disclose and actively concealed the use of the "defeat device" and true cleanliness and efficiency of the CleanDiesel engine system and serious defects discussed above.  Volkswagen compounded the deception by repeatedly asserting that the Affected Vehicles were safe, reliable, environmentally clean, efficient, and of high quality, and by claiming to be a reputable manufacturer that valued safety, environmental cleanliness and efficiency, and stood behind its vehicles once they are on the road.

-129-

409.   Volkswagen's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff, about the true cleanliness and efficiency of the CleanDiesel engine system, the quality of the Volkswagen and Audi brands, the devaluing of safety, integrity and lawfulness at Volkswagen, and the true value of the Affected Vehicles.

410.   Volkswagen intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with an intent to mislead Plaintiff and the Delaware Subclass.

411.   Volkswagen knew or should have known that its conduct violated the Delaware CFA.

412.   As alleged above, Volkswagen made material statements about the safety, cleanliness, efficiency and reliability of the Affected Vehicles and the Volkswagen and Audi brands that were either false or misleading.

413.   Volkswagen owed Plaintiffs a duty to disclose the true safety, cleanliness, efficiency and reliability of the Affected Vehicles and the devaluing of safety, integrity and lawfulness at Volkswagen, because Volkswagen:

    a.    Possessed exclusive knowledge that it valued profits over environmental cleanliness, efficiency, and lawfulness, and that it was manufacturing, selling and distributing vehicles throughout the United States that did not comply with EPA regulations;

    b.    Intentionally concealed the foregoing from Plaintiffs; and/or

    c.    Made incomplete representations about the safety, cleanliness, efficiency and reliability of the Affected Vehicles generally, and the use of the "defeat device" and true nature of the CleanDiesel engine system in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

414.   Because Volkswagen fraudulently concealed the "defeat device" and the true cleanliness and performance of the CleanDiesel engine system, resulting in a raft of negative publicity once the use of the "defeat device" and true characteristics of the

-130-

CleanDiesel engine system finally began to be disclosed, the value of the Affected Vehicles has greatly diminished. In light of the stigma attached to those vehicles by Volkswagen's conduct, they are now worth significantly less than they otherwise would be.

415.   Volkswagen's fraudulent use of the "defeat device" and its concealment of the true characteristics of the CleanDiesel engine system were material to Plaintiffs and the Delaware Subclass. A vehicle made by a reputable manufacturer of environmentally friendly vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of environmentally dirty vehicles that conceals its polluting engines rather than promptly remedying them.

416.   Plaintiff and the Delaware Subclass suffered ascertainable loss caused by Volkswagen's misrepresentations and its concealment of and failure to disclose material information. Class members who purchased Affected Vehicles either would have paid less for their vehicles or would not have purchased or leased them at all.

417.   Volkswagen had an ongoing duty to all Volkswagen and Audi customers to refrain from unfair and deceptive acts or practices under the Delaware CFA. All owners of Affected Vehicles suffered ascertainable loss in the form of diminished value of their vehicles as a result of Volkswagen's deceptive and unfair acts and practices made in the course of Volkswagen's business.

418.   Volkswagen's violations present a continuing risk to Plaintiff as well as to the general public. Volkswagen's unlawful acts and practices complained of herein affect the public interest.

419.   As a direct and proximate result of Volkswagen's violations of the Delaware CFA, Plaintiff and the Delaware Subclass have suffered injury-in-fact and/or actual damage.

420.   Plaintiff seeks damages under the Delaware CFA for injury resulting from the direct and natural consequences of Volkswagen's unlawful conduct. *See*,

-131-

*e.g.*, *Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1077 (Del. 1983).  Plaintiff also seeks an order enjoining Volkswagen's unfair, unlawful, and/or deceptive practices, declaratory relief, attorneys' fees, and any other just and proper relief available under the Delaware CFA.

421.   Volkswagen engaged in gross, oppressive or aggravated conduct justifying the imposition of punitive damages.

## COUNT II
## FRAUD BY CONCEALMENT

422.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

423.   This claim is brought on behalf of the Delaware Subclass.

424.   Volkswagen intentionally concealed and suppressed material facts concerning the quality of the Affected Vehicles.  As alleged in this Complaint, notwithstanding references in the very model names of the subject vehicles as "Clean Diesel," or to their engines as "TDI Clean Diesel" engines, Volkswagen engaged in a secret scheme to evade federal and state vehicle emissions standards by installing software designed to conceal its vehicles' emissions of the pollutant nitrogen oxide, which contributes to the creation of ozone and smog.  The software installed on the vehicles at issue was designed nefariously to kick-in during emissions certification testing, such that the vehicles would show far lower emissions than when actually operating on the road.  The result was what Volkswagen intended: vehicles passed emissions certifications by way of deliberately induced false readings.  Reportedly, Volkswagen's deliberate, secret scheme resulted in noxious emissions from these vehicles at up to 40 times applicable standards.

425.   Plaintiffs and Delaware Subclass members reasonably relied upon Volkswagen's false representations.  They had no way of knowing that Volkswagen's representations were false and gravely misleading.  As alleged herein, Volkswagen employed extremely sophisticated methods of deception.  Plaintiffs and Delaware

-132-

Subclass members did not, and could not, unravel Volkswagen's deception on their own.

426.   Volkswagen concealed and suppressed material facts concerning what is evidently the true culture of Volkswagen—one characterized by an emphasis on profits and sales above compliance with federal and state clean air laws, and emissions regulations that are meant to protect the public and consumers.  It also emphasized profits and sales over the trust that Plaintiffs and Delaware Subclass members placed in its representations.  As one customer, Priya Shah, put it in a quotation cited by the *Los Angeles Times* in a September 18, 2015 article, "It's just a blatant disregard and intentional manipulation of the system.  That's just a whole other level of not only lying to the government, but also lying to your consumer.  People buy diesel cars from Volkswagen because they feel they are clean diesel cars."  In the words of Ms. Shah, which no doubt reflect the sentiments of all other CleanDiesel vehicle buyers, "I don't want to be spewing noxious gases into the environment."

427.   Necessarily, Volkswagen also took steps to ensure that its employees did not reveal the details of its scheme to regulators or consumers, including Plaintiffs and Delaware Subclass members.  Volkswagen did so in order to boost the reputations of its vehicles and to falsely assure purchasers and lessors of its vehicles, including previously owned vehicles, that Volkswagen is a reputable manufacturer that complies with applicable law, including federal and state clean air laws and emissions regulations, and that its vehicles likewise comply with applicable law and regulations.  Volkswagen's false representations were material to consumers, both because they concerned the quality of the Affected Vehicles, including their compliance with applicable federal and state laws and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles.  As Volkswagen well knew, its customers, including Plaintiffs and Delaware

-133-

Subclass members, highly valued that the vehicles they were purchasing or leasing were *clean* diesel cars, and they paid accordingly.

428.   Volkswagen had a duty to disclose its emissions scheme because knowledge of the scheme and its details were known and/or accessible only to Volkswagen, because Volkswagen had exclusive knowledge as to implementation and maintenance of its scheme, and because Volkswagen knew the facts were not known to or reasonably discoverable by Plaintiffs or Delaware Subclass members. Volkswagen also had a duty to disclose because it made general affirmative representations about the qualities of its vehicles with respect to emissions standards, starting with references to them as *clean* diesel cars, or cars with *clean* diesel engines, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding its emissions scheme, the actual emissions of its vehicles, its actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and its actual practices with respect to the vehicles at issue.  Having volunteered to provide information to Plaintiffs, Volkswagen had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiffs and Delaware Subclass members.  Whether a manufacturer's products comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certification testing their vehicles must pass.  Volkswagen represented to Plaintiffs and Delaware Subclass members that they were purchasing *clean* diesel vehicles, and certification testing appeared to confirm this—except that, secretly, Volkswagen had subverted the testing process thoroughly.

429.   Volkswagen actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Volkswagen money, and it did so at the expense of Plaintiffs and Delaware Subclass members.

430.   On information and belief, Volkswagen has still not made full and adequate disclosures, and continues to defraud Plaintiffs and Delaware Subclass members by concealing material information regarding the emissions qualities of its vehicles and its emissions scheme.

431.   Plaintiffs and Delaware Subclass members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly "clean" diesel cars manufactured by Volkswagen, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them.  Plaintiffs' and Delaware Subclass Members' actions were justified.  Volkswagen was in exclusive control of the material facts, and such facts were not known to the public, Plaintiffs, or Delaware Subclass members.

432.   Because of the concealment and/or suppression of the facts, Plaintiffs and Delaware Subclass members have sustained damage because they own vehicles that are diminished in value as a result of Volkswagen's concealment of the true quality and quantity of those vehicles' emissions and Volkswagen's failure to timely disclose the actual emissions qualities and quantities of hundreds of thousands of Volkswagen- and Audi-branded vehicles and the serious issues engendered by Volkswagen's corporate policies.  Had Plaintiffs and Delaware Subclass members been aware of Volkswagen's emissions scheme, and the company's callous disregard for compliance with applicable federal and state laws and regulations, Plaintiffs and Delaware

-135-

Subclass members who purchased or leased new or previously owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

433.   The value of Plaintiffs' and Delaware Subclass Members' vehicles has diminished as a result of Volkswagen's fraudulent concealment of its emissions scheme, which has greatly tarnished the Volkswagen and Audi brand names attached to Plaintiffs' and Delaware Subclass members' vehicles and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.  In addition, Class members are entitled to damages for loss of use, costs of additional fuel, costs of unused warranties, and other damages to be proved at trial.

434.   Accordingly, Volkswagen is liable to Plaintiffs and Delaware Subclass members for damages in an amount to be proven at trial.

435.   Volkswagen's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and Delaware Subclass members' rights and the representations that Volkswagen made to them, in order to enrich Volkswagen.  To the extent permitted under applicable law, Volkswagen's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**COUNT III**
**BREACH OF CONTRACT**
**(BASED ON DELAWARE LAW)**

436.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

437.   Plaintiff brings this Count on behalf of new vehicle or certified pre-owned vehicle purchasers in the Delaware Subclass.

438.   Volkswagen's misrepresentations and omissions alleged herein, including Volkswagen's failure to disclose the existence of the CleanDiesel engine system's

-136-

defect and/or defective design as alleged herein, caused Plaintiff and the other Delaware Subclass members to make their purchases or leases of their Affected Vehicles.  Absent those misrepresentations and omissions, Plaintiff and the other Delaware Subclass members would not have purchased or leased these Affected Vehicles, would not have purchased or leased these Affected Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain the CleanDiesel engine system and which were not marketed as including such a system.  Accordingly, Plaintiff and the other Delaware Subclass members overpaid for their Affected Vehicles and did not receive the benefit of their bargain.

439.   Each and every sale or lease of an Affected Vehicle by an authorized Volkswagen dealer constitutes a contract between Volkswagen and the purchaser or lessee.  Volkswagen breached these contracts by selling or leasing Plaintiff and the other Delaware Subclass members defective Affected Vehicles and by misrepresenting or failing to disclose the existence of the CleanDiesel engine system's defect and/or defective design, including information known to Volkswagen rendering each Affected Vehicle non EPA-compliant, and thus less valuable, than vehicles not equipped with a CleanDiesel engine system.

440.   As a direct and proximate result of Volkswagen's breach of contract, Plaintiff and the Delaware Subclass have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

-137-

1

**J.      Claims Brought on Behalf of the District of Columbia Subclass**

2

**COUNT I**
**VIOLATION OF THE CONSUMER PROTECTION PROCEDURES ACT**
**(D.C. CODE § 28-3901, *ET SEQ.*)**

3

4      441.    Plaintiff Hanaa Rifaey ("Plaintiff," for purposes of all District of

5   Columbia ("DC") Subclass Counts) incorporates by reference all preceding allegations

6   as though fully set forth herein.

7      442.    This claim is brought only on behalf of the DC Subclass.

8      443.    Defendants are each a "person" under the Consumer Protection

9   Procedures Act ("District of Columbia CPPA"), D.C. CODE § 28-3901(a)(1).

10     444.    Class Members are "consumers," as defined by D.C. CODE § 28-

11   3901(1)(2), who purchased or leased one or more Affected Vehicles.

12     445.    Volkswagen's actions as set forth herein constitute "trade practices"

13   under D.C. CODE § 28-3901.

14     446.    Volkswagen participated in unfair or deceptive acts or practices that

15   violated the District of Columbia CPPA.  By fraudulently installing the "defeat

16   device" to make it appear that its CleanDiesel engine systems complied with EPA

17   regulations, Volkswagen engaged in unfair or deceptive practices prohibited by the

18   District of Columbia CPPA, D.C. CODE § 28-3901, *et seq.*, including:  (1) representing

19   that the Affected Vehicles have characteristics, uses, benefits, and qualities which they

20   do not have; (2) representing that the Affected Vehicles are of a particular standard,

21   quality, and grade when they are not; (3) advertising the Affected Vehicles with the

22   intent not to sell them as advertised; (4) representing that the subject of a transaction

23   involving the Affected Vehicles has been supplied in accordance with a previous

24   representation when it has not; (5) misrepresenting as to a material fact which has a

25   tendency to mislead; and (6) failing to state a material fact when such failure tends to

26   mislead.

27

28

-138-

447.   In the course of its business in trade or commerce, Volkswagen installed the "defeat device" and concealed that its CleanDiesel systems failed EPA regulations as described herein and otherwise engaged in activities with a tendency or capacity to deceive.  Volkswagen also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of Affected Vehicles.

448.   Volkswagen has known of the true characteristics of its CleanDiesel engine systems for at least six years, but concealed all of that information until recently.

449.   Volkswagen was also aware that it valued profits over environmental cleanliness, efficiency, and lawfulness, and that it was manufacturing, selling and distributing vehicles throughout the United States that did not comply with EPA regulations.  Volkswagen concealed this information as well.

450.   By failing to disclose and by actively concealing the "defeat device" and the true cleanliness and performance of the CleanDiesel engine system, by marketing its vehicles as safe, reliable, environmentally clean, efficient, and of high quality, and by presenting itself as a reputable manufacturer that valued safety, environmental cleanliness and efficiency, and stood behind its vehicles after they were sold, Volkswagen engaged in unfair and deceptive business practices in violation of the District of Columbia CPPA.

451.   In the course of Volkswagen's business, it willfully failed to disclose and actively concealed the use of the "defeat device" and true cleanliness and efficiency of the CleanDiesel engine system and serious defects discussed above.  Volkswagen compounded the deception by repeatedly asserting that the Affected Vehicles were safe, reliable, environmentally clean, efficient, and of high quality, and by claiming to

-139-

be a reputable manufacturer that valued safety, environmental cleanliness and efficiency, and stood behind its vehicles once they are on the road.

452.   Volkswagen's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff, about the true cleanliness and efficiency of the CleanDiesel engine system, the quality of the Volkswagen and Audi brands, the devaluing of safety, integrity and lawfulness at Volkswagen, and the true value of the Affected Vehicles.

453.   Volkswagen intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with an intent to mislead Plaintiff and the DC Subclass.

454.   Volkswagen knew or should have known that its conduct violated the District of Columbia CPPA.

455.   As alleged above, Volkswagen made material statements about the safety, cleanliness, efficiency and reliability of the Affected Vehicles and the Volkswagen and Audi brands that were either false or misleading.

456.   Volkswagen owed Plaintiffs a duty to disclose the true safety, cleanliness, efficiency and reliability of the Affected Vehicles and the devaluing of safety, integrity and lawfulness at Volkswagen, because Volkswagen:

   a.   Possessed exclusive knowledge that it valued profits over environmental cleanliness, efficiency, and lawfulness, and that it was manufacturing, selling and distributing vehicles throughout the United States that did not comply with EPA regulations;

   b.   Intentionally concealed the foregoing from Plaintiffs; and/or

   c.   Made incomplete representations about the safety, cleanliness, efficiency and reliability of the Affected Vehicles generally, and the "defeat device" and true nature of the CleanDiesel engine system in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

-140-

457.   Because Volkswagen fraudulently concealed the "defeat device" and the true cleanliness and performance of the CleanDiesel engine system, resulting in a raft of negative publicity once the use of the "defeat device" and true characteristics of the CleanDiesel engine system finally began to be disclosed, the value of the Affected Vehicles has greatly diminished.  In light of the stigma attached to those vehicles by Volkswagen's conduct, they are now worth significantly less than they otherwise would be.

458.   Volkswagen's fraudulent use of the "defeat device" and its concealment of the true characteristics of the CleanDiesel engine system were material to Plaintiffs and the DC Subclass.  A vehicle made by a reputable manufacturer of environmentally friendly vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of environmentally dirty vehicles that conceals its polluting engines rather than promptly remedying them.

459.   Plaintiffs and the DC Subclass suffered ascertainable loss caused by Volkswagen's misrepresentations and its concealment of and failure to disclose material information.  Class members who purchased Affected Vehicles either would have paid less for their vehicles or would not have purchased or leased them at all.

460.   All owners of Affected Vehicles suffered ascertainable loss in the form of diminished value of their vehicles as a result of Volkswagen's deceptive and unfair acts and practices made in the course of Volkswagen's business.

461.   Volkswagen's violations present a continuing risk to Plaintiffs as well as to the general public.  Volkswagen's unlawful acts and practices complained of herein affect the public interest.

462.   As a direct and proximate result of Volkswagen's violations of the District of Columbia CPPA, Plaintiffs and the DC Subclass have suffered injury-in-fact and/or actual damage.

010549-11  816608 V1

463.   Plaintiff and the DC Subclass are entitled to recover treble damages or $1,500, whichever is greater, punitive damages, reasonable attorneys' fees, and any other relief the Court deems proper, under D.C. CODE § 28-3901.

464.   Plaintiffs seek punitive damages against Volkswagen because Volkswagen's conduct evidences malice and/or egregious conduct.  Volkswagen maliciously and egregiously misrepresented the safety, cleanliness, efficiency and reliability of the Affected Vehicles, deceived Class Members, and concealed material facts that only it knew, all to avoid the expense and public relations nightmare of correcting its defective and environmentally dirty CleanDiesel engine system. Volkswagen's unlawful conduct constitutes malice warranting punitive damages.

## COUNT II
## FRAUD BY CONCEALMENT

465.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

466.   This claim is brought on behalf of the DC Subclass.

467.   Volkswagen intentionally concealed and suppressed material facts concerning the quality of the Affected Vehicles.  As alleged in this Complaint, notwithstanding references in the very model names of the subject vehicles as "Clean Diesel," or to their engines as "TDI Clean Diesel" engines, Volkswagen engaged in a secret scheme to evade federal and state vehicle emissions standards by installing software designed to conceal its vehicles' emissions of the pollutant nitrogen oxide, which contributes to the creation of ozone and smog.  The software installed on the vehicles at issue was designed nefariously to kick-in during emissions certification testing, such that the vehicles would show far lower emissions than when actually operating on the road.  The result was what Volkswagen intended: vehicles passed emissions certifications by way of deliberately induced false readings.  Reportedly, Volkswagen's deliberate, secret scheme resulted in noxious emissions from these vehicles at up to 40 times applicable standards.

-142-

468.   Plaintiffs and DC Subclass members reasonably relied upon Volkswagen's false representations.  They had no way of knowing that Volkswagen's representations were false and gravely misleading.  As alleged herein, Volkswagen employed extremely sophisticated methods of deception.  Plaintiffs and DC Subclass members did not, and could not, unravel Volkswagen's deception on their own.

469.   Volkswagen concealed and suppressed material facts concerning what is evidently the true culture of Volkswagen—one characterized by an emphasis on profits and sales above compliance with federal and state clean air laws, and emissions regulations that are meant to protect the public and consumers.  It also emphasized profits and sales over the trust that Plaintiffs and DC Subclass members placed in its representations.  As one customer, Priya Shah, put it in a quotation cited by the *Los Angeles Times* in a September 18, 2015 article, "It's just a blatant disregard and intentional manipulation of the system.  That's just a whole other level of not only lying to the government, but also lying to your consumer.  People buy diesel cars from Volkswagen because they feel they are clean diesel cars."  In the words of Ms. Shah, which no doubt reflect the sentiments of all other CleanDiesel vehicle buyers, "I don't want to be spewing noxious gases into the environment."

470.   Necessarily, Volkswagen also took steps to ensure that its employees did not reveal the details of its scheme to regulators or consumers, including Plaintiffs and DC Subclass members.  Volkswagen did so in order to boost the reputations of its vehicles and to falsely assure purchasers and lessors of its vehicles, including previously owned vehicles, that Volkswagen is a reputable manufacturer that complies with applicable law, including federal and state clean air laws and emissions regulations, and that its vehicles likewise comply with applicable law and regulations.  Volkswagen's false representations were material to consumers, both because they concerned the quality of the Affected Vehicles, including their compliance with applicable federal and state laws and regulations regarding clean air and emissions,

-143-

and also because the representations played a significant role in the value of the vehicles. As Volkswagen well knew, its customers, including Plaintiffs and DC Subclass members, highly valued that the vehicles they were purchasing or leasing were *clean* diesel cars, and they paid accordingly.

471. Volkswagen had a duty to disclose its emissions scheme because knowledge of the scheme and its details were known and/or accessible only to Volkswagen, because Volkswagen had exclusive knowledge as to implementation and maintenance of its scheme, and because Volkswagen knew the facts were not known to or reasonably discoverable by Plaintiffs or DC Subclass members. Volkswagen also had a duty to disclose because it made general affirmative representations about the qualities of its vehicles with respect to emissions standards, starting with references to them as *clean* diesel cars, or cars with *clean* diesel engines, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding its emissions scheme, the actual emissions of its vehicles, its actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and its actual practices with respect to the vehicles at issue. Having volunteered to provide information to Plaintiffs, Volkswagen had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiffs and DC Subclass members. Whether a manufacturer's products comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certification testing their vehicles must pass. Volkswagen represented to Plaintiffs and DC Subclass members that they were purchasing *clean* diesel vehicles, and certification testing appeared to confirm this—except that, secretly, Volkswagen had subverted the testing process thoroughly.

-144-

472.   Volkswagen actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Volkswagen money, and it did so at the expense of Plaintiffs and DC Subclass members.

473.   On information and belief, Volkswagen has still not made full and adequate disclosures, and continues to defraud Plaintiffs and DC Subclass members by concealing material information regarding the emissions qualities of its vehicles and its emissions scheme.

474.   Plaintiffs and DC Subclass members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly "clean" diesel cars manufactured by Volkswagen, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them.  Plaintiffs' and DC Subclass Members' actions were justified.  Volkswagen was in exclusive control of the material facts, and such facts were not known to the public, Plaintiffs, or DC Subclass members.

475.   Because of the concealment and/or suppression of the facts, Plaintiffs and DC Subclass members have sustained damage because they own vehicles that are diminished in value as a result of Volkswagen's concealment of the true quality and quantity of those vehicles' emissions and Volkswagen's failure to timely disclose the actual emissions qualities and quantities of hundreds of thousands of Volkswagen- and Audi-branded vehicles and the serious issues engendered by Volkswagen's corporate policies.  Had Plaintiffs and DC Subclass members been aware of Volkswagen's emissions scheme, and the company's callous disregard for compliance with applicable federal and state laws and regulations, Plaintiffs and DC Subclass members

-145-

who purchased or leased new or previously owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

476. The value of Plaintiffs' and DC Subclass Members' vehicles has diminished as a result of Volkswagen's fraudulent concealment of its emissions scheme, which has greatly tarnished the Volkswagen and Audi brand names attached to Plaintiffs' and DC Subclass members' vehicles and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles. In addition, Class members are entitled to damages for loss of use, costs of additional fuel, costs of unused warranties, and other damages to be proved at trial.

477. Accordingly, Volkswagen is liable to Plaintiffs and DC Subclass members for damages in an amount to be proven at trial.

478. Volkswagen's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and DC Subclass members' rights and the representations that Volkswagen made to them, in order to enrich Volkswagen. To the extent permitted under applicable law, Volkswagen's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**COUNT III**
**BREACH OF CONTRACT**
**(BASED ON DISTRICT OF COLUMBIA LAW)**

479. Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

480. Plaintiff brings this Count on behalf of new vehicle or certified pre-owned vehicle purchasers in the DC Subclass.

481. Volkswagen's misrepresentations and omissions alleged herein, including Volkswagen's failure to disclose the existence of the CleanDiesel engine system's

-146-

defect and/or defective design as alleged herein, caused Plaintiff and the other DC Subclass members to make their purchases or leases of their Affected Vehicles. Absent those misrepresentations and omissions, Plaintiff and the other DC Subclass members would not have purchased or leased these Affected Vehicles, would not have purchased or leased these Affected Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain the CleanDiesel engine system and which were not marketed as including such a system. Accordingly, Plaintiff and the other DC Subclass members overpaid for their Affected Vehicles and did not receive the benefit of their bargain.

482. Each and every sale or lease of an Affected Vehicle by an authorized Volkswagen dealer constitutes a contract between Volkswagen and the purchaser or lessee. Volkswagen breached these contracts by selling or leasing Plaintiff and the other DC Subclass members defective Affected Vehicles and by misrepresenting or failing to disclose the existence of the CleanDiesel engine system's defect and/or defective design, including information known to Volkswagen rendering each Affected Vehicle non EPA-compliant, and thus less valuable, than vehicles not equipped with a CleanDiesel engine system.

483. As a direct and proximate result of Volkswagen's breach of contract, Plaintiff and the DC Subclass have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

**K.      Claims Brought on Behalf of the Florida Subclass**

**COUNT I**
**VIOLATIONS OF THE FLORIDA DECEPTIVE & UNFAIR TRADE**
**PRACTICES ACT**
**(FLA. STAT. §§ 501.201, *et seq.*)**

484. Plaintiff Deborah Markward ("Plaintiff," for purposes of all Florida Subclass Counts) incorporates by reference all preceding allegations as though fully set forth herein.

-147-

485.   Plaintiff brings this Count on behalf of the Florida Subclass.

486.   Plaintiffs are "consumers" within the meaning of Florida Unfair and Deceptive Trade Practices Act, FLA. STAT. § 501.203(7).

487.   Volkswagen engaged in "trade or commerce" within the meaning of FLA. STAT. § 501.203(8).

488.   Florida's Deceptive and Unfair Trade Practices Act prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."  FLA. STAT. § 501.204(1). Volkswagen participated in unfair and deceptive trade practices that violated the FUDTPA as described herein.

489.   In the course of Volkswagen's business, it willfully failed to disclose and actively concealed that the CleanDiesel Engine System was non-EPA compliant, and the use of the "defeat device" in Affected Vehicles as described above.  Accordingly, Volkswagen engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices as defined in FLA. STAT. § 501.204(1), including representing that Affected Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that Affected Vehicles are of a particular standard and quality when they are not; advertising Affected Vehicles with the intent not to sell them as advertised; and otherwise engaging in conduct likely to deceive.

490.   In the course of its business, Volkswagen installed the "defeat device" and concealed that its CleanDiesel systems failed EPA regulations as described herein and otherwise engaged in activities with a tendency or capacity to deceive. Volkswagen also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of Affected Vehicles.

-148-

491.   Volkswagen has known of its use of the "defeat device" and the true nature of its CleanDiesel engine system for at least six years, but concealed all of that information until recently.

492.   Volkswagen was also aware that it valued profits over environmental cleanliness, efficiency, and lawfulness, and that it was manufacturing, selling and distributing vehicles throughout the United States that did not comply with EPA regulations.  Volkswagen concealed this information as well.

493.   By failing to disclose and by actively concealing the "defeat device" and the true cleanliness and performance of the CleanDiesel engine system, by marketing its vehicles as safe, reliable, environmentally clean, efficient, and of high quality, and by presenting itself as a reputable manufacturer that valued safety, environmental cleanliness and efficiency, and stood behind its vehicles after they were sold, Volkswagen engaged in deceptive business practices in violation of the FUDTPA.

494.   In the course of Volkswagen's business, it willfully failed to disclose and actively concealed the use of the "defeat device" and true cleanliness and efficiency of the CleanDiesel engine system and serious defects discussed above.  Volkswagen compounded the deception by repeatedly asserting that the Affected Vehicles were safe, reliable, environmentally clean, efficient, and of high quality, and by claiming to be a reputable manufacturer that valued safety, environmental cleanliness and efficiency, and stood behind its vehicles once they are on the road.

495.   Volkswagen's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff, about the true cleanliness and efficiency of the CleanDiesel engine system, the quality of the Volkswagen and Audi brands, the devaluing of environmental cleanliness and integrity at Volkswagen, and the true value of the Affected Vehicles.

010549-11  816608 V1

496.   Volkswagen intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with an intent to mislead Plaintiff and the Florida Subclass.

497.   Volkswagen knew or should have known that its conduct violated the FUDTPA.

498.   As alleged above, Volkswagen made material statements about the safety, cleanliness, efficiency and reliability of the Affected Vehicles and the Volkswagen and Audi brands that were either false or misleading.

499.   Volkswagen owed Plaintiffs a duty to disclose the true safety, cleanliness, efficiency and reliability of the Affected Vehicles and the devaluing of environmental cleanliness and integrity at Volkswagen, because Volkswagen:

    a.      Possessed exclusive knowledge that it valued profits over environmental cleanliness, efficiency, and lawfulness, and that it was manufacturing, selling and distributing vehicles throughout the United States that did not comply with EPA regulations;

    b.      Intentionally concealed the foregoing from Plaintiffs; and/or

    c.      Made incomplete representations about the safety, cleanliness, efficiency and reliability of the Affected Vehicles generally, and the "defeat device" and true nature of the CleanDiesel engine system in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

500.   Because Volkswagen fraudulently concealed the "defeat device" and the true cleanliness and performance of the CleanDiesel engine system, resulting in a raft of negative publicity once the use of the "defeat device" and true characteristics of the CleanDiesel engine system finally began to be disclosed, the value of the Affected Vehicles has greatly diminished.  In light of the stigma attached to those vehicles by Volkswagen's conduct, they are now worth significantly less than they otherwise would be.

010549-11  816608 V1

501.   Volkswagen's fraudulent use of the "defeat device" and its concealment of the true characteristics of the CleanDiesel engine system were material to Plaintiffs and the Florida Subclass.  A vehicle made by a reputable manufacturer of environmentally friendly vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of environmentally dirty vehicles that conceals its polluting engines rather than promptly remedying them.

502.   Plaintiffs and the Florida Subclass suffered ascertainable loss caused by Volkswagen's misrepresentations and its concealment of and failure to disclose material information.  Class members who purchased the Affected Vehicles either would have paid less for their vehicles or would not have purchased or leased them at all.

503.   Volkswagen had an ongoing duty to all Volkswagen and Audi customers to refrain from unfair and deceptive acts or practices under the FUDTPA.  All owners of Affected Vehicles suffered ascertainable loss in the form of diminished value of their vehicles as a result of Volkswagen's deceptive and unfair acts and practices made in the course of Volkswagen's business.

504.   Volkswagen's violations present a continuing risk to Plaintiffs as well as to the general public.  Volkswagen's unlawful acts and practices complained of herein affect the public interest.

505.   As a direct and proximate result of Volkswagen's violations of the FUDTPA, Plaintiffs and the Florida Subclass have suffered injury-in-fact and/or actual damage.

506.   Volkswagen's actions as set forth above occurred in the conduct of trade or commerce.

507.   Plaintiff and the other Class members were injured as a result of Volkswagen's conduct in that Plaintiff and the other Class members overpaid for their Affected Vehicles and did not receive the benefit of their bargain, and their Affected

-151-

Vehicles have suffered a diminution in value.  These injuries are the direct and natural consequence of Volkswagen's misrepresentations and omissions.

**COUNT II**
**BREACH OF CONTRACT**
**(Based on Florida Law)**

508.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

509.   Plaintiff brings this Count on behalf of new vehicle or certified pre-owned vehicle purchasers in the Florida Subclass.

510.   Volkswagen's misrepresentations and omissions alleged herein, including Volkswagen's failure to disclose the existence of the CleanDiesel engine system's defect and/or defective design as alleged herein, caused Plaintiff and the other Florida Subclass members to make their purchases or leases of their Affected Vehicles. Absent those misrepresentations and omissions, Plaintiff and the other Florida Subclass members would not have purchased or leased these Affected Vehicles, would not have purchased or leased these Affected Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain the CleanDiesel engine system and which were not marketed as including such a system.  Accordingly, Plaintiff and the other Florida Subclass members overpaid for their Affected Vehicles and did not receive the benefit of their bargain.

511.   Each and every sale or lease of an Affected Vehicle by an authorized Volkswagen dealer constitutes a contract between Volkswagen and the purchaser or lessee.  Volkswagen breached these contracts by selling or leasing Plaintiff and the other Florida Subclass members defective Affected Vehicles and by misrepresenting or failing to disclose the existence of the CleanDiesel engine system's defect and/or defective design, including information known to Volkswagen rendering each Affected Vehicle non EPA-compliant, and thus less valuable, than vehicles not equipped with a CleanDiesel engine system.

-152-

512.   As a direct and proximate result of Volkswagen's breach of contract, Plaintiff and the Florida Subclass have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

<div align="center">

**COUNT III**
**FRAUDULENT CONCEALMENT**
**(Based on Florida Law)**

</div>

513.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

514.   Plaintiff brings this Count on behalf of the Florida Subclass.

515.   Volkswagen intentionally concealed that the CleanDiesel engine systems were not EPA-compliant and used a "defeat device," or acted with reckless disregard for the truth, and denied Plaintiff and the other Class members information that is highly relevant to their purchasing decision.

516.   Volkswagen further affirmatively misrepresented to Plaintiff in advertising and other forms of communication, including standard and uniform material provided with each car, that the Affected Vehicles it was selling were new, had no significant defects, complied with EPA regulations and would perform and operate properly when driven in normal usage.

517.   Volkswagen knew these representations were false when made.

518.   The Affected Vehicles purchased or leased by Plaintiff and the other Class members were, in fact, defective, non-EPA-compliant, unsafe, and unreliable because the Affected Vehicles contained faulty and defective CleanDiesel engine system, as alleged herein.

519.   Volkswagen had a duty to disclose that these Affected Vehicles were defective, unsafe, non-EPA compliant and unreliable in that certain crucial emissions functions of the Affected Vehicles would be rendered inoperative due to the "defeat device" installed in the defective CleanDiesel engine system, because Plaintiff and the

<div align="center">-153-</div>

other Class members relied on Volkswagen's material representations that the Affected Vehicles they were purchasing were safe, environmentally clean, efficient and free from defects.

520.   The aforementioned concealment was material because if it had been disclosed Plaintiff and the other Class members would not have bought or leased the Affected Vehicles, or would not have bought or leased those Vehicles at the prices they paid.

521.   The aforementioned representations were material because they were facts that would typically be relied on by a person purchasing or leasing a new motor vehicle.  Volkswagen knew or recklessly disregarded that its representations were false because it knew that it had to use the "defeat device" in order for Affected Vehicles to pass EPA emissions requirements.  Volkswagen intentionally made the false statements in order to sell Affected Vehicles.

522.   Plaintiff and the other Class members relied on Volkswagen's reputation – along with Volkswagen's failure to disclose the faulty and defective nature of the CleanDiesel engine system and Volkswagen's affirmative assurance that its Affected Vehicles were safe and reliable, and other similar false statements – in purchasing or leasing Volkswagen's Affected Vehicles.

523.   As a result of their reliance, Plaintiff and the other Class members have been injured in an amount to be proven at trial, including, but not limited to, their lost benefit of the bargain and overpayment at the time of purchase or lease and/or the diminished value of their Affected Vehicles.

524.   Volkswagen's conduct was knowing, intentional, with malice, demonstrated a complete lack of care, and was in reckless disregard for the rights of Plaintiff and the other Class members.  Plaintiff and the other Class members are therefore entitled to an award of punitive damages.

-154-

**L.     Claims Brought on Behalf of the Georgia Subclass**

<div align="center">

**COUNT I**
**VIOLATION OF GEORGIA'S FAIR BUSINESS PRACTICES ACT**
**(GA. CODE ANN. § 10-1-390, *et seq.*)**

</div>

525.   Plaintiff John Brown ("Plaintiff," for purposes of all Georgia Subclass Counts) incorporates by reference all preceding allegations as though fully set forth herein.

526.   Plaintiffs intend to assert a claim under the Georgia Fair Business Practices Act ("Georgia FBPA") which declares "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce" to be unlawful, GA. CODE. ANN. § 10-1-393(a), including but not limited to "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have," "[r]epresenting that goods or services are of a particular standard, quality, or grade … if they are of another," and "[a]dvertising goods or services with intent not to sell them as advertised."  GA. CODE. ANN. § 10-1-393(b).  Plaintiffs will make a demand in satisfaction of GA. CODE. ANN.  § 10-1-399, and may amend this Complaint to assert claims under the Georgia FBPA once the required 30 days have elapsed.  This paragraph is included for purposes of notice only and is not intended to actually assert a claim under the Georgia FBPA.

<div align="center">

**COUNT II**
**VIOLATION OF GEORGIA'S UNIFORM DECEPTIVE TRADE PRACTICES ACT**
**(GA. CODE ANN. § 10-1-370, *et seq.*)**

</div>

527.   Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

528.   This claim is brought only on behalf of the Georgia Subclass.

529.   Volkswagen, Plaintiff, and the Georgia Subclass are "persons' within the meaning of Georgia Uniform Deceptive Trade Practices Act ("Georgia UDTPA"), GA. CODE. ANN. § 10-1-371(5).

<div align="center">

-155-

</div>

530.   The Georgia UDTPA prohibits "deceptive trade practices," which include the "misrepresentation of standard or quality of goods or services," and "engaging in any other conduct which similarly creates a likelihood of confusion or of misunderstanding."  GA. CODE. ANN. § 10-1-372(a).  By fraudulently installing the "defeat device" to make it appear that its CleanDiesel engine systems complied with EPA regulations, Volkswagen engaged in deceptive trade practices prohibited by the Georgia UDTPA.

531.   In the course of its business, Volkswagen installed the "defeat device" and concealed that its CleanDiesel systems failed EPA regulations as described herein and otherwise engaged in activities with a tendency or capacity to deceive. Volkswagen also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of Affected Vehicles.

532.   Volkswagen has known of its use of the "defeat device" and the true nature of its CleanDiesel engine system for at least six years, but concealed all of that information until recently.

533.   Volkswagen was also aware that it valued profits over environmental cleanliness, efficiency, and lawfulness, and that it was manufacturing, selling and distributing vehicles throughout the United States that did not comply with EPA regulations.  Volkswagen concealed this information as well.

534.   By failing to disclose and by actively concealing the "defeat device" and the true cleanliness and performance of the CleanDiesel engine system, by marketing its vehicles as safe, reliable, environmentally clean, efficient, and of high quality, and by presenting itself as a reputable manufacturer that valued safety, environmental cleanliness and efficiency, and stood behind its vehicles after they were sold,

-156-

Volkswagen engaged in deceptive business practices in violation of the Georgia UDTPA.

535.    In the course of Volkswagen's business, it willfully failed to disclose and actively concealed the use of the "defeat device" and true cleanliness and efficiency of the CleanDiesel engine system and serious defects discussed above.  Volkswagen compounded the deception by repeatedly asserting that the Affected Vehicles were safe, reliable, environmentally clean, efficient, and of high quality, and by claiming to be a reputable manufacturer that valued safety, environmental cleanliness and efficiency, and stood behind its vehicles once they are on the road.

536.    Volkswagen's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff, about the true cleanliness and efficiency of the CleanDiesel engine system, the quality of the Volkswagen and Audi brands, the devaluing of environmental cleanliness and integrity at Volkswagen, and the true value of the Affected Vehicles.

537.    Volkswagen intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with an intent to mislead Plaintiff and the Georgia Subclass.

538.    Volkswagen knew or should have known that its conduct violated the Georgia UDTPA.

539.    As alleged above, Volkswagen made material statements about the safety, cleanliness, efficiency and reliability of the Affected Vehicles and the Volkswagen and Audi brands that were either false or misleading.

540.    Volkswagen owed Plaintiffs a duty to disclose the true safety, cleanliness, efficiency and reliability of the Affected Vehicles and the devaluing of environmental cleanliness and integrity at Volkswagen, because Volkswagen:

    a.    Possessed exclusive knowledge that it valued profits over environmental cleanliness, efficiency, and lawfulness, and that it was manufacturing, selling and distributing vehicles throughout the United States that did not comply with EPA regulations;

-157-

b.    Intentionally concealed the foregoing from Plaintiffs; and/or

c.    Made incomplete representations about the safety, cleanliness, efficiency and reliability of the Affected Vehicles generally, and the "defeat device" and true nature of the CleanDiesel engine system in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

541.   Because Volkswagen fraudulently concealed the "defeat device" and the true cleanliness and performance of the CleanDiesel engine system, resulting in a raft of negative publicity once the use of the "defeat device" and true characteristics of the CleanDiesel engine system finally began to be disclosed, the value of the Affected Vehicles has greatly diminished.  In light of the stigma attached to those vehicles by Volkswagen's conduct, they are now worth significantly less than they otherwise would be.

542.   Volkswagen's fraudulent use of the "defeat device" and its concealment of the true characteristics of the CleanDiesel engine system were material to Plaintiffs and the Georgia Subclass.  A vehicle made by a reputable manufacturer of environmentally friendly vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of environmentally dirty vehicles that conceals its polluting engines rather than promptly remedying them.

543.   Plaintiffs and the Georgia Subclass suffered ascertainable loss caused by Volkswagen's misrepresentations and its concealment of and failure to disclose material information.  Class members who purchased the Affected Vehicles either would have paid less for their vehicles or would not have purchased or leased them at all.

544.   Volkswagen had an ongoing duty to all Volkswagen and Audi customers to refrain from unfair and deceptive acts or practices under the Georgia UDTPA.  All owners of Affected Vehicles suffered ascertainable loss in the form of diminished

-158-

value of their vehicles as a result of Volkswagen's deceptive and unfair acts and practices made in the course of Volkswagen's business.

545.   Volkswagen's violations present a continuing risk to Plaintiffs as well as to the general public.  Volkswagen's unlawful acts and practices complained of herein affect the public interest.

546.   As a direct and proximate result of Volkswagen's violations of the Georgia UDTPA, Plaintiffs and the Georgia Subclass have suffered injury-in-fact and/or actual damage.

547.   Plaintiffs seek an order enjoining Volkswagen's unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under the Georgia UDTPA per GA. CODE. ANN § 10-1-373.

## COUNT III
## FRAUD BY CONCEALMENT

548.   Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

549.   This claim is brought on behalf of the Georgia Subclass.

550.   Volkswagen intentionally concealed and suppressed material facts concerning the quality of the Affected Vehicles.  As alleged in this Complaint, notwithstanding references in the very model names of the subject vehicles as "CleanDiesel," or to their engines as "TDI Clean Diesel" engines, Volkswagen engaged in a secret scheme to evade federal and state vehicle emissions standards by installing software designed to conceal its vehicles' emissions of the pollutant nitrogen oxide, which contributes to the creation of ozone and smog.  The software installed on the vehicles at issue was designed nefariously to kick-in during emissions certification testing, such that the vehicles would show far lower emissions than when actually operating on the road.  The result was what Volkswagen intended: vehicles passed emissions certifications by way of deliberately induced false readings.  Reportedly,

-159-

Volkswagen's deliberate, secret scheme resulted in noxious emissions from these vehicles at up to 40 times applicable standards.

551.   Plaintiff and Georgia Subclass members reasonably relied upon Volkswagen's false representations.  They had no way of knowing that Volkswagen's representations were false and gravely misleading.  As alleged herein, Volkswagen employed extremely sophisticated methods of deception.  Plaintiff and Georgia Subclass members did not, and could not, unravel Volkswagen's deception on their own.

552.   Volkswagen concealed and suppressed material facts concerning what is evidently the true culture of Volkswagen – one characterized by an emphasis on profits and sales above compliance with federal and state clean air laws, and emissions regulations that are meant to protect the public and consumers.  It also emphasized profits and sales over the trust that Plaintiff and Georgia Subclass members placed in its representations.  As one customer, Priya Shah, put it in a quotation cited by the *Los Angeles Times* in a September 18, 2015 article, "It's just a blatant disregard and intentional manipulation of the system.  That's just a whole other level of not only lying to the government, but also lying to your consumer.  People buy diesel cars from Volkswagen because they feel they are clean diesel cars."  In the words of Ms. Shah, which no doubt reflect the sentiments of all other CleanDiesel vehicle buyers, "I don't want to be spewing noxious gases into the environment."

553.   Necessarily, Volkswagen also took steps to ensure that its employees did not reveal the details of its scheme to regulators or consumers, including Plaintiff and Georgia Subclass members.  Volkswagen did so in order to boost the reputations of its vehicles and to falsely assure purchasers and lessors of its vehicles, including previously owned vehicles, that Volkswagen is a reputable manufacturer that complies with applicable law, including federal and state clean air laws and emissions regulations, and that its vehicles likewise comply with applicable law and regulations.

-160-

Volkswagen's false representations were material to consumers, both because they concerned the quality of the Affected Vehicles, including their compliance with applicable federal and state laws and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles.  As Volkswagen well knew, its customers, including Plaintiff and Georgia Subclass members, highly valued that the vehicles they were purchasing or leasing were *clean* diesel cars, and they paid accordingly.

554.   Volkswagen had a duty to disclose its emissions scheme because knowledge of the scheme and its details were known and/or accessible only to Volkswagen, because Volkswagen had exclusive knowledge as to implementation and maintenance of its scheme, and because Volkswagen knew the facts were not known to or reasonably discoverable by Plaintiff or Georgia Subclass members.  Volkswagen also had a duty to disclose because it made general affirmative representations about the qualities of its vehicles with respect to emissions standards, starting with references to them as *clean* diesel cars, or cars with *clean* diesel engines, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding its emissions scheme, the actual emissions of its vehicles, its actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and its actual practices with respect to the vehicles at issue.  Having volunteered to provide information to Plaintiffs, Volkswagen had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiff and Georgia Subclass members.  Whether a manufacturer's products comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certification testing their vehicles must pass.  Volkswagen

represented to Plaintiff and Georgia Subclass members that they were purchasing *clean* diesel vehicles, and certification testing appeared to confirm this – except that, secretly, Volkswagen had subverted the testing process thoroughly.

555.   Volkswagen actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Volkswagen money, and it did so at the expense of Plaintiff and Georgia Subclass members.

556.   On information and belief, Volkswagen has still not made full and adequate disclosures, and continues to defraud Plaintiff and Georgia Subclass members by concealing material information regarding the emission qualities of its vehicles and its emissions scheme.

557.   Plaintiff and Georgia Subclass members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly "clean" diesel cars manufactured by Volkswagen, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them.  Plaintiff's and Georgia Subclass Members' actions were justified.  Volkswagen was in exclusive control of the material facts, and such facts were not known to the public, Plaintiff, or Georgia Subclass members.

558.   Because of the concealment and/or suppression of the facts, Plaintiff and Georgia Subclass members have sustained damage because they own vehicles that are diminished in value as a result of Volkswagen's concealment of the true quality and quantity of those vehicles' emissions and Volkswagen's failure to timely disclose the actual emission qualities and quantities of hundreds of thousands of Volkswagen- and Audi-branded vehicles and the serious issues engendered by Volkswagen's corporate

-162-

policies.  Had Plaintiff and Georgia Subclass members been aware of Volkswagen's emissions scheme, and the company's callous disregard for compliance with applicable federal and state laws and regulations, Plaintiff and Georgia Subclass members who purchased or leased new or previously owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

559.   The value of Plaintiff's and Georgia Subclass members' vehicles has diminished as a result of Volkswagen's fraudulent concealment of its emissions scheme, which has greatly tarnished the Volkswagen and Audi brand names attached to Plaintiff's and Georgia Subclass members' vehicles and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.  In addition, Class members are entitled to damages for loss of use, costs of additional fuel, costs of unused warranties, and other damages to be proved at trial.

560.   Accordingly, Volkswagen is liable to Plaintiffs and Class members for damages in an amount to be proven at trial.

561.   Volkswagen's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and Georgia Subclass members' rights and the representations that Volkswagen made to them, in order to enrich Volkswagen.  To the extent permitted under applicable law, Volkswagen's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT IV
## BREACH OF CONTRACT
### (Based on Georgia Law)

562.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

-163-

563.   Plaintiff brings this Count on behalf of new vehicle or certified pre-owned vehicle purchasers in the Georgia Subclass.

564.   Volkswagen's misrepresentations and omissions alleged herein, including Volkswagen's failure to disclose the existence of the CleanDiesel engine system's defect and/or defective design as alleged herein, caused Plaintiff and the other Georgia Subclass members to make their purchases or leases of their Affected Vehicles. Absent those misrepresentations and omissions, Plaintiff and the other Georgia Subclass members would not have purchased or leased these Affected Vehicles, would not have purchased or leased these Affected Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain the CleanDiesel engine system and which were not marketed as including such a system.  Accordingly, Plaintiff and the other Georgia Subclass members overpaid for their Affected Vehicles and did not receive the benefit of their bargain.

565.   Each and every sale or lease of an Affected Vehicle by an authorized Volkswagen dealer constitutes a contract between Volkswagen and the purchaser or lessee.  Volkswagen breached these contracts by selling or leasing Plaintiff and the other Georgia Subclass members defective Affected Vehicles and by misrepresenting or failing to disclose the existence of the CleanDiesel engine system's defect and/or defective design, including information known to Volkswagen rendering each Affected Vehicle non EPA-compliant, and thus less valuable, than vehicles not equipped with a CleanDiesel engine system.

566.   As a direct and proximate result of Volkswagen's breach of contract, Plaintiff and the Georgia Subclass have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

-164-

1

**M.    Claims Brought on Behalf of the Hawaii Subclass**

2

**COUNT I**

**UNFAIR AND DECEPTIVE ACTS IN VIOLATION OF HAWAII LAW**
**(HAW. REV. STAT. § 480, *ET SEQ.*)**

3

4    567.    Plaintiff Christina Paolicchi ("Plaintiff," for purposes of all Hawaii

5    Subclass Counts) incorporates by reference all preceding allegations as though fully

6    set forth herein.

7    568.    This claim is brought only on behalf of the Hawaii Subclass.

8    569.    Defendants are each a "person" under HAW. REV. STAT. § 480-1.

9    570.    Class Members are "consumer[s]" as defined by HAW. REV. STAT. § 480-

10   1, who purchased or leased one or more Affected Vehicles.

11   571.    Volkswagen's acts or practices as set forth above occurred in the conduct

12   of trade or commerce.

13   572.    The Hawaii Act § 480-2(a) prohibits "unfair methods of competition and

14   unfair or deceptive acts or practices in the conduct of any trade or commerce...."  By

15   fraudulently installing the "defeat device" to make it appear that its CleanDiesel

16   engine systems complied with EPA regulations, Volkswagen engaged in unfair and

17   deceptive trade practices prohibited by the Hawaii Act.

18   573.    In the course of its business, Volkswagen installed the "defeat device"

19   and concealed that its CleanDiesel systems failed EPA regulations as described herein

20   and otherwise engaged in activities with a tendency or capacity to deceive.

21   Volkswagen also engaged in unlawful trade practices by employing deception,

22   deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or

23   omission of any material fact with intent that others rely upon such concealment,

24   suppression or omission, in connection with the sale of Affected Vehicles.

25   574.    Volkswagen has known of its use of the "defeat device" and the true

26   nature of its CleanDiesel engine system for at least six years, but concealed all of that

27   information until recently.

28

-165-

575.   Volkswagen was also aware that it valued profits over environmental cleanliness, efficiency, and lawfulness, and that it was manufacturing, selling and distributing vehicles throughout the United States that did not comply with EPA regulations.  Volkswagen concealed this information as well.

576.   By failing to disclose and by actively concealing the "defeat device" and the true cleanliness and performance of the CleanDiesel engine system, by marketing its vehicles as safe, reliable, environmentally clean, efficient, and of high quality, and by presenting itself as a reputable manufacturer that valued safety, environmental cleanliness and efficiency, and stood behind its vehicles after they were sold, Volkswagen engaged in unfair and deceptive business practices in violation of the Hawaii Act.

577.   In the course of Volkswagen's business, it willfully failed to disclose and actively concealed the use of the "defeat device" and true cleanliness and efficiency of the CleanDiesel engine system and serious defects discussed above.  Volkswagen compounded the deception by repeatedly asserting that the Affected Vehicles were safe, reliable, environmentally clean, efficient, and of high quality, and by claiming to be a reputable manufacturer that valued safety, environmental cleanliness and efficiency, and stood behind its vehicles once they are on the road.

578.   Volkswagen's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff, about the true cleanliness and efficiency of the CleanDiesel engine system, the quality of the Volkswagen and Audi brands, the devaluing of environmental cleanliness and integrity at Volkswagen, and the true value of the Affected Vehicles.

579.   Volkswagen intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with an intent to mislead Plaintiff and the Hawaii Subclass.

580.   Volkswagen knew or should have known that its conduct violated the Hawaii Act.

581.   As alleged above, Volkswagen made material statements about the safety, cleanliness, efficiency and reliability of the Affected Vehicles and the Volkswagen and Audi brands that were either false or misleading.

582.   Volkswagen owed Plaintiffs a duty to disclose the true safety, cleanliness, efficiency and reliability of the Affected Vehicles and the devaluing of environmental cleanliness and integrity at Volkswagen, because Volkswagen:

   a.   Possessed exclusive knowledge that it valued profits over environmental cleanliness, efficiency, and lawfulness, and that it was manufacturing, selling and distributing vehicles throughout the United States that did not comply with EPA regulations;

   b.   Intentionally concealed the foregoing from Plaintiffs; and/or

   c.   Made incomplete representations about the safety, cleanliness, efficiency and reliability of the Affected Vehicles generally, and the use of the "defeat device" and true nature of the CleanDiesel engine system in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

583.   Because Volkswagen fraudulently concealed the "defeat device" and the true cleanliness and performance of the CleanDiesel engine system, resulting in a raft of negative publicity once the use of the "defeat device" and true characteristics of the CleanDiesel engine system finally began to be disclosed, the value of the Affected Vehicles has greatly diminished.  In light of the stigma attached to those vehicles by Volkswagen's conduct, they are now worth significantly less than they otherwise would be.

584.   Volkswagen's fraudulent use of the "defeat device" and its concealment of the true characteristics of the CleanDiesel engine system were material to Plaintiffs and the Hawaii Subclass.  A vehicle made by a reputable manufacturer of environmentally friendly vehicles is worth more than an otherwise comparable vehicle

-167-

made by a disreputable manufacturer of environmentally dirty vehicles that conceals its polluting engines rather than promptly remedying them.

585.   Plaintiffs and the Hawaii Subclass suffered ascertainable loss caused by Volkswagen's misrepresentations and its concealment of and failure to disclose material information.  Class members who purchased the Affected Vehicles either would have paid less for their vehicles or would not have purchased or leased them at all.

586.   Volkswagen had an ongoing duty to all Volkswagen and Audi customers to refrain from unfair and deceptive acts or practices under the Hawaii UDTPA.  All owners of Affected Vehicles suffered ascertainable loss in the form of diminished value of their vehicles as a result of Volkswagen's deceptive and unfair acts and practices made in the course of Volkswagen's business

.587.  Volkswagen's violations present a continuing risk to Plaintiffs as well as to the general public.  Volkswagen's unlawful acts and practices complained of herein affect the public interest.

588.   As a direct and proximate result of Volkswagen's violations of the Hawaii Act, Plaintiffs and the Hawaii Subclass have suffered injury-in-fact and/or actual damage.

589.   Pursuant to HAW. REV. STAT. § 480-13, Plaintiffs and the Hawaii Subclass seek monetary relief against Volkswagen measured as the greater of (a) $1,000 and (b) threefold actual damages in an amount to be determined at trial.

590.   Under HAW. REV. STAT. § 480-13.5, Plaintiffs seek an additional award against Volkswagen of up to $10,000 for each violation directed at a Hawaiian elder. Volkswagen knew or should have known that its conduct was directed to one or more Class Members who are elders.  Volkswagen's conduct caused one or more of these elders to suffer a substantial loss of property set aside for retirement or for personal or family care and maintenance, or assets essential to the health or welfare of the elder.

-168-

One or more Hawaii Subclass Members who are elders are substantially more vulnerable to Volkswagen's conduct because of age, poor health or infirmity, impaired understanding, restricted mobility, or disability, and each of them suffered substantial physical, emotional, or economic damage resulting from Volkswagen's conduct.

## COUNT II
## FRAUD BY CONCEALMENT

591.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

592.   This claim is brought on behalf of the Hawaii Subclass.

593.   Volkswagen intentionally concealed and suppressed material facts concerning the quality of the Affected Vehicles.  As alleged in this Complaint, notwithstanding references in the very model names of the subject vehicles as "Clean Diesel," or to their engines as "TDI Clean Diesel" engines, Volkswagen engaged in a secret scheme to evade federal and state vehicle emissions standards by installing software designed to conceal its vehicles' emissions of the pollutant nitrogen oxide, which contributes to the creation of ozone and smog.  The software installed on the vehicles at issue was designed nefariously to kick-in during emissions certification testing, such that the vehicles would show far lower emissions than when actually operating on the road.  The result was what Volkswagen intended: vehicles passed emissions certifications by way of deliberately induced false readings.  Reportedly, Volkswagen's deliberate, secret scheme resulted in noxious emissions from these vehicles at up to 40 times applicable standards.

594.   Plaintiff and Hawaii Subclass members reasonably relied upon Volkswagen's false representations.  They had no way of knowing that Volkswagen's representations were false and gravely misleading.  As alleged herein, Volkswagen employed extremely sophisticated methods of deception.  Plaintiff and Hawaii Subclass members did not, and could not, unravel Volkswagen's deception on their own.

-169-

595.   Volkswagen concealed and suppressed material facts concerning what is evidently the true culture of Volkswagen—one characterized by an emphasis on profits and sales above compliance with federal and state clean air laws, and emissions regulations that are meant to protect the public and consumers.  It also emphasized profits and sales over the trust that Plaintiff and Hawaii Subclass members placed in its representations.  As one customer, Priya Shah, put it in a quotation cited by the *Los Angeles Times* in a September 18, 2015 article, "It's just a blatant disregard and intentional manipulation of the system.  That's just a whole other level of not only lying to the government, but also lying to your consumer.  People buy diesel cars from Volkswagen because they feel they are clean diesel cars."  In the words of Ms. Shah, which no doubt reflect the sentiments of all other CleanDiesel vehicle buyers, "I don't want to be spewing noxious gases into the environment."

596.   Necessarily, Volkswagen also took steps to ensure that its employees did not reveal the details of its scheme to regulators or consumers, including Plaintiff and Hawaii Subclass members.  Volkswagen did so in order to boost the reputations of its vehicles and to falsely assure purchasers and lessors of its vehicles, including previously owned vehicles, that Volkswagen is a reputable manufacturer that complies with applicable law, including federal and state clean air laws and emissions regulations, and that its vehicles likewise comply with applicable law and regulations.  Volkswagen's false representations were material to consumers, both because they concerned the quality of the Affected Vehicles, including their compliance with applicable federal and state laws and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles.  As Volkswagen well knew, its customers, including Plaintiff and Hawaii Subclass members, highly valued that the vehicles they were purchasing or leasing were *clean* diesel cars, and they paid accordingly.

-170-

597.   Volkswagen had a duty to disclose its emissions scheme because knowledge of the scheme and its details were known and/or accessible only to Volkswagen, because Volkswagen had exclusive knowledge as to implementation and maintenance of its scheme, and because Volkswagen knew the facts were not known to or reasonably discoverable by Plaintiff or Hawaii Subclass members.  Volkswagen also had a duty to disclose because it made general affirmative representations about the qualities of its vehicles with respect to emissions standards, starting with references to them as *clean* diesel cars, or cars with *clean* diesel engines, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding its emissions scheme, the actual emissions of its vehicles, its actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and its actual practices with respect to the vehicles at issue. Having volunteered to provide information to Plaintiffs, Volkswagen had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiff and Hawaii Subclass members.  Whether a manufacturer's products comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certification testing their vehicles must pass.  Volkswagen represented to Plaintiff and Hawaii Subclass members that they were purchasing *clean* diesel vehicles, and certification testing appeared to confirm this—except that, secretly, Volkswagen had subverted the testing process thoroughly.

598.   Volkswagen actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles did not or could not comply with federal and state laws governing clean air

-171-

and emissions, which perception would hurt the brand's image and cost Volkswagen money, and it did so at the expense of Plaintiff and Hawaii Subclass members.

599.   On information and belief, Volkswagen has still not made full and adequate disclosures, and continues to defraud Plaintiff and Hawaii Subclass members by concealing material information regarding the emissions qualities of its vehicles and its emissions scheme.

600.   Plaintiff and Hawaii Subclass members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly "clean" diesel cars manufactured by Volkswagen, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them.  Plaintiff's and Hawaii Subclass members' actions were justified.  Volkswagen was in exclusive control of the material facts, and such facts were not known to the public, Plaintiff, or Hawaii Subclass members.

601.   Because of the concealment and/or suppression of the facts, Plaintiff and Hawaii Subclass members have sustained damage because they own vehicles that are diminished in value as a result of Volkswagen's concealment of the true quality and quantity of those vehicles' emissions and Volkswagen's failure to timely disclose the actual emissions qualities and quantities of hundreds of thousands of Volkswagen- and Audi-branded vehicles and the serious issues engendered by Volkswagen's corporate policies.  Had Plaintiff and Hawaii Subclass members been aware of Volkswagen's emissions scheme, and the company's callous disregard for compliance with applicable federal and state laws and regulations, Plaintiff and Hawaii Subclass members who purchased or leased new or previously owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

602.   The value of Plaintiff's and Hawaii Subclass members' vehicles has diminished as a result of Volkswagen's fraudulent concealment of its emissions scheme, which has greatly tarnished the Volkswagen and Audi brand names attached to Plaintiff's and Hawaii Subclass members' vehicles and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.  In addition, Class members are entitled to damages for loss of use, costs of additional fuel, costs of unused warranties, and other damages to be proved at trial.

603.   Accordingly, Volkswagen is liable to Plaintiff and Hawaii Subclass members for damages in an amount to be proven at trial.

604.   Volkswagen's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and Hawaii Subclass members' rights and the representations that Volkswagen made to them, in order to enrich Volkswagen.  To the extent permitted under applicable law, Volkswagen's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

<div align="center">

**COUNT III**
**BREACH OF CONTRACT**
**(BASED ON HAWAII LAW)**

</div>

605.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

606.   Plaintiff brings this Count on behalf of new vehicle or certified pre-owned vehicle purchasers in the Hawaii Subclass.

607.   Volkswagen's misrepresentations and omissions alleged herein, including Volkswagen's failure to disclose the existence of the CleanDiesel engine system's defect and/or defective design as alleged herein, caused Plaintiff and the other Hawaii Subclass members to make their purchases or leases of their Affected Vehicles.

-173-

Absent those misrepresentations and omissions, Plaintiff and the other Hawaii Subclass members would not have purchased or leased these Affected Vehicles, would not have purchased or leased these Affected Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain the CleanDiesel engine system and which were not marketed as including such a system.  Accordingly, Plaintiff and the other Hawaii Subclass members overpaid for their Affected Vehicles and did not receive the benefit of their bargain.

608.   Each and every sale or lease of an Affected Vehicle by an authorized Volkswagen dealer constitutes a contract between Volkswagen and the purchaser or lessee.  Volkswagen breached these contracts by selling or leasing Plaintiff and the other Hawaii Subclass members defective Affected Vehicles and by misrepresenting or failing to disclose the existence of the CleanDiesel engine system's defect and/or defective design, including information known to Volkswagen rendering each Affected Vehicle non EPA-compliant, and thus less valuable, than vehicles not equipped with a CleanDiesel engine system.

609.   As a direct and proximate result of Volkswagen's breach of contract, Plaintiff and the Hawaii Subclass have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

**N.     Claims Brought on Behalf of the Idaho Subclass**

**COUNT I**
**VIOLATION OF THE IDAHO CONSUMER PROTECTION ACT**
**(IDAHO CIV. CODE § 48-601, *ET SEQ.*)**

610.   Plaintiff Adam Frugoli ("Plaintiff," for purposes of all Idaho Subclass Counts) incorporates by reference all preceding allegations as though fully set forth herein.

611.   This claim is brought only on behalf of the Idaho Subclass.

-174-

612.   Defendants are each a "person" under the Idaho Consumer Protection Act ("Idaho CPA"), IDAHO CIV. CODE § 48-602(1).

613.   Volkswagen's acts or practices as set forth above occurred in the conduct of "trade" or "commerce" under IDAHO CIV. CODE § 48-602(2).

614.   Volkswagen participated in misleading, false, or deceptive acts that violated the Idaho CPA.  By fraudulently installing the "defeat device" to make it appear that its CleanDiesel engine systems complied with EPA regulations, Volkswagen engaged in deceptive business practices prohibited by the Idaho CPA, including:  (1) representing that the Affected Vehicles have characteristics, uses, and benefits which they do not have; (2) representing that the Affected Vehicles are of a particular standard, quality, and grade when they are not; (3) advertising the Affected Vehicles with the intent not to sell them as advertised; (4) engaging in acts or practices which are otherwise misleading, false, or deceptive to the consumer; and (5) engaging in any unconscionable method, act or practice in the conduct of trade or commerce. *See* IDAHO CIV. CODE § 48-603.

615.   In the course of its business, Volkswagen installed the "defeat device" and concealed that its CleanDiesel systems failed EPA regulations as described herein and otherwise engaged in activities with a tendency or capacity to deceive. Volkswagen also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of Affected Vehicles.

616.   Volkswagen has known of its use of the "defeat device" and the true nature of its CleanDiesel engine system for at least six years, but concealed all of that information until recently.

617.   Volkswagen was also aware that it valued profits over environmental cleanliness, efficiency, and lawfulness, and that it was manufacturing, selling and

-175-

1    distributing vehicles throughout the United States that did not comply with EPA

2    regulations.  Volkswagen concealed this information as well.

3        618.   By failing to disclose and by actively concealing the "defeat device" and

4    the true cleanliness and performance of the CleanDiesel engine system, by marketing

5    its vehicles as safe, reliable, environmentally clean, efficient, and of high quality, and

6    by presenting itself as a reputable manufacturer that valued safety, environmental

7    cleanliness and efficiency, and stood behind its vehicles after they were sold,

8    Volkswagen engaged in deceptive business practices in violation of the Idaho CPA.

9        619.   In the course of Volkswagen's business, it willfully failed to disclose and

10   actively concealed the use of the "defeat device" and true cleanliness and efficiency of

11   the CleanDiesel engine system and serious defects discussed above.  Volkswagen

12   compounded the deception by repeatedly asserting the Affected Vehicles were safe,

13   reliable, environmentally clean, efficient, and of high quality, and by claiming to be a

14   reputable manufacturer that valued safety, environmental cleanliness and efficiency,

15   and stood behind its vehicles once they are on the road.

16       620.   Volkswagen's unfair or deceptive acts or practices were likely to and did

17   in fact deceive reasonable consumers, including Plaintiff, about the true cleanliness

18   and efficiency of the CleanDiesel engine system, the quality of the Volkswagen and

19   Audi brands, the devaluing of environmental cleanliness and integrity at Volkswagen,

20   and the true value of the Affected Vehicles.

21       621.   Volkswagen intentionally and knowingly misrepresented material facts

22   regarding the Affected Vehicles with an intent to mislead Plaintiff and the Idaho

23   Subclass.

24       622.   Volkswagen knew or should have known that its conduct violated the

25   Idaho CPA.

26

27

28

623.   As alleged above, Volkswagen made material statements about the safety, cleanliness, efficiency and reliability of the Affected Vehicles and the Volkswagen and Audi brands that were either false or misleading.

624.   Volkswagen owed Plaintiffs a duty to disclose the true safety, cleanliness, efficiency and reliability of the Affected Vehicles and the devaluing of environmental cleanliness and integrity at Volkswagen, because Volkswagen:

a.   Possessed exclusive knowledge that it valued profits over environmental cleanliness, efficiency, and lawfulness, and that it was manufacturing, selling and distributing vehicles throughout the United States that did not comply with EPA regulations;

b.   Intentionally concealed the foregoing from Plaintiffs; and/or

c.   Made incomplete representations about the safety, cleanliness, efficiency and reliability of the Affected Vehicles generally, and the use of the "defeat device" and true nature of the CleanDiesel engine system in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

625.   Because Volkswagen fraudulently concealed the "defeat device" and the true cleanliness and performance of the CleanDiesel engine system, resulting in a raft of negative publicity once the use of the "defeat device" and true characteristics of the CleanDiesel engine system finally began to be disclosed, the value of the Affected Vehicles has greatly diminished.  In light of the stigma attached to those vehicles by Volkswagen's conduct, they are now worth significantly less than they otherwise would be.

626.   Volkswagen's fraudulent use of the "defeat device" and its concealment of the true characteristics of the CleanDiesel engine system were material to Plaintiffs and the Idaho Subclass.  A vehicle made by a reputable manufacturer of environmentally friendly vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of environmentally dirty vehicles that conceals its polluting engines rather than promptly remedying them.

627.   Plaintiffs and the Idaho Subclass suffered ascertainable loss caused by Volkswagen's misrepresentations and its concealment of and failure to disclose material information.  Class members who purchased the Affected Vehicles either would have paid less for their vehicles or would not have purchased or leased them at all.

628.   Volkswagen had an ongoing duty to all Volkswagen and Audi customers to refrain from unfair and deceptive acts or practices under the Idaho CPA.  All owners of Affected Vehicles suffered ascertainable loss in the Illinois form of the diminished value of their vehicles as a result of Volkswagen's deceptive and unfair acts and practices made in the course of Volkswagen's business.

629.   Volkswagen's violations present a continuing risk to Plaintiffs as well as to the general public.  Volkswagen's unlawful acts and practices complained of herein affect the public interest.

630.   As a direct and proximate result of Volkswagen's violations of the Idaho CPA, Plaintiffs and the Idaho Subclass have suffered injury-in-fact and/or actual damage.

631.   Pursuant to IDAHO CODE § 48-608, Plaintiffs and the Idaho Subclass seek monetary relief against Volkswagen measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $1,000 for each Plaintiff and each Idaho Subclass member.

632.   Plaintiffs also seek an order enjoining Volkswagen's unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under the Idaho CPA.

633.   Plaintiffs and Idaho Subclass Members also seek punitive damages against Volkswagen because Volkswagen's conduct evidences an extreme deviation from reasonable standards.  Volkswagen flagrantly, maliciously, and fraudulently misrepresented the cleanliness, efficiency and reliability of the Affected Vehicles,

-178-

deceived Class Members, and concealed material facts that only they knew, all to avoid the expense and public relations nightmare of its vehicles were profound polluters when it repeatedly promised Class Members they were clean. Volkswagen's unlawful conduct constitutes malice, oppression, and fraud warranting punitive damages.

## COUNT II
## FRAUD BY CONCEALMENT

634.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

635.    This claim is brought on behalf of the Idaho Subclass.

636.    Volkswagen intentionally concealed and suppressed material facts concerning the quality of the Affected Vehicles. As alleged in this Complaint, notwithstanding references in the very model names of the subject vehicles as "Clean Diesel," or to their engines as "TDI Clean Diesel" engines, Volkswagen engaged in a secret scheme to evade federal and state vehicle emissions standards by installing software designed to conceal its vehicles' emissions of the pollutant nitrogen oxide, which contributes to the creation of ozone and smog. The software installed on the vehicles at issue was designed nefariously to kick-in during emissions certification testing, such that the vehicles would show far lower emissions than when actually operating on the road. The result was what Volkswagen intended: vehicles passed emissions certifications by way of deliberately induced false readings. Reportedly, Volkswagen's deliberate, secret scheme resulted in noxious emissions from these vehicles at up to 40 times applicable standards.

637.    Plaintiff and Idaho Subclass members reasonably relied upon Volkswagen's false representations. They had no way of knowing that Volkswagen's representations were false and gravely misleading. As alleged herein, Volkswagen employed extremely sophisticated methods of deception. Plaintiff and Idaho Subclass members did not, and could not, unravel Volkswagen's deception on their own.

-179-

638.   Volkswagen concealed and suppressed material facts concerning what is evidently the true culture of Volkswagen—one characterized by an emphasis on profits and sales above compliance with federal and state clean air laws, and emissions regulations that are meant to protect the public and consumers.  It also emphasized profits and sales over the trust that Plaintiff and Idaho Subclass members placed in its representations.  As one customer, Priya Shah, put it in a quotation cited by the *Los Angeles Times* in a September 18, 2015 article, "It's just a blatant disregard and intentional manipulation of the system.  That's just a whole other level of not only lying to the government, but also lying to your consumer.  People buy diesel cars from Volkswagen because they feel they are clean diesel cars."  In the words of Ms. Shah, which no doubt reflect the sentiments of all other CleanDiesel vehicle buyers, "I don't want to be spewing noxious gases into the environment."

639.   Necessarily, Volkswagen also took steps to ensure that its employees did not reveal the details of its scheme to regulators or consumers, including Plaintiff and Idaho Subclass members.  Volkswagen did so in order to boost the reputations of its vehicles and to falsely assure purchasers and lessors of its vehicles, including previously owned vehicles, that Volkswagen is a reputable manufacturer that complies with applicable law, including federal and state clean air laws and emissions regulations, and that its vehicles likewise comply with applicable law and regulations.  Volkswagen's false representations were material to consumers, both because they concerned the quality of the Affected Vehicles, including their compliance with applicable federal and state laws and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles.  As Volkswagen well knew, its customers, including Plaintiff and Idaho Subclass members, highly valued that the vehicles they were purchasing or leasing were *clean* diesel cars, and they paid accordingly.

-180-

640.   Volkswagen had a duty to disclose its emissions scheme because knowledge of the scheme and its details were known and/or accessible only to Volkswagen, because Volkswagen had exclusive knowledge as to implementation and maintenance of its scheme, and because Volkswagen knew the facts were not known to or reasonably discoverable by Plaintiff or Idaho Subclass members.  Volkswagen also had a duty to disclose because it made general affirmative representations about the qualities of its vehicles with respect to emissions standards, starting with references to them as *clean* diesel cars, or cars with *clean* diesel engines, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding its emissions scheme, the actual emissions of its vehicles, its actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and its actual practices with respect to the vehicles at issue. Having volunteered to provide information to Plaintiffs, Volkswagen had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiff and Idaho Subclass members.  Whether a manufacturer's products comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certification testing their vehicles must pass.  Volkswagen represented to Plaintiff and Idaho Subclass members that they were purchasing *clean* diesel vehicles, and certification testing appeared to confirm this—except that, secretly, Volkswagen had subverted the testing process thoroughly.

641.   Volkswagen actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles did not or could not comply with federal and state laws governing clean air

-181-

and emissions, which perception would hurt the brand's image and cost Volkswagen money, and it did so at the expense of Plaintiff and Idaho Subclass members.

642.   On information and belief, Volkswagen has still not made full and adequate disclosures, and continues to defraud Plaintiff and Idaho Subclass members by concealing material information regarding the emissions qualities of its vehicles and its emissions scheme.

643.   Plaintiff and Idaho Subclass members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly "clean" diesel cars manufactured by Volkswagen, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them.  Plaintiff's and Idaho Subclass members' actions were justified.  Volkswagen was in exclusive control of the material facts, and such facts were not known to the public, Plaintiff, or Idaho Subclass members.

644.   Because of the concealment and/or suppression of the facts, Plaintiff and Idaho Subclass members have sustained damage because they own vehicles that are diminished in value as a result of Volkswagen's concealment of the true quality and quantity of those vehicles' emissions and Volkswagen's failure to timely disclose the actual emissions qualities and quantities of hundreds of thousands of Volkswagen- and Audi-branded vehicles and the serious issues engendered by Volkswagen's corporate policies.  Had Plaintiff and Idaho Subclass members been aware of Volkswagen's emissions scheme, and the company's callous disregard for compliance with applicable federal and state laws and regulations, Plaintiff and Idaho Subclass members who purchased or leased new or previously owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

645.   The value of Plaintiff's and Idaho Subclass members' vehicles has diminished as a result of Volkswagen's fraudulent concealment of its emissions scheme, which has greatly tarnished the Volkswagen and Audi brand names attached to Plaintiff's and Idaho Subclass members' vehicles and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.  In addition, Class members are entitled to damages for loss of use, costs of additional fuel, costs of unused warranties, and other damages to be proved at trial.

646.   Accordingly, Volkswagen is liable to Plaintiff and Idaho Subclass members for damages in an amount to be proven at trial.

647.   Volkswagen's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and Idaho Subclass members' rights and the representations that Volkswagen made to them, in order to enrich Volkswagen.  To the extent permitted under applicable law, Volkswagen's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT III
### BREACH OF CONTRACT
### (BASED ON IDAHO LAW)

648.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

649.   Plaintiff brings this Count on behalf of new vehicle or certified pre-owned vehicle purchasers in the Idaho Subclass.

650.   Volkswagen's misrepresentations and omissions alleged herein, including Volkswagen's failure to disclose the existence of the CleanDiesel engine system's defect and/or defective design as alleged herein, caused Plaintiff and the other Idaho Subclass members to make their purchases or leases of their Affected Vehicles.

-183-

Absent those misrepresentations and omissions, Plaintiff and the other Idaho Subclass members would not have purchased or leased these Affected Vehicles, would not have purchased or leased these Affected Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain the CleanDiesel engine system and which were not marketed as including such a system. Accordingly, Plaintiff and the other Idaho Subclass members overpaid for their Affected Vehicles and did not receive the benefit of their bargain.

651.   Each and every sale or lease of an Affected Vehicle by an authorized Volkswagen dealer constitutes a contract between Volkswagen and the purchaser or lessee.  Volkswagen breached these contracts by selling or leasing Plaintiff and the other Idaho Subclass members defective Affected Vehicles and by misrepresenting or failing to disclose the existence of the CleanDiesel engine system's defect and/or defective design, including information known to Volkswagen rendering each Affected Vehicle non EPA-compliant, and thus less valuable, than vehicles not equipped with a CleanDiesel engine system.

652.   As a direct and proximate result of Volkswagen's breach of contract, Plaintiff and the Idaho Subclass have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

**O.     Claims Brought on Behalf of the Illinois Subclass**

**COUNT I**
**VIOLATION OF ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT**
**(815 ILCS 505/1, *et seq*. and 720 ILCS 295/1A)**

653.   Plaintiff Tracey Rosen ("Plaintiff," for purposes of all Illinois Subclass Counts) incorporates by reference all preceding allegations as though fully set forth herein.

654.   This claim is brought only on behalf of the Illinois Subclass.

-184-

655.   Defendants are each a "person" as that term is defined in 815 ILCS 505/1(c).

656.   Plaintiff and the Illinois Subclass are "consumers" as that term is defined in 815 ILCS 505/1(e).

657.   The Illinois Consumer Fraud and Deceptive Business Practices Act ("Illinois CFA") prohibits "unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact … in the conduct of trade or commerce … whether any person has in fact been misled, deceived or damaged thereby."  815 ILCS 505/2.

658.   Volkswagen participated in misleading, false, or deceptive acts that violated the Illinois CFA.  By fraudulently installing the "defeat device" to make it appear that its CleanDiesel engine systems complied with EPA regulations, Volkswagen engaged in deceptive business practices prohibited by the Illinois CFA.

659.   In the course of its business, Volkswagen installed the "defeat device" and concealed that its CleanDiesel systems failed EPA regulations as described herein and otherwise engaged in activities with a tendency or capacity to deceive. Volkswagen also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of Affected Vehicles.

660.   Volkswagen has known of its use of the "defeat device" and the true nature of its CleanDiesel engine system for at least six years, but concealed all of that information until recently.

661.   Volkswagen was also aware that it valued profits over environmental cleanliness, efficiency, and lawfulness, and that it was manufacturing, selling and

-185-

distributing vehicles throughout the United States that did not comply with EPA regulations.  Volkswagen concealed this information as well.

662.   By failing to disclose and by actively concealing the "defeat device" and the true cleanliness and performance of the CleanDiesel engine system, by marketing its vehicles as safe, reliable, environmentally clean, efficient, and of high quality, and by presenting itself as a reputable manufacturer that valued safety, environmental cleanliness and efficiency, and stood behind its vehicles after they were sold, Volkswagen engaged in unfair and deceptive business practices in violation of the Illinois CFA.

663.   In the course of Volkswagen's business, it willfully failed to disclose and actively concealed the use of the "defeat device" and true cleanliness and efficiency of the CleanDiesel engine system and serious defects discussed above.  Volkswagen compounded the deception by repeatedly asserting that the Affected Vehicles were safe, reliable, environmentally clean, efficient, and of high quality, and by claiming to be a reputable manufacturer that valued safety, environmental cleanliness and efficiency, and stood behind its vehicles once they are on the road.

664.   Volkswagen's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff, about the true cleanliness and efficiency of the CleanDiesel engine system, the quality of the Volkswagen and Audi brands, the devaluing of environmental cleanliness and integrity at Volkswagen, and the true value of the Affected Vehicles.

665.   Volkswagen intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with an intent to mislead Plaintiff and the Illinois Subclass.

666.   Volkswagen knew or should have known that its conduct violated the Illinois CFA.

010549-11  816608 V1

667.   As alleged above, Volkswagen made material statements about the safety, cleanliness, efficiency and reliability of the Affected Vehicles and the Volkswagen and Audi brands that were either false or misleading.

668.   Volkswagen owed Plaintiffs a duty to disclose the true safety, cleanliness, efficiency and reliability of the Affected Vehicles and the devaluing of environmental cleanliness and integrity at Volkswagen, because Volkswagen:

a.   Possessed exclusive knowledge that it valued profits over environmental cleanliness, efficiency, and lawfulness, and that it was manufacturing, selling and distributing vehicles throughout the United States that did not comply with EPA regulations;

b.   Intentionally concealed the foregoing from Plaintiffs; and/or

c.   Made incomplete representations about the safety, cleanliness, efficiency and reliability of the Affected Vehicles generally, and the use of the "defeat device" and true nature of the CleanDiesel engine system in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

669.   Because Volkswagen fraudulently concealed the "defeat device" and the true cleanliness and performance of the CleanDiesel engine system, resulting in a raft of negative publicity once the use of the "defeat device" and true characteristics of the CleanDiesel engine system finally began to be disclosed, the value of the Affected Vehicles has greatly diminished.  In light of the stigma attached to those vehicles by Volkswagen's conduct, they are now worth significantly less than they otherwise would be.

670.   Volkswagen's fraudulent use of the "defeat device" and its concealment of the true characteristics of the CleanDiesel engine system were material to Plaintiffs and the Illinois Subclass.  A vehicle made by a reputable manufacturer of environmentally friendly vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of environmentally dirty vehicles that conceals its polluting engines rather than promptly remedying them.

-187-

671.   Plaintiffs and the Illinois Subclass suffered ascertainable loss caused by Volkswagen's misrepresentations and its concealment of and failure to disclose material information.  Class members who purchased the Affected Vehicles either would have paid less for their vehicles or would not have purchased or leased them at all.

672.   Volkswagen had an ongoing duty to all Volkswagen and Audi customers to refrain from unfair and deceptive acts or practices under the Illinois CFA.  All owners of Affected Vehicles suffered ascertainable loss in the form of the diminished value of their vehicles as a result of Volkswagen's deceptive and unfair acts and practices made in the course of Volkswagen's business.

673.   Volkswagen's violations present a continuing risk to Plaintiffs as well as to the general public.  Volkswagen's unlawful acts and practices complained of herein affect the public interest.

674.   As a direct and proximate result of Volkswagen's violations of the Illinois CFA, Plaintiffs and the Illinois Subclass have suffered injury-in-fact and/or actual damage.

675.   Pursuant to 815 ILCS 505/10a(a), Plaintiffs and the Illinois Subclass seek monetary relief against Volkswagen in the amount of actual damages, as well as punitive damages because Volkswagen acted with fraud and/or malice and/or was grossly negligent.

676.   Plaintiffs also seek an order enjoining Volkswagen's unfair and/or deceptive acts or practices, punitive damages, and attorneys' fees, and any other just and proper relief available under 815 ILCS § 505/1 *et seq.*

## COUNT II
## FRAUD BY CONCEALMENT

677.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

678.   This claim is brought on behalf of the Illinois Subclass.

-188-

679.   Volkswagen intentionally concealed and suppressed material facts concerning the quality of the Affected Vehicles.  As alleged in this Complaint, notwithstanding references in the very model names of the subject vehicles as "Clean Diesel," or to their engines as "TDI Clean Diesel" engines, Volkswagen engaged in a secret scheme to evade federal and state vehicle emissions standards by installing software designed to conceal its vehicles' emissions of the pollutant nitrogen oxide, which contributes to the creation of ozone and smog.  The software installed on the vehicles at issue was designed nefariously to kick-in during emissions certification testing, such that the vehicles would show far lower emissions than when actually operating on the road.  The result was what Volkswagen intended: vehicles passed emissions certifications by way of deliberately induced false readings.  Reportedly, Volkswagen's deliberate, secret scheme resulted in noxious emissions from these vehicles at up to 40 times applicable standards.

680.   Plaintiff and Illinois Subclass members reasonably relied upon Volkswagen's false representations.  They had no way of knowing that Volkswagen's representations were false and gravely misleading.  As alleged herein, Volkswagen employed extremely sophisticated methods of deception.  Plaintiff and Illinois Subclass members did not, and could not, unravel Volkswagen's deception on their own.

681.   Volkswagen concealed and suppressed material facts concerning what is evidently the true culture of Volkswagen – one characterized by an emphasis on profits and sales above compliance with federal and state clean air laws, and emissions regulations that are meant to protect the public and consumers.  It also emphasized profits and sales over the trust that Plaintiff and Illinois Subclass members placed in its representations.  As one customer, Priya Shah, put it in a quotation cited by the *Los Angeles Times* in a September 18, 2015 article, "It's just a blatant disregard and intentional manipulation of the system.  That's just a whole other level of not only

-189-

1    lying to the government, but also lying to your consumer.  People buy diesel cars from

2    Volkswagen because they feel they are clean diesel cars."  In the words of Ms. Shah,

3    which no doubt reflect the sentiments of all other CleanDiesel vehicle buyers, "I don't

4    want to be spewing noxious gases into the environment."

5         682.   Necessarily, Volkswagen also took steps to ensure that its employees did

6    not reveal the details of its scheme to regulators or consumers, including Plaintiff and

7    Illinois Subclass members.  Volkswagen did so in order to boost the reputations of its

8    vehicles and to falsely assure purchasers and lessors of its vehicles, including

9    previously owned vehicles, that Volkswagen is a reputable manufacturer that complies

10   with applicable law, including federal and state clean air laws and emissions

11   regulations, and that its vehicles likewise comply with applicable law and regulations.

12   Volkswagen's false representations were material to consumers, both because they

13   concerned the quality of the Affected Vehicles, including their compliance with

14   applicable federal and state laws and regulations regarding clean air and emissions,

15   and also because the representations played a significant role in the value of the

16   vehicles.  As Volkswagen well knew, its customers, including Plaintiff and Illinois

17   Subclass members, highly valued that the vehicles they were purchasing or leasing

18   were *clean* diesel cars, and they paid accordingly.

19        683.   Volkswagen had a duty to disclose its emissions scheme because

20   knowledge of the scheme and its details were known and/or accessible only to

21   Volkswagen, because Volkswagen had exclusive knowledge as to implementation and

22   maintenance of its scheme, and because Volkswagen knew the facts were not known

23   to or reasonably discoverable by Plaintiff or Illinois Subclass members.  Volkswagen

24   also had a duty to disclose because it made general affirmative representations about

25   the qualities of its vehicles with respect to emissions standards, starting with

26   references to them as *clean* diesel cars, or cars with *clean* diesel engines, which were

27   misleading, deceptive, and incomplete without the disclosure of the additional facts set

28

forth above regarding its emissions scheme, the actual emissions of its vehicles, its actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and its actual practices with respect to the vehicles at issue. Having volunteered to provide information to Plaintiffs, Volkswagen had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiff and Illinois Subclass members.  Whether a manufacturer's products comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certification testing their vehicles must pass.  Volkswagen represented to Plaintiff and Illinois Subclass members that they were purchasing *clean* diesel vehicles, and certification testing appeared to confirm this – except that, secretly, Volkswagen had subverted the testing process thoroughly.

684.   Volkswagen actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Volkswagen money, and it did so at the expense of Plaintiff and Illinois Subclass members.

685.   On information and belief, Volkswagen has still not made full and adequate disclosures, and continues to defraud Plaintiff and Illinois Subclass members by concealing material information regarding the emission qualities of its vehicles and its emissions scheme.

686.   Plaintiff and Illinois Subclass members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly "clean" diesel cars manufactured by Volkswagen, and/or would

-191-

not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them.  Plaintiff's and Illinois Subclass members' actions were justified.  Volkswagen was in exclusive control of the material facts, and such facts were not known to the public, Plaintiff, or Illinois Subclass members.

687.   Because of the concealment and/or suppression of the facts, Plaintiff and Illinois Subclass members have sustained damage because they own vehicles that are diminished in value as a result of Volkswagen's concealment of the true quality and quantity of those vehicles' emissions and Volkswagen's failure to timely disclose the actual emission qualities and quantities of hundreds of thousands of Volkswagen- and Audi-branded vehicles and the serious issues engendered by Volkswagen's corporate policies.  Had Plaintiff and Illinois Subclass members been aware of Volkswagen's emissions scheme, and the company's callous disregard for compliance with applicable federal and state laws and regulations, Plaintiff and Illinois Subclass members who purchased or leased new or previously owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

688.   The value of Plaintiff's and Illinois Subclass members' vehicles has diminished as a result of Volkswagen's fraudulent concealment of its emissions scheme, which has greatly tarnished the Volkswagen and Audi brand names attached to Plaintiff's and Illinois Subclass members' vehicles and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.  In addition, Class members are entitled to damages for loss of use, costs of additional fuel, costs of unused warranties, and other damages to be proved at trial.

689.   Accordingly, Volkswagen is liable to Plaintiff and Illinois Subclass members for damages in an amount to be proven at trial.

010549-11  816608 V1

690.   Volkswagen's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and Illinois Subclass members' rights and the representations that Volkswagen made to them, in order to enrich Volkswagen.  To the extent permitted under applicable law, Volkswagen's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

### COUNT III
### BREACH OF CONTRACT
#### (Based on Illinois Law)

691.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

692.   Plaintiff brings this Count on behalf of new vehicle or certified pre-owned vehicle purchasers in the Illinois Subclass.

693.   Volkswagen's misrepresentations and omissions alleged herein, including Volkswagen's failure to disclose the existence of the CleanDiesel engine system's defect and/or defective design as alleged herein, caused Plaintiff and the other Illinois Subclass members to make their purchases or leases of their Affected Vehicles. Absent those misrepresentations and omissions, Plaintiff and the other Illinois Subclass members would not have purchased or leased these Affected Vehicles, would not have purchased or leased these Affected Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain the CleanDiesel engine system and which were not marketed as including such a system.  Accordingly, Plaintiff and the other Illinois Subclass members overpaid for their Affected Vehicles and did not receive the benefit of their bargain.

694.   Each and every sale or lease of an Affected Vehicle by an authorized Volkswagen dealer constitutes a contract between Volkswagen and the purchaser or lessee.  Volkswagen breached these contracts by selling or leasing Plaintiff and the

-193-

other Illinois Subclass members defective Affected Vehicles and by misrepresenting or failing to disclose the existence of the CleanDiesel engine system's defect and/or defective design, including information known to Volkswagen rendering each Affected Vehicle non EPA-compliant, and thus less valuable, than vehicles not equipped with a CleanDiesel engine system.

695.   As a direct and proximate result of Volkswagen's breach of contract, Plaintiff and the Illinois Subclass have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

**P.    Claims Brought on Behalf of the Indiana Subclass**

**COUNT I**
**VIOLATION OF THE INDIANA DECEPTIVE CONSUMER SALES ACT**
**(IND. CODE § 24-5-0.5-3)**

696.   Plaintiff Jeffrey Brady ("Plaintiff," for purposes of all Indiana Subclass Counts) incorporates by reference all preceding allegations as though fully set forth herein.

697.   Plaintiff intends to assert a claim under Indiana's Deceptive Consumer Sales Act ("Indiana DCSA") which prohibits a person from engaging in a "deceptive trade practice," which includes representing:  "(1) That such subject of a consumer transaction has sponsorship, approval, performance, characteristics, accessories, uses, or benefits that they do not have, or that a person has a sponsorship, approval, status, affiliation, or connection it does not have; (2) That such subject of a consumer transaction is of a particular standard, quality, grade, style or model, if it is not and if the supplier knows or should reasonably know that it is not; … (7) That the supplier has a sponsorship, approval or affiliation in such consumer transaction that the supplier does not have, and which the supplier knows or should reasonably know that the supplier does not have; … (b) Any representations on or within a product or its packaging or in advertising or promotional materials which would constitute a

-194-

deceptive act shall be the deceptive act both of the supplier who places such a representation thereon or therein, or who authored such materials, and such suppliers who shall state orally or in writing that such representation is true if such other supplier shall know or have reason to know that such representation was false." Plaintiffs will make a demand in satisfaction of IND. CODE § 24-5-0.5-5(a)(2), and may amend this Complaint to assert claims under the CLRA once the required six months have elapsed.  This paragraph is included for purposes of notice only and is not intended to actually assert a claim under the CLRA.

## COUNT II
## FRAUD BY CONCEALMENT

698.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

699.   This claim is brought on behalf of the Indiana Subclass.

700.   Volkswagen intentionally concealed and suppressed material facts concerning the quality of the Affected Vehicles.  As alleged in this Complaint, notwithstanding references in the very model names of the subject vehicles as "Clean Diesel," or to their engines as "TDI Clean Diesel" engines, Volkswagen engaged in a secret scheme to evade federal and state vehicle emissions standards by installing software designed to conceal its vehicles' emissions of the pollutant nitrogen oxide, which contributes to the creation of ozone and smog.  The software installed on the vehicles at issue was designed nefariously to kick-in during emissions certification testing, such that the vehicles would show far lower emissions than when actually operating on the road.  The result was what Volkswagen intended: vehicles passed emissions certifications by way of deliberately induced false readings.  Reportedly, Volkswagen's deliberate, secret scheme resulted in noxious emissions from these vehicles at up to 40 times applicable standards.

701.   Plaintiff and Indiana Subclass members reasonably relied upon Volkswagen's false representations.  They had no way of knowing that Volkswagen's

-195-

representations were false and gravely misleading.  As alleged herein, Volkswagen employed extremely sophisticated methods of deception.  Plaintiff and Indiana Subclass members did not, and could not, unravel Volkswagen's deception on their own.

702.   Volkswagen concealed and suppressed material facts concerning what is evidently the true culture of Volkswagen—one characterized by an emphasis on profits and sales above compliance with federal and state clean air laws, and emissions regulations that are meant to protect the public and consumers.  It also emphasized profits and sales over the trust that Plaintiff and Indiana Subclass members placed in its representations.  As one customer, Priya Shah, put it in a quotation cited by the *Los Angeles Times* in a September 18, 2015 article, "It's just a blatant disregard and intentional manipulation of the system.  That's just a whole other level of not only lying to the government, but also lying to your consumer.  People buy diesel cars from Volkswagen because they feel they are clean diesel cars."  In the words of Ms. Shah, which no doubt reflect the sentiments of all other CleanDiesel vehicle buyers, "I don't want to be spewing noxious gases into the environment."

703.   Necessarily, Volkswagen also took steps to ensure that its employees did not reveal the details of its scheme to regulators or consumers, including Plaintiff and Indiana Subclass members.  Volkswagen did so in order to boost the reputations of its vehicles and to falsely assure purchasers and lessors of its vehicles, including previously owned vehicles, that Volkswagen is a reputable manufacturer that complies with applicable law, including federal and state clean air laws and emissions regulations, and that its vehicles likewise comply with applicable law and regulations.  Volkswagen's false representations were material to consumers, both because they concerned the quality of the Affected Vehicles, including their compliance with applicable federal and state laws and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the

-196-

vehicles.  As Volkswagen well knew, its customers, including Plaintiff and Indiana Subclass members, highly valued that the vehicles they were purchasing or leasing were *clean* diesel cars, and they paid accordingly.

704.   Volkswagen had a duty to disclose its emissions scheme because knowledge of the scheme and its details were known and/or accessible only to Volkswagen, because Volkswagen had exclusive knowledge as to implementation and maintenance of its scheme, and because Volkswagen knew the facts were not known to or reasonably discoverable by Plaintiff or Indiana Subclass members.  Volkswagen also had a duty to disclose because it made general affirmative representations about the qualities of its vehicles with respect to emissions standards, starting with references to them as *clean* diesel cars, or cars with *clean* diesel engines, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding its emissions scheme, the actual emissions of its vehicles, its actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and its actual practices with respect to the vehicles at issue.  Having volunteered to provide information to Plaintiffs, Volkswagen had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiff and Indiana Subclass members.  Whether a manufacturer's products comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certification testing their vehicles must pass.  Volkswagen represented to Plaintiff and Indiana Subclass members that they were purchasing *clean* diesel vehicles, and certification testing appeared to confirm this—except that, secretly, Volkswagen had subverted the testing process thoroughly.

705.   Volkswagen actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Volkswagen money, and it did so at the expense of Plaintiff and Indiana Subclass members.

706.   On information and belief, Volkswagen has still not made full and adequate disclosures, and continues to defraud Plaintiff and Indiana Subclass members by concealing material information regarding the emissions qualities of its vehicles and its emissions scheme.

707.   Plaintiff and Indiana Subclass members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly "clean" diesel cars manufactured by Volkswagen, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them.  Plaintiff's and Indiana Subclass members' actions were justified.  Volkswagen was in exclusive control of the material facts, and such facts were not known to the public, Plaintiff, or Indiana Subclass members.

708.   Because of the concealment and/or suppression of the facts, Plaintiff and Indiana Subclass members have sustained damage because they own vehicles that are diminished in value as a result of Volkswagen's concealment of the true quality and quantity of those vehicles' emissions and Volkswagen's failure to timely disclose the actual emissions qualities and quantities of hundreds of thousands of Volkswagen- and Audi-branded vehicles and the serious issues engendered by Volkswagen's corporate policies.  Had Plaintiff and Indiana Subclass members been aware of Volkswagen's emissions scheme, and the company's callous disregard for compliance with applicable federal and state laws and regulations, Plaintiff and Indiana Subclass

-198-

members who purchased or leased new or previously owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

709.   The value of Plaintiff's and Indiana Subclass members' vehicles has diminished as a result of Volkswagen's fraudulent concealment of its emissions scheme, which has greatly tarnished the Volkswagen and Audi brand names attached to Plaintiff's and Indiana Subclass members' vehicles and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.  In addition, Class members are entitled to damages for loss of use, costs of additional fuel, costs of unused warranties, and other damages to be proved at trial.

710.   Accordingly, Volkswagen is liable to Plaintiff and Indiana Subclass members for damages in an amount to be proven at trial.

711.   Volkswagen's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and Indiana Subclass members' rights and the representations that Volkswagen made to them, in order to enrich Volkswagen.  To the extent permitted under applicable law, Volkswagen's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT III
## BREACH OF CONTRACT
## (BASED ON INDIANA LAW)

712.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

713.   Plaintiff brings this Count on behalf of new vehicle or certified pre-owned vehicle purchasers in the Indiana Subclass.

714.   Volkswagen's misrepresentations and omissions alleged herein, including Volkswagen's failure to disclose the existence of the CleanDiesel engine system's

-199-

defect and/or defective design as alleged herein, caused Plaintiff and the other Indiana Subclass members to make their purchases or leases of their Affected Vehicles. Absent those misrepresentations and omissions, Plaintiff and the other Indiana Subclass members would not have purchased or leased these Affected Vehicles, would not have purchased or leased these Affected Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain the CleanDiesel engine system and which were not marketed as including such a system.  Accordingly, Plaintiff and the other Indiana Subclass members overpaid for their Affected Vehicles and did not receive the benefit of their bargain.

715.   Each and every sale or lease of an Affected Vehicle by an authorized Volkswagen dealer constitutes a contract between Volkswagen and the purchaser or lessee.  Volkswagen breached these contracts by selling or leasing Plaintiff and the other Indiana Subclass members defective Affected Vehicles and by misrepresenting or failing to disclose the existence of the CleanDiesel engine system's defect and/or defective design, including information known to Volkswagen rendering each Affected Vehicle non EPA-compliant, and thus less valuable, than vehicles not equipped with a CleanDiesel engine system.

716.   As a direct and proximate result of Volkswagen's breach of contract, Plaintiff and the Indiana Subclass have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

**Q.     Claims Brought on Behalf of the Iowa Subclass**

**COUNT I**
**VIOLATIONS OF THE PRIVATE RIGHT OF ACTION**
**FOR CONSUMER FRAUDS ACT**
**(IOWA CODE §§ 714H.1, *ET SEQ.*)**

717.   Plaintiff Boualivanh Phanhphongsane ("Plaintiff," for purposes of all Iowa Subclass Counts) incorporates by reference all preceding allegations as though fully set forth herein.

-200-

718.   Plaintiff brings this Count on behalf of the Iowa Subclass.

719.   Defendants are each a "person" under Iowa Code § 714H.2(7).

720.   Plaintiff and the Iowa Subclass are "consumers," as defined by Iowa Code § 714H.2(3), who purchased or leased one or more Affected Vehicles.

721.   Volkswagen participated in unfair or deceptive acts or practices that violated Iowa's Private Right of Action for Consumer Fraud Act ("Iowa CFA"), Iowa Code § 714H.1, *et seq*., as described herein.  Volkswagen is directly liable for these violations of law.

722.   By failing to disclose and actively concealing that the CleanDiesel engine systems were not EPA-complaint and used a "defeat device" in the Affected Vehicles, Volkswagen engaged in deceptive business practices prohibited by the Iowa CFA, including (1) representing that Affected Vehicles have characteristics, uses, benefits, and qualities which they do not have, (2) representing that Affected Vehicles are of a particular standard, quality, and grade when they are not, (3) advertising Affected Vehicles with the intent not to sell them as advertised, and (4) engaging in acts or practices which are otherwise unfair, misleading, false, or deceptive to the consumer.

723.   As alleged above, Volkswagen made numerous material statements about the benefits and characteristics of the CleanDiesel engine system that were either false or misleading.  Each of these statements contributed to the deceptive context of Volkswagen's unlawful advertising and representations as a whole.

724.   Volkswagen knew that the CleanDiesel engine system in the Affected Vehicles were defectively designed or manufactured, did not comply with EPA regulations, and were not suitable for their intended use.  Volkswagen nevertheless failed to warn Plaintiff about these defects despite having a duty to do so.

725.   Volkswagen owed Plaintiff a duty to disclose the defective nature of the CleanDiesel engine system in the Affected Vehicles, because Volkswagen:

  a. Possessed exclusive knowledge of the defects rendering the Affected Vehicles non-compliant with EPA regulations;

-201-

b. Intentionally concealed the defects associated with the CleanDiesel engine system through its deceptive marketing campaigns and "defeat device" that it designed to hide the defects in the CleanDiesel engine system; and/or

c. Made incomplete representations about the characteristics and performance of the CleanDiesel engine system generally, while purposefully withholding material facts from Plaintiff that contradicted these representations.

726.   Volkswagen's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff, about the true performance and characteristics of the CleanDiesel engine system.

727.   As a result of its violations of the Iowa CFA detailed above, Volkswagen caused actual damage to Plaintiff and, if not stopped, will continue to harm Plaintiff. Plaintiff currently owns or leases, or within the Class Period has owned or leased, an Affected Vehicle that is defective.  Defects associated with the CleanDiesel engine system have caused the value of the Affected Vehicles, including Plaintiff's Vehicle, to decrease.

728.   Plaintiff and the Class sustained damages as a result of the Volkswagen's unlawful acts and are, therefore, entitled to damages and other relief as provided under Chapter 714H of the Iowa Code.  Because Volkswagen's conduct was committed willfully, Plaintiff seeks treble damages as provided in Iowa Code § 714H.5(4).

729.   Plaintiff also seeks court costs and attorneys' fees as a result of Volkswagen's violation of Chapter 714H as provided in Iowa Code § 714H.5(2).

## COUNT II
## BREACH OF CONTRACT
## (BASED ON IOWA LAW)

730.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

731.   Plaintiff brings this Count on behalf of new vehicle or certified pre-owned vehicle purchasers in the Iowa Subclass.

-202-

732.   Volkswagen's misrepresentations and omissions alleged herein, including Volkswagen's failure to disclose the existence of the CleanDiesel engine system's defect and/or defective design as alleged herein, caused Plaintiff and the other Iowa Subclass members to make their purchases or leases of their Affected Vehicles. Absent those misrepresentations and omissions, Plaintiff and the other Iowa Subclass members would not have purchased or leased these Affected Vehicles, would not have purchased or leased these Affected Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain the CleanDiesel engine system and which were not marketed as including such a system. Accordingly, Plaintiff and the other Iowa Subclass members overpaid for their Affected Vehicles and did not receive the benefit of their bargain.

733.   Each and every sale or lease of an Affected Vehicle by an authorized Volkswagen dealer constitutes a contract between Volkswagen and the purchaser or lessee.  Volkswagen breached these contracts by selling or leasing Plaintiff and the other Iowa Subclass members defective Affected Vehicles and by misrepresenting or failing to disclose the existence of the CleanDiesel engine system's defect and/or defective design, including information known to Volkswagen rendering each Affected Vehicle non EPA-compliant, and thus less valuable, than vehicles not equipped with a CleanDiesel engine system.

734.   As a direct and proximate result of Volkswagen's breach of contract, Plaintiff and the Iowa Subclass have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

<div align="center">

**COUNT III**
**FRAUDULENT CONCEALMENT**
**(BASED ON IOWA LAW)**

</div>

735.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

<div align="center">-203-</div>

736.   Plaintiff brings this Count on behalf of the Iowa Subclass.

737.   Volkswagen intentionally concealed that the CleanDiesel engine systems were not EPA-compliant and used a "defeat device", or acted with reckless disregard for the truth, and denied Plaintiff and the other Class members information that is highly relevant to their purchasing decision.

738.   Volkswagen further affirmatively misrepresented to Plaintiff in advertising and other forms of communication, including standard and uniform material provided with each car, that the Affected Vehicles it was selling were new, had no significant defects, complied with EPA regulations and would perform and operate properly when driven in normal usage.

739.   Volkswagen knew these representations were false when made.

740.   The Affected Vehicles purchased or leased by Plaintiff and the other Class members were, in fact, defective, non-EPA compliant, unsafe, and unreliable because the Affected Vehicles contained faulty and defective CleanDiesel engine system, as alleged herein.

741.   Volkswagen had a duty to disclose that these Affected Vehicles were defective, unsafe, non-EPA compliant and unreliable in that certain crucial emissions functions of the Affected Vehicles would be rendered inoperative due to the "defeat device" installed in the defective CleanDiesel engine system, because Plaintiff and the other Class members relied on Volkswagen's material representations that the Affected Vehicles they were purchasing were safe, environmentally clean, efficient and free from defects.

742.   The aforementioned concealment was material because if it had been disclosed Plaintiff and the other Class members would not have bought or leased the Affected Vehicles, or would not have bought or leased those Vehicles at the prices they paid.

-204-

743.   The aforementioned representations were material because they were facts that would typically be relied on by a person purchasing or leasing a new motor vehicle.  Volkswagen knew or recklessly disregarded that its representations were false because it knew that it had to use the "defeat device" in order for Affected Vehicles to pass EPA emissions requirements.  Volkswagen intentionally made the false statements in order to sell Affected Vehicles.

744.   Plaintiff and the other Class members relied on Volkswagen's reputation – along with Volkswagen's failure to disclose the faulty and defective nature of the CleanDiesel engine system and Volkswagen's affirmative assurance that its Affected Vehicles were safe and reliable, and other similar false statements – in purchasing or leasing Volkswagen's Affected Vehicles.

745.   As a result of their reliance, Plaintiff and the other Class members have been injured in an amount to be proven at trial, including, but not limited to, their lost benefit of the bargain and overpayment at the time of purchase or lease and/or the diminished value of their Affected Vehicles.

746.   Volkswagen's conduct was knowing, intentional, with malice, demonstrated a complete lack of care, and was in reckless disregard for the rights of Plaintiff and the other Class members.  Plaintiff and the other Class members are therefore entitled to an award of punitive damages.

**R.     Claims Brought on Behalf of the Kansas Subclass**

<div align="center">

**COUNT I**
**VIOLATIONS OF THE KANSAS CONSUMER PROTECTION ACT**
**(KAN. STAT. ANN. § 50-623, *ET SEQ.*)**

</div>

747.   Plaintiff Brenda Penney ("Plaintiff," for purposes of all Kansas Subclass Counts) incorporates by reference all preceding allegations as though fully set forth herein.

748.   This claim is brought only on behalf of members of the Kansas Subclass.

<div align="center">-205-</div>

749.   Volkswagen is a "supplier" under the Kansas Consumer Protection Act ("Kansas CPA"), KAN. STAT. ANN. § 50-624(l).

750.   Kansas Class Members are "consumers," within the meaning of KAN. STAT. ANN. § 50-624(b), who purchased or leased one or more Affected Vehicles.

751.   The sale of the Affected Vehicles to the Kansas Class Members was a "consumer transaction" within the meaning of KAN. STAT. ANN. § 50-624(c).

752.   The Kansas CPA states "[n]o supplier shall engage in any deceptive act or practice in connection with a consumer transaction," KAN. STAT. ANN. § 50-626(a), and that deceptive acts or practices include:  (1) knowingly making representations or with reason to know that "(A) Property or services have sponsorship, approval, accessories, characteristics, ingredients, uses, benefits or quantities that they do not have;" and "(D) property or services are of particular standard, quality, grade, style or model, if they are of another which differs materially from the representation;" "(2) the willful use, in any oral or written representation, of exaggeration, falsehood, innuendo or ambiguity as to a material fact;" and "(3) the willful failure to state a material fact, or the willful concealment, suppression or omission of a material fact." The Kansas CPA also provides that "[n]o supplier shall engage in any unconscionable act or practice in connection with a consumer transaction."  KAN. STAT. ANN. § 50-627(a).

753.   Volkswagen participated in misleading, false, or deceptive acts that violated the Kansas CPA.  By fraudulently installing the "defeat device" to make it appear that its CleanDiesel engine systems complied with EPA regulations, Volkswagen engaged in deceptive business practices prohibited by the Kansas CPA. Volkswagen also engaged in unlawful trade practices by:  (1) representing that the Affected Vehicles have characteristics, uses, benefits, and qualities which they do not have; (2) representing that the Affected Vehicles are of a particular standard and quality when they are not; (3) advertising the Affected Vehicles with the intent not to

-206-

1  sell them as advertised; (4) willfully using, in any oral or written representation, of

2  exaggeration, falsehood, innuendo or ambiguity as to a material fact; (5) willfully

3  failing to state a material fact, or the willfully concealing, suppressing or omitting a

4  material fact; and (6) otherwise engaging in an unconscionable act or practice in

5  connection with a consumer transaction.

6        754.   Volkswagen's actions as set forth above occurred in the conduct of trade

7  or commerce.

8        755.   In the course of its business, Volkswagen installed the "defeat device"

9  and concealed that its CleanDiesel systems failed EPA regulations as described herein

10  and otherwise engaged in activities with a tendency or capacity to deceive.

11  Volkswagen also engaged in unlawful trade practices by employing deception,

12  deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or

13  omission of any material fact with intent that others rely upon such concealment,

14  suppression or omission, in connection with the sale of Affected Vehicles.

15        756.   Volkswagen has known of its use of the "defeat device" and the true

16  nature of its CleanDiesel engine system for at least six years, but concealed all of that

17  information until recently.

18        757.   Volkswagen was also aware that it valued profits over environmental

19  cleanliness, efficiency, and lawfulness, and that it was manufacturing, selling and

20  distributing vehicles throughout the United States that did not comply with EPA

21  regulations.  Volkswagen concealed this information as well.

22        758.   By failing to disclose and by actively concealing the "defeat device" and

23  the true cleanliness and performance of the CleanDiesel engine system, by marketing

24  its vehicles as safe, reliable, environmentally clean, efficient, and of high quality, and

25  by presenting itself as a reputable manufacturer that valued safety, environmental

26  cleanliness and efficiency, and stood behind its vehicles after they were sold,

27  Volkswagen engaged in deceptive business practices in violation of the Kansas CPA.

28

759.   In the course of Volkswagen's business, it willfully failed to disclose and actively concealed the use of the "defeat device" and true cleanliness and efficiency of the CleanDiesel engine system and serious defects discussed above.  Volkswagen compounded the deception by repeatedly asserting that the Affected Vehicles were safe, reliable, environmentally clean, efficient, and of high quality, and by claiming to be a reputable manufacturer that valued safety, environmental cleanliness and efficiency, and stood behind its vehicles once they are on the road.

760.   Volkswagen's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff, about the true cleanliness and efficiency of the CleanDiesel engine system, the quality of the Volkswagen and Audi brands, the devaluing of environmental cleanliness and integrity at Volkswagen, and the true value of the Affected Vehicles.

761.   Volkswagen intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with an intent to mislead Plaintiff and the Kansas Class.

762.   Volkswagen knew or should have known that its conduct violated the Kansas CPA.

763.   As alleged above, Volkswagen made material statements about the safety, cleanliness, efficiency and reliability of the Affected Vehicles and the Volkswagen and Audi brands that were either false or misleading.

764.   Volkswagen owed Plaintiffs a duty to disclose the true safety, cleanliness, efficiency and reliability of the Affected Vehicles and the devaluing of environmental cleanliness and integrity at Volkswagen, because Volkswagen:

      a.    Possessed exclusive knowledge that it valued profits over environmental cleanliness, efficiency, and lawfulness, and that it was manufacturing, selling and distributing vehicles throughout the United States that did not comply with EPA regulations;

      b.    Intentionally concealed the foregoing from Plaintiffs; and/or

-208-

c.   Made incomplete representations about the safety, cleanliness, efficiency and reliability of the Affected Vehicles generally, and the "defeat device" and true nature of the CleanDiesel engine system in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

765.   Because Volkswagen fraudulently concealed the "defeat device" and the true cleanliness and performance of the CleanDiesel engine system, resulting in a raft of negative publicity once the use of the "defeat device" and true characteristics of the CleanDiesel engine system finally began to be disclosed, the value of the Affected Vehicles has greatly diminished.  In light of the stigma attached to those vehicles by Volkswagen's conduct, they are now worth significantly less than they otherwise would be.

766.   Volkswagen's fraudulent use of the "defeat device" and its concealment of the true characteristics of the CleanDiesel engine system were material to Plaintiffs and the Kansas Class.  A vehicle made by a reputable manufacturer of safe vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of environmentally dirty vehicles that conceals its polluting engines rather than promptly remedying them.

767.   Plaintiffs and the Kansas Class suffered ascertainable loss caused by Volkswagen's misrepresentations and its concealment of and failure to disclose material information.  Class members who purchased the Affected Vehicles either would have paid less for their vehicles or would not have purchased or leased them at all.

768.   Volkswagen had an ongoing duty to all Volkswagen and Audi customers to refrain from unfair and deceptive acts or practices under the Kansas CPA.  All owners of Affected Vehicles suffered ascertainable loss in the form of the diminished value of their vehicles as a result of Volkswagen's deceptive and unfair acts and practices made in the course of Volkswagen's business.

-209-

769.   Volkswagen's violations present a continuing risk to Plaintiffs as well as to the general public.  Volkswagen's unlawful acts and practices complained of herein affect the public interest.

770.   As a direct and proximate result of Volkswagen's violations of the Kansas CPA, Plaintiffs and the Kansas Class have suffered injury-in-fact and/or actual damage.

771.   Pursuant to KAN. STAT. ANN. § 50-634, Plaintiffs and the Kansas Class seek monetary relief against Volkswagen measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $10,000 for each Plaintiff and each Kansas Class member

772.   Plaintiff also seeks an order enjoining Volkswagen's unfair, unlawful, and/or deceptive practices, declaratory relief, attorneys' fees, and any other just and proper relief available under KAN. STAT. ANN § 50-623 *et seq.*

## COUNT II
## FRAUD BY CONCEALMENT

773.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

774.   This claim is brought on behalf of the Kansas Subclass.

775.   Volkswagen intentionally concealed and suppressed material facts concerning the quality of the Affected Vehicles.  As alleged in this Complaint, notwithstanding references in the very model names of the subject vehicles as "Clean Diesel," or to their engines as "TDI Clean Diesel" engines, Volkswagen engaged in a secret scheme to evade federal and state vehicle emissions standards by installing software designed to conceal its vehicles' emissions of the pollutant nitrogen oxide, which contributes to the creation of ozone and smog.  The software installed on the vehicles at issue was designed nefariously to kick-in during emissions certification testing, such that the vehicles would show far lower emissions than when actually operating on the road.  The result was what Volkswagen intended: vehicles passed

-210-

emissions certifications by way of deliberately induced false readings.  Reportedly, Volkswagen's deliberate, secret scheme resulted in noxious emissions from these vehicles at up to 40 times applicable standards.

776.   Plaintiff and Kansas Subclass members reasonably relied upon Volkswagen's false representations.  They had no way of knowing that Volkswagen's representations were false and gravely misleading.  As alleged herein, Volkswagen employed extremely sophisticated methods of deception.  Plaintiff and Kansas Subclass members did not, and could not, unravel Volkswagen's deception on their own.

777.   Volkswagen concealed and suppressed material facts concerning what is evidently the true culture of Volkswagen—one characterized by an emphasis on profits and sales above compliance with federal and state clean air laws, and emissions regulations that are meant to protect the public and consumers.  It also emphasized profits and sales over the trust that Plaintiff and Kansas Subclass members placed in its representations.  As one customer, Priya Shah, put it in a quotation cited by the *Los Angeles Times* in a September 18, 2015 article, "It's just a blatant disregard and intentional manipulation of the system.  That's just a whole other level of not only lying to the government, but also lying to your consumer.  People buy diesel cars from Volkswagen because they feel they are clean diesel cars."  In the words of Ms. Shah, which no doubt reflect the sentiments of all other CleanDiesel vehicle buyers, "I don't want to be spewing noxious gases into the environment."

778.   Necessarily, Volkswagen also took steps to ensure that its employees did not reveal the details of its scheme to regulators or consumers, including Plaintiff and Kansas Subclass members.  Volkswagen did so in order to boost the reputations of its vehicles and to falsely assure purchasers and lessors of its vehicles, including previously owned vehicles, that Volkswagen is a reputable manufacturer that complies with applicable law, including federal and state clean air laws and emissions

-211-

regulations, and that its vehicles likewise comply with applicable law and regulations. Volkswagen's false representations were material to consumers, both because they concerned the quality of the Affected Vehicles, including their compliance with applicable federal and state laws and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles. As Volkswagen well knew, its customers, including Plaintiff and Kansas Subclass members, highly valued that the vehicles they were purchasing or leasing were *clean* diesel cars, and they paid accordingly.

779. Volkswagen had a duty to disclose its emissions scheme because knowledge of the scheme and its details were known and/or accessible only to Volkswagen, because Volkswagen had exclusive knowledge as to implementation and maintenance of its scheme, and because Volkswagen knew the facts were not known to or reasonably discoverable by Plaintiff or Kansas Subclass members. Volkswagen also had a duty to disclose because it made general affirmative representations about the qualities of its vehicles with respect to emissions standards, starting with references to them as *clean* diesel cars, or cars with *clean* diesel engines, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding its emissions scheme, the actual emissions of its vehicles, its actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and its actual practices with respect to the vehicles at issue. Having volunteered to provide information to Plaintiffs, Volkswagen had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiff and Kansas Subclass members. Whether a manufacturer's products comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with

-212-

respect to the emissions certification testing their vehicles must pass.  Volkswagen represented to Plaintiff and Kansas Subclass members that they were purchasing *clean* diesel vehicles, and certification testing appeared to confirm this—except that, secretly, Volkswagen had subverted the testing process thoroughly.

780.   Volkswagen actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Volkswagen money, and it did so at the expense of Plaintiff and Kansas Subclass members.

781.   On information and belief, Volkswagen has still not made full and adequate disclosures, and continues to defraud Plaintiff and Kansas Subclass members by concealing material information regarding the emissions qualities of its vehicles and its emissions scheme.

782.   Plaintiff and Kansas Subclass members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly "clean" diesel cars manufactured by Volkswagen, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them.  Plaintiff's and Kansas Subclass members' actions were justified.  Volkswagen was in exclusive control of the material facts, and such facts were not known to the public, Plaintiff, or Kansas Subclass members.

783.   Because of the concealment and/or suppression of the facts, Plaintiff and Kansas Subclass members have sustained damage because they own vehicles that are diminished in value as a result of Volkswagen's concealment of the true quality and quantity of those vehicles' emissions and Volkswagen's failure to timely disclose the actual emissions qualities and quantities of hundreds of thousands of Volkswagen- and

-213-

Audi-branded vehicles and the serious issues engendered by Volkswagen's corporate policies.  Had Plaintiff and Kansas Subclass members been aware of Volkswagen's emissions scheme, and the company's callous disregard for compliance with applicable federal and state laws and regulations, Plaintiff and Kansas Subclass members who purchased or leased new or previously owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

784.   The value of Plaintiff's and Kansas Subclass members' vehicles has diminished as a result of Volkswagen's fraudulent concealment of its emissions scheme, which has greatly tarnished the Volkswagen and Audi brand names attached to Plaintiff's and Kansas Subclass members' vehicles and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.  In addition, Class members are entitled to damages for loss of use, costs of additional fuel, costs of unused warranties, and other damages to be proved at trial.

785.   Accordingly, Volkswagen is liable to Plaintiff and Kansas Subclass members for damages in an amount to be proven at trial.

786.   Volkswagen's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and Kansas Subclass members' rights and the representations that Volkswagen made to them, in order to enrich Volkswagen.  To the extent permitted under applicable law, Volkswagen's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**COUNT III**
**BREACH OF CONTRACT**
**(BASED ON KANSAS LAW)**

787.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

-214-

788.   Plaintiff brings this Count on behalf of new vehicle or certified pre-owned vehicle purchasers in the Kansas Subclass.

789.   Volkswagen's misrepresentations and omissions alleged herein, including Volkswagen's failure to disclose the existence of the CleanDiesel engine system's defect and/or defective design as alleged herein, caused Plaintiff and the other Kansas Subclass members to make their purchases or leases of their Affected Vehicles. Absent those misrepresentations and omissions, Plaintiff and the other Kansas Subclass members would not have purchased or leased these Affected Vehicles, would not have purchased or leased these Affected Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain the CleanDiesel engine system and which were not marketed as including such a system. Accordingly, Plaintiff and the other Kansas Subclass members overpaid for their Affected Vehicles and did not receive the benefit of their bargain.

790.   Each and every sale or lease of an Affected Vehicle by an authorized Volkswagen dealer constitutes a contract between Volkswagen and the purchaser or lessee. Volkswagen breached these contracts by selling or leasing Plaintiff and the other Kansas Subclass members defective Affected Vehicles and by misrepresenting or failing to disclose the existence of the CleanDiesel engine system's defect and/or defective design, including information known to Volkswagen rendering each Affected Vehicle non EPA-compliant, and thus less valuable, than vehicles not equipped with a CleanDiesel engine system.

791.   As a direct and proximate result of Volkswagen's breach of contract, Plaintiff and the Kansas Subclass have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

**S.    Claims Brought on Behalf of the Kentucky Subclass**

**COUNT I**
**VIOLATION OF THE KENTUCKY CONSUMER PROTECTION ACT**
**(KY. REV. STAT. § 367.110, *et seq.*)**

-215-

792. Plaintiff Michael Antis ("Plaintiff," for purposes of all Kentucky Subclass Counts) incorporates by reference all preceding allegations as though fully set forth herein.

793. This claim is brought only on behalf of the Kentucky Subclass.

794. Volkswagen, Plaintiffs, and the Kentucky Subclass are "persons" within the meaning of the KY. REV. STAT. § 367.110(1).

795. Volkswagen engaged in "trade" or "commerce" within the meaning of KY. REV. STAT. § 367.110(2).

796. The Kentucky Consumer Protection Act ("Kentucky CPA") makes unlawful "[u]nfair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce ...." KY. REV. STAT. § 367.170(1). Volkswagen both participated in misleading, false, or deceptive acts that violated the Kentucky CPA. By fraudulently installing the "defeat device" to make it appear that its CleanDiesel engine systems complied with EPA regulations, Volkswagen engaged in deceptive business practices prohibited by the Kentucky CPA.

797. In the course of its business, Volkswagen installed the "defeat device" and concealed that its CleanDiesel systems failed EPA regulations as described herein and otherwise engaged in activities with a tendency or capacity to deceive. Volkswagen also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of Affected Vehicles.

798. Volkswagen has known of its use of the "defeat device" and the true nature of its CleanDiesel engine system for at least six years, but concealed all of that information until recently.

799. Volkswagen was also aware that it valued profits over environmental cleanliness, efficiency, and lawfulness, and that it was manufacturing, selling and

-216-

distributing vehicles throughout the United States that did not comply with EPA regulations.  Volkswagen concealed this information as well.

800.   By failing to disclose and by actively concealing the "defeat device" and the true cleanliness and performance of the CleanDiesel engine system, by marketing its vehicles as safe, reliable, environmentally clean, efficient, and of high quality, and by presenting itself as a reputable manufacturer that valued safety, environmental cleanliness and efficiency, and stood behind its vehicles after they were sold, Volkswagen engaged in deceptive business practices in violation of the Kentucky CPA.

801.   In the course of Volkswagen's business, it willfully failed to disclose and actively concealed the use of the "defeat device" and true cleanliness and efficiency of the CleanDiesel engine system and serious defects discussed above.  Volkswagen compounded the deception by repeatedly asserting that the Affected Vehicles were safe, reliable, environmentally clean, efficient, and of high quality, and by claiming to be a reputable manufacturer that valued safety, environmental cleanliness and efficiency, and stood behind its vehicles once they are on the road.

802.   Volkswagen's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff, about the true cleanliness and efficiency of the CleanDiesel engine system, the quality of the Volkswagen and Audi brands, the devaluing of environmental cleanliness and integrity at Volkswagen, and the true value of the Affected Vehicles.

803.   Volkswagen intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with an intent to mislead Plaintiff and the Kentucky Subclass.

804.   Volkswagen knew or should have known that its conduct violated the Kentucky CPA.

805.   Volkswagen made material statements about the safety, cleanliness, efficiency and reliability of the Affected Vehicles and the Volkswagen and Audi brands that were either false or misleading.

806.   Volkswagen owed Plaintiffs a duty to disclose the true safety, cleanliness, efficiency and reliability of the Affected Vehicles and the devaluing of environmental cleanliness and integrity at Volkswagen, because Volkswagen:

   a.   Possessed exclusive knowledge that it valued profits over environmental cleanliness, efficiency, and lawfulness, and that it was manufacturing, selling and distributing vehicles throughout the United States that did not comply with EPA regulations;

   b.   Intentionally concealed the foregoing from Plaintiffs; and/or

   c.   Made incomplete representations about the safety, cleanliness, efficiency and reliability of the Affected Vehicles generally, and the "defeat device" and true nature of the CleanDiesel engine system in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

807.   Because Volkswagen fraudulently concealed the "defeat device" and the true cleanliness and performance of the CleanDiesel engine system, resulting in a raft of negative publicity once the use of the "defeat device" and true characteristics of the CleanDiesel engine system finally began to be disclosed, the value of the Affected Vehicles has greatly diminished.  In light of the stigma attached to those vehicles by Volkswagen's conduct, they are now worth significantly less than they otherwise would be.

808.   Volkswagen's fraudulent use of the "defeat device" and its concealment of the true characteristics of the CleanDiesel engine system were material to Plaintiffs and the Kentucky Subclass.  A vehicle made by a reputable manufacturer of environmentally friendly vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of environmentally dirty vehicles that conceals its polluting engines rather than promptly remedying them.

-218-

809.   Plaintiffs and the Kentucky Subclass suffered ascertainable loss caused by Volkswagen's misrepresentations and its concealment of and failure to disclose material information.  Class members who purchased the Affected Vehicles either would have paid less for their vehicles or would not have purchased or leased them at all.

810.   Volkswagen had an ongoing duty to all Volkswagen and Audi customers to refrain from unfair and deceptive acts or practices under the Kentucky CPA.  All owners of Affected Vehicles suffered ascertainable loss in the form of the diminished value of their vehicles as a result of Volkswagen's deceptive and unfair acts and practices made in the course of Volkswagen's business

811.   Volkswagen's violations present a continuing risk to Plaintiffs as well as to the general public.  Volkswagen's unlawful acts and practices complained of herein affect the public interest.

812.   As a direct and proximate result of Volkswagen's violations of the Kentucky CPA, Plaintiffs and the Kentucky Subclass have suffered injury-in-fact and/or actual damage.

813.   Pursuant to KY. REV. STAT. ANN. § 367.220, Plaintiffs and the Kentucky Subclass seek to recover actual damages in an amount to be determined at trial; an order enjoining Volkswagen's unfair, unlawful, and/or deceptive practices; declaratory relief; attorneys' fees; and any other just and proper relief available under KY. REV. STAT. ANN. § 367.220.

## COUNT II
## FRAUD BY CONCEALMENT

814.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

815.   This claim is brought on behalf of the Kentucky Subclass.

816.   Volkswagen intentionally concealed and suppressed material facts concerning the quality of the Affected Vehicles.  As alleged in this Complaint,

-219-

notwithstanding references in the very model names of the subject vehicles as "Clean Diesel," or to their engines as "TDI Clean Diesel" engines, Volkswagen engaged in a secret scheme to evade federal and state vehicle emissions standards by installing software designed to conceal its vehicles' emissions of the pollutant nitrogen oxide, which contributes to the creation of ozone and smog. The software installed on the vehicles at issue was designed nefariously to kick-in during emissions certification testing, such that the vehicles would show far lower emissions than when actually operating on the road. The result was what Volkswagen intended: vehicles passed emissions certifications by way of deliberately induced false readings. Reportedly, Volkswagen's deliberate, secret scheme resulted in noxious emissions from these vehicles at up to 40 times applicable standards.

817. Plaintiff and Kentucky Subclass members reasonably relied upon Volkswagen's false representations. They had no way of knowing that Volkswagen's representations were false and gravely misleading. As alleged herein, Volkswagen employed extremely sophisticated methods of deception. Plaintiff and Kentucky Subclass members did not, and could not, unravel Volkswagen's deception on their own.

818. Volkswagen concealed and suppressed material facts concerning what is evidently the true culture of Volkswagen – one characterized by an emphasis on profits and sales above compliance with federal and state clean air laws, and emissions regulations that are meant to protect the public and consumers. It also emphasized profits and sales over the trust that Plaintiff and Kentucky Subclass members placed in its representations. As one customer, Priya Shah, put it in a quotation cited by the *Los Angeles Times* in a September 18, 2015 article, "It's just a blatant disregard and intentional manipulation of the system. That's just a whole other level of not only lying to the government, but also lying to your consumer. People buy diesel cars from Volkswagen because they feel they are clean diesel cars." In the words of Ms. Shah,

-220-

which no doubt reflect the sentiments of all other CleanDiesel vehicle buyers, "I don't want to be spewing noxious gases into the environment."

819.   Necessarily, Volkswagen also took steps to ensure that its employees did not reveal the details of its scheme to regulators or consumers, including Plaintiff and Kentucky Subclass members.  Volkswagen did so in order to boost the reputations of its vehicles and to falsely assure purchasers and lessors of its vehicles, including previously owned vehicles, that Volkswagen is a reputable manufacturer that complies with applicable law, including federal and state clean air laws and emissions regulations, and that its vehicles likewise comply with applicable law and regulations. Volkswagen's false representations were material to consumers, both because they concerned the quality of the Affected Vehicles, including their compliance with applicable federal and state laws and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles.  As Volkswagen well knew, its customers, including Plaintiff and Kentucky Subclass members, highly valued that the vehicles they were purchasing or leasing were *clean* diesel cars, and they paid accordingly.

820.   Volkswagen had a duty to disclose its emissions scheme because knowledge of the scheme and its details were known and/or accessible only to Volkswagen, because Volkswagen had exclusive knowledge as to implementation and maintenance of its scheme, and because Volkswagen knew the facts were not known to or reasonably discoverable by Plaintiff or Kentucky Subclass members. Volkswagen also had a duty to disclose because it made general affirmative representations about the qualities of its vehicles with respect to emissions standards, starting with references to them as *clean* diesel cars, or cars with *clean* diesel engines, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding its emissions scheme, the actual emissions of its vehicles, its actual philosophy with respect to compliance with federal and state

-221-

clean air laws and emissions regulations, and its actual practices with respect to the vehicles at issue. Having volunteered to provide information to Plaintiffs, Volkswagen had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiff and Kentucky Subclass members. Whether a manufacturer's products comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certification testing their vehicles must pass. Volkswagen represented to Plaintiff and Kentucky Subclass members that they were purchasing *clean* diesel vehicles, and certification testing appeared to confirm this – except that, secretly, Volkswagen had subverted the testing process thoroughly.

821. Volkswagen actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Volkswagen money, and it did so at the expense of Plaintiff and Kentucky Subclass members.

822. On information and belief, Volkswagen has still not made full and adequate disclosures, and continues to defraud Plaintiff and Kentucky Subclass members by concealing material information regarding the emission qualities of its vehicles and its emissions scheme.

823. Plaintiff and Kentucky Subclass members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly "clean" diesel cars manufactured by Volkswagen, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them. Plaintiff's and

-222-

Kentucky Subclass members' actions were justified.  Volkswagen was in exclusive control of the material facts, and such facts were not known to the public, Plaintiff, or Kentucky Subclass members.

824.   Because of the concealment and/or suppression of the facts, Plaintiff and Kentucky Subclass members have sustained damage because they own vehicles that are diminished in value as a result of Volkswagen's concealment of the true quality and quantity of those vehicles' emissions and Volkswagen's failure to timely disclose the actual emission qualities and quantities of hundreds of thousands of Volkswagen- and Audi-branded vehicles and the serious issues engendered by Volkswagen's corporate policies.  Had Plaintiff and Kentucky Subclass members been aware of Volkswagen's emissions scheme, and the company's callous disregard for compliance with applicable federal and state laws and regulations, Plaintiff and Kentucky Subclass members who purchased or leased new or previously owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

825.   The value of Plaintiff's and Kentucky Subclass members' vehicles has diminished as a result of Volkswagen's fraudulent concealment of its emissions scheme, which has greatly tarnished the Volkswagen and Audi brand names attached to Plaintiff's and Kentucky Subclass members' vehicles and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.  In addition, Class members are entitled to damages for loss of use, costs of additional fuel, costs of unused warranties, and other damages to be proved at trial.

826.   Accordingly, Volkswagen is liable to Plaintiff and Kentucky Subclass members for damages in an amount to be proven at trial.

827.   Volkswagen's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and Kentucky Subclass members' rights and the representations that Volkswagen made to

-223-

them, in order to enrich Volkswagen.  To the extent permitted under applicable law, Volkswagen's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT III
## BREACH OF CONTRACT
### (Based on Kentucky Law)

828.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

829.   Plaintiff brings this Count on behalf of new vehicle or certified pre-owned vehicle purchasers in the Kentucky Subclass.

830.   Volkswagen's misrepresentations and omissions alleged herein, including Volkswagen's failure to disclose the existence of the CleanDiesel engine system's defect and/or defective design as alleged herein, caused Plaintiff and the other Kentucky Subclass members to make their purchases or leases of their Affected Vehicles.  Absent those misrepresentations and omissions, Plaintiff and the other Kentucky Subclass members would not have purchased or leased these Affected Vehicles, would not have purchased or leased these Affected Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain the CleanDiesel engine system and which were not marketed as including such a system.  Accordingly, Plaintiff and the other Kentucky Subclass members overpaid for their Affected Vehicles and did not receive the benefit of their bargain.

831.   Each and every sale or lease of an Affected Vehicle by an authorized Volkswagen dealer constitutes a contract between Volkswagen and the purchaser or lessee.  Volkswagen breached these contracts by selling or leasing Plaintiff and the other Kentucky Subclass members defective Affected Vehicles and by misrepresenting or failing to disclose the existence of the CleanDiesel engine system's

-224-

defect and/or defective design, including information known to Volkswagen rendering each Affected Vehicle non EPA-compliant, and thus less valuable, than vehicles not equipped with a CleanDiesel engine system.

832.   As a direct and proximate result of Volkswagen's breach of contract, Plaintiff and the Kentucky Subclass have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## T.   Claims Brought on Behalf of the Louisiana Subclass

### COUNT I
### VIOLATION OF THE LOUISIANA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW
### (LA. REV. STAT. § 51:1401, *ET SEQ.*)

833.   Plaintiff Alex Arceneaux ("Plaintiff," for purposes of all Louisiana Subclass Counts) incorporates by reference all preceding allegations as though fully set forth herein.

834.   This claim is brought on behalf of the Louisiana Subclass.

835.   Volkswagen, Plaintiffs, and the Louisiana Subclass are "persons" within the meaning of the LA. REV. STAT. § 51:1402(8).

836.   Plaintiffs and the Louisiana Subclass are "consumers" within the meaning of  LA. REV. STAT. § 51:1402(1).

837.   Volkswagen engaged in "trade" or "commerce" within the meaning of LA. REV. STAT. § 51:1402(9).

838.   The Louisiana Unfair Trade Practices and Consumer Protection Law ("Louisiana CPL") makes unlawful "deceptive acts or practices in the conduct of any trade or commerce."  LA. REV. STAT. § 51:1405(A).  Volkswagen both participated in misleading, false, or deceptive acts that violated the Louisiana CPL.  By fraudulently installing the "defeat device" to make it appear that its CleanDiesel engine systems complied with EPA regulations, Volkswagen engaged in deceptive business practices prohibited by the Louisiana CPL.

-225-

839.   In the course of its business, Volkswagen installed the "defeat device" and concealed that its CleanDiesel systems failed EPA regulations as described herein and otherwise engaged in activities with a tendency or capacity to deceive. Volkswagen also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of Affected Vehicles.

840.   Volkswagen has known of its use of the "defeat device" and the true nature of its CleanDiesel engine system for at least six years, but concealed all of that information until recently.

841.   Volkswagen was also aware that it valued profits over environmental cleanliness, efficiency, and lawfulness, and that it was manufacturing, selling and distributing vehicles throughout the United States that did not comply with EPA regulations.  Volkswagen concealed this information as well.

842.   According to one report from the Center for Auto Safety, some 2,004 deaths and injuries are connected with recently recalled GM-branded vehicles, and Volkswagen should have recalled the vehicles years ago.

843.   By failing to disclose and by actively concealing the "defeat device" and the true cleanliness and performance of the CleanDiesel engine system, by marketing its vehicles as safe, reliable, environmentally clean, efficient, and of high quality, and by presenting itself as a reputable manufacturer that valued safety, environmental cleanliness and efficiency, and stood behind its vehicles after they were sold, Volkswagen engaged in deceptive business practices in violation of the Louisiana CPL.

844.   In the course of Volkswagen's business, it willfully failed to disclose and actively concealed the use of the "defeat device" and true cleanliness and efficiency of the CleanDiesel engine system and serious defects discussed above.  Volkswagen

-226-

compounded the deception by repeatedly asserting that the Affected Vehicles were safe, reliable, environmentally clean, efficient, and of high quality, and by claiming to be a reputable manufacturer that valued safety, environmental cleanliness and efficiency, and stood behind its vehicles once they are on the road.

845.   Volkswagen's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff, about the true cleanliness and efficiency of the CleanDiesel engine system, the quality of the Volkswagen and Audi brands, the devaluing of environmental cleanliness and integrity at Volkswagen, and the true value of the Affected Vehicles.

846.   Volkswagen intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with an intent to mislead Plaintiff and the Louisiana Subclass.

847.   Volkswagen knew or should have known that its conduct violated the Louisiana CPL.

848.   As alleged above, Volkswagen made material statements about the safety, cleanliness, efficiency and reliability of the Affected Vehicles and the Volkswagen and Audi brands that were either false or misleading.

849.   Volkswagen owed Plaintiffs a duty to disclose the true safety, cleanliness, efficiency and reliability of the Affected Vehicles and the devaluing of environmental cleanliness and integrity at Volkswagen, because Volkswagen:

    a.    Possessed exclusive knowledge that it valued profits over environmental cleanliness, efficiency, and lawfulness, and that it was manufacturing, selling and distributing vehicles throughout the United States that did not comply with EPA regulations;

    b.    Intentionally concealed the foregoing from Plaintiffs; and/or

    c.    Made incomplete representations about the safety, cleanliness, efficiency and reliability of the Affected Vehicles generally, and the use of the "defeat device" and true nature of the CleanDiesel engine system in particular, while purposefully withholding material

-227-

facts from Plaintiffs that contradicted these representations.

850.   Because Volkswagen fraudulently concealed the "defeat device" and the true cleanliness and performance of the CleanDiesel engine system, resulting in a raft of negative publicity once the use of the "defeat device" and true characteristics of the CleanDiesel engine system finally began to be disclosed, the value of the Affected Vehicles has greatly diminished.  In light of the stigma attached to those vehicles by Volkswagen's conduct, they are now worth significantly less than they otherwise would be.

851.   Volkswagen's fraudulent use of the "defeat device" and its concealment of the true characteristics of the CleanDiesel engine system were material to Plaintiff and the Louisiana Subclass.  A vehicle made by a reputable manufacturer of environmentally friendly vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of environmentally dirty vehicles that conceals its polluting engines rather than promptly remedying them.

852.   Plaintiff and the Louisiana Subclass suffered ascertainable loss caused by Volkswagen's misrepresentations and its concealment of and failure to disclose material information.  Class members who purchased the Affected Vehicles either would have paid less for their vehicles or would not have purchased or leased them at all.

853.   Volkswagen had an ongoing duty to all Volkswagen and Audi customers to refrain from unfair and deceptive acts or practices under the Louisiana CPL.  All owners of Affected Vehicles suffered ascertainable loss in the form of the diminished value of their vehicles as a result of Volkswagen's deceptive and unfair acts and practices made in the course of Volkswagen's business

854.   Volkswagen's violations present a continuing risk to Plaintiffs as well as to the general public.  Volkswagen's unlawful acts and practices complained of herein affect the public interest.

855.   As a direct and proximate result of Volkswagen's violations of the Louisiana CPL, Plaintiff and the Louisiana Subclass have suffered injury-in-fact and/or actual damage.

856.   Pursuant to LA. REV. STAT. § 51:1409, Plaintiff and the Louisiana Subclass seek to recover actual damages in an amount to be determined at trial; treble damages for Volkswagen's knowing violations of the Louisiana CPL; an order enjoining Volkswagen's unfair, unlawful, and/or deceptive practices; declaratory relief; attorneys' fees; and any other just and proper relief available under LA. REV. STAT. § 51:1409.

## COUNT II
## FRAUD BY CONCEALMENT

857.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

858.   This claim is brought on behalf of the Louisiana Subclass.

859.   Volkswagen intentionally concealed and suppressed material facts concerning the quality of the Affected Vehicles.  As alleged in this Complaint, notwithstanding references in the very model names of the subject vehicles as "Clean Diesel," or to their engines as "TDI Clean Diesel" engines, Volkswagen engaged in a secret scheme to evade federal and state vehicle emissions standards by installing software designed to conceal its vehicles' emissions of the pollutant nitrogen oxide, which contributes to the creation of ozone and smog.  The software installed on the vehicles at issue was designed nefariously to kick-in during emissions certification testing, such that the vehicles would show far lower emissions than when actually operating on the road.  The result was what Volkswagen intended: vehicles passed emissions certifications by way of deliberately induced false readings.  Reportedly, Volkswagen's deliberate, secret scheme resulted in noxious emissions from these vehicles at up to 40 times applicable standards.

-229-

860.   Plaintiff and Louisiana Subclass members reasonably relied upon Volkswagen's false representations.  They had no way of knowing that Volkswagen's representations were false and gravely misleading.  As alleged herein, Volkswagen employed extremely sophisticated methods of deception.  Plaintiff and Louisiana Subclass members did not, and could not, unravel Volkswagen's deception on their own.

861.   Volkswagen concealed and suppressed material facts concerning what is evidently the true culture of Volkswagen—one characterized by an emphasis on profits and sales above compliance with federal and state clean air laws, and emissions regulations that are meant to protect the public and consumers.  It also emphasized profits and sales over the trust that Plaintiff and Louisiana Subclass members placed in its representations.  As one customer, Priya Shah, put it in a quotation cited by the *Los Angeles Times* in a September 18, 2015 article, "It's just a blatant disregard and intentional manipulation of the system.  That's just a whole other level of not only lying to the government, but also lying to your consumer.  People buy diesel cars from Volkswagen because they feel they are clean diesel cars."  In the words of Ms. Shah, which no doubt reflect the sentiments of all other CleanDiesel vehicle buyers, "I don't want to be spewing noxious gases into the environment."

862.   Necessarily, Volkswagen also took steps to ensure that its employees did not reveal the details of its scheme to regulators or consumers, including Plaintiff and Louisiana Subclass members.  Volkswagen did so in order to boost the reputations of its vehicles and to falsely assure purchasers and lessors of its vehicles, including previously owned vehicles, that Volkswagen is a reputable manufacturer that complies with applicable law, including federal and state clean air laws and emissions regulations, and that its vehicles likewise comply with applicable law and regulations.  Volkswagen's false representations were material to consumers, both because they concerned the quality of the Affected Vehicles, including their compliance with

-230-

applicable federal and state laws and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles.  As Volkswagen well knew, its customers, including Plaintiff and Louisiana Subclass members, highly valued that the vehicles they were purchasing or leasing were *clean* diesel cars, and they paid accordingly.

863.   Volkswagen had a duty to disclose its emissions scheme because knowledge of the scheme and its details were known and/or accessible only to Volkswagen, because Volkswagen had exclusive knowledge as to implementation and maintenance of its scheme, and because Volkswagen knew the facts were not known to or reasonably discoverable by Plaintiff or Louisiana Subclass members. Volkswagen also had a duty to disclose because it made general affirmative representations about the qualities of its vehicles with respect to emissions standards, starting with references to them as *clean* diesel cars, or cars with *clean* diesel engines, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding its emissions scheme, the actual emissions of its vehicles, its actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and its actual practices with respect to the vehicles at issue.  Having volunteered to provide information to Plaintiffs, Volkswagen had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiff and Louisiana Subclass members.  Whether a manufacturer's products comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certification testing their vehicles must pass. Volkswagen represented to Plaintiff and Louisiana Subclass members that they were

-231-

purchasing *clean* diesel vehicles, and certification testing appeared to confirm this—except that, secretly, Volkswagen had subverted the testing process thoroughly.

864.   Volkswagen actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Volkswagen money, and it did so at the expense of Plaintiff and Louisiana Subclass members.

865.   On information and belief, Volkswagen has still not made full and adequate disclosures, and continues to defraud Plaintiff and Louisiana Subclass members by concealing material information regarding the emissions qualities of its vehicles and its emissions scheme.

866.   Plaintiff and Louisiana Subclass members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly "clean" diesel cars manufactured by Volkswagen, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them.  Plaintiff's and Louisiana Subclass members' actions were justified.  Volkswagen was in exclusive control of the material facts, and such facts were not known to the public, Plaintiff, or Louisiana Subclass members.

867.   Because of the concealment and/or suppression of the facts, Plaintiff and Louisiana Subclass members have sustained damage because they own vehicles that are diminished in value as a result of Volkswagen's concealment of the true quality and quantity of those vehicles' emissions and Volkswagen's failure to timely disclose the actual emissions qualities and quantities of hundreds of thousands of Volkswagen- and Audi-branded vehicles and the serious issues engendered by Volkswagen's corporate policies.  Had Plaintiff and Louisiana Subclass members been aware of

-232-

Volkswagen's emissions scheme, and the company's callous disregard for compliance with applicable federal and state laws and regulations, Plaintiff and Louisiana Subclass members who purchased or leased new or previously owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

868.   The value of Plaintiff's and Louisiana Subclass members' vehicles has diminished as a result of Volkswagen's fraudulent concealment of its emissions scheme, which has greatly tarnished the Volkswagen and Audi brand names attached to Plaintiff's and Louisiana Subclass members' vehicles and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.  In addition, Class members are entitled to damages for loss of use, costs of additional fuel, costs of unused warranties, and other damages to be proved at trial.

869.   Accordingly, Volkswagen is liable to Plaintiff and Louisiana Subclass members for damages in an amount to be proven at trial.

870.   Volkswagen's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and Louisiana Subclass members' rights and the representations that Volkswagen made to them, in order to enrich Volkswagen.  To the extent permitted under applicable law, Volkswagen's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

### COUNT III
### BREACH OF CONTRACT
### (BASED ON LOUISIANA LAW)

871.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

872.   Plaintiff brings this Count on behalf of new vehicle or certified pre-owned vehicle purchasers in the Louisiana Subclass.

-233-

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

873.   Volkswagen's misrepresentations and omissions alleged herein, including Volkswagen's failure to disclose the existence of the CleanDiesel engine system's defect and/or defective design as alleged herein, caused Plaintiff and the other Louisiana Subclass members to make their purchases or leases of their Affected Vehicles.  Absent those misrepresentations and omissions, Plaintiff and the other Louisiana Subclass members would not have purchased or leased these Affected Vehicles, would not have purchased or leased these Affected Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain the CleanDiesel engine system and which were not marketed as including such a system.  Accordingly, Plaintiff and the other Louisiana Subclass members overpaid for their Affected Vehicles and did not receive the benefit of their bargain.

874.   Each and every sale or lease of an Affected Vehicle by an authorized Volkswagen dealer constitutes a contract between Volkswagen and the purchaser or lessee.  Volkswagen breached these contracts by selling or leasing Plaintiff and the other Louisiana Subclass members defective Affected Vehicles and by misrepresenting or failing to disclose the existence of the CleanDiesel engine system's defect and/or defective design, including information known to Volkswagen rendering each Affected Vehicle non EPA-compliant, and thus less valuable, than vehicles not equipped with a CleanDiesel engine system.

875.   As a direct and proximate result of Volkswagen's breach of contract, Plaintiff and the Louisiana Subclass have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

1

**U.     Claims Brought on Behalf of the Maine Subclass**

2

<div align="center">

**COUNT I**
**VIOLATION OF MAINE UNFAIR TRADE PRACTICES ACT**
**(ME. REV. STAT. ANN. TIT. 5 § 205-A, *et seq.*)**

</div>

3

4

876.   Plaintiff G. Keating Pepper ("Plaintiff," for purposes of all Maine

5

Subclass Counts) incorporates by reference all preceding allegations as though fully

6

set forth herein.

7

877.   Plaintiff intends to assert a claim under the Maine Unfair Trade Practices

8

Act ("Maine UTPA") which makes unlawful "[u]nfair methods of competition and

9

unfair or deceptive acts or practices in the conduct of any trade or commerce…."  ME.

10

REV. STAT. ANN. TIT. 5 § 207.  Plaintiffs will make a demand in satisfaction of ME.

11

REV. STAT. ANN. TIT. 5, § 213(A), and may amend this Complaint to assert claims

12

under the Maine UTPA once the required 30 days have elapsed.  This paragraph is

13

included for purposes of notice only and is not intended to actually assert a claim

14

under the Maine UTPA.

15

<div align="center">

**COUNT II**
**FRAUD BY CONCEALMENT**

</div>

16

17

878.   Plaintiffs reallege and incorporate by reference all paragraphs as though

fully set forth herein.

18

879.   This claim is brought on behalf of the Maine Subclass.

19

20

880.   Volkswagen intentionally concealed and suppressed material facts

21

concerning the quality of the Affected Vehicles.  As alleged in this Complaint,

22

notwithstanding references in the very model names of the subject vehicles as "Clean

23

Diesel," or to their engines as "TDI Clean Diesel" engines, Volkswagen engaged in a

24

secret scheme to evade federal and state vehicle emissions standards by installing

25

software designed to conceal its vehicles' emissions of the pollutant nitrogen oxide,

26

which contributes to the creation of ozone and smog.  The software installed on the

27

vehicles at issue was designed nefariously to kick-in during emissions certification

28

testing, such that the vehicles would show far lower emissions than when actually

<div align="center">-235-</div>

operating on the road.  The result was what Volkswagen intended: vehicles passed emissions certifications by way of deliberately induced false readings.  Reportedly, Volkswagen's deliberate, secret scheme resulted in noxious emissions from these vehicles at up to 40 times applicable standards.

881.   Plaintiff and Maine Subclass members reasonably relied upon Volkswagen's false representations.  They had no way of knowing that Volkswagen's representations were false and gravely misleading.  As alleged herein, Volkswagen employed extremely sophisticated methods of deception.  Plaintiff and Maine Subclass members did not, and could not, unravel Volkswagen's deception on their own.

882.   Volkswagen concealed and suppressed material facts concerning what is evidently the true culture of Volkswagen – one characterized by an emphasis on profits and sales above compliance with federal and state clean air laws, and emissions regulations that are meant to protect the public and consumers.  It also emphasized profits and sales over the trust that Plaintiff and Maine Subclass members placed in its representations.  As one customer, Priya Shah, put it in a quotation cited by the *Los Angeles Times* in a September 18, 2015 article, "It's just a blatant disregard and intentional manipulation of the system.  That's just a whole other level of not only lying to the government, but also lying to your consumer.  People buy diesel cars from Volkswagen because they feel they are clean diesel cars."  In the words of Ms. Shah, which no doubt reflect the sentiments of all other CleanDiesel vehicle buyers, "I don't want to be spewing noxious gases into the environment."

883.   Necessarily, Volkswagen also took steps to ensure that its employees did not reveal the details of its scheme to regulators or consumers, including Plaintiff and Maine Subclass members.  Volkswagen did so in order to boost the reputations of its vehicles and to falsely assure purchasers and lessors of its vehicles, including previously owned vehicles, that Volkswagen is a reputable manufacturer that complies with applicable law, including federal and state clean air laws and emissions

-236-

regulations, and that its vehicles likewise comply with applicable law and regulations. Volkswagen's false representations were material to consumers, both because they concerned the quality of the Affected Vehicles, including their compliance with applicable federal and state laws and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles.  As Volkswagen well knew, its customers, including Plaintiff and Maine Subclass members, highly valued that the vehicles they were purchasing or leasing were *clean* diesel cars, and they paid accordingly.

884.   Volkswagen had a duty to disclose its emissions scheme because knowledge of the scheme and its details were known and/or accessible only to Volkswagen, because Volkswagen had exclusive knowledge as to implementation and maintenance of its scheme, and because Volkswagen knew the facts were not known to or reasonably discoverable by Plaintiff or Maine Subclass members.  Volkswagen also had a duty to disclose because it made general affirmative representations about the qualities of its vehicles with respect to emissions standards, starting with references to them as *clean* diesel cars, or cars with *clean* diesel engines, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding its emissions scheme, the actual emissions of its vehicles, its actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and its actual practices with respect to the vehicles at issue. Having volunteered to provide information to Plaintiffs, Volkswagen had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiff and Maine Subclass members.  Whether a manufacturer's products comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with

-237-

respect to the emissions certification testing their vehicles must pass.  Volkswagen represented to Plaintiff and Maine Subclass members that they were purchasing *clean* diesel vehicles, and certification testing appeared to confirm this—except that, secretly, Volkswagen had subverted the testing process thoroughly.

885.   Volkswagen actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles did not, or could not, comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Volkswagen money, and it did so at the expense of Plaintiff and Maine Subclass members.

886.   On information and belief, Volkswagen has still not made full and adequate disclosures, and continues to defraud Plaintiff and Maine Subclass members by concealing material information regarding the emission qualities of its vehicles and its emissions scheme.

887.   Plaintiff and Maine Subclass members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly "clean" diesel cars manufactured by Volkswagen, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them.  Plaintiff's and Maine Subclass members' actions were justified.  Volkswagen was in exclusive control of the material facts, and such facts were not known to the public, Plaintiff, or Maine Subclass members.

888.   Because of the concealment and/or suppression of the facts, Plaintiff and Maine Subclass members have sustained damage because they own vehicles that are diminished in value as a result of Volkswagen's concealment of the true quality and quantity of those vehicles' emissions and Volkswagen's failure to timely disclose the actual emission qualities and quantities of hundreds of thousands of Volkswagen- and

-238-

Audi-branded vehicles and the serious issues engendered by Volkswagen's corporate policies.  Had Plaintiff and Maine Subclass members been aware of Volkswagen's emissions scheme, and the company's callous disregard for compliance with applicable federal and state laws and regulations, Plaintiff and Maine Subclass members who purchased or leased new or previously owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

889.   The value of Plaintiff's and Maine Subclass members' vehicles has diminished as a result of Volkswagen's fraudulent concealment of its emissions scheme, which has greatly tarnished the Volkswagen and Audi brand names attached to Plaintiff's and Maine Subclass members' vehicles and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.  In addition, Class members are entitled to damages for loss of use, costs of additional fuel, costs of unused warranties, and other damages to be proved at trial.

890.   Accordingly, Volkswagen is liable to Plaintiff and Maine Subclass members for damages in an amount to be proven at trial.

891.   Volkswagen's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and Maine Subclass members' rights and the representations that Volkswagen made to them, in order to enrich Volkswagen.  To the extent permitted under applicable law, Volkswagen's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT III
## BREACH OF CONTRACT
### (Based on Maine Law)

892.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

-239-

893.   Plaintiff brings this Count on behalf of new vehicle or certified pre-owned vehicle purchasers in the Maine Subclass.

894.   Volkswagen's misrepresentations and omissions alleged herein, including Volkswagen's failure to disclose the existence of the CleanDiesel engine system's defect and/or defective design as alleged herein, caused Plaintiff and the other Maine Subclass members to make their purchases or leases of their Affected Vehicles. Absent those misrepresentations and omissions, Plaintiff and the other Maine Subclass members would not have purchased or leased these Affected Vehicles, would not have purchased or leased these Affected Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain the CleanDiesel engine system and which were not marketed as including such a system. Accordingly, Plaintiff and the other Maine Subclass members overpaid for their Affected Vehicles and did not receive the benefit of their bargain.

895.   Each and every sale or lease of an Affected Vehicle by an authorized Volkswagen dealer constitutes a contract between Volkswagen and the purchaser or lessee.  Volkswagen breached these contracts by selling or leasing Plaintiff and the other Maine Subclass members defective Affected Vehicles and by misrepresenting or failing to disclose the existence of the CleanDiesel engine system's defect and/or defective design, including information known to Volkswagen rendering each Affected Vehicle non EPA-compliant, and thus less valuable, than vehicles not equipped with a CleanDiesel engine system.

896.   As a direct and proximate result of Volkswagen's breach of contract, Plaintiff and the Maine Subclass have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

1

## V.    Claims Brought on Behalf of the Maryland Subclass

2

**COUNT I**
**VIOLATIONS OF THE MARYLAND CONSUMER PROTECTION ACT**
**(MD. CODE COM. LAW § 13-101, *ET SEQ.*)**

3

4

897.   Plaintiff Devan Wang ("Plaintiff," for purposes of all Maryland Subclass

5

Counts) incorporates by reference all preceding allegations as though fully set forth

6

herein.

7

898.   This claim is brought only on behalf of members of the Maryland

8

Subclass.

9

899.   Volkswagen, Plaintiff, and the Maryland Subclass are "persons" within

10

the meaning of MD. CODE COM. LAW § 13-101(h).

11

900.   The Maryland Consumer Protection Act ("Maryland CPA") provides that

12

a person may not engage in any unfair or deceptive trade practice in the sale of any

13

consumer good.  MD. COM. LAW CODE § 13-303.  Volkswagen participated in

14

misleading, false, or deceptive acts that violated the Maryland CPA.  By fraudulently

15

installing the "defeat device" to make it appear that its CleanDiesel engine systems

16

complied with EPA regulations, Volkswagen engaged in deceptive business practices

17

prohibited by the Maryland CPA.

18

901.   Volkswagen's actions as set forth above occurred in the conduct of trade

19

or commerce.

20

902.   In the course of its business, Volkswagen installed the "defeat device"

21

and concealed that its CleanDiesel systems failed EPA regulations as described herein

22

and otherwise engaged in activities with a tendency or capacity to deceive.

23

Volkswagen also engaged in unlawful trade practices by employing deception,

24

deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or

25

omission of any material fact with intent that others rely upon such concealment,

26

suppression or omission, in connection with the sale of Affected Vehicles.

27

28

903.   Volkswagen has known of its use of the "defeat device" and the true nature of its CleanDiesel engine system for at least six years, but concealed all of that information until recently.

904.   Volkswagen was also aware that it valued profits over environmental cleanliness, efficiency, and lawfulness, and that it was manufacturing, selling and distributing vehicles throughout the United States that did not comply with EPA regulations.  Volkswagen concealed this information as well.

905.   By failing to disclose and by actively concealing the "defeat device" and the true cleanliness and performance of the CleanDiesel engine system, by marketing its vehicles as safe, reliable, environmentally clean, efficient, and of high quality, and by presenting itself as a reputable manufacturer that valued safety, environmental cleanliness and efficiency, and stood behind its vehicles after they were sold, Volkswagen engaged in unfair and deceptive business practices in violation of the Maryland CPA.

906.   In the course of Volkswagen's business, it willfully failed to disclose and actively concealed the use of the "defeat device" and true cleanliness and efficiency of the CleanDiesel engine system and serious defects discussed above.  Volkswagen compounded the deception by repeatedly asserting that the Affected Vehicles were safe, reliable, environmentally clean, efficient, and of high quality, and by claiming to be a reputable manufacturer that valued safety, environmental cleanliness and efficiency, and stood behind its vehicles once they are on the road.

907.   Volkswagen's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff, about the true cleanliness and efficiency of the CleanDiesel engine system, the quality of the Volkswagen brand, the devaluing of environmental cleanliness and integrity at Volkswagen, and the true value of the Affected Vehicles.

-242-

908.   Volkswagen intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with an intent to mislead Plaintiff and the Maryland Subclass.

909.   Volkswagen knew or should have known that its conduct violated the Maryland CPA.

910.   As alleged above, Volkswagen made material statements about the safety, cleanliness, efficiency and reliability of the Affected Vehicles and the Volkswagen and Audi brands that were either false or misleading.

911.   Volkswagen owed Plaintiffs a duty to disclose the true safety, cleanliness, efficiency and reliability of the Affected Vehicles and the devaluing of environmental cleanliness and integrity at Volkswagen, because Volkswagen:

    a.    Possessed exclusive knowledge that it valued profits over environmental cleanliness, efficiency, and lawfulness, and that it was manufacturing, selling and distributing vehicles throughout the United States that did not comply with EPA regulations;

    b.    Intentionally concealed the foregoing from Plaintiffs; and/or

    c.    Made incomplete representations about the safety, cleanliness, efficiency and reliability of the Affected Vehicles generally, and the use of the "defeat device" and true nature of the CleanDiesel engine system in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

912.   Because Volkswagen fraudulently concealed the "defeat device" and the true cleanliness and performance of the CleanDiesel engine system, resulting in a raft of negative publicity once the use of the "defeat device" and true characteristics of the CleanDiesel engine system finally began to be disclosed, the value of the Affected Vehicles has greatly diminished.  In light of the stigma attached to those vehicles by Volkswagen's conduct, they are now worth significantly less than they otherwise would be.

-243-

913.   Volkswagen's fraudulent use of the "defeat device" and its concealment of the true characteristics of the CleanDiesel engine system were material to Plaintiffs and the Maryland Subclass.  A vehicle made by a reputable manufacturer of environmentally friendly vehicles is worth more than an otherwise comparable vehicle made by a disreputable and dishonest manufacturer of polluting vehicles that conceals the amount its cars pollutes rather than make environmentally friendly vehicles.

914.   Plaintiff and the Maryland Subclass suffered ascertainable loss caused by Volkswagen's misrepresentations and its concealment of and failure to disclose material information.  Class members who purchased the Affected Vehicles either would have paid less for their vehicles or would not have purchased or leased them at all.

915.   Volkswagen had an ongoing duty to all Volkswagen and Audi customers to refrain from unfair and deceptive acts or practices under the Maryland CPA.  All owners of Affected Vehicles suffered ascertainable loss in the form of the diminished value of their vehicles as a result of Volkswagen's deceptive and unfair acts and practices made in the course of Volkswagen's business.

916.   Volkswagen's violations present a continuing risk to Plaintiffs as well as to the general public.  Volkswagen's unlawful acts and practices complained of herein affect the public interest.

917.   As a direct and proximate result of Volkswagen's violations of the Maryland CPA, Plaintiff and the Maryland Subclass have suffered injury-in-fact and/or actual damage.

918.   Pursuant to MD. CODE COM. LAW § 13-408, Plaintiff and the Maryland Subclass seek actual damages, attorneys' fees, and any other just and proper relief available under the Maryland CPA.

**COUNT II**
**FRAUD BY CONCEALMENT**

919.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

920.   This claim is brought on behalf of the Maryland Subclass.

921.   Volkswagen intentionally concealed and suppressed material facts concerning the quality of the Affected Vehicles.  As alleged in this Complaint, notwithstanding references in the very model names of the subject vehicles as "Clean Diesel," or to their engines as "TDI Clean Diesel" engines, Volkswagen engaged in a secret scheme to evade federal and state vehicle emissions standards by installing software designed to conceal its vehicles' emissions of the pollutant nitrogen oxide, which contributes to the creation of ozone and smog.  The software installed on the vehicles at issue was designed nefariously to kick-in during emissions certification testing, such that the vehicles would show far lower emissions than when actually operating on the road.  The result was what Volkswagen intended: vehicles passed emissions certifications by way of deliberately induced false readings.  Reportedly, Volkswagen's deliberate, secret scheme resulted in noxious emissions from these vehicles at up to 40 times applicable standards.

922.   Plaintiff and Maryland Subclass members reasonably relied upon Volkswagen's false representations.  They had no way of knowing that Volkswagen's representations were false and gravely misleading.  As alleged herein, Volkswagen employed extremely sophisticated methods of deception.  Plaintiff and Maryland Subclass members did not, and could not, unravel Volkswagen's deception on their own.

923.   Volkswagen concealed and suppressed material facts concerning what is evidently the true culture of Volkswagen—one characterized by an emphasis on profits and sales above compliance with federal and state clean air laws, and emissions regulations that are meant to protect the public and consumers.  It also emphasized

-245-

1    profits and sales over the trust that Plaintiff and Maryland Subclass members placed in

2    its representations.  As one customer, Priya Shah, put it in a quotation cited by the *Los*

3    *Angeles Times* in a September 18, 2015 article, "It's just a blatant disregard and

4    intentional manipulation of the system.  That's just a whole other level of not only

5    lying to the government, but also lying to your consumer.  People buy diesel cars from

6    Volkswagen because they feel they are clean diesel cars."  In the words of Ms. Shah,

7    which no doubt reflect the sentiments of all other CleanDiesel vehicle buyers, "I don't

8    want to be spewing noxious gases into the environment."

9        924.   Necessarily, Volkswagen also took steps to ensure that its employees did

10   not reveal the details of its scheme to regulators or consumers, including Plaintiff and

11   Maryland Subclass members.  Volkswagen did so in order to boost the reputations of

12   its vehicles and to falsely assure purchasers and lessors of its vehicles, including

13   previously owned vehicles, that Volkswagen is a reputable manufacturer that complies

14   with applicable law, including federal and state clean air laws and emissions

15   regulations, and that its vehicles likewise comply with applicable law and regulations.

16   Volkswagen's false representations were material to consumers, both because they

17   concerned the quality of the Affected Vehicles, including their compliance with

18   applicable federal and state laws and regulations regarding clean air and emissions,

19   and also because the representations played a significant role in the value of the

20   vehicles.  As Volkswagen well knew, its customers, including Plaintiff and Maryland

21   Subclass members, highly valued that the vehicles they were purchasing or leasing

22   were *clean* diesel cars, and they paid accordingly.

23       925.   Volkswagen had a duty to disclose its emissions scheme because

24   knowledge of the scheme and its details were known and/or accessible only to

25   Volkswagen, because Volkswagen had exclusive knowledge as to implementation and

26   maintenance of its scheme, and because Volkswagen knew the facts were not known

27   to or reasonably discoverable by Plaintiff or Maryland Subclass members.

28

-246-

Volkswagen also had a duty to disclose because it made general affirmative representations about the qualities of its vehicles with respect to emissions standards, starting with references to them as *clean* diesel cars, or cars with *clean* diesel engines, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding its emissions scheme, the actual emissions of its vehicles, its actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and its actual practices with respect to the vehicles at issue. Having volunteered to provide information to Plaintiffs, Volkswagen had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiff and Maryland Subclass members. Whether a manufacturer's products comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certification testing their vehicles must pass. Volkswagen represented to Plaintiff and Maryland Subclass members that they were purchasing *clean* diesel vehicles, and certification testing appeared to confirm this—except that, secretly, Volkswagen had subverted the testing process thoroughly.

926.   Volkswagen actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Volkswagen money, and it did so at the expense of Plaintiff and Maryland Subclass members.

927.   On information and belief, Volkswagen has still not made full and adequate disclosures, and continues to defraud Plaintiff and Maryland Subclass members by concealing material information regarding the emissions qualities of its vehicles and its emissions scheme.

-247-

928.   Plaintiff and Maryland Subclass members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly "clean" diesel cars manufactured by Volkswagen, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them.  Plaintiff's and Maryland Subclass members' actions were justified.  Volkswagen was in exclusive control of the material facts, and such facts were not known to the public, Plaintiff, or Maryland Subclass members.

929.   Because of the concealment and/or suppression of the facts, Plaintiff and Maryland Subclass members have sustained damage because they own vehicles that are diminished in value as a result of Volkswagen's concealment of the true quality and quantity of those vehicles' emissions and Volkswagen's failure to timely disclose the actual emissions qualities and quantities of hundreds of thousands of Volkswagen- and Audi-branded vehicles and the serious issues engendered by Volkswagen's corporate policies.  Had Plaintiff and Maryland Subclass members been aware of Volkswagen's emissions scheme, and the company's callous disregard for compliance with applicable federal and state laws and regulations, Plaintiff and Maryland Subclass members who purchased or leased new or previously owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

930.   The value of Plaintiff's and Maryland Subclass members' vehicles has diminished as a result of Volkswagen's fraudulent concealment of its emissions scheme, which has greatly tarnished the Volkswagen and Audi brand names attached to Plaintiff's and Maryland Subclass members' vehicles and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.  In addition, Class

-248-

members are entitled to damages for loss of use, costs of additional fuel, costs of unused warranties, and other damages to be proved at trial.

931.   Accordingly, Volkswagen is liable to Plaintiff and Maryland Subclass members for damages in an amount to be proven at trial.

932.   Volkswagen's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and Maryland Subclass members' rights and the representations that Volkswagen made to them, in order to enrich Volkswagen.  To the extent permitted under applicable law, Volkswagen's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT III
## BREACH OF CONTRACT
## (BASED ON MARYLAND LAW)

933.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

934.   Plaintiff brings this Count on behalf of new vehicle or certified pre-owned vehicle purchasers in the Maryland Subclass.

935.   Volkswagen's misrepresentations and omissions alleged herein, including Volkswagen's failure to disclose the existence of the CleanDiesel engine system's defect and/or defective design as alleged herein, caused Plaintiff and the Maryland Subclass members to make their purchases or leases of their Affected Vehicles. Absent those misrepresentations and omissions, Plaintiff and the Maryland Subclass members would not have purchased or leased these Affected Vehicles, would not have purchased or leased these Affected Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain the CleanDiesel engine system and which were not marketed as including such a system.

-249-

Accordingly, Plaintiff and the Maryland Subclass members overpaid for their Affected Vehicles and did not receive the benefit of their bargain.

936.   Each and every sale or lease of an Affected Vehicle by an authorized Volkswagen dealer constitutes a contract between Volkswagen and the purchaser or lessee.  Volkswagen breached these contracts by selling or leasing Plaintiff and the Maryland Subclass members defective Affected Vehicles and by misrepresenting or failing to disclose the existence of the CleanDiesel engine system's defect and/or defective design, including information known to Volkswagen rendering each Affected Vehicle non EPA-compliant, and thus less valuable, than vehicles not equipped with a CleanDiesel engine system.

937.   As a direct and proximate result of Volkswagen's breach of contract, Plaintiff and the Maryland Subclass have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

**W.     Claims Brought on Behalf of the Massachusetts Subclass**

### COUNT I
### VIOLATIONS OF THE MASSACHUSETTS CONSUMER PROTECTION ACT
### (MASS. GEN. LAWS CH. 93A)

938.   Plaintiff Robert Hooker ("Plaintiff," for purposes of all Massachusetts Subclass Counts) incorporates by reference all preceding allegations as though fully set forth herein.

939.   Plaintiff intends to assert a claim under the Massachusetts Consumer Protection Act ("MCPA"), which makes it unlawful to engage in any "[u]nfair methods of competition or deceptive acts or practices in the conduct of any trade or commerce." MASS. GEN. LAWS CH. 93A, § 2(1). Plaintiffs will make a demand in satisfaction of MASS. GEN. LAWS CH. 93A, § 9(3), and may amend this Complaint to assert claims under the MCPA once the required 30 days have elapsed. This paragraph

-250-

is included for purposes of notice only and is not intended to actually assert a claim under the MCPA.

## COUNT II
## BREACH OF CONTRACT
## (BASED ON MASSACHUSETTS LAW)

940.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

941.    Plaintiff brings this Count on behalf of new vehicle or certified pre-owned vehicle purchasers in the Massachusetts Subclass.

942.    Volkswagen's misrepresentations and omissions alleged herein, including Volkswagen's failure to disclose the existence of the CleanDiesel engine system's defect and/or defective design as alleged herein, caused Plaintiff and the Massachusetts Subclass members to make their purchases or leases of their Affected Vehicles.  Absent those misrepresentations and omissions, Plaintiff and the Massachusetts Subclass members would not have purchased or leased these Affected Vehicles, would not have purchased or leased these Affected Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain the CleanDiesel engine system and which were not marketed as including such a system.  Accordingly, Plaintiff and the Massachusetts Subclass members overpaid for their Affected Vehicles and did not receive the benefit of their bargain.

943.    Each and every sale or lease of an Affected Vehicle by an authorized Volkswagen dealer constitutes a contract between Volkswagen and the purchaser or lessee.  Volkswagen breached these contracts by selling or leasing Plaintiff and the Massachusetts Subclass members defective Affected Vehicles and by misrepresenting or failing to disclose the existence of the CleanDiesel engine system's defect and/or defective design, including information known to Volkswagen rendering each

-251-

Affected Vehicle non EPA-compliant, and thus less valuable, than vehicles not equipped with a CleanDiesel engine system.

944.   As a direct and proximate result of Volkswagen's breach of contract, Plaintiff and the Massachusetts Subclass have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## COUNT III
## FRAUDULENT CONCEALMENT
## (BASED ON MASSACHUSETTS LAW)

945.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

946.   Plaintiff brings this Count on behalf of the Massachusetts Subclass.

947.   Volkswagen intentionally concealed that the CleanDiesel engine systems were not EPA-compliant and used a "defeat device," or acted with reckless disregard for the truth, and denied Plaintiff and the Massachusetts Subclass members information that is highly relevant to their purchasing decision.

948.   Volkswagen further affirmatively misrepresented to Plaintiff in advertising and other forms of communication, including standard and uniform material provided with each car, that the Affected Vehicles it was selling were new, had no significant defects, complied with EPA regulations and would perform and operate properly when driven in normal usage.

949.   Volkswagen knew these representations were false when made.

950.   The Affected Vehicles purchased or leased by Plaintiff and the Massachusetts Subclass members were, in fact, defective, non-EPA compliant, unsafe, and unreliable because the Affected Vehicles contained faulty and defective CleanDiesel engine system, as alleged herein.

951.   Volkswagen had a duty to disclose that these Affected Vehicles were defective, unsafe, non-EPA compliant and unreliable in that certain crucial emissions

-252-

functions of the Affected Vehicles would be rendered inoperative due to the "defeat device" installed in the defective CleanDiesel engine system, because Plaintiff and the Massachusetts Subclass members relied on Volkswagen's material representations that the Affected Vehicles they were purchasing were safe, environmentally clean, efficient and free from defects.

952.   The aforementioned concealment was material because if it had been disclosed Plaintiff and the Massachusetts Subclass members would not have bought or leased the Affected Vehicles, or would not have bought or leased those Vehicles at the prices they paid.

953.   The aforementioned representations were material because they were facts that would typically be relied on by a person purchasing or leasing a new motor vehicle.  Volkswagen knew or recklessly disregarded that its representations were false because it knew that it had to use the "defeat device" in order for Affected Vehicles to pass EPA emissions requirements.  Volkswagen intentionally made the false statements in order to sell Affected Vehicles.

954.   Plaintiff and the Massachusetts Subclass members relied on Volkswagen's reputation – along with Volkswagen's failure to disclose the faulty and defective nature of the CleanDiesel engine system and Volkswagen's affirmative assurance that its Affected Vehicles were safe and reliable, and other similar false statements – in purchasing or leasing Volkswagen's Affected Vehicles.

955.   As a result of their reliance, Plaintiff and the Massachusetts Subclass members have been injured in an amount to be proven at trial, including, but not limited to, their lost benefit of the bargain and overpayment at the time of purchase or lease and/or the diminished value of their Affected Vehicles.

956.   Volkswagen's conduct was knowing, intentional, with malice, demonstrated a complete lack of care, and was in reckless disregard for the rights of

Plaintiff and the Massachusetts Subclass members.  Plaintiff and the Massachusetts

Subclass members are therefore entitled to an award of punitive damages.

## X.    Claims Brought on Behalf of the Michigan Subclass

### COUNT I
### VIOLATION OF THE MICHIGAN CONSUMER PROTECTION ACT
### (MICH. COMP. LAWS § 445.903, *ET SEQ.*)

957.    Plaintiff Matthew Olovson ("Plaintiff," for purposes of all Michigan

Subclass Counts) incorporates by reference all preceding allegations as though fully

set forth herein.

958.    Plaintiff brings this Count on behalf of the Michigan Subclass.

959.    Plaintiff and the Michigan Subclass members are "person[s]" within the

meaning of the MICH. COMP. LAWS § 445.902(1)(d).

960.    At all relevant times hereto, Volkswagen was a "person" engaged in

"trade or commerce" within the meaning of the MICH. COMP. LAWS § 445.902(1)(d)

and (g).

961.    The Michigan Consumer Protection Act ("Michigan CPA") prohibits

"[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of

trade or commerce …."  MICH. COMP. LAWS § 445.903(1).  Volkswagen engaged in

unfair, unconscionable, or deceptive methods, acts or practices prohibited by the

Michigan CPA, including:  "(c) Representing that goods or services have . . .

characteristics . . . that they do not have . . . .;" "(e) Representing that goods or

services are of a particular standard . . . if they are of another;" "(i) Making false or

misleading statements of fact concerning the reasons for, existence of, or amounts of

price reductions;" "(s) Failing to reveal a material fact, the omission of which tends to

mislead or deceive the consumer, and which fact could not reasonably be known by

the consumer;" "(bb) Making a representation of fact or statement of fact material to

the transaction such that a person reasonably believes the represented or suggested

state of affairs to be other than it actually is;" and "(cc) Failing to reveal facts that are

-254-

material to the transaction in light of representations of fact made in a positive manner." MICH. COMP. LAWS § 445.903(1). By fraudulently installing the "defeat device" to make it appear that its CleanDiesel engine systems complied with EPA regulations, Volkswagen participated in unfair, deceptive, and unconscionable acts that violated the Michigan CPA.

962.   In the course of its business, Volkswagen installed the "defeat device" and concealed that its CleanDiesel systems failed EPA regulations as described herein and otherwise engaged in activities with a tendency or capacity to deceive. Volkswagen also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of Affected Vehicles.

963.   Volkswagen has known of its use of the "defeat device" and the true nature of its CleanDiesel engine system for at least six years, but concealed all of that information until recently.

964.   Volkswagen was also aware that it valued profits over environmental cleanliness, efficiency, and lawfulness, and that it was manufacturing, selling and distributing vehicles throughout the United States that did not comply with EPA regulations. Volkswagen concealed this information as well.

965.   By failing to disclose and by actively concealing the "defeat device" and the true cleanliness and performance of the CleanDiesel engine system, by marketing its vehicles as safe, reliable, environmentally clean, efficient, and of high quality, and by presenting itself as a reputable manufacturer that valued safety, environmental cleanliness and efficiency, and stood behind its vehicles after they were sold, Volkswagen engaged in unfair, unconscionable, and deceptive business practices in violation of the Michigan CPA.

966.   In the course of Volkswagen's business, it willfully failed to disclose and actively concealed the use of the "defeat device" and true cleanliness and efficiency of the CleanDiesel engine system and serious defects discussed above.  Volkswagen compounded the deception by repeatedly asserting that the Affected Vehicles were safe, reliable, environmentally clean, efficient, and of high quality, and by claiming to be a reputable manufacturer that valued safety, environmental cleanliness and efficiency, and stood behind its vehicles once they are on the road.

967.   Volkswagen's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff, about the true cleanliness and efficiency of the CleanDiesel engine system, the quality of the Volkswagen and Audi brands, the devaluing of environmental cleanliness and integrity at Volkswagen, and the true value of the Affected Vehicles.

968.   Volkswagen intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with an intent to mislead Plaintiff and the Michigan Subclass.

969.   Volkswagen knew or should have known that its conduct violated the Michigan CPA.

970.   As alleged above, Volkswagen made material statements about the safety, cleanliness, efficiency and reliability of the Affected Vehicles and the Volkswagen and Audi brands that were either false or misleading.

971.   Volkswagen owed Plaintiffs a duty to disclose the true safety, cleanliness, efficiency and reliability of the Affected Vehicles and the devaluing of environmental cleanliness and integrity at Volkswagen, because Volkswagen:

    a.    Possessed exclusive knowledge that it valued profits over environmental cleanliness, efficiency, and lawfulness, and that it was manufacturing, selling and distributing vehicles throughout the United States that did not comply with EPA regulations;

    b.    Intentionally concealed the foregoing from Plaintiffs; and/or

c.   Made incomplete representations about the safety, cleanliness, efficiency and reliability of the Affected Vehicles generally, and the use of the "defeat device" and true nature of the CleanDiesel engine system in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

972.   Because Volkswagen fraudulently concealed the "defeat device" and the true cleanliness and performance of the CleanDiesel engine system, resulting in a raft of negative publicity once the use of the "defeat device" and true characteristics of the CleanDiesel engine system finally began to be disclosed, the value of the Affected Vehicles has greatly diminished.  In light of the stigma attached to those vehicles by Volkswagen's conduct, they are now worth significantly less than they otherwise would be.

973.   Volkswagen's fraudulent use of the "defeat device" and its concealment of the true characteristics of the CleanDiesel engine system were material to Plaintiff and the Michigan Subclass.  A vehicle made by a reputable manufacturer of environmentally friendly vehicles is worth more than an otherwise comparable vehicle made by a disreputable and dishonest manufacturer of polluting vehicles that conceals the amount its cars pollutes rather than make environmentally friendly vehicles.

974.   Plaintiff and the Michigan Subclass suffered ascertainable loss caused by Volkswagen's misrepresentations and its concealment of and failure to disclose material information.  Class members who purchased the Affected Vehicles either would have paid less for their vehicles or would not have purchased or leased them at all.

975.   Regardless of time of purchase or lease, no Plaintiffs would have maintained and continued to drive their vehicles had they been aware of Volkswagen's misconduct.  Volkswagen had an ongoing duty to all Volkswagen and Audi customers to refrain from unfair and deceptive acts or practices under the Michigan CPA.  All owners of Affected Vehicles suffered ascertainable loss in the form of the diminished

-257-

value of their vehicles as a result of Volkswagen's deceptive and unfair acts and practices made in the course of Volkswagen's business.

976.   Volkswagen's violations present a continuing risk to Plaintiffs as well as to the general public.  Volkswagen's unlawful acts and practices complained of herein affect the public interest.

977.   As a direct and proximate result of Volkswagen's violations of the Michigan CPA, Plaintiff and the Michigan Subclass have suffered injury-in-fact and/or actual damage.

978.   Plaintiffs seek injunctive relief to enjoin Volkswagen from continuing its unfair and deceptive acts; monetary relief against Volkswagen measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $250 for Plaintiffs and each Michigan Subclass member; reasonable attorneys' fees; and any other just and proper relief available under MICH. COMP. LAWS § 445.911.

979.   Plaintiffs also seek punitive damages against Volkswagen because it carried out despicable conduct with willful and conscious disregard of the rights and safety of others.  Volkswagen intentionally and willfully misrepresented the safety, cleanliness, efficiency and reliability of the Affected Vehicles, deceived Plaintiff and Michigan Subclass Members on life-or-death matters, and concealed material facts that only they knew, all to avoid the expense and public relations nightmare of correcting a deadly flaw in vehicles it repeatedly promised Plaintiff and Michigan Subclass Members were safe.  Volkswagen's unlawful conduct constitutes malice, oppression, and fraud warranting punitive damages.

## COUNT II
## FRAUD BY CONCEALMENT

980.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

981.   This claim is brought on behalf of the Michigan Subclass.

010549-11  816608 V1

982.   Volkswagen intentionally concealed and suppressed material facts concerning the quality of the Affected Vehicles.  As alleged in this Complaint, notwithstanding references in the very model names of the subject vehicles as "Clean Diesel," or to their engines as "TDI Clean Diesel" engines, Volkswagen engaged in a secret scheme to evade federal and state vehicle emissions standards by installing software designed to conceal its vehicles' emissions of the pollutant nitrogen oxide, which contributes to the creation of ozone and smog.  The software installed on the vehicles at issue was designed nefariously to kick-in during emissions certification testing, such that the vehicles would show far lower emissions than when actually operating on the road.  The result was what Volkswagen intended: vehicles passed emissions certifications by way of deliberately induced false readings.  Reportedly, Volkswagen's deliberate, secret scheme resulted in noxious emissions from these vehicles at up to 40 times applicable standards.

983.   Plaintiff and Michigan Subclass members reasonably relied upon Volkswagen's false representations.  They had no way of knowing that Volkswagen's representations were false and gravely misleading.  As alleged herein, Volkswagen employed extremely sophisticated methods of deception.  Plaintiff and Michigan Subclass members did not, and could not, unravel Volkswagen's deception on their own.

984.   Volkswagen concealed and suppressed material facts concerning what is evidently the true culture of Volkswagen—one characterized by an emphasis on profits and sales above compliance with federal and state clean air laws, and emissions regulations that are meant to protect the public and consumers.  It also emphasized profits and sales over the trust that Plaintiff and Michigan Subclass members placed in its representations.  As one customer, Priya Shah, put it in a quotation cited by the *Los Angeles Times* in a September 18, 2015 article, "It's just a blatant disregard and intentional manipulation of the system.  That's just a whole other level of not only

-259-

lying to the government, but also lying to your consumer.  People buy diesel cars from Volkswagen because they feel they are clean diesel cars."  In the words of Ms. Shah, which no doubt reflect the sentiments of all other CleanDiesel vehicle buyers, "I don't want to be spewing noxious gases into the environment."

985.   Necessarily, Volkswagen also took steps to ensure that its employees did not reveal the details of its scheme to regulators or consumers, including Plaintiff and Michigan Subclass members.  Volkswagen did so in order to boost the reputations of its vehicles and to falsely assure purchasers and lessors of its vehicles, including previously owned vehicles, that Volkswagen is a reputable manufacturer that complies with applicable law, including federal and state clean air laws and emissions regulations, and that its vehicles likewise comply with applicable law and regulations. Volkswagen's false representations were material to consumers, both because they concerned the quality of the Affected Vehicles, including their compliance with applicable federal and state laws and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles.  As Volkswagen well knew, its customers, including Plaintiff and Michigan Subclass members, highly valued that the vehicles they were purchasing or leasing were *clean* diesel cars, and they paid accordingly.

986.   Volkswagen had a duty to disclose its emissions scheme because knowledge of the scheme and its details were known and/or accessible only to Volkswagen, because Volkswagen had exclusive knowledge as to implementation and maintenance of its scheme, and because Volkswagen knew the facts were not known to or reasonably discoverable by Plaintiff or Michigan Subclass members. Volkswagen also had a duty to disclose because it made general affirmative representations about the qualities of its vehicles with respect to emissions standards, starting with references to them as *clean* diesel cars, or cars with *clean* diesel engines, which were misleading, deceptive, and incomplete without the disclosure of the

-260-

additional facts set forth above regarding its emissions scheme, the actual emissions of its vehicles, its actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and its actual practices with respect to the vehicles at issue.  Having volunteered to provide information to Plaintiffs, Volkswagen had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiff and Michigan Subclass members.  Whether a manufacturer's products comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certification testing their vehicles must pass. Volkswagen represented to Plaintiff and Michigan Subclass members that they were purchasing *clean* diesel vehicles, and certification testing appeared to confirm this— except that, secretly, Volkswagen had subverted the testing process thoroughly.

987.   Volkswagen actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Volkswagen money, and it did so at the expense of Plaintiff and Michigan Subclass members.

988.   On information and belief, Volkswagen has still not made full and adequate disclosures, and continues to defraud Plaintiff and Michigan Subclass members by concealing material information regarding the emissions qualities of its vehicles and its emissions scheme.

989.   Plaintiff and Michigan Subclass members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly "clean" diesel cars manufactured by Volkswagen, and/or would

not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them.  Plaintiff's and Michigan Subclass members' actions were justified.  Volkswagen was in exclusive control of the material facts, and such facts were not known to the public, Plaintiff, or Michigan Subclass members.

990.   Because of the concealment and/or suppression of the facts, Plaintiff and Michigan Subclass members have sustained damage because they own vehicles that are diminished in value as a result of Volkswagen's concealment of the true quality and quantity of those vehicles' emissions and Volkswagen's failure to timely disclose the actual emissions qualities and quantities of hundreds of thousands of Volkswagen- and Audi-branded vehicles and the serious issues engendered by Volkswagen's corporate policies.  Had Plaintiff and Michigan Subclass members been aware of Volkswagen's emissions scheme, and the company's callous disregard for compliance with applicable federal and state laws and regulations, Plaintiff and Michigan Subclass members who purchased or leased new or previously owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

991.   The value of Plaintiff's and Michigan Subclass members' vehicles has diminished as a result of Volkswagen's fraudulent concealment of its emissions scheme, which has greatly tarnished the Volkswagen and Audi brand names attached to Plaintiff's and Michigan Subclass members' vehicles and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.  In addition, Class members are entitled to damages for loss of use, costs of additional fuel, costs of unused warranties, and other damages to be proved at trial.

992.   Accordingly, Volkswagen is liable to Plaintiff and Michigan Subclass members for damages in an amount to be proven at trial.

993.   Volkswagen's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and Michigan Subclass members' rights and the representations that Volkswagen made to them, in order to enrich Volkswagen.  To the extent permitted under applicable law, Volkswagen's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

### COUNT III
### BREACH OF CONTRACT
### (BASED ON MICHIGAN LAW)

994.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

995.   Plaintiff brings this Count on behalf of new vehicle or certified pre-owned vehicle purchasers in the Michigan Subclass.

996.   Volkswagen's misrepresentations and omissions alleged herein, including Volkswagen's failure to disclose the existence of the CleanDiesel engine system's defect and/or defective design as alleged herein, caused Plaintiff and the other Michigan Subclass members to make their purchases or leases of their Affected Vehicles.  Absent those misrepresentations and omissions, Plaintiff and the other Michigan Subclass members would not have purchased or leased these Affected Vehicles, would not have purchased or leased these Affected Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain the CleanDiesel engine system and which were not marketed as including such a system.  Accordingly, Plaintiff and the other Michigan Subclass members overpaid for their Affected Vehicles and did not receive the benefit of their bargain.

997.   Each and every sale or lease of an Affected Vehicle by an authorized Volkswagen dealer constitutes a contract between Volkswagen and the purchaser or

-263-

lessee.  Volkswagen breached these contracts by selling or leasing Plaintiff and the other Michigan Subclass members defective Affected Vehicles and by misrepresenting or failing to disclose the existence of the CleanDiesel engine system's defect and/or defective design, including information known to Volkswagen rendering each Affected Vehicle non EPA-compliant, and thus less valuable, than vehicles not equipped with a CleanDiesel engine system.

998.   As a direct and proximate result of Volkswagen's breach of contract, Plaintiff and the Michigan Subclass have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

**Y.    Claims Brought on Behalf of the Minnesota Subclass**

<div align="center">

**COUNT I**
**VIOLATION OF MINNESOTA PREVENTION**
**OF CONSUMER FRAUD ACT**
**(MINN. STAT. § 325F.68, *et seq.*)**

</div>

999.   Plaintiff William Mackey ("Plaintiff," for purposes of all Minnesota Subclass Counts) incorporates by reference all preceding allegations as though fully set forth herein.

1000. This claim is brought only on behalf of the Minnesota Subclass.

1001. The Affected Vehicles constitute "merchandise" within the meaning of MINN. STAT. § 325F.68(2).

1002. The Minnesota Prevention of Consumer Fraud Act ("Minnesota CFA") prohibits "[t]he act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby . . ."  MINN. STAT. § 325F.69(1).  Volkswagen participated in misleading, false, or deceptive acts that violated the Minnesota CFA.  By fraudulently installing the "defeat device" to make it appear that its CleanDiesel engine systems complied with EPA regulations,

<div align="center">-264-</div>

Volkswagen engaged in deceptive business practices prohibited by the Minnesota CFA.

1003. Volkswagen's actions as set forth above occurred in the conduct of trade or commerce.

1004. In the course of its business, Volkswagen installed the "defeat device" and concealed that its CleanDiesel systems failed EPA regulations as described herein and otherwise engaged in activities with a tendency or capacity to deceive. Volkswagen also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of Affected Vehicles.

1005. Volkswagen has known of its use of the "defeat device" and the true nature of its CleanDiesel engine system for at least six years, but concealed all of that information until recently.

1006. Volkswagen was also aware that it valued profits over environmental cleanliness, efficiency, and lawfulness, and that it was manufacturing, selling and distributing vehicles throughout the United States that did not comply with EPA regulations.  Volkswagen concealed this information as well.

1007. By failing to disclose and by actively concealing the "defeat device" and the true cleanliness and performance of the CleanDiesel engine system, by marketing its vehicles as safe, reliable, environmentally clean, efficient, and of high quality, and by presenting itself as a reputable manufacturer that valued safety, environmental cleanliness and efficiency, and stood behind its vehicles after they were sold, Volkswagen engaged in deceptive business practices in violation of the Minnesota CFA.

1008. In the course of Volkswagen's business, it willfully failed to disclose and actively concealed the use of the "defeat device" and true cleanliness and efficiency of

the CleanDiesel engine system and serious defects discussed above.  Volkswagen compounded the deception by repeatedly asserting that the Affected Vehicles were safe, reliable, environmentally clean, efficient, and of high quality, and by claiming to be a reputable manufacturer that valued safety, environmental cleanliness and efficiency, and stood behind its vehicles once they were on the road.

1009.  Volkswagen's unfair or deceptive acts or practices were likely to, and did in fact, deceive reasonable consumers, including Plaintiff, about the true cleanliness and efficiency of the CleanDiesel engine system, the quality of the Volkswagen and Audi brands, the devaluing of environmental cleanliness and integrity at Volkswagen, and the true value of the Affected Vehicles.

1010.  Volkswagen intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with an intent to mislead Plaintiff and the Minnesota Subclass.

1011.  Volkswagen knew or should have known that its conduct violated the Minnesota CFA.

1012.  As alleged above, Volkswagen made material statements about the safety, cleanliness, efficiency and reliability of the Affected Vehicles and the Volkswagen and Audi brands that were either false or misleading.

1013.  Volkswagen owed Plaintiffs a duty to disclose the true safety, cleanliness, efficiency and reliability of the Affected Vehicles and the devaluing of environmental cleanliness and integrity at Volkswagen, because Volkswagen:

    a.    Possessed exclusive knowledge that it valued profits over environmental cleanliness, efficiency, and lawfulness, and that it was manufacturing, selling and distributing vehicles throughout the United States that did not comply with EPA regulations;

    b.    Intentionally concealed the foregoing from Plaintiffs; and/or

    c.    Made incomplete representations about the safety, cleanliness, efficiency and reliability of the Affected Vehicles generally, and the use of the "defeat device" and true nature of the CleanDiesel engine system in

-266-

particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

1014. Because Volkswagen fraudulently concealed the "defeat device" and the true cleanliness and performance of the CleanDiesel engine system, resulting in a raft of negative publicity once the use of the "defeat device" and true characteristics of the CleanDiesel engine system finally began to be disclosed, the value of the Affected Vehicles has greatly diminished. In light of the stigma attached to those vehicles by Volkswagen's conduct, they are now worth significantly less than they otherwise would be.

1015. Volkswagen's fraudulent use of the "defeat device" and its concealment of the true characteristics of the CleanDiesel engine system were material to Plaintiff and the Minnesota Subclass. A vehicle made by a reputable manufacturer of environmentally friendly vehicles is worth more than an otherwise comparable vehicle made by a disreputable and dishonest manufacturer of polluting vehicles that conceals the amount its cars pollutes rather than make environmentally friendly vehicles.

1016. Plaintiff and the Minnesota Subclass suffered ascertainable loss caused by Volkswagen's misrepresentations and its concealment of and failure to disclose material information. Class members who purchased the Affected Vehicles either would have paid less for their vehicles or would not have purchased or leased them at all.

1017. Volkswagen had an ongoing duty to all Volkswagen and Audi customers to refrain from unfair and deceptive acts or practices under the Minnesota CFA. All owners of Affected Vehicles suffered ascertainable loss in the form of the diminished value of their vehicles as a result of Volkswagen's deceptive and unfair acts and practices made in the course of Volkswagen's business.

-267-

1018. Volkswagen's violations present a continuing risk to Plaintiffs as well as to the general public. Volkswagen's unlawful acts and practices complained of herein affect the public interest.

1019. As a direct and proximate result of Volkswagen's violations of the Minnesota CFA, Plaintiff and the Minnesota Subclass have suffered injury-in-fact and/or actual damage.

1020. Pursuant to MINN. STAT. § 8.31(3a), Plaintiff and the Minnesota Subclass seek actual damages, attorneys' fees, and any other just and proper relief available under the Minnesota CFA.

1021. Plaintiffs also seek punitive damages under MINN. STAT. § 549.20(1)(a) given the clear and convincing evidence that Volkswagen's acts show deliberate disregard for the rights or safety of others.

<div align="center">

**COUNT II**
**VIOLATION OF MINNESOTA UNIFORM**
**DECEPTIVE TRADE PRACTICES ACT**
**(MINN. STAT. § 325D.43-48, *et seq.*)**

</div>

1022. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1023. This claim is brought only on behalf of the Minnesota Subclass.

1024. The Minnesota Deceptive Trade Practices Act ("Minnesota DTPA") prohibits deceptive trade practices, which occur when a person "(5) represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have;" "(7) represents that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;" and "(9) advertises goods or services with intent not to sell them as advertised." MINN. STAT. § 325D.44. In the course of the Volkswagen's business, it installed the "defeat device" and concealed that its CleanDiesel systems failed EPA regulations and engaged in

-268-

deceptive practices by representing that Affected Vehicles have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have; representing that Affected Vehicles are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; and advertising Affected Vehicles with intent not to sell them as advertised.  Volkswagen participated in misleading, false, or deceptive acts that violated the Minnesota DTPA.  By fraudulently installing the "defeat device" to make it appear that its CleanDiesel engine systems complied with EPA regulations, Volkswagen engaged in deceptive business practices prohibited by the Minnesota DTPA.

1025. Volkswagen's actions as set forth above occurred in the conduct of trade or commerce.

1026. In the course of its business, Volkswagen installed the "defeat device" and concealed that its CleanDiesel systems failed EPA regulations as described herein and otherwise engaged in activities with a tendency or capacity to deceive. Volkswagen also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of Affected Vehicles.

1027. Volkswagen has known of its use of the "defeat device" and the true nature of its CleanDiesel engine system for at least six years, but concealed all of that information until recently.

1028. Volkswagen was also aware that it valued profits over environmental cleanliness, efficiency, and lawfulness, and that it was manufacturing, selling and distributing vehicles throughout the United States that did not comply with EPA regulations.  Volkswagen concealed this information as well.

1029. By failing to disclose and by actively concealing the "defeat device" and the true cleanliness and performance of the CleanDiesel engine system, by marketing

-269-

its vehicles as safe, reliable, environmentally clean, efficient, and of high quality, and by presenting itself as a reputable manufacturer that valued safety, environmental cleanliness and efficiency, and stood behind its vehicles after they were sold, Volkswagen engaged in deceptive business practices in violation of the Minnesota DTPA.

1030. In the course of Volkswagen's business, it willfully failed to disclose and actively concealed the use of the "defeat device" and true cleanliness and efficiency of the CleanDiesel engine system and serious defects discussed above.  Volkswagen compounded the deception by repeatedly asserting that the Affected Vehicles were safe, reliable, environmentally clean, efficient, and of high quality, and by claiming to be a reputable manufacturer that valued safety, environmental cleanliness and efficiency, and stood behind its vehicles once they are on the road.

1031. Volkswagen's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff, about the true cleanliness and efficiency of the CleanDiesel engine system, the quality of the Volkswagen brand, the devaluing of environmental cleanliness and integrity at Volkswagen, and the true value of the Affected Vehicles.

1032. Volkswagen intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with an intent to mislead Plaintiff and the Minnesota Subclass.

1033. Volkswagen knew or should have known that its conduct violated the Minnesota DTPA.

1034. As alleged above, Volkswagen made material statements about the safety, cleanliness, efficiency and reliability of the Affected Vehicles that were either false or misleading.

1035. Volkswagen owed Plaintiffs a duty to disclose the true safety, cleanliness, efficiency and reliability of the Affected Vehicles and the devaluing of environmental cleanliness and integrity at Volkswagen, because Volkswagen:

    a.    Possessed exclusive knowledge that it valued profits over environmental cleanliness, efficiency, and lawfulness, and that it was manufacturing, selling and distributing vehicles throughout the United States that did not comply with EPA regulations;

    b.    Intentionally concealed the foregoing from Plaintiffs; and/or

    c.    Made incomplete representations about the safety, cleanliness, efficiency and reliability of the Affected Vehicles generally, and the use of the "defeat device" and true nature of the CleanDiesel engine system in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

1036. Because Volkswagen fraudulently concealed the "defeat device" and the true cleanliness and performance of the CleanDiesel engine system, resulting in a raft of negative publicity once the use of the "defeat device" and true characteristics of the CleanDiesel engine system finally began to be disclosed, the value of the Affected Vehicles has greatly diminished.  In light of the stigma attached to those vehicles by Volkswagen's conduct, they are now worth significantly less than they otherwise would be.

1037. Volkswagen's fraudulent use of the "defeat device" and its concealment of the true characteristics of the CleanDiesel engine system were material to Plaintiff and the Minnesota Subclass.  A vehicle made by a reputable manufacturer of safe vehicles is worth more than an otherwise comparable vehicle made by a disreputable and dishonest manufacturer of polluting vehicles that conceals the amount its cars pollutes rather than make environmentally friendly vehicles.

1038. Plaintiff and the Minnesota Subclass suffered ascertainable loss caused by Volkswagen's misrepresentations and its failure to disclose material information.  Had they been aware of the true characteristics of the CleanDiesel engine system, and

the company's callous disregard for environmental laws and regulations, Plaintiffs either would have paid less for their vehicles or would not have purchased or leased them at all.  Plaintiffs did not receive the benefit of their bargain as a result of Volkswagen's misconduct.

1039. Volkswagen's violations present a continuing risk to Plaintiffs as well as to the general public.  Volkswagen's unlawful acts and practices complained of herein affect the public interest.

1040. As a direct and proximate result of Volkswagen's violations of the Minnesota DTPA, Plaintiff and the Minnesota Subclass have suffered injury-in-fact and/or actual damage.

1041. Pursuant to MINN. STAT. § 8.31(3a) and 325D.45, Plaintiff and the Minnesota Subclass seek actual damages, attorneys' fees, and any other just and proper relief available under the Minnesota DTPA.

1042. Plaintiffs also seek punitive damages under MINN. STAT. § 549.20(1)(a) give the clear and convincing evidence that Volkswagen's acts show deliberate disregard for the rights or safety of others.

<div align="center">

**COUNT III**
**FRAUD BY CONCEALMENT**

</div>

1043. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1044. This claim is brought on behalf of the Minnesota Subclass.

1045. Volkswagen intentionally concealed and suppressed material facts concerning the quality of the Affected Vehicles.  As alleged in this Complaint, notwithstanding references in the very model names of the subject vehicles as "Clean Diesel," or to their engines as "TDI Clean Diesel" engines, Volkswagen engaged in a secret scheme to evade federal and state vehicle emissions standards by installing software designed to conceal its vehicles' emissions of the pollutant nitrogen oxide, which contributes to the creation of ozone and smog.  The software installed on the

<div align="center">-272-</div>

vehicles at issue was designed nefariously to kick-in during emissions certification testing, such that the vehicles would show far lower emissions than when actually operating on the road.  The result was what Volkswagen intended: vehicles passed emissions certifications by way of deliberately induced false readings.  Reportedly, Volkswagen's deliberate, secret scheme resulted in noxious emissions from these vehicles at up to 40 times applicable standards.

1046.  Plaintiff and the Minnesota Subclass members reasonably relied upon Volkswagen's false representations.  They had no way of knowing that Volkswagen's representations were false and gravely misleading.  As alleged herein, Volkswagen employed extremely sophisticated methods of deception.  Plaintiff and the Minnesota Subclass members did not, and could not, unravel Volkswagen's deception on their own.

1047.  Volkswagen concealed and suppressed material facts concerning what is evidently the true culture of Volkswagen—one characterized by an emphasis on profits and sales above compliance with federal and state clean air laws, and emissions regulations that are meant to protect the public and consumers.  It also emphasized profits and sales over the trust that Plaintiff and the Minnesota Subclass members placed in its representations.  As one customer, Priya Shah, put it in a quotation cited by the *Los Angeles Times* in a September 18, 2015 article, "It's just a blatant disregard and intentional manipulation of the system.  That's just a whole other level of not only lying to the government, but also lying to your consumer.  People buy diesel cars from Volkswagen because they feel they are clean diesel cars."  In the words of Ms. Shah, which no doubt reflect the sentiments of all other CleanDiesel vehicle buyers, "I don't want to be spewing noxious gases into the environment."

1048.  Necessarily, Volkswagen also took steps to ensure that its employees did not reveal the details of its scheme to regulators or consumers, including Plaintiff and the Minnesota Subclass members.  Volkswagen did so in order to boost the reputations

-273-

of its vehicles and to falsely assure purchasers and lessors of its vehicles, including previously owned vehicles, that Volkswagen is a reputable manufacturer that complies with applicable law, including federal and state clean air laws and emissions regulations, and that its vehicles likewise comply with applicable law and regulations. Volkswagen's false representations were material to consumers, both because they concerned the quality of the Affected Vehicles, including their compliance with applicable federal and state laws and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles.  As Volkswagen well knew, its customers, including Plaintiff and the Minnesota Subclass members, highly valued that the vehicles they were purchasing or leasing were *clean* diesel cars, and they paid accordingly.

1049. Volkswagen had a duty to disclose its emissions scheme because knowledge of the scheme and its details were known and/or accessible only to Volkswagen, because Volkswagen had exclusive knowledge as to implementation and maintenance of its scheme, and because Volkswagen knew the facts were not known to or reasonably discoverable by Plaintiff or the Minnesota Subclass members. Volkswagen also had a duty to disclose because it made general affirmative representations about the qualities of its vehicles with respect to emissions standards, starting with references to them as *clean* diesel cars, or cars with *clean* diesel engines, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding its emissions scheme, the actual emissions of its vehicles, its actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and its actual practices with respect to the vehicles at issue.  Having volunteered to provide information to Plaintiffs, Volkswagen had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiff and the Minnesota

-274-

Subclass members. Whether a manufacturer's products comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certification testing their vehicles must pass. Volkswagen represented to Plaintiff and the Minnesota Subclass members that they were purchasing *clean* diesel vehicles, and certification testing appeared to confirm this—except that, secretly, Volkswagen had subverted the testing process thoroughly.

1050. Volkswagen actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Volkswagen money, and it did so at the expense of Plaintiff and the Minnesota Subclass members.

1051. On information and belief, Volkswagen has still not made full and adequate disclosures, and continues to defraud Plaintiff and the Minnesota Subclass members by concealing material information regarding the emission qualities of its vehicles and its emissions scheme.

1052. Plaintiff and the Minnesota Subclass members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly "clean" diesel cars manufactured by Volkswagen, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them. Plaintiff's and the Minnesota Subclass members' actions were justified. Volkswagen was in exclusive control of the material facts, and such facts were not known to the public, Plaintiff, or Minnesota Subclass members.

1053. Because of the concealment and/or suppression of the facts, Plaintiff and Minnesota Subclass members have sustained damage because they own vehicles that are diminished in value as a result of Volkswagen's concealment of the true quality and quantity of those vehicles' emissions and Volkswagen's failure to timely disclose the actual emission qualities and quantities of hundreds of thousands of Volkswagen- and Audi-branded vehicles and the serious issues engendered by Volkswagen's corporate policies.  Had Plaintiff and the Minnesota Subclass members been aware of Volkswagen's emissions scheme, and the company's callous disregard for compliance with applicable federal and state laws and regulations, Plaintiff and Minnesota Subclass members who purchased or leased new or previously owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

1054. The value of Plaintiff's and Minnesota Subclass members' vehicles has diminished as a result of Volkswagen's fraudulent concealment of its emissions scheme, which has greatly tarnished the Volkswagen and Audi brand names attached to Plaintiff's and Minnesota Subclass members' vehicles and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.  In addition, Class members are entitled to damages for loss of use, costs of additional fuel, costs of unused warranties, and other damages to be proved at trial.

1055. Accordingly, Volkswagen is liable to Plaintiff and Minnesota Subclass members for damages in an amount to be proven at trial.

1056. Volkswagen's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and Minnesota Subclass members' rights and the representations that Volkswagen made to them, in order to enrich Volkswagen.  To the extent permitted under applicable law, Volkswagen's conduct warrants an assessment of punitive damages in an amount

-276-

1   sufficient to deter such conduct in the future, which amount is to be determined

2   according to proof.

### COUNT IV
### BREACH OF CONTRACT
### (BASED ON MINNESOTA LAW)

1057. Plaintiff incorporates by reference all preceding allegations as though
fully set forth herein.

1058. Plaintiff brings this Count on behalf of new vehicle or certified pre-
owned vehicle purchasers in the Minnesota Subclass.

1059. Volkswagen's misrepresentations and omissions alleged herein, including
Volkswagen's failure to disclose the existence of the CleanDiesel engine system's
defect and/or defective design as alleged herein, caused Plaintiff and the other
Minnesota Subclass members to make their purchases or leases of their Affected
Vehicles. Absent those misrepresentations and omissions, Plaintiff and the other
Minnesota Subclass members would not have purchased or leased these Affected
Vehicles, would not have purchased or leased these Affected Vehicles at the prices
they paid, and/or would have purchased or leased less expensive alternative vehicles
that did not contain the CleanDiesel engine system and which were not marketed as
including such a system. Accordingly, Plaintiff and the other Minnesota Subclass
members overpaid for their Affected Vehicles and did not receive the benefit of their
bargain.

1060. Each and every sale or lease of an Affected Vehicle by an authorized
Volkswagen dealer constitutes a contract between Volkswagen and the purchaser or
lessee. Volkswagen breached these contracts by selling or leasing Plaintiff and the
other Minnesota Subclass members defective Affected Vehicles and by
misrepresenting or failing to disclose the existence of the CleanDiesel engine system's
defect and/or defective design, including information known to Volkswagen rendering

-277-

each Affected Vehicle non EPA-compliant, and thus less valuable, than vehicles not equipped with a CleanDiesel engine system.

1061. As a direct and proximate result of Volkswagen's breach of contract, Plaintiff and the Minnesota Subclass have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

**Z.      Claims Brought on Behalf of the Mississippi Subclass**

<div align="center">

**COUNT I**
**VIOLATION OF MISSISSIPPI CONSUMER PROTECTION ACT**
**(MISS. CODE. ANN. § 75-24-1, *ET SEQ.*)**

</div>

1062. Plaintiff Edward Simmons ("Plaintiff," for purposes of all Mississippi Subclass Counts) incorporates by reference all preceding allegations as though fully set forth herein.

1063. This claim is brought only on behalf of members of the Mississippi Subclass.

1064. The Mississippi Consumer Protection Act ("Mississippi CPA") prohibits "unfair or deceptive trade practices in or affecting commerce." MISS. CODE. ANN. § 75-24-5(1). Unfair or deceptive practices include, but are not limited to, "(e) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he does not have;" "(g) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;" and "(i) Advertising goods or services with intent not to sell them as advertised." Volkswagen participated in deceptive trade practices that violated the Mississippi CPA as described herein, including representing that Affected Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that Affected Vehicles are

<div align="center">-278-</div>

of a particular standard and quality when they are not; and advertising Affected Vehicles with the intent not to sell them as advertised.

1065. In the course of its business, Volkswagen installed the "defeat device" and concealed that its CleanDiesel systems failed EPA regulations as described herein and otherwise engaged in activities with a tendency or capacity to deceive. Volkswagen also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of Affected Vehicles.

1066. Volkswagen has known of its use of the "defeat device" and the true nature of its CleanDiesel engine system for at least six years, but concealed all of that information until recently.

1067. Volkswagen was also aware that it valued profits over environmental cleanliness, efficiency, and lawfulness, and that it was manufacturing, selling and distributing vehicles throughout the United States that did not comply with EPA regulations. Volkswagen concealed this information as well.

1068. By failing to disclose and by actively concealing the "defeat device" and the true cleanliness and performance of the CleanDiesel engine system, by marketing its vehicles as safe, reliable, environmentally clean, efficient, and of high quality, and by presenting itself as a reputable manufacturer that valued safety, environmental cleanliness and efficiency, and stood behind its vehicles after they were sold, Volkswagen engaged in unfair and deceptive business practices in violation of the Mississippi CPA.

1069. In the course of Volkswagen's business, it willfully failed to disclose and actively concealed the use of the "defeat device" and true cleanliness and efficiency of the CleanDiesel engine system and serious defects discussed above. Volkswagen compounded the deception by repeatedly asserting that the Affected Vehicles were

-279-

safe, reliable, environmentally clean, efficient, and of high quality, and by claiming to be a reputable manufacturer that valued safety, environmental cleanliness and efficiency, and stood behind its vehicles once they are on the road.

1070. Volkswagen's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff, about the true cleanliness and efficiency of the CleanDiesel engine system, the quality of the Volkswagen brand, the devaluing of environmental cleanliness and integrity at Volkswagen, and the true value of the Affected Vehicles.

1071. Volkswagen intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with an intent to mislead Plaintiff and the Mississippi Subclass.

1072. Volkswagen knew or should have known that its conduct violated the Mississippi CPA.

1073. As alleged above, Volkswagen made material statements about the safety, cleanliness, efficiency and reliability of the Affected Vehicles and the Volkswagen and Audi brands that were either false or misleading.

1074. Volkswagen owed Plaintiffs a duty to disclose the true safety, cleanliness, efficiency and reliability of the Affected Vehicles and the devaluing of environmental cleanliness and integrity at Volkswagen, because Volkswagen:

    a.   Possessed exclusive knowledge that it valued profits over environmental cleanliness, efficiency, and lawfulness, and that it was manufacturing, selling and distributing vehicles throughout the United States that did not comply with EPA regulations;

    b.   Intentionally concealed the foregoing from Plaintiffs; and/or

    c.   Made incomplete representations about the safety, cleanliness, efficiency and reliability of the Affected Vehicles generally, and the use of the "defeat device" and true nature of the CleanDiesel engine system in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

-280-

1075. Because Volkswagen fraudulently concealed the "defeat device" and the true cleanliness and performance of the CleanDiesel engine system, resulting in a raft of negative publicity once the use of the "defeat device" and true characteristics of the CleanDiesel engine system finally began to be disclosed, the value of the Affected Vehicles has greatly diminished. In light of the stigma attached to those vehicles by Volkswagen's conduct, they are now worth significantly less than they otherwise would be.

1076. Volkswagen's fraudulent use of the "defeat device" and its concealment of the true characteristics of the CleanDiesel engine system were material to Plaintiff and the Mississippi Subclass. A vehicle made by a reputable manufacturer of environmentally friendly vehicles is worth more than an otherwise comparable vehicle made by a disreputable and dishonest manufacturer of polluting vehicles that conceals the amount its cars pollutes rather than make environmentally friendly vehicles.

1077. Plaintiff and the Mississippi Subclass suffered ascertainable loss caused by Volkswagen's misrepresentations and its concealment of and failure to disclose material information. Class members who purchased the Affected Vehicles either would have paid less for their vehicles or would not have purchased or leased them at all.

1078. All owners of Affected Vehicles suffered ascertainable loss in the form of the diminished value of their vehicles as a result of Volkswagen's deceptive and unfair acts and practices made in the course of Volkswagen's business. Class members who purchased Affected Vehicles either would have paid less for their vehicles or would not have purchased or leased them at all.

1079. Volkswagen's violations present a continuing risk to Plaintiffs as well as to the general public. Volkswagen's unlawful acts and practices complained of herein affect the public interest.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1080.  As a direct and proximate result of Volkswagen's violations of the Mississippi CPA, Plaintiff and the Mississippi Subclass have suffered injury-in-fact and/or actual damage.

1081.  Plaintiffs' actual damages in an amount to be determined at trial any other just and proper relief available under the Mississippi CPA.

## COUNT II
## FRAUD BY CONCEALMENT

1082.  Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1083.  This claim is brought on behalf of the Mississippi Subclass.

1084.  Volkswagen intentionally concealed and suppressed material facts concerning the quality of the Affected Vehicles.  As alleged in this Complaint, notwithstanding references in the very model names of the subject vehicles as "Clean Diesel," or to their engines as "TDI Clean Diesel" engines, Volkswagen engaged in a secret scheme to evade federal and state vehicle emissions standards by installing software designed to conceal its vehicles' emissions of the pollutant nitrogen oxide, which contributes to the creation of ozone and smog.  The software installed on the vehicles at issue was designed nefariously to kick-in during emissions certification testing, such that the vehicles would show far lower emissions than when actually operating on the road.  The result was what Volkswagen intended: vehicles passed emissions certifications by way of deliberately induced false readings.  Reportedly, Volkswagen's deliberate, secret scheme resulted in noxious emissions from these vehicles at up to 40 times applicable standards.

1085.  Plaintiff and Mississippi Subclass members reasonably relied upon Volkswagen's false representations.  They had no way of knowing that Volkswagen's representations were false and gravely misleading.  As alleged herein, Volkswagen employed extremely sophisticated methods of deception.  Plaintiff and Mississippi

-282-

Subclass members did not, and could not, unravel Volkswagen's deception on their own.

1086. Volkswagen concealed and suppressed material facts concerning what is evidently the true culture of Volkswagen—one characterized by an emphasis on profits and sales above compliance with federal and state clean air laws, and emissions regulations that are meant to protect the public and consumers.  It also emphasized profits and sales over the trust that Plaintiff and Mississippi Subclass members placed in its representations.  As one customer, Priya Shah, put it in a quotation cited by the *Los Angeles Times* in a September 18, 2015 article, "It's just a blatant disregard and intentional manipulation of the system.  That's just a whole other level of not only lying to the government, but also lying to your consumer.  People buy diesel cars from Volkswagen because they feel they are clean diesel cars."  In the words of Ms. Shah, which no doubt reflect the sentiments of all other CleanDiesel vehicle buyers, "I don't want to be spewing noxious gases into the environment."

1087. Necessarily, Volkswagen also took steps to ensure that its employees did not reveal the details of its scheme to regulators or consumers, including Plaintiff and Mississippi Subclass members.  Volkswagen did so in order to boost the reputations of its vehicles and to falsely assure purchasers and lessors of its vehicles, including previously owned vehicles, that Volkswagen is a reputable manufacturer that complies with applicable law, including federal and state clean air laws and emissions regulations, and that its vehicles likewise comply with applicable law and regulations.  Volkswagen's false representations were material to consumers, both because they concerned the quality of the Affected Vehicles, including their compliance with applicable federal and state laws and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles.  As Volkswagen well knew, its customers, including Plaintiff and

-283-

Mississippi Subclass members, highly valued that the vehicles they were purchasing or leasing were *clean* diesel cars, and they paid accordingly.

1088. Volkswagen had a duty to disclose its emissions scheme because knowledge of the scheme and its details were known and/or accessible only to Volkswagen, because Volkswagen had exclusive knowledge as to implementation and maintenance of its scheme, and because Volkswagen knew the facts were not known to or reasonably discoverable by Plaintiff or Mississippi Subclass members. Volkswagen also had a duty to disclose because it made general affirmative representations about the qualities of its vehicles with respect to emissions standards, starting with references to them as *clean* diesel cars, or cars with *clean* diesel engines, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding its emissions scheme, the actual emissions of its vehicles, its actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and its actual practices with respect to the vehicles at issue.  Having volunteered to provide information to Plaintiffs, Volkswagen had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiff and Mississippi Subclass members.  Whether a manufacturer's products comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certification testing their vehicles must pass.  Volkswagen represented to Plaintiff and Mississippi Subclass members that they were purchasing *clean* diesel vehicles, and certification testing appeared to confirm this—except that, secretly, Volkswagen had subverted the testing process thoroughly.

1089. Volkswagen actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Volkswagen money, and it did so at the expense of Plaintiff and Mississippi Subclass members.

1090. On information and belief, Volkswagen has still not made full and adequate disclosures, and continues to defraud Plaintiff and Mississippi Subclass members by concealing material information regarding the emissions qualities of its vehicles and its emissions scheme.

1091. Plaintiff and Mississippi Subclass members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly "clean" diesel cars manufactured by Volkswagen, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them.  Plaintiff's and Mississippi Subclass members' actions were justified.  Volkswagen was in exclusive control of the material facts, and such facts were not known to the public, Plaintiff, or Mississippi Subclass members.

1092. Because of the concealment and/or suppression of the facts, Plaintiff and Mississippi Subclass members have sustained damage because they own vehicles that are diminished in value as a result of Volkswagen's concealment of the true quality and quantity of those vehicles' emissions and Volkswagen's failure to timely disclose the actual emissions qualities and quantities of hundreds of thousands of Volkswagen- and Audi-branded vehicles and the serious issues engendered by Volkswagen's corporate policies.  Had Plaintiff and Mississippi Subclass members been aware of Volkswagen's emissions scheme, and the company's callous disregard for compliance with applicable federal and state laws and regulations, Plaintiffs and Class members

1    who purchased or leased new or previously owned vehicles would have paid less for

2    their vehicles or would not have purchased or leased them at all.

3        1093. The value of Plaintiff's and Mississippi Subclass members' vehicles has

4    diminished as a result of Volkswagen's fraudulent concealment of its emissions

5    scheme, which has greatly tarnished the Volkswagen and Audi brand names attached

6    to Plaintiff's and Mississippi Subclass members' vehicles and made any reasonable

7    consumer reluctant to purchase any of the Affected Vehicles, let alone pay what

8    otherwise would have been fair market value for the vehicles.  In addition, Class

9    members are entitled to damages for loss of use, costs of additional fuel, costs of

10   unused warranties, and other damages to be proved at trial.

11       1094. Accordingly, Volkswagen is liable to Plaintiff and Mississippi Subclass

12   members for damages in an amount to be proven at trial.

13       1095. Volkswagen's acts were done wantonly, maliciously, oppressively,

14   deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and

15   Mississippi Subclass members' rights and the representations that Volkswagen made

16   to them, in order to enrich Volkswagen.  To the extent permitted under applicable law,

17   Volkswagen's conduct warrants an assessment of punitive damages in an amount

18   sufficient to deter such conduct in the future, which amount is to be determined

19   according to proof.

## COUNT III
## BREACH OF CONTRACT
## (BASED ON MISSISSIPPI LAW)

22       1096. Plaintiff incorporates by reference all preceding allegations as though

23   fully set forth herein.

24       1097. Plaintiff brings this Count on behalf of new vehicle or certified pre-

25   owned vehicle purchasers in the Mississippi Subclass.

26       1098. Volkswagen's misrepresentations and omissions alleged herein, including

27   Volkswagen's failure to disclose the existence of the CleanDiesel engine system's

-286-

defect and/or defective design as alleged herein, caused Plaintiff and the other Mississippi Subclass members to make their purchases or leases of their Affected Vehicles.  Absent those misrepresentations and omissions, Plaintiff and the other Mississippi Subclass members would not have purchased or leased these Affected Vehicles, would not have purchased or leased these Affected Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain the CleanDiesel engine system and which were not marketed as including such a system.  Accordingly, Plaintiff and the other Mississippi Subclass members overpaid for their Affected Vehicles and did not receive the benefit of their bargain.

1099. Each and every sale or lease of an Affected Vehicle by an authorized Volkswagen dealer constitutes a contract between Volkswagen and the purchaser or lessee.  Volkswagen breached these contracts by selling or leasing Plaintiff and the other Mississippi Subclass members defective Affected Vehicles and by misrepresenting or failing to disclose the existence of the CleanDiesel engine system's defect and/or defective design, including information known to Volkswagen rendering each Affected Vehicle non EPA-compliant, and thus less valuable, than vehicles not equipped with a CleanDiesel engine system.

1100. As a direct and proximate result of Volkswagen's breach of contract, Plaintiff and the Mississippi Subclass have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

-287-

## AA.   Claims Brought on Behalf of the Missouri Subclass

### COUNT I
### VIOLATION OF MISSOURI MERCHANDISING PRACTICES ACT
#### (MO. REV. STAT. § 407.010, *et seq.*)

1101. Plaintiff Charles Hall ("Plaintiff," for purposes of all Missouri Subclass Counts) incorporates by reference all preceding allegations as though fully set forth herein.

1102. This claim is brought only on behalf of the Missouri Subclass.

1103. Volkswagen, Plaintiffs and the Missouri Subclass are "persons" within the meaning of MO. REV. STAT. § 407.010(5).

1104. Volkswagen engaged in "trade" or "commerce" in the State of Missouri within the meaning of MO. REV. STAT. § 407.010(7).

1105. The Missouri Merchandising Practices Act ("Missouri MPA") makes unlawful the "act, use or employment by any person of any deception, fraud, false pretense, misrepresentation, unfair practice, or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise." MO. REV. STAT. § 407.020.

1106. In the course of its business, Volkswagen environmental laws and regulations and, omitted, suppressed, and concealed its use of the "defeat device" as described herein.  By failing to disclose these defects or facts about the defects described herein known to it or that were available to Volkswagen upon reasonable inquiry, Volkswagen deprived consumers of all material facts about the safety and functionality of their vehicle.  By failing to release material facts about the defect, Volkswagen curtailed or reduced the ability of consumers to take notice of material facts about their vehicle, and/or it affirmatively operated to hide or keep those facts from consumers.  15 MO. CODE OF SERV. REG. § 60-9.110.  Moreover, Volkswagen has otherwise engaged in activities with a tendency or capacity to deceive.  Volkswagen also engaged in unlawful trade practices by employing deception,

-288-

deceptive acts or practices, fraud, misrepresentations, unfair practices, and/or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of Affected Vehicles.

1107. Volkswagen has known of its use of the "defeat device" and the true characteristics of its CleanDiesel engine system, but suppressed and/or concealed all of that information until recently.

1108. Volkswagen was also aware that it valued profits over environmental cleanliness, efficiency, and lawfulness, and that it was manufacturing, selling and distributing vehicles throughout the United States that did not comply with EPA regulations.  Volkswagen omitted, suppressed, and/or concealed this information as well.

1109. By failing to disclose and by actively concealing, suppressing, or omitting the "defeat device" and the true cleanliness and performance of the CleanDiesel engine system, by marketing its vehicles as safe, reliable, environmentally clean, efficient, and of high quality, and by presenting itself as a reputable manufacturer that valued safety, environmental cleanliness and efficiency, and stood behind its vehicles after they were sold, Volkswagen engaged in unfair and/or deceptive business practices and concealed, suppressed, and/or omitted material facts from consumers in connection with the purchase of their vehicles – all in violation of the Missouri MPA.

1110. In the course of Volkswagen's business, it willfully failed to disclose and actively concealed, suppressed, and omitted the use of the "defeat device" and true cleanliness and efficiency of the CleanDiesel engine system and serious defects discussed above.  Volkswagen compounded the deception by repeatedly asserting that the Affected Vehicles were safe, reliable, environmentally clean, efficient, and of high quality, and by claiming to be a reputable manufacturer that valued safety,

environmental cleanliness and efficiency, and stood behind its vehicles once they are on the road.

1111. Volkswagen's unfair or deceptive acts or practices, including these concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead, tended to create a false impression in consumers, and did in fact deceive reasonable consumers, including Plaintiff, about the true cleanliness and efficiency of the CleanDiesel engine system, the quality of the Volkswagen and Audi brands, the devaluing of environmental cleanliness and integrity at Volkswagen, and the true value of the Affected Vehicles.

1112. Volkswagen intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with an intent to mislead Plaintiff and the Missouri Subclass, including without limitation by failing to disclose the "defeat device" in light of circumstances under which the omitted facts were necessary in order to correct the assumptions, inferences or representations being made by Volkswagen about the safety, efficiency, cleanliness or reliability of its vehicles. Consequently, the failure to disclose such facts amounts to misleading statements pursuant to 15 Mo. CODE OF SERV. REG. § 60-9.090.

1113. Because Volkswagen knew or believed that its statements regarding cleanliness, efficiency and reliability of its vehicles were not in accord with the facts and/or had no reasonable basis for such statements in light of its knowledge of these defects, Volkswagen engaged in fraudulent misrepresentations pursuant to 15 Mo. CODE OF SERV. REG. 60-9.100.

1114. Volkswagen's conduct as described herein is unethical, oppressive, or unscrupulous and/or it presented a risk of substantial injury to consumers whose vehicles were operating illegally and under circumstances that rendered them unsafe. Such acts are unfair practices in violation of 15 Mo. CODE OF SERV. REG. 60-8.020.

010549-11 816608 V1

1115. Volkswagen knew or should have known that its conduct violated the Missouri MPA.

1116. As alleged above, Volkswagen made material statements about the safety, cleanliness, efficiency and reliability of the Affected Vehicles that were either false, misleading, and/or half-truths in violation of the Missouri MPA.

1117. Volkswagen owed Plaintiffs a duty to disclose the true safety, cleanliness, efficiency and reliability of the Affected Vehicles and the devaluing of environmental cleanliness and integrity at Volkswagen, because Volkswagen:

    a.    Possessed exclusive knowledge that it valued profits over environmental cleanliness, efficiency, and lawfulness, and that it was manufacturing, selling and distributing vehicles throughout the United States that did not comply with EPA regulations;

    b.    Intentionally concealed the foregoing from Plaintiffs; and/or

    c.    Made incomplete representations about the safety, cleanliness, efficiency and reliability of the Affected Vehicles generally, and the use of the "defeat device" and true nature of the CleanDiesel engine system in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

1118. Because Volkswagen fraudulently concealed the "defeat device" and the true cleanliness and performance of the CleanDiesel engine system, and committed these other unlawful acts in violation of the Missouri MPA, resulting in a raft of negative publicity once the use of the "defeat device" and true characteristics of the CleanDiesel engine system finally began to be disclosed, the value of the Affected Vehicles has greatly diminished.  In light of the stigma attached to those vehicles by Volkswagen's conduct, they are now worth significantly less than they otherwise would be.

1119. Volkswagen's misleading statements, deception, and/or concealment, suppression, or omission of the "defeat device" and true nature of the CleanDiesel engine system were material to Plaintiffs and the Missouri Subclass.  A vehicle made

by a reputable manufacturer of environmentally friendly vehicles is worth more than an otherwise comparable vehicle made by a disreputable and dishonest manufacturer of polluting vehicles that conceals the amount its cars pollutes rather than make environmentally friendly vehicles.

1120. Plaintiffs and the Missouri Subclass suffered ascertainable loss caused by Volkswagen's misrepresentations and its concealment of and failure to disclose material information.  Class members who purchased Affected Vehicles either would have paid less for their vehicles or would not have purchased or leased them at all.

1121. Volkswagen had an ongoing duty to all Volkswagen and Audi customers to refrain from unfair and deceptive acts or practices under the Missouri MPA.  All owners of Affected Vehicles suffered ascertainable loss in the form of the diminished value of their vehicles as a result of Volkswagen's deceptive and unfair acts and practices made in the course of Volkswagen's business.

1122. Volkswagen's violations present a continuing risk to Plaintiffs as well as to the general public.  Volkswagen's unlawful acts and practices complained of herein affect the public interest.

1123. As a direct and proximate result of Volkswagen's violations of the Missouri MPA, Plaintiffs and the Missouri Subclass have suffered injury-in-fact and/or actual damage.

1124. Volkswagen is liable to Plaintiffs and the Missouri Subclass for damages in amounts to be proven at trial, including attorneys' fees, costs, and punitive damages, as well as injunctive relief enjoining Volkswagen's unfair and deceptive practices, and any other just and proper relief under MO. REV. STAT. § 407.025.

## COUNT II
## FRAUD BY CONCEALMENT

1125. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1126. This claim is brought on behalf of the Missouri Subclass.

-292-

1127. Volkswagen intentionally concealed and suppressed material facts concerning the quality of the Affected Vehicles.  As alleged in this Complaint, notwithstanding references in the very model names of the subject vehicles as "Clean Diesel," or to their engines as "TDI Clean Diesel" engines, Volkswagen engaged in a secret scheme to evade federal and state vehicle emissions standards by installing software designed to conceal its vehicles' emissions of the pollutant nitrogen oxide, which contributes to the creation of ozone and smog.  The software installed on the vehicles at issue was nefariously designed to kick-in during emissions certification testing, such that the vehicles would show far lower emissions than when actually operating on the road.  The result was what Volkswagen intended: vehicles passed emissions certifications by way of deliberately induced false readings.  Reportedly, Volkswagen's deliberate, secret scheme resulted in noxious emissions from these vehicles at up to 40 times applicable standards.

1128. Plaintiffs and Class members reasonably relied upon Volkswagen's false representations.  They had no way of knowing that Volkswagen's representations were false and gravely misleading.  As alleged herein, Volkswagen employed extremely sophisticated methods of deception.  Plaintiffs and Class members did not, and could not, unravel Volkswagen's deception on their own.

1129. Volkswagen concealed and suppressed material facts concerning what is evidently the true culture of Volkswagen—one characterized by an emphasis on profits and sales above compliance with federal and state clean air laws, and emissions regulations that are meant to protect the public and consumers.  It also emphasized profits and sales over the trust that Plaintiffs and Class members placed in its representations.  As one customer, Priya Shah, put it in a quotation cited by the *Los Angeles Times* in a September 18, 2015 article, "It's just a blatant disregard and intentional manipulation of the system.  That's just a whole other level of not only lying to the government, but also lying to your consumer.  People buy diesel cars from

-293-

Volkswagen because they feel they are clean diesel cars." In the words of Ms. Shah, which no doubt reflect the sentiments of all other CleanDiesel vehicle buyers, "I don't want to be spewing noxious gases into the environment."

1130. Necessarily, Volkswagen also took steps to ensure that its employees did not reveal the details of its scheme to regulators or consumers, including Plaintiffs and Class members. Volkswagen did so in order to boost the reputations of its vehicles and to falsely assure purchasers and lessors of its vehicles, including previously owned vehicles, that Volkswagen is a reputable manufacturer that complies with applicable law, including federal and state clean air laws and emissions regulations, and that its vehicles likewise comply with applicable law and regulations. Volkswagen's false representations were material to consumers, both because they concerned the quality of the Affected Vehicles, including their compliance with applicable federal and state laws and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles. As Volkswagen well knew, its customers, including Plaintiffs and Class members, highly valued that the vehicles they were purchasing or leasing were *clean* diesel cars, and they paid accordingly.

1131. Volkswagen had a duty to disclose its emissions scheme because knowledge of the scheme and its details were known and/or accessible only to Volkswagen, because Volkswagen had exclusive knowledge as to implementation and maintenance of its scheme, and because Volkswagen knew the facts were not known to or reasonably discoverable by Plaintiffs or Class members. Volkswagen also had a duty to disclose because it made general affirmative representations about the qualities of its vehicles with respect to emissions standards, starting with references to them as *clean* diesel cars, or cars with *clean* diesel engines, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding its emissions scheme, the actual emissions of its vehicles, its actual philosophy with

-294-

respect to compliance with federal and state clean air laws and emissions regulations, and its actual practices with respect to the vehicles at issue.  Having volunteered to provide information to Plaintiffs, Volkswagen had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiffs and Class members.  Whether a manufacturer's products comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certification testing their vehicles must pass.  Volkswagen represented to Plaintiffs and Class members that they were purchasing *clean* diesel vehicles, and certification testing appeared to confirm this—except that, secretly, Volkswagen had subverted the testing process thoroughly.

1132. Volkswagen actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Volkswagen money, and it did so at the expense of Plaintiffs and Class members.

1133. On information and belief, Volkswagen has still not made full and adequate disclosures, and continues to defraud Plaintiffs and Class members by concealing material information regarding the emission qualities of its vehicles and its emissions scheme.

1134. Plaintiffs and Class members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly "clean" diesel cars manufactured by Volkswagen, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in

-295-

light of the information concealed from them.  Plaintiffs' and Class Members' actions were justified.  Volkswagen was in exclusive control of the material facts, and such facts were not known to the public, Plaintiffs, or Class members.

1135. Because of the concealment and/or suppression of the facts, Plaintiffs and Class members have sustained damage because they own vehicles that are diminished in value as a result of Volkswagen's concealment of the true quality and quantity of those vehicles' emissions and Volkswagen's failure to timely disclose the actual emission qualities and quantities of hundreds of thousands of Volkswagen- and Audi-branded vehicles and the serious issues engendered by Volkswagen's corporate policies.  Had Plaintiffs and Class members been aware of Volkswagen's emissions scheme, and the company's callous disregard for compliance with applicable federal and state laws and regulations, Plaintiffs and Class members who purchased or leased new or previously owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

1136. The value of Plaintiffs' and Class members' vehicles has diminished as a result of Volkswagen's fraudulent concealment of its emissions scheme, which has greatly tarnished the Volkswagen and Audi brand names attached to Plaintiffs' and Class members' vehicles and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.  In addition, Class members are entitled to damages for loss of use, costs of additional fuel, costs of unused warranties, and other damages to be proved at trial.

1137. Accordingly, Volkswagen is liable to Plaintiffs and Class members for damages in an amount to be proven at trial.

1138. Volkswagen's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and Class members' rights and the representations that Volkswagen made to them, in order to

-296-

1
2
3

enrich Volkswagen.  To the extent permitted under applicable law, Volkswagen's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

4
5

**COUNT III**
**BREACH OF CONTRACT**
**(BASED ON MISSOURI LAW)**

6
7

1139. Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

8
9

1140. Plaintiff brings this Count on behalf of new vehicle or certified pre-owned vehicle purchasers in the Missouri Subclass.

10
11
12
13
14
15
16
17
18
19
20
21

1141. Volkswagen's misrepresentations and omissions alleged herein, including Volkswagen's failure to disclose the existence of the CleanDiesel engine system's defect and/or defective design as alleged herein, caused Plaintiff and the other Missouri Subclass members to make their purchases or leases of their Affected Vehicles.  Absent those misrepresentations and omissions, Plaintiff and the other Missouri Subclass members would not have purchased or leased these Affected Vehicles, would not have purchased or leased these Affected Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain the CleanDiesel engine system and which were not marketed as including such a system.  Accordingly, Plaintiff and the other Missouri Subclass members overpaid for their Affected Vehicles and did not receive the benefit of their bargain.

22
23
24
25
26
27

1142. Each and every sale or lease of an Affected Vehicle by an authorized Volkswagen dealer constitutes a contract between Volkswagen and the purchaser or lessee.  Volkswagen breached these contracts by selling or leasing Plaintiff and the other Missouri Subclass members defective Affected Vehicles and by misrepresenting or failing to disclose the existence of the CleanDiesel engine system's defect and/or defective design, including information known to Volkswagen rendering each

28

-297-

Affected Vehicle non EPA-compliant, and thus less valuable, than vehicles not equipped with a CleanDiesel engine system.

1143. As a direct and proximate result of Volkswagen's breach of contract, Plaintiff and the Missouri Subclass have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

**BB.   Claims Brought on Behalf of the Montana Subclass**

<div align="center">

**COUNT I**
**VIOLATION OF MONTANA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION ACT OF 1973**
**(MONT. CODE ANN. § 30-14-101, *ET SEQ.*)**

</div>

1144. Plaintiff Kotab Holdings LLC ("Plaintiff," for purposes of all Montana Subclass Counts) incorporates by reference all preceding allegations as though fully set forth herein.

1145. This claim is brought only on behalf of the Montana Subclass.

1146. Volkswagen, Plaintiff and the Montana Subclass are "persons" within the meaning of MONT. CODE ANN. § 30-14-102(6).

1147. Montana Subclass Members are "consumer[s]" under MONT. CODE ANN. § 30-14-102(1).

1148. The sale or lease of the Affected Vehicles to Montana Subclass Members occurred within "trade and commerce" within the meaning of MONT. CODE ANN. § 30-14-102(8), and Volkswagen committed deceptive and unfair acts in the conduct of "trade and commerce" as defined in that statutory section.

1149. The Montana Unfair Trade Practices and Consumer Protection Act ("Montana CPA") makes unlawful any "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." MONT. CODE ANN. § 30-14-103. By fraudulently installing the "defeat device" to make it appear that its CleanDiesel engine systems complied with EPA regulations, Volkswagen engaged in unfair and deceptive acts or practices in violation of the Montana CPA.

<div align="center">-298-</div>

1150. In the course of its business, Volkswagen installed the "defeat device" and concealed that its CleanDiesel systems failed EPA regulations as described herein and otherwise engaged in activities with a tendency or capacity to deceive. Volkswagen also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of Affected Vehicles.

1151. Volkswagen has known of its use of the "defeat device" and the true nature of its CleanDiesel engine system for at least six years, but concealed all of that information until recently.

1152. Volkswagen was also aware that it valued profits over environmental cleanliness, efficiency, and lawfulness, and that it was manufacturing, selling and distributing vehicles throughout the United States that did not comply with EPA regulations.  Volkswagen concealed this information as well.

1153. By failing to disclose and by actively concealing the "defeat device" and the true cleanliness and performance of the CleanDiesel engine system, by marketing its vehicles as safe, reliable, environmentally clean, efficient, and of high quality, and by presenting itself as a reputable manufacturer that valued safety, environmental cleanliness and efficiency, and stood behind its vehicles after they were sold, Volkswagen engaged in unfair and deceptive business practices in violation of the Montana CPA.

1154. In the course of Volkswagen's business, it willfully failed to disclose and actively concealed the use of the "defeat device" and true cleanliness and efficiency of the CleanDiesel engine system and serious defects discussed above.  Volkswagen compounded the deception by repeatedly asserting that the Affected Vehicles were safe, reliable, environmentally clean, efficient, and of high quality, and by claiming to

be a reputable manufacturer that valued safety, environmental cleanliness and efficiency, and stood behind its vehicles once they are on the road.

1155. Volkswagen's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff, about the true cleanliness and efficiency of the CleanDiesel engine system, the quality of the Volkswagen and Audi brands, the devaluing of environmental cleanliness and integrity at Volkswagen, and the true value of the Affected Vehicles.

1156. Volkswagen intentionally and knowingly misrepresented material facts regarding the Affected Vehicles and the Volkswagen and Audi brands with an intent to mislead Plaintiff and the Montana Subclass.

1157. Volkswagen knew or should have known that its conduct violated the Montana CPA.

1158. As alleged above, Volkswagen made material statements about the safety, cleanliness, efficiency and reliability of the Affected Vehicles that were either false or misleading.

1159. Volkswagen owed Plaintiffs a duty to disclose the true safety, cleanliness, efficiency and reliability of the Affected Vehicles and the devaluing of environmental cleanliness and integrity at Volkswagen, because Volkswagen:

    a.    Possessed exclusive knowledge that it valued profits over environmental cleanliness, efficiency, and lawfulness, and that it was manufacturing, selling and distributing vehicles throughout the United States that did not comply with EPA regulations;

    b.    Intentionally concealed the foregoing from Plaintiffs; and/or

    c.    Made incomplete representations about the safety, cleanliness, efficiency and reliability of the Affected Vehicles generally, and the use of the "defeat device" and true nature of the CleanDiesel engine system in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

1160. Because Volkswagen fraudulently concealed the "defeat device" and the true cleanliness and performance of the CleanDiesel engine system, resulting in a raft of negative publicity once the use of the "defeat device" and true characteristics of the CleanDiesel engine system finally began to be disclosed, the value of the Affected Vehicles has greatly diminished.  In light of the stigma attached to those vehicles by Volkswagen's conduct, they are now worth significantly less than they otherwise would be.

1161. Volkswagen's fraudulent use of the "defeat device" and its concealment of the true characteristics of the CleanDiesel engine system were material to Plaintiff and the Montana Subclass.  A vehicle made by a reputable manufacturer of environmentally friendly vehicles is worth more than an otherwise comparable vehicle made by a disreputable and dishonest manufacturer of polluting vehicles that conceals the amount its cars pollutes rather than make environmentally friendly vehicles.

1162. Plaintiff and the Montana Subclass suffered ascertainable loss caused by Volkswagen's misrepresentations and its concealment of and failure to disclose material information.  Class members who purchased Affected Vehicles either would have paid less for their vehicles or would not have purchased or leased them at all.

1163. Volkswagen had an ongoing duty to all Volkswagen and Audi customers to refrain from unfair and deceptive acts or practices under the Montana CPA.  All owners of Affected Vehicles suffered ascertainable loss in the form of the diminished value of their vehicles as a result of Volkswagen's deceptive and unfair acts and practices made in the course of Volkswagen's business.

1164. Volkswagen's violations present a continuing risk to Plaintiffs as well as to the general public.  Volkswagen's unlawful acts and practices complained of herein affect the public interest.

010549-11  816608 V1

1165. As a direct and proximate result of Volkswagen's violations of the Montana CPA, Plaintiffs and the Montana Subclass have suffered injury-in-fact and/or actual damage.

1166. Because the Volkswagen's unlawful methods, acts, and practices have caused Montana Subclass Members to suffer an ascertainable loss of money and property, the Montana Subclass seeks from Volkswagen actual damages or $500, whichever is greater, discretionary treble damages, reasonable attorneys' fees, an order enjoining Volkswagen's unfair, unlawful, and/or deceptive practices, and any other relief the Court considers necessary or proper, under MONT. CODE ANN. § 30-14-133.

## COUNT II
## FRAUD BY CONCEALMENT

1167. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1168. This claim is brought on behalf of the Montana Subclass.

1169. Volkswagen intentionally concealed and suppressed material facts concerning the quality of the Affected Vehicles. As alleged in this Complaint, notwithstanding references in the very model names of the subject vehicles as "Clean Diesel," or to their engines as "TDI Clean Diesel" engines, Volkswagen engaged in a secret scheme to evade federal and state vehicle emissions standards by installing software designed to conceal its vehicles' emissions of the pollutant nitrogen oxide, which contributes to the creation of ozone and smog. The software installed on the vehicles at issue was designed nefariously to kick-in during emissions certification testing, such that the vehicles would show far lower emissions than when actually operating on the road. The result was what Volkswagen intended: vehicles passed emissions certifications by way of deliberately induced false readings. Reportedly, Volkswagen's deliberate, secret scheme resulted in noxious emissions from these vehicles at up to 40 times applicable standards.

-302-

1170. Plaintiff and Montana Subclass members reasonably relied upon Volkswagen's false representations.  They had no way of knowing that Volkswagen's representations were false and gravely misleading.  As alleged herein, Volkswagen employed extremely sophisticated methods of deception.  Plaintiff and Montana Subclass members did not, and could not, unravel Volkswagen's deception on their own.

1171. Volkswagen concealed and suppressed material facts concerning what is evidently the true culture of Volkswagen—one characterized by an emphasis on profits and sales above compliance with federal and state clean air laws, and emissions regulations that are meant to protect the public and consumers.  It also emphasized profits and sales over the trust that Plaintiff and Montana Subclass members placed in its representations.  As one customer, Priya Shah, put it in a quotation cited by the *Los Angeles Times* in a September 18, 2015 article, "It's just a blatant disregard and intentional manipulation of the system.  That's just a whole other level of not only lying to the government, but also lying to your consumer.  People buy diesel cars from Volkswagen because they feel they are clean diesel cars."  In the words of Ms. Shah, which no doubt reflect the sentiments of all other CleanDiesel vehicle buyers, "I don't want to be spewing noxious gases into the environment."

1172. Necessarily, Volkswagen also took steps to ensure that its employees did not reveal the details of its scheme to regulators or consumers, including Plaintiff and Montana Subclass members.  Volkswagen did so in order to boost the reputations of its vehicles and to falsely assure purchasers and lessors of its vehicles, including previously owned vehicles, that Volkswagen is a reputable manufacturer that complies with applicable law, including federal and state clean air laws and emissions regulations, and that its vehicles likewise comply with applicable law and regulations.  Volkswagen's false representations were material to consumers, both because they concerned the quality of the Affected Vehicles, including their compliance with

-303-

applicable federal and state laws and regulations regarding clean air and emissions,
and also because the representations played a significant role in the value of the
vehicles.  As Volkswagen well knew, its customers, including Plaintiff and Montana
Subclass members, highly valued that the vehicles they were purchasing or leasing
were *clean* diesel cars, and they paid accordingly.

1173.  Volkswagen had a duty to disclose its emissions scheme because
knowledge of the scheme and its details were known and/or accessible only to
Volkswagen, because Volkswagen had exclusive knowledge as to implementation and
maintenance of its scheme, and because Volkswagen knew the facts were not known
to or reasonably discoverable by Plaintiff or Montana Subclass members.
Volkswagen also had a duty to disclose because it made general affirmative
representations about the qualities of its vehicles with respect to emissions standards,
starting with references to them as *clean* diesel cars, or cars with *clean* diesel engines,
which were misleading, deceptive, and incomplete without the disclosure of the
additional facts set forth above regarding its emissions scheme, the actual emissions of
its vehicles, its actual philosophy with respect to compliance with federal and state
clean air laws and emissions regulations, and its actual practices with respect to the
vehicles at issue.  Having volunteered to provide information to Plaintiffs,
Volkswagen had the duty to disclose not just the partial truth, but the entire truth.
These omitted and concealed facts were material because they directly impact the
value of the Affected Vehicles purchased or leased by Plaintiff and Montana Subclass
members.  Whether a manufacturer's products comply with federal and state clean air
laws and emissions regulations, and whether that manufacturer tells the truth with
respect to such compliance or non-compliance, are material concerns to a consumer,
including with respect to the emissions certification testing their vehicles must pass.
Volkswagen represented to Plaintiff and Montana Subclass members that they were

purchasing *clean* diesel vehicles, and certification testing appeared to confirm this—except that, secretly, Volkswagen had subverted the testing process thoroughly.

1174. Volkswagen actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Volkswagen money, and it did so at the expense of Plaintiff and Montana Subclass members.

1175. On information and belief, Volkswagen has still not made full and adequate disclosures, and continues to defraud Plaintiff and Montana Subclass members by concealing material information regarding the emissions qualities of its vehicles and its emissions scheme.

1176. Plaintiff and Montana Subclass members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly "clean" diesel cars manufactured by Volkswagen, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them.  Plaintiff's and Montana Subclass Members' actions were justified.  Volkswagen was in exclusive control of the material facts, and such facts were not known to the public, Plaintiff, or Montana Subclass members.

1177. Because of the concealment and/or suppression of the facts, Plaintiff and Montana Subclass members have sustained damage because they own vehicles that are diminished in value as a result of Volkswagen's concealment of the true quality and quantity of those vehicles' emissions and Volkswagen's failure to timely disclose the actual emissions qualities and quantities of hundreds of thousands of Volkswagen- and Audi-branded vehicles and the serious issues engendered by Volkswagen's corporate policies.  Had Plaintiff and Montana Subclass members been aware of Volkswagen's

emissions scheme, and the company's callous disregard for compliance with applicable federal and state laws and regulations, Plaintiff and Montana Subclass members who purchased or leased new or previously owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

1178. The value of Plaintiff's and Montana Subclass Members' vehicles has diminished as a result of Volkswagen's fraudulent concealment of its emissions scheme, which has greatly tarnished the Volkswagen and Audi brand names attached to Plaintiff's and Montana Subclass members' vehicles and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.  In addition, Class members are entitled to damages for loss of use, costs of additional fuel, costs of unused warranties, and other damages to be proved at trial.

1179. Accordingly, Volkswagen is liable to Plaintiff and Montana Subclass members for damages in an amount to be proven at trial.

1180. Volkswagen's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and Montana Subclass members' rights and the representations that Volkswagen made to them, in order to enrich Volkswagen.  To the extent permitted under applicable law, Volkswagen's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

<div align="center">

**COUNT III**
**BREACH OF CONTRACT**
**(BASED ON MONTANA LAW)**

</div>

1181. Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

1182. Plaintiff brings this Count on behalf of new vehicle or certified pre-owned vehicle purchasers in the Montana Subclass.

<div align="center">-306-</div>

1183. Volkswagen's misrepresentations and omissions alleged herein, including Volkswagen's failure to disclose the existence of the CleanDiesel engine system's defect and/or defective design as alleged herein, caused Plaintiff and the other Montana Subclass members to make their purchases or leases of their Affected Vehicles.  Absent those misrepresentations and omissions, Plaintiff and the other Montana Subclass members would not have purchased or leased these Affected Vehicles, would not have purchased or leased these Affected Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain the CleanDiesel engine system and which were not marketed as including such a system.  Accordingly, Plaintiff and the other Montana Subclass members overpaid for their Affected Vehicles and did not receive the benefit of their bargain.

1184. Each and every sale or lease of an Affected Vehicle by an authorized Volkswagen dealer constitutes a contract between Volkswagen and the purchaser or lessee.  Volkswagen breached these contracts by selling or leasing Plaintiff and the other Montana Subclass members defective Affected Vehicles and by misrepresenting or failing to disclose the existence of the CleanDiesel engine system's defect and/or defective design, including information known to Volkswagen rendering each Affected Vehicle non EPA-compliant, and thus less valuable, than vehicles not equipped with a CleanDiesel engine system.

1185. As a direct and proximate result of Volkswagen's breach of contract, Plaintiff and the Montana Subclass have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

-307-

**CC.   Claims Brought on Behalf of the Nebraska Subclass**

<div align="center">

**COUNT I**
**VIOLATION OF THE NEBRASKA CONSUMER PROTECTION ACT**
**(NEB. REV. STAT. § 59-1601, *ET SEQ.*)**

</div>

1186. Plaintiff Alan Branting ("Plaintiff," for purposes of all Nebraska Subclass Counts) incorporates by reference all preceding allegations as though fully set forth herein.

1187. This claim is brought only on behalf of the Nebraska Subclass.

1188. Volkswagen, Plaintiffs and Nebraska Class Members are "person[s]" under the Nebraska Consumer Protection Act ("Nebraska CPA"), NEB. REV. STAT. § 59-1601(1).

1189. Volkswagen's actions as set forth herein occurred in the conduct of trade or commerce as defined under NEB. REV. STAT. § 59-1601(2).

1190. The Nebraska CPA prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." NEB. REV. STAT. § 59-1602. The conduct Volkswagen as set forth herein constitutes unfair or deceptive acts or practices.

1191. In the course of its business, Volkswagen installed the "defeat device" and concealed that its CleanDiesel systems failed EPA regulations as described herein and otherwise engaged in activities with a tendency or capacity to deceive. Volkswagen also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of Affected Vehicles.

1192. Volkswagen has known of its use of the "defeat device" and the true nature of its CleanDiesel engine system for at least six years, but concealed all of that information until recently.

1193. Volkswagen was also aware that it valued profits over environmental cleanliness, efficiency, and lawfulness, and that it was manufacturing, selling and

<div align="center">-308-</div>

distributing vehicles throughout the United States that did not comply with EPA regulations. Volkswagen concealed this information as well.

1194. By failing to disclose and by actively concealing the "defeat device" and the true cleanliness and performance of the CleanDiesel engine system, by marketing its vehicles as safe, reliable, environmentally clean, efficient, and of high quality, and by presenting itself as a reputable manufacturer that valued safety, environmental cleanliness and efficiency, and stood behind its vehicles after they were sold, Volkswagen engaged in unfair and deceptive business practices in violation of the Nebraska CPA.

1195. In the course of Volkswagen's business, it willfully failed to disclose and actively concealed the use of the "defeat device" and true cleanliness and efficiency of the CleanDiesel engine system and serious defects discussed above. Volkswagen compounded the deception by repeatedly asserting that the Affected Vehicles were safe, reliable, environmentally clean, efficient, and of high quality, and by claiming to be a reputable manufacturer that valued safety, environmental cleanliness and efficiency, and stood behind its vehicles once they are on the road.

1196. Volkswagen's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff, about the true cleanliness and efficiency of the CleanDiesel engine system, the quality of the Volkswagen and Audi brands, the devaluing of environmental cleanliness and integrity at Volkswagen, and the true value of the Affected Vehicles.

1197. Volkswagen intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with an intent to mislead Plaintiff and the Nebraska Class.

1198. Volkswagen knew or should have known that its conduct violated the Nebraska CPA.

010549-11 816608 V1

1199. As alleged above, Volkswagen made material statements about the safety, cleanliness, efficiency and reliability of the Affected Vehicles and the Volkswagen and Audi brands that were either false or misleading.

1200. Volkswagen owed Plaintiffs a duty to disclose the true safety, cleanliness, efficiency and reliability of the Affected Vehicles and the devaluing of environmental cleanliness and integrity at Volkswagen, because Volkswagen:

a. Possessed exclusive knowledge that it valued profits over environmental cleanliness, efficiency, and lawfulness, and that it was manufacturing, selling and distributing vehicles throughout the United States that did not comply with EPA regulations;

b. Intentionally concealed the foregoing from Plaintiffs; and/or

c. Made incomplete representations about the safety, cleanliness, efficiency and reliability of the Affected Vehicles generally, and the use of the "defeat device" and true nature of the CleanDiesel engine system in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

1201. Because Volkswagen fraudulently concealed the "defeat device" and the true cleanliness and performance of the CleanDiesel engine system, resulting in a raft of negative publicity once the use of the "defeat device" and true characteristics of the CleanDiesel engine system finally began to be disclosed, the value of the Affected Vehicles has greatly diminished.  In light of the stigma attached to those vehicles by Volkswagen's conduct, they are now worth significantly less than they otherwise would be.

1202. Volkswagen's fraudulent use of the "defeat device" and its concealment of the true characteristics of the CleanDiesel engine system were material to Plaintiff and the Nebraska Subclass.  A vehicle made by a reputable manufacturer of environmentally friendly vehicles is worth more than an otherwise comparable vehicle made by a disreputable and dishonest manufacturer of polluting vehicles that conceals the amount its cars pollutes rather than make environmentally friendly vehicles.

-310-

1203. Plaintiff and the Nebraska Subclass suffered ascertainable loss caused by Volkswagen's misrepresentations and its concealment of and failure to disclose material information. Class members who purchased Affected Vehicles either would have paid less for their vehicles or would not have purchased or leased them at all.

1204. Volkswagen had an ongoing duty to all Volkswagen and Audi customers to refrain from unfair and deceptive acts or practices under the Nebraska CPA. All owners of Affected Vehicles suffered ascertainable loss in the form of the diminished value of their vehicles as a result of Volkswagen's deceptive and unfair acts and practices made in the course of Volkswagen's business.

1205. Volkswagen's violations present a continuing risk to Plaintiffs as well as to the general public. Volkswagen's unlawful acts and practices complained of herein affect the public interest.

1206. As a direct and proximate result of Volkswagen's violations of the Nebraska CPA, Plaintiff and the Nebraska Subclass have suffered injury-in-fact and/or actual damage.

1207. Because Volkswagen's conduct caused injury to Nebraska Subclass Members' property through violations of the Nebraska CPA, the Nebraska Subclass seeks recovery of actual damages, as well as enhanced damages up to $1,000, an order enjoining Volkswagen's unfair or deceptive acts and practices, costs of Court, reasonable attorneys' fees, and any other just and proper relief available under NEB. REV. STAT. § 59-1609.

## COUNT II
## FRAUD BY CONCEALMENT

1208. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1209. This claim is brought on behalf of the Nebraska Subclass.

1210. Volkswagen intentionally concealed and suppressed material facts concerning the quality of the Affected Vehicles. As alleged in this Complaint,

-311-

notwithstanding references in the very model names of the subject vehicles as "Clean Diesel," or to their engines as "TDI Clean Diesel" engines, Volkswagen engaged in a secret scheme to evade federal and state vehicle emissions standards by installing software designed to conceal its vehicles' emissions of the pollutant nitrogen oxide, which contributes to the creation of ozone and smog. The software installed on the vehicles at issue was designed nefariously to kick-in during emissions certification testing, such that the vehicles would show far lower emissions than when actually operating on the road. The result was what Volkswagen intended: vehicles passed emissions certifications by way of deliberately induced false readings. Reportedly, Volkswagen's deliberate, secret scheme resulted in noxious emissions from these vehicles at up to 40 times applicable standards.

1211. Plaintiff and Nebraska Subclass members reasonably relied upon Volkswagen's false representations. They had no way of knowing that Volkswagen's representations were false and gravely misleading. As alleged herein, Volkswagen employed extremely sophisticated methods of deception. Plaintiff and Nebraska Subclass members did not, and could not, unravel Volkswagen's deception on their own.

1212. Volkswagen concealed and suppressed material facts concerning what is evidently the true culture of Volkswagen—one characterized by an emphasis on profits and sales above compliance with federal and state clean air laws, and emissions regulations that are meant to protect the public and consumers. It also emphasized profits and sales over the trust that Plaintiff and Nebraska Subclass members placed in its representations. As one customer, Priya Shah, put it in a quotation cited by the *Los Angeles Times* in a September 18, 2015 article, "It's just a blatant disregard and intentional manipulation of the system. That's just a whole other level of not only lying to the government, but also lying to your consumer. People buy diesel cars from Volkswagen because they feel they are clean diesel cars." In the words of Ms. Shah,

-312-

which no doubt reflect the sentiments of all other CleanDiesel vehicle buyers, "I don't want to be spewing noxious gases into the environment."

1213. Necessarily, Volkswagen also took steps to ensure that its employees did not reveal the details of its scheme to regulators or consumers, including Plaintiff and Nebraska Subclass members.  Volkswagen did so in order to boost the reputations of its vehicles and to falsely assure purchasers and lessors of its vehicles, including previously owned vehicles, that Volkswagen is a reputable manufacturer that complies with applicable law, including federal and state clean air laws and emissions regulations, and that its vehicles likewise comply with applicable law and regulations. Volkswagen's false representations were material to consumers, both because they concerned the quality of the Affected Vehicles, including their compliance with applicable federal and state laws and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles.  As Volkswagen well knew, its customers, including Plaintiff and Nebraska Subclass members, highly valued that the vehicles they were purchasing or leasing were *clean* diesel cars, and they paid accordingly.

1214. Volkswagen had a duty to disclose its emissions scheme because knowledge of the scheme and its details were known and/or accessible only to Volkswagen, because Volkswagen had exclusive knowledge as to implementation and maintenance of its scheme, and because Volkswagen knew the facts were not known to or reasonably discoverable by Plaintiff or Nebraska Subclass members. Volkswagen also had a duty to disclose because it made general affirmative representations about the qualities of its vehicles with respect to emissions standards, starting with references to them as *clean* diesel cars, or cars with *clean* diesel engines, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding its emissions scheme, the actual emissions of its vehicles, its actual philosophy with respect to compliance with federal and state

-313-

clean air laws and emissions regulations, and its actual practices with respect to the vehicles at issue.  Having volunteered to provide information to Plaintiffs, Volkswagen had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiff and Nebraska Subclass members.  Whether a manufacturer's products comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certification testing their vehicles must pass.  Volkswagen represented to Plaintiff and Nebraska Subclass members that they were purchasing *clean* diesel vehicles, and certification testing appeared to confirm this— except that, secretly, Volkswagen had subverted the testing process thoroughly.

1215. Volkswagen actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Volkswagen money, and it did so at the expense of Plaintiff and Nebraska Subclass members.

1216. On information and belief, Volkswagen has still not made full and adequate disclosures, and continues to defraud Plaintiff and Nebraska Subclass members by concealing material information regarding the emissions qualities of its vehicles and its emissions scheme.

1217. Plaintiff and Nebraska Subclass members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly "clean" diesel cars manufactured by Volkswagen, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them.  Plaintiff's and

-314-

Nebraska Subclass Members' actions were justified.  Volkswagen was in exclusive control of the material facts, and such facts were not known to the public, Plaintiff, or Nebraska Subclass members.

1218. Because of the concealment and/or suppression of the facts, Plaintiff and Nebraska Subclass members have sustained damage because they own vehicles that are diminished in value as a result of Volkswagen's concealment of the true quality and quantity of those vehicles' emissions and Volkswagen's failure to timely disclose the actual emissions qualities and quantities of hundreds of thousands of Volkswagen- and Audi-branded vehicles and the serious issues engendered by Volkswagen's corporate policies.  Had Plaintiff and Nebraska Subclass members been aware of Volkswagen's emissions scheme, and the company's callous disregard for compliance with applicable federal and state laws and regulations, Plaintiff and Nebraska Subclass members who purchased or leased new or previously owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

1219. The value of Plaintiff's and Nebraska Subclass Members' vehicles has diminished as a result of Volkswagen's fraudulent concealment of its emissions scheme, which has greatly tarnished the Volkswagen and Audi brand names attached to Plaintiff's and Nebraska Subclass members' vehicles and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.  In addition, Class members are entitled to damages for loss of use, costs of additional fuel, costs of unused warranties, and other damages to be proved at trial.

1220. Accordingly, Volkswagen is liable to Plaintiff and Nebraska Subclass members for damages in an amount to be proven at trial.

1221. Volkswagen's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and Nebraska Subclass members' rights and the representations that Volkswagen made to

them, in order to enrich Volkswagen.  To the extent permitted under applicable law, Volkswagen's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

### COUNT III
### BREACH OF CONTRACT
### (BASED ON NEBRASKA LAW)

1222.  Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

1223.  Plaintiff brings this Count on behalf of new vehicle or certified pre-owned vehicle purchasers in the Nebraska Subclass.

1224.  Volkswagen's misrepresentations and omissions alleged herein, including Volkswagen's failure to disclose the existence of the CleanDiesel engine system's defect and/or defective design as alleged herein, caused Plaintiff and the other Nebraska Subclass members to make their purchases or leases of their Affected Vehicles.  Absent those misrepresentations and omissions, Plaintiff and the other Nebraska Subclass members would not have purchased or leased these Affected Vehicles, would not have purchased or leased these Affected Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain the CleanDiesel engine system and which were not marketed as including such a system.  Accordingly, Plaintiff and the other Nebraska Subclass members overpaid for their Affected Vehicles and did not receive the benefit of their bargain.

1225.  Each and every sale or lease of an Affected Vehicle by an authorized Volkswagen dealer constitutes a contract between Volkswagen and the purchaser or lessee.  Volkswagen breached these contracts by selling or leasing Plaintiff and the other Nebraska Subclass members defective Affected Vehicles and by misrepresenting or failing to disclose the existence of the CleanDiesel engine system's defect and/or

-316-

defective design, including information known to Volkswagen rendering each Affected Vehicle non EPA-compliant, and thus less valuable, than vehicles not equipped with a CleanDiesel engine system.

1226. As a direct and proximate result of Volkswagen's breach of contract, Plaintiff and the Nebraska Subclass have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

**DD.   Claims Brought on Behalf of the Nevada Subclass**

<div align="center">

**COUNT I**
**VIOLATION OF THE NEVADA DECEPTIVE TRADE PRACTICES ACT**
**(NEV. REV. STAT. § 598.0903, *et seq.*)**

</div>

1227. Plaintiff Chad Ramos ("Plaintiff," for purposes of all Nevada Subclass Counts) incorporates by reference all preceding allegations as though fully set forth herein.

1228. This claim is brought only on behalf of the Nevada Subclass.

1229. The Nevada Deceptive Trade Practices Act ("Nevada DTPA"), NEV. REV. STAT. § 598.0903, *et seq.* prohibits deceptive trade practices. NEV. REV. STAT. § 598.0915 provides that a person engages in a "deceptive trade practice" if, in the course of business or occupation, the person: "5. Knowingly makes a false representation as to the characteristics, ingredients, uses, benefits, alterations or quantities of goods or services for sale or lease or a false representation as to the sponsorship, approval, status, affiliation or connection of a person therewith"; "7. Represents that goods or services for sale or lease are of a particular standard, quality or grade, or that such goods are of a particular style or model, if he or she knows or should know that they are of another standard, quality, grade, style or model"; "9. Advertises goods or services with intent not to sell or lease them as advertised"; or "15. Knowingly makes any other false representation in a transaction."

<div align="center">

-317-

</div>

1230. Volkswagen engaged in deceptive trade practices that violated the Nevada DTPA, including: knowingly representing that Affected Vehicles have uses and benefits which they do not have; representing that Affected Vehicles are of a particular standard, quality, and grade when they are not; advertising Affected Vehicles with the intent not to sell or lease them as advertised; representing that the subject of a transaction involving Affected Vehicles has been supplied in accordance with a previous representation when it has not; and knowingly making other false representations in a transaction.

1231. Volkswagen's actions as set forth above occurred in the conduct of trade or commerce.

1232. In the course of its business, Volkswagen installed the "defeat device" and concealed that its CleanDiesel systems failed EPA regulations as described herein and otherwise engaged in activities with a tendency or capacity to deceive. Volkswagen also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of Affected Vehicles.

1233. Volkswagen has known of its use of the "defeat device" and the true nature of its CleanDiesel engine system for at least six years, but concealed all of that information until recently.

1234. Volkswagen was also aware that it valued profits over environmental cleanliness, efficiency, and lawfulness, and that it was manufacturing, selling and distributing vehicles throughout the United States that did not comply with EPA regulations. Volkswagen concealed this information as well.

1235. By failing to disclose and by actively concealing the "defeat device" and the true cleanliness and performance of the CleanDiesel engine system, by marketing its vehicles as safe, reliable, environmentally clean, efficient, and of high quality, and

-318-

by presenting itself as a reputable manufacturer that valued safety, environmental cleanliness and efficiency, and stood behind its vehicles after they were sold, Volkswagen engaged in deceptive business practices in violation of the Nevada DTPA.

1236. In the course of Volkswagen's business, it willfully failed to disclose and actively concealed the use of the "defeat device" and true cleanliness and efficiency of the CleanDiesel engine system and serious defects discussed above. Volkswagen compounded the deception by repeatedly asserting that the Affected Vehicles were safe, reliable, environmentally clean, efficient, and of high quality, and by claiming to be a reputable manufacturer that valued safety, environmental cleanliness and efficiency, and stood behind its vehicles once they are on the road.

1237. Volkswagen's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff, about the true cleanliness and efficiency of the CleanDiesel engine system, the quality of the Volkswagen and Audi brands, the devaluing of environmental cleanliness and integrity at Volkswagen, and the true value of the Affected Vehicles.

1238. Volkswagen intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with an intent to mislead Plaintiff and the Nevada Subclass.

1239. Volkswagen knew or should have known that its conduct violated the Nevada DTPA.

1240. As alleged above, Volkswagen made material statements about the safety, cleanliness, efficiency and reliability of the Affected Vehicles and the Volkswagen and Audi brands that were either false or misleading.

1241. Volkswagen owed Plaintiffs a duty to disclose the true safety, cleanliness, efficiency and reliability of the Affected Vehicles and the devaluing of environmental cleanliness and integrity at Volkswagen, because Volkswagen:

-319-

a.  Possessed exclusive knowledge that it valued profits over environmental cleanliness, efficiency, and lawfulness, and that it was manufacturing, selling and distributing vehicles throughout the United States that did not comply with EPA regulations;

b.  Intentionally concealed the foregoing from Plaintiffs; and/or

c.  Made incomplete representations about the safety, cleanliness, efficiency and reliability of the Affected Vehicles generally, and the use of the "defeat device" and true nature of the CleanDiesel engine system in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

1242. Because Volkswagen fraudulently concealed the "defeat device" and the true cleanliness and performance of the CleanDiesel engine system, resulting in a raft of negative publicity once the use of the "defeat device" and true characteristics of the CleanDiesel engine system finally began to be disclosed, the value of the Affected Vehicles has greatly diminished.  In light of the stigma attached to those vehicles by Volkswagen's conduct, they are now worth significantly less than they otherwise would be.

1243. Volkswagen's fraudulent use of the "defeat device" and its concealment of the true characteristics of the CleanDiesel engine system were material to Plaintiffs and the Nevada Subclass.  A vehicle made by a reputable manufacturer of environmentally friendly vehicles is worth more than an otherwise comparable vehicle made by a disreputable and dishonest manufacturer of polluting vehicles that conceals the amount its cars pollutes rather than make environmentally friendly vehicles.

1244. Plaintiffs and the Nevada Subclass suffered ascertainable loss caused by Volkswagen's misrepresentations and its concealment of and failure to disclose material information.

1245. Volkswagen had an ongoing duty to all Volkswagen and Audi customers to refrain from unfair and deceptive acts or practices under the Nevada DTPA.  All owners of Affected Vehicles suffered ascertainable loss in the form of the diminished

-320-

value of their vehicles as a result of Volkswagen's deceptive and unfair acts and practices that occurred in the course of Volkswagen's business.

1246. Volkswagen's violations present a continuing risk to Plaintiffs as well as to the general public.  Volkswagen's unlawful acts and practices complained of herein affect the public interest.

1247. As a direct and proximate result of Volkswagen's violations of the Nevada DTPA, Plaintiffs and the Nevada Subclass have suffered injury-in-fact and/or actual damage.

1248. Accordingly, Plaintiffs and the Nevada Subclass seek their actual damages, punitive damages, an order enjoining Volkswagen's deceptive acts or practices, costs of Court, attorney's fees, and all other appropriate and available remedies under the Nevada Deceptive Trade Practices Act.  NEV. REV. STAT. § 41.600.

## COUNT II
## FRAUD BY CONCEALMENT

1249. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1250. This claim is brought on behalf of the Nevada Subclass.

1251. Volkswagen intentionally concealed and suppressed material facts concerning the quality of the Affected Vehicles.  As alleged in this Complaint, notwithstanding references in the very model names of the subject vehicles as "Clean Diesel," or to their engines as "TDI Clean Diesel" engines, Volkswagen engaged in a secret scheme to evade federal and state vehicle emissions standards by installing software designed to conceal its vehicles' emissions of the pollutant nitrogen oxide, which contributes to the creation of ozone and smog.  The software installed on the vehicles at issue was designed nefariously to kick-in during emissions certification testing, such that the vehicles would show far lower emissions than when actually operating on the road.  The result was what Volkswagen intended: vehicles passed emissions certifications by way of deliberately induced false readings.  Reportedly,

Volkswagen's deliberate, secret scheme resulted in noxious emissions from these vehicles at up to 40 times applicable standards.

1252. Plaintiffs and Class members reasonably relied upon Volkswagen's false representations. They had no way of knowing that Volkswagen's representations were false and gravely misleading. As alleged herein, Volkswagen employed extremely sophisticated methods of deception. Plaintiffs and Class members did not, and could not, unravel Volkswagen's deception on their own.

1253. Volkswagen concealed and suppressed material facts concerning what is evidently the true culture of Volkswagen—one characterized by an emphasis on profits and sales above compliance with federal and state clean air laws, and emissions regulations that are meant to protect the public and consumers. It also emphasized profits and sales over the trust that Plaintiffs and Class members placed in its representations. As one customer, Priya Shah, put it in a quotation cited by the *Los Angeles Times* in a September 18, 2015 article, "It's just a blatant disregard and intentional manipulation of the system. That's just a whole other level of not only lying to the government, but also lying to your consumer. People buy diesel cars from Volkswagen because they feel they are clean diesel cars." In the words of Ms. Shah, which no doubt reflect the sentiments of all other CleanDiesel vehicle buyers, "I don't want to be spewing noxious gases into the environment."

1254. Necessarily, Volkswagen also took steps to ensure that its employees did not reveal the details of its scheme to regulators or consumers, including Plaintiffs and Class members. Volkswagen did so in order to boost the reputations of its vehicles and to falsely assure purchasers and lessors of its vehicles, including previously owned vehicles, that Volkswagen is a reputable manufacturer that complies with applicable law, including federal and state clean air laws and emissions regulations, and that its vehicles likewise comply with applicable law and regulations. Volkswagen's false representations were material to consumers, both because they concerned the quality

-322-

of the Affected Vehicles, including their compliance with applicable federal and state laws and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles.  As Volkswagen well knew, its customers, including Plaintiffs and Class members, highly valued that the vehicles they were purchasing or leasing were *clean* diesel cars, and they paid accordingly.

1255. Volkswagen had a duty to disclose its emissions scheme because knowledge of the scheme and its details were known and/or accessible only to Volkswagen, because Volkswagen had exclusive knowledge as to implementation and maintenance of its scheme, and because Volkswagen knew the facts were not known to or reasonably discoverable by Plaintiffs or Class members.  Volkswagen also had a duty to disclose because it made general affirmative representations about the qualities of its vehicles with respect to emissions standards, starting with references to them as *clean* diesel cars, or cars with *clean* diesel engines, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding its emissions scheme, the actual emissions of its vehicles, its actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and its actual practices with respect to the vehicles at issue.  Having volunteered to provide information to Plaintiffs, Volkswagen had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiffs and Class members.  Whether a manufacturer's products comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certification testing their vehicles must pass.  Volkswagen represented to Plaintiffs and Class members that they were purchasing *clean* diesel vehicles, and certification testing

-323-

appeared to confirm this—except that, secretly, Volkswagen had subverted the testing process thoroughly.

1256. Volkswagen actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Volkswagen money, and it did so at the expense of Plaintiffs and Class members.

1257. On information and belief, Volkswagen has still not made full and adequate disclosures, and continues to defraud Plaintiffs and Class members by concealing material information regarding the emission qualities of its vehicles and its emissions scheme.

1258. Plaintiffs and Class members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly "clean" diesel cars manufactured by Volkswagen, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them.  Plaintiffs' and Class Members' actions were justified.  Volkswagen was in exclusive control of the material facts, and such facts were not known to the public, Plaintiffs, or Class members.

1259. Because of the concealment and/or suppression of the facts, Plaintiffs and Class members have sustained damage because they own vehicles that are diminished in value as a result of Volkswagen's concealment of the true quality and quantity of those vehicles' emissions and Volkswagen's failure to timely disclose the actual emission qualities and quantities of hundreds of thousands of Volkswagen- and Audi-branded vehicles and the serious issues engendered by Volkswagen's corporate policies.  Had Plaintiffs and Class members been aware of Volkswagen's emissions scheme, and the company's callous disregard for compliance with applicable federal

-324-

1 and state laws and regulations, Plaintiffs and Class members who purchased or leased

2 new or previously owned vehicles would have paid less for their vehicles or would not

3 have purchased or leased them at all.

4     1260. The value of Plaintiffs' and Class members' vehicles has diminished as a

5 result of Volkswagen's fraudulent concealment of its emissions scheme, which has

6 greatly tarnished the Volkswagen and Audi brand names attached to Plaintiffs' and

7 Class members' vehicles and made any reasonable consumer reluctant to purchase any

8 of the Affected Vehicles, let alone pay what otherwise would have been fair market

9 value for the vehicles. In addition, Class members are entitled to damages for loss of

10 use, costs of additional fuel, costs of unused warranties, and other damages to be

11 proved at trial.

12     1261. Accordingly, Volkswagen is liable to Plaintiffs and Class members for

13 damages in an amount to be proven at trial.

14     1262. Volkswagen's acts were done wantonly, maliciously, oppressively,

15 deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and Class

16 members' rights and the representations that Volkswagen made to them, in order to

17 enrich Volkswagen. To the extent permitted under applicable law, Volkswagen's

18 conduct warrants an assessment of punitive damages in an amount sufficient to deter

19 such conduct in the future, which amount is to be determined according to proof.

20 **COUNT III**
**BREACH OF CONTRACT**
21 **(BASED ON NEVADA LAW)**

22     1263. Plaintiff incorporates by reference all preceding allegations as though

23 fully set forth herein.

24     1264. Plaintiff brings this Count on behalf of new vehicle or certified pre-

25 owned vehicle purchasers in the Nevada Subclass.

26     1265. Volkswagen's misrepresentations and omissions alleged herein, including

27 Volkswagen's failure to disclose the existence of the CleanDiesel engine system's

28

-325-

defect and/or defective design as alleged herein, caused Plaintiff and the other Nevada Subclass members to make their purchases or leases of their Affected Vehicles. Absent those misrepresentations and omissions, Plaintiff and the other Nevada Subclass members would not have purchased or leased these Affected Vehicles, would not have purchased or leased these Affected Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain the CleanDiesel engine system and which were not marketed as including such a system. Accordingly, Plaintiff and the other Nevada Subclass members overpaid for their Affected Vehicles and did not receive the benefit of their bargain.

1266. Each and every sale or lease of an Affected Vehicle by an authorized Volkswagen dealer constitutes a contract between Volkswagen and the purchaser or lessee. Volkswagen breached these contracts by selling or leasing Plaintiff and the other Nevada Subclass members defective Affected Vehicles and by misrepresenting or failing to disclose the existence of the CleanDiesel engine system's defect and/or defective design, including information known to Volkswagen, rendering each Affected Vehicle non EPA-compliant, and thus less valuable, than vehicles not equipped with a CleanDiesel engine system.

1267. As a direct and proximate result of Volkswagen's breach of contract, Plaintiff and the Nevada Subclass have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## EE. Claims on Behalf of the New Hampshire Subclass

### COUNT I
### VIOLATION OF N.H. CONSUMER PROTECTION ACT
### (N.H. REV. STAT. ANN. § 358-A:1, *et seq.*)

1268. Plaintiff Steven Bolduc ("Plaintiff," for purposes of all New Hampshire Subclass Counts) incorporates by reference all preceding allegations as though fully set forth herein.

-326-

1269. This claim is brought only on behalf of the New Hampshire Subclass.

1270. Plaintiffs, the New Hampshire Subclass, and Volkswagen are "persons" under the New Hampshire Consumer Protection Act ("New Hampshire CPA"), N.H. REV. STAT. § 358-A:1.

1271. Volkswagen's actions as set forth herein occurred in the conduct of trade or commerce as defined under N.H. REV. STAT. § 358-A:1.

1272. The New Hampshire CPA prohibits a person, in the conduct of any trade or commerce, from using "any unfair or deceptive act or practice," including "but … not limited to, the following: … (V) Representing that goods or services have … characteristics, … uses, benefits, or quantities that they do not have;" "(VII) Representing that goods or services are of a particular standard, quality, or grade, … if they are of another;" and "(IX) Advertising goods or services with intent not to sell them as advertised."  N.H. REV. STAT. § 358-A:2.

1273. Volkswagen participated in unfair or deceptive acts or practices that violated the New Hampshire CPA as described above and below.  By fraudulently installing the "defeat device" to make it appear that its CleanDiesel engine systems complied with EPA regulations, Volkswagen engaged in deceptive business practices prohibited by the CPA, including representing that Affected Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that Affected Vehicles are of a particular standard, quality, and grade when they are not; advertising Affected Vehicles with the intent not to sell or lease them as advertised; representing that the subject of a transaction involving Affected Vehicles has been supplied in accordance with a previous representation when it has not; and engaging in other unconscionable, false, misleading, or deceptive acts or practices in the conduct of trade or commerce.

1274. In the course of its business, Volkswagen installed the "defeat device" and concealed that its CleanDiesel systems failed EPA regulations as described herein

-327-

and otherwise engaged in activities with a tendency or capacity to deceive. Volkswagen also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of Affected Vehicles.

1275. Volkswagen has known of its use of the "defeat device" and the true nature of its CleanDiesel engine system for at least six years, but concealed all of that information until recently.

1276. Volkswagen was also aware that it valued profits over environmental cleanliness, efficiency, and lawfulness, and that it was manufacturing, selling and distributing vehicles throughout the United States that did not comply with EPA regulations.  Volkswagen concealed this information as well.

1277. By failing to disclose and by actively concealing the "defeat device" and the true cleanliness and performance of the CleanDiesel engine system, by marketing its vehicles as safe, reliable, environmentally clean, efficient, and of high quality, and by presenting itself as a reputable manufacturer that valued safety, environmental cleanliness and efficiency, and stood behind its vehicles after they were sold, Volkswagen engaged in unfair and deceptive business practices in violation of the New Hampshire CPA.

1278. In the course of Volkswagen's business, it willfully failed to disclose and actively concealed the use of the "defeat device" and true cleanliness and efficiency of the CleanDiesel engine system and serious defects discussed above.  Volkswagen compounded the deception by repeatedly asserting that the Affected Vehicles were safe, reliable, environmentally clean, efficient, and of high quality, and by claiming to be a reputable manufacturer that valued safety, environmental cleanliness and efficiency, and stood behind its vehicles once they are on the road.

-328-

1279. Volkswagen's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff, about the true cleanliness and efficiency of the CleanDiesel engine system, the quality of the Volkswagen and Audi brands, the devaluing of environmental cleanliness and integrity at Volkswagen, and the true value of the Affected Vehicles.

1280. Volkswagen intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with an intent to mislead Plaintiff and the New Hampshire Subclass.

1281. Volkswagen knew or should have known that its conduct violated the New Hampshire CPA.

1282. As alleged above, Volkswagen made material statements about the safety, cleanliness, efficiency and reliability of the Affected Vehicles and the Volkswagen and Audi brands that were either false or misleading.

1283. Volkswagen owed Plaintiffs a duty to disclose the true safety, cleanliness, efficiency and reliability of the Affected Vehicles and the devaluing of environmental cleanliness and integrity at Volkswagen, because Volkswagen:

    a.    Possessed exclusive knowledge that it valued profits over environmental cleanliness, efficiency, and lawfulness, and that it was manufacturing, selling and distributing vehicles throughout the United States that did not comply with EPA regulations;

    b.    Intentionally concealed the foregoing from Plaintiffs; and/or

    c.    Made incomplete representations about the safety, cleanliness, efficiency and reliability of the Affected Vehicles generally, and the use of the "defeat device" and true nature of the CleanDiesel engine system in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

1284. Because Volkswagen fraudulently concealed the "defeat device" and the true cleanliness and performance of the CleanDiesel engine system, resulting in a raft of negative publicity once the use of the "defeat device" and true characteristics of the

-329-

CleanDiesel engine system finally began to be disclosed, the value of the Affected Vehicles has greatly diminished.  In light of the stigma attached to those vehicles by Volkswagen's conduct, they are now worth significantly less than they otherwise would be.

1285.  Volkswagen's fraudulent use of the "defeat device" and its concealment of the true characteristics of the CleanDiesel engine system were material to Plaintiffs and the New Hampshire Subclass.  A vehicle made by a reputable manufacturer of environmentally friendly vehicles is worth more than an otherwise comparable vehicle made by a disreputable and dishonest manufacturer of polluting vehicles that conceals the amount its cars pollutes rather than make environmentally friendly vehicles.

1286.  Plaintiffs and the New Hampshire Subclass suffered ascertainable loss caused by Volkswagen's misrepresentations and its concealment of and failure to disclose material information.

1287.  Volkswagen had an ongoing duty to all Volkswagen and Audi customers to refrain from unfair and deceptive acts or practices under the New Hampshire CPA.  All owners of Affected Vehicles suffered ascertainable loss in the form of the diminished value of their vehicles as a result of Volkswagen's deceptive and unfair acts and practices that occurred in the course of Volkswagen's business.

1288.  Volkswagen's violations present a continuing risk to Plaintiffs as well as to the general public.  Volkswagen's unlawful acts and practices complained of herein affect the public interest.

1289.  As a direct and proximate result of Volkswagen's violations of the New Hampshire CPA, Plaintiffs and the New Hampshire Subclass have suffered injury-in-fact and/or actual damage.

1290.  Because Volkswagen's willful conduct caused injury to New Hampshire Subclass members' property through violations of the New Hampshire CPA, the New Hampshire Subclass seeks recovery of actual damages or $1,000, whichever is greater,

treble damages, costs and reasonable attorneys' fees, an order enjoining Volkswagen's unfair and/or deceptive acts and practices, and any other just and proper relief under N.H. REV. STAT. § 358-A:10.

<div align="center">

**COUNT II**
**FRAUD BY CONCEALMENT**

</div>

1291. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1292. This claim is brought on behalf of the New Hampshire Subclass.

1293. Volkswagen intentionally concealed and suppressed material facts concerning the quality of the Affected Vehicles.  As alleged in this Complaint, notwithstanding references in the very model names of the subject vehicles as "Clean Diesel," or to their engines as "TDI Clean Diesel" engines, Volkswagen engaged in a secret scheme to evade federal and state vehicle emissions standards by installing software designed to conceal its vehicles' emissions of the pollutant nitrogen oxide, which contributes to the creation of ozone and smog.  The software installed on the vehicles at issue was designed nefariously to kick-in during emissions certification testing, such that the vehicles would show far lower emissions than when actually operating on the road.  The result was what Volkswagen intended: vehicles passed emissions certifications by way of deliberately induced false readings.  Reportedly, Volkswagen's deliberate, secret scheme resulted in noxious emissions from these vehicles at up to 40 times applicable standards.

1294. Plaintiffs and Class members reasonably relied upon Volkswagen's false representations.  They had no way of knowing that Volkswagen's representations were false and gravely misleading.  As alleged herein, Volkswagen employed extremely sophisticated methods of deception.  Plaintiffs and Class members did not, and could not, unravel Volkswagen's deception on their own.

1295. Volkswagen concealed and suppressed material facts concerning what is evidently the true culture of Volkswagen—one characterized by an emphasis on

<div align="center">-331-</div>

profits and sales above compliance with federal and state clean air laws, and emissions regulations that are meant to protect the public and consumers.  It also emphasized profits and sales over the trust that Plaintiffs and Class members placed in its representations.  As one customer, Priya Shah, put it in a quotation cited by the *Los Angeles Times* in a September 18, 2015 article, "It's just a blatant disregard and intentional manipulation of the system.  That's just a whole other level of not only lying to the government, but also lying to your consumer.  People buy diesel cars from Volkswagen because they feel they are clean diesel cars."  In the words of Ms. Shah, which no doubt reflect the sentiments of all other CleanDiesel vehicle buyers, "I don't want to be spewing noxious gases into the environment."

1296.  Necessarily, Volkswagen also took steps to ensure that its employees did not reveal the details of its scheme to regulators or consumers, including Plaintiffs and Class members.  Volkswagen did so in order to boost the reputations of its vehicles and to falsely assure purchasers and lessors of its vehicles, including previously owned vehicles, that Volkswagen is a reputable manufacturer that complies with applicable law, including federal and state clean air laws and emissions regulations, and that its vehicles likewise comply with applicable laws and regulations.  Volkswagen's false representations were material to consumers, both because they concerned the quality of the Affected Vehicles, including their compliance with applicable federal and state laws and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles.  As Volkswagen well knew, its customers, including Plaintiffs and Class members, highly valued that the vehicles they were purchasing or leasing were *clean* diesel cars, and they paid accordingly.

1297.  Volkswagen had a duty to disclose its emissions scheme because knowledge of the scheme and its details were known and/or accessible only to Volkswagen, because Volkswagen had exclusive knowledge as to implementation and

-332-

maintenance of its scheme, and because Volkswagen knew the facts were not known to or reasonably discoverable by Plaintiffs or Class members.  Volkswagen also had a duty to disclose because it made general affirmative representations about the qualities of its vehicles with respect to emissions standards, starting with references to them as *clean* diesel cars, or cars with *clean* diesel engines, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding its emissions scheme, the actual emissions of its vehicles, its actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and its actual practices with respect to the vehicles at issue.  Having volunteered to provide information to Plaintiffs, Volkswagen had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiffs and Class members.  Whether a manufacturer's products comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certification testing their vehicles must pass.  Volkswagen represented to Plaintiffs and Class members that they were purchasing *clean* diesel vehicles, and certification testing appeared to confirm this—except that, secretly, Volkswagen had subverted the testing process thoroughly.

1298. Volkswagen actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Volkswagen money, and it did so at the expense of Plaintiffs and Class members.

1299. On information and belief, Volkswagen has still not made full and adequate disclosures, and continues to defraud Plaintiffs and Class members by

-333-

concealing material information regarding the emission qualities of its vehicles and its emissions scheme.

1300. Plaintiffs and Class members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly "clean" diesel cars manufactured by Volkswagen, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them. Plaintiffs' and Class members' actions were justified. Volkswagen was in exclusive control of the material facts, and such facts were not known to the public, Plaintiffs, or Class members.

1301. Because of the concealment and/or suppression of the facts, Plaintiffs and Class members have sustained damage because they own vehicles that are diminished in value as a result of Volkswagen's concealment of the true quality and quantity of those vehicles' emissions and Volkswagen's failure to timely disclose the actual emission qualities and quantities of hundreds of thousands of Volkswagen- and Audi-branded vehicles and the serious issues engendered by Volkswagen's corporate policies. Had Plaintiffs and Class members been aware of Volkswagen's emissions scheme, and the company's callous disregard for compliance with applicable federal and state laws and regulations, Plaintiffs and Class members who purchased or leased new or previously owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

1302. The value of Plaintiffs' and Class members' vehicles has diminished as a result of Volkswagen's fraudulent concealment of its emissions scheme, which has greatly tarnished the Volkswagen and Audi brand names attached to Plaintiffs' and Class members' vehicles and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles. In addition, Class members are entitled to damages for loss of

-334-

use, costs of additional fuel, costs of unused warranties, and other damages to be proved at trial.

1303. Accordingly, Volkswagen is liable to Plaintiffs and Class members for damages in an amount to be proven at trial.

1304. Volkswagen's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and Class members' rights and the representations that Volkswagen made to them, in order to enrich Volkswagen.  To the extent permitted under applicable law, Volkswagen's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

### COUNT III
### BREACH OF CONTRACT
### (BASED ON NEW HAMPSHIRE LAW)

1305. Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

1306. Plaintiff brings this Count on behalf of new vehicle or certified pre-owned vehicle purchasers in the New Hampshire Subclass.

1307. Volkswagen's misrepresentations and omissions alleged herein, including Volkswagen's failure to disclose the existence of the CleanDiesel engine system's defect and/or defective design as alleged herein, caused Plaintiff and the other New Hampshire Subclass members to make their purchases or leases of their Affected Vehicles.  Absent those misrepresentations and omissions, Plaintiff and the other New Hampshire Subclass members would not have purchased or leased these Affected Vehicles, would not have purchased or leased these Affected Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain the CleanDiesel Engine System and which were not marketed as including such a system.  Accordingly, Plaintiff and the other New Hampshire

-335-

1   Subclass members overpaid for their Affected Vehicles and did not receive the benefit

2   of their bargain.

3       1308. Each and every sale or lease of an Affected Vehicle by an authorized

4   Volkswagen dealer constitutes a contract between Volkswagen and the purchaser or

5   lessee.  Volkswagen breached these contracts by selling or leasing Plaintiff and the

6   other New Hampshire Subclass members defective Affected Vehicles and by

7   misrepresenting or failing to disclose the existence of the CleanDiesel engine system's

8   defect and/or defective design, including information known to Volkswagen rendering

9   each Affected Vehicle non EPA-compliant, and thus less valuable, than vehicles not

10  equipped with a CleanDiesel engine system.

11      1309. As a direct and proximate result of Volkswagen's breach of contract,

12  Plaintiff and the New Hampshire Subclass have been damaged in an amount to be

13  proven at trial, which shall include, but is not limited to, all compensatory damages,

14  incidental and consequential damages, and other damages allowed by law.

15  **FF.  Claims Brought on Behalf of the New Jersey Subclass**

16  <div align="center">**COUNT I**<br/>**VIOLATIONS OF THE NEW JERSEY CONSUMER FRAUD ACT**<br/>**(N.J. STAT. ANN. §§ 56:8-1, *ET SEQ*.)**</div>

17

18      1310. Plaintiff Joseph Avena ("Plaintiff," for purposes of all New Jersey Class

19  Counts) incorporate by reference all preceding allegations as though fully set forth

20  herein.

21      1311. Plaintiff brings this Count on behalf of the New Jersey Subclass.

22      1312. The New Jersey Consumer Fraud Act, N.J. STAT. ANN. §§ 56:8-1, *et seq*.

23  ("NJ CFA"), prohibits unfair or deceptive acts or practices in the conduct of any trade

24  or commerce.

25      1313. In the course of Volkswagen's business, it willfully failed to disclose and

26  actively concealed that the CleanDiesel Engine System was non-EPA compliant, and

27  the use of the "defect device in Affected Vehicles as described above.  Accordingly,

28

<div align="center">-336-</div>

Volkswagen engaged in unfair and deceptive trade practices, including representing that Affected Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that Affected Vehicles are of a particular standard and quality when they are not; advertising Affected Vehicles with the intent not to sell them as advertised; and otherwise engaging in conduct likely to deceive. Further, Volkswagen's acts and practices described herein offend established public policy because the harm they cause to consumers, motorists, and pedestrians outweighs any benefit associated with such practices, and because Volkswagen fraudulently concealed the defective nature of the Affected Vehicles from consumers.

1314. Volkswagen's actions as set forth above occurred in the conduct of trade or commerce.

1315. Volkswagen's conduct proximately caused injuries to Plaintiff and the other New Jersey Subclass members.

1316. Plaintiff and the other New Jersey Subclass members were injured as a result of Volkswagen's conduct in that Plaintiff and the other New Jersey Subclass members overpaid for their Affected Vehicles and did not receive the benefit of their bargain, and their Affected Vehicles have suffered a diminution in value. These injuries are the direct and natural consequence of Volkswagen's misrepresentations and omissions.

1317. Pursuant TO N.J. STAT. ANN. § 56:8-20, Plaintiffs will serve the New Jersey Attorney General with a copy of this Complaint.

## COUNT II
## BREACH OF CONTRACT
## (BASED ON NEW JERSEY LAW)

1318. Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

1319. Plaintiff brings this Count on behalf of new vehicle or certified pre-owned vehicle purchasers in the New Jersey Subclass.

-337-

1320. Volkswagen's misrepresentations and omissions alleged herein, including Volkswagen's failure to disclose the existence of the CleanDiesel engine system's defect and/or defective design as alleged herein, caused Plaintiff and the other New Jersey Subclass members to make their purchases or leases of their Affected Vehicles. Absent those misrepresentations and omissions, Plaintiff and the other New Jersey Subclass members would not have purchased or leased these Affected Vehicles, would not have purchased or leased these Affected Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain the CleanDiesel engine system and which were not marketed as including such a system. Accordingly, Plaintiff and the other New Jersey Subclass members overpaid for their Affected Vehicles and did not receive the benefit of their bargain.

1321. Each and every sale or lease of an Affected Vehicle by an authorized Volkswagen dealer constitutes a contract between Volkswagen and the purchaser or lessee. Volkswagen breached these contracts by selling or leasing Plaintiff and the other New Jersey Subclass members defective Affected Vehicles and by misrepresenting or failing to disclose the existence of the CleanDiesel engine system's defect and/or defective design, including information known to Volkswagen rendering each Affected Vehicle non EPA-compliant, and thus less valuable, than vehicles not equipped with a CleanDiesel engine system.

1322. As a direct and proximate result of Volkswagen's breach of contract, Plaintiff and the New Jersey Subclass have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## COUNT III
## FRAUDULENT CONCEALMENT

1323. Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

1324. Plaintiff brings this Count on behalf of the New Jersey Subclass.

-338-

1325. Volkswagen intentionally concealed that the CleanDiesel engine systems were not EPA-compliant and used a "defeat device", or acted with reckless disregard for the truth, and denied Plaintiff and the other New Jersey Subclass members information that is highly relevant to their purchasing decision.

1326. Volkswagen further affirmatively misrepresented to Plaintiff in advertising and other forms of communication, including standard and uniform material provided with each car, that the Affected Vehicles it was selling were new, had no significant defects, complied with EPA regulations and would perform and operate properly when driven in normal usage.

1327. Volkswagen knew these representations were false when made.

1328. The Affected Vehicles purchased or leased by Plaintiff and the other New Jersey Subclass members were, in fact, defective, non-EPA compliant, unsafe, and unreliable because the Affected Vehicles contained faulty and defective CleanDiesel engine system, as alleged herein.

1329. Volkswagen had a duty to disclose that these Affected Vehicles were defective, unsafe, non-EPA compliant and unreliable in that certain crucial emissions functions of the Affected Vehicles would be rendered inoperative due to the "defeat device" installed in the defective CleanDiesel engine system, because Plaintiff and the other New Jersey Subclass members relied on Volkswagen's material representations that the Affected Vehicles they were purchasing were safe, environmentally clean, efficient and free from defects.

1330. The aforementioned concealment was material because if it had been disclosed Plaintiff and the other New Jersey Subclass members would not have bought or leased the Affected Vehicles, or would not have bought or leased those Vehicles at the prices they paid.

1331. The aforementioned representations were material because they were facts that would typically be relied on by a person purchasing or leasing a new motor

vehicle.  Volkswagen knew or recklessly disregarded that its representations were false because it knew that it had to use the "defeat device" in order for Affected Vehicles to pass EPA emissions requirements.  Volkswagen intentionally made the false statements in order to sell Affected Vehicles.

1332. Plaintiff and the other New Jersey Subclass members relied on Volkswagen's reputation – along with Volkswagen's failure to disclose the faulty and defective nature of the CleanDiesel engine system and Volkswagen's affirmative assurance that its Affected Vehicles were safe and reliable, and other similar false statements – in purchasing or leasing Volkswagen's Affected Vehicles.

1333. As a result of their reliance, Plaintiff and the other New Jersey Subclass members have been injured in an amount to be proven at trial, including, but not limited to, their lost benefit of the bargain and overpayment at the time of purchase or lease and/or the diminished value of their Affected Vehicles.

1334. Volkswagen's conduct was knowing, intentional, with malice, demonstrated a complete lack of care, and was in reckless disregard for the rights of Plaintiff and the other New Jersey Subclass members.  Plaintiff and the other New Jersey Subclass members are therefore entitled to an award of punitive damages.

**GG.   Claims Brought on Behalf of the New Mexico Subclass**

**COUNT I**
**VIOLATIONS OF THE NEW MEXICO UNFAIR TRADE PRACTICES ACT**
**(N.M. STAT. ANN. §§ 57-12-1, *ET SEQ.*)**

1335. Plaintiff Andrew Masters ("Plaintiff," for purposes of all New Mexico Subclass Counts) incorporates by reference all preceding allegations as though fully set forth herein.

1336. This claim is brought on behalf of the New Mexico Subclass.

1337. Volkswagen, Plaintiff and New Mexico Subclass Members are or were "person[s]" under the New Mexico Unfair Trade Practices Act ("New Mexico UTPA"), N.M. STAT. ANN. § 57-12-2.

-340-

1338. Volkswagen's actions as set forth herein occurred in the conduct of trade or commerce as defined under N.M. STAT. ANN. § 57-12-2.

1339. The New Mexico UTPA makes unlawful "a false or misleading oral or written statement, visual description or other representation of any kind knowingly made in connection with the sale, lease, rental or loan of goods or services … by a person in the regular course of the person's trade or commerce, that may, tends to or does deceive or mislead any person," including but not limited to "failing to state a material fact if doing so deceives or tends to deceive."  N.M. STAT. ANN. § 57-12-2(D).  Volkswagen's acts and omissions described herein constitute unfair or deceptive acts or practices under N.M. STAT. ANN. § 57-12-2(D).  In addition, Volkswagen's actions constitute unconscionable actions under N.M. STAT. ANN. § 57-12-2(E), since they took advantage of the lack of knowledge, ability, experience, and capacity of the New Mexico Subclass Members to a grossly unfair degree.

1340. In the course of its business, Volkswagen installed the "defeat device" and concealed that its CleanDiesel systems failed EPA regulations as described herein and otherwise engaged in activities with a tendency or capacity to deceive. Volkswagen also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of Affected Vehicles.

1341. Volkswagen has known of its use of the "defeat device" and the true nature of its CleanDiesel engine system for at least six years, but concealed all of that information until recently.

1342. Volkswagen was also aware that it valued profits over environmental cleanliness, efficiency, and lawfulness, and that it was manufacturing, selling and distributing vehicles throughout the United States that did not comply with EPA regulations.  Volkswagen concealed this information as well.

-341-

1343. By failing to disclose and by actively concealing the "defeat device" and the true cleanliness and performance of the CleanDiesel engine system, by marketing its vehicles as safe, reliable, environmentally clean, efficient, and of high quality, and by presenting itself as a reputable manufacturer that valued safety, environmental cleanliness and efficiency, and stood behind its vehicles after they were sold, Volkswagen engaged in deceptive business practices in violation of the New Mexico UTPA.

1344. In the course of Volkswagen's business, it willfully failed to disclose and actively concealed the use of the "defeat device" and true cleanliness and efficiency of the CleanDiesel engine system and serious defects discussed above. Volkswagen compounded the deception by repeatedly asserting that the Affected Vehicles were safe, reliable, environmentally clean, efficient, and of high quality, and by claiming to be a reputable manufacturer that valued safety, environmental cleanliness and efficiency, and stood behind its vehicles once they are on the road.

1345. Volkswagen's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff, about the true cleanliness and efficiency of the CleanDiesel engine system, the quality of the Volkswagen brand, the devaluing of environmental cleanliness and integrity at Volkswagen, and the true value of the Affected Vehicles.

1346. Volkswagen intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with an intent to mislead Plaintiff and the New Mexico Subclass.

1347. Volkswagen knew or should have known that its conduct violated the New Mexico UTPA.

1348. As alleged above, Volkswagen made material statements about the safety, cleanliness, efficiency and reliability of the Affected Vehicles and the Volkswagen and Audi brands that were either false or misleading.

-342-

1349. Volkswagen owed Plaintiffs a duty to disclose the true safety, cleanliness, efficiency and reliability of the Affected Vehicles and the devaluing of environmental cleanliness and integrity at Volkswagen, because Volkswagen:

    a.   Possessed exclusive knowledge that it valued profits over environmental cleanliness, efficiency, and lawfulness, and that it was manufacturing, selling and distributing vehicles throughout the United States that did not comply with EPA regulations;

    b.   Intentionally concealed the foregoing from Plaintiffs; and/or

    c.   Made incomplete representations about the safety, cleanliness, efficiency and reliability of the Affected Vehicles generally, and the use of the "defeat device" and true nature of the CleanDiesel engine system in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

1350. Because Volkswagen fraudulently concealed the "defeat device" and the true cleanliness and performance of the CleanDiesel engine system, resulting in a raft of negative publicity once the use of the "defeat device" and true characteristics of the CleanDiesel engine system finally began to be disclosed, the value of the Affected Vehicles has greatly diminished.  In light of the stigma attached to those vehicles by Volkswagen's conduct, they are now worth significantly less than they otherwise would be.

1351. Volkswagen's fraudulent use of the "defeat device" and its concealment of the true characteristics of the CleanDiesel engine system were material to Plaintiffs and the New Mexico Subclass.  A vehicle made by a reputable manufacturer of environmentally friendly vehicles is worth more than an otherwise comparable vehicle made by a disreputable and dishonest manufacturer of polluting vehicles that conceals the amount its cars pollutes rather than make environmentally friendly vehicles.

1352. Plaintiffs and the New Mexico Subclass suffered ascertainable loss caused by Volkswagen's misrepresentations and its concealment of and failure to disclose material information.  Class members who purchased Affected Vehicles

-343-

1   either would have paid less for their vehicles or would not have purchased or leased

2   them at all.

3        1353. Volkswagen had an ongoing duty to all Volkswagen and Audi customers

4   to refrain from unfair and deceptive acts or practices under the New Mexico UTPA.

5   All owners of Affected Vehicles suffered ascertainable loss in the form of the

6   diminished value of their vehicles as a result of Volkswagen's deceptive and unfair

7   acts and practices that occurred in the course of Volkswagen's business.

8        1354. Volkswagen's violations present a continuing risk to Plaintiffs as well as

9   to the general public.  Volkswagen's unlawful acts and practices complained of herein

10   affect the public interest.

11        1355. As a direct and proximate result of Volkswagen's violations of the New

12   Mexico UTPA, Plaintiff and the New Mexico Subclass have suffered injury-in-fact

13   and/or actual damage.

14        1356. New Mexico Subclass Members seek punitive damages against

15   Volkswagen because Volkswagen's conduct was malicious, willful, reckless, wanton,

16   fraudulent and in bad faith.  Because Volkswagen's conduct was malicious, willful,

17   reckless, wanton, fraudulent and in bad faith, it warrants punitive damages.

18        1357. Because Volkswagen's unconscionable, willful conduct caused actual

19   harm to New Mexico Class Members, the New Mexico Subclass seeks recovery of

20   actual damages or $100, whichever is greater, discretionary treble damages, punitive

21   damages, and reasonable attorneys' fees and costs, as well as all other proper and just

22   relief available under N.M. STAT. ANN. § 57-12-10.

**COUNT II**
**FRAUD BY CONCEALMENT**

23

24        1358. Plaintiffs reallege and incorporate by reference all paragraphs as though

25   fully set forth herein.

26        1359. This claim is brought on behalf of the New Mexico Subclass.

27

28

-344-

1360. Volkswagen intentionally concealed and suppressed material facts concerning the quality of the Affected Vehicles.  As alleged in this Complaint, notwithstanding references in the very model names of the subject vehicles as "Clean Diesel," or to their engines as "TDI Clean Diesel" engines, Volkswagen engaged in a secret scheme to evade federal and state vehicle emissions standards by installing software designed to conceal its vehicles' emissions of the pollutant nitrogen oxide, which contributes to the creation of ozone and smog.  The software installed on the vehicles at issue was designed nefariously to kick-in during emissions certification testing, such that the vehicles would show far lower emissions than when actually operating on the road.  The result was what Volkswagen intended: vehicles passed emissions certifications by way of deliberately induced false readings.  Reportedly, Volkswagen's deliberate, secret scheme resulted in noxious emissions from these vehicles at up to 40 times applicable standards.

1361. Plaintiff and New Mexico Subclass members reasonably relied upon Volkswagen's false representations.  They had no way of knowing that Volkswagen's representations were false and gravely misleading.  As alleged herein, Volkswagen employed extremely sophisticated methods of deception.  Plaintiff and New Mexico Subclass members did not, and could not, unravel Volkswagen's deception on their own.

1362. Volkswagen concealed and suppressed material facts concerning what is evidently the true culture of Volkswagen—one characterized by an emphasis on profits and sales above compliance with federal and state clean air laws, and emissions regulations that are meant to protect the public and consumers.  It also emphasized profits and sales over the trust that Plaintiff and New Mexico Subclass members placed in its representations.  As one customer, Priya Shah, put it in a quotation cited by the *Los Angeles Times* in a September 18, 2015 article, "It's just a blatant disregard and intentional manipulation of the system.  That's just a whole other level of not only

-345-

1    lying to the government, but also lying to your consumer.  People buy diesel cars from

2    Volkswagen because they feel they are clean diesel cars."  In the words of Ms. Shah,

3    which no doubt reflect the sentiments of all other CleanDiesel vehicle buyers, "I don't

4    want to be spewing noxious gases into the environment."

5          1363. Necessarily, Volkswagen also took steps to ensure that its employees did

6    not reveal the details of its scheme to regulators or consumers, including Plaintiff and

7    New Mexico Subclass members.  Volkswagen did so in order to boost the reputations

8    of its vehicles and to falsely assure purchasers and lessors of its vehicles, including

9    previously owned vehicles, that Volkswagen is a reputable manufacturer that complies

10    with applicable law, including federal and state clean air laws and emissions

11    regulations, and that its vehicles likewise comply with applicable law and regulations.

12    Volkswagen's false representations were material to consumers, both because they

13    concerned the quality of the Affected Vehicles, including their compliance with

14    applicable federal and state laws and regulations regarding clean air and emissions,

15    and also because the representations played a significant role in the value of the

16    vehicles.  As Volkswagen well knew, its customers, including Plaintiff and New

17    Mexico Subclass members, highly valued that the vehicles they were purchasing or

18    leasing were *clean* diesel cars, and they paid accordingly.

19          1364. Volkswagen had a duty to disclose its emissions scheme because

20    knowledge of the scheme and its details were known and/or accessible only to

21    Volkswagen, because Volkswagen had exclusive knowledge as to implementation and

22    maintenance of its scheme, and because Volkswagen knew the facts were not known

23    to or reasonably discoverable by Plaintiff or New Mexico Subclass members.

24    Volkswagen also had a duty to disclose because it made general affirmative

25    representations about the qualities of its vehicles with respect to emissions standards,

26    starting with references to them as *clean* diesel cars, or cars with *clean* diesel engines,

27    which were misleading, deceptive, and incomplete without the disclosure of the

28

additional facts set forth above regarding its emissions scheme, the actual emissions of its vehicles, its actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and its actual practices with respect to the vehicles at issue.  Having volunteered to provide information to Plaintiffs, Volkswagen had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiff and New Mexico Subclass members.  Whether a manufacturer's products comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certification testing their vehicles must pass.  Volkswagen represented to Plaintiff and New Mexico Subclass members that they were purchasing *clean* diesel vehicles, and certification testing appeared to confirm this—except that, secretly, Volkswagen had subverted the testing process thoroughly.

1365. Volkswagen actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Volkswagen money, and it did so at the expense of Plaintiff and New Mexico Subclass members.

1366. On information and belief, Volkswagen has still not made full and adequate disclosures, and continues to defraud Plaintiff and New Mexico Subclass members by concealing material information regarding the emissions qualities of its vehicles and its emissions scheme.

1367. Plaintiff and New Mexico Subclass members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have

-347-

purchased purportedly "clean" diesel cars manufactured by Volkswagen, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them. Plaintiff's and New Mexico Subclass Members' actions were justified. Volkswagen was in exclusive control of the material facts, and such facts were not known to the public, Plaintiff, or New Mexico Subclass members.

1368. Because of the concealment and/or suppression of the facts, Plaintiff and New Mexico Subclass members have sustained damage because they own vehicles that are diminished in value as a result of Volkswagen's concealment of the true quality and quantity of those vehicles' emissions and Volkswagen's failure to timely disclose the actual emissions qualities and quantities of hundreds of thousands of Volkswagen- and Audi-branded vehicles and the serious issues engendered by Volkswagen's corporate policies. Had Plaintiff and New Mexico Subclass members been aware of Volkswagen's emissions scheme, and the company's callous disregard for compliance with applicable federal and state laws and regulations, Plaintiff and New Mexico Subclass members who purchased or leased new or previously owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

1369. The value of Plaintiff's and New Mexico Subclass Members' vehicles have diminished as a result of Volkswagen's fraudulent concealment of its emissions scheme, which has greatly tarnished the Volkswagen and Audi brand names attached to Plaintiff's and New Mexico Subclass members' vehicles and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles. In addition, Class members are entitled to damages for loss of use, costs of additional fuel, costs of unused warranties, and other damages to be proved at trial.

010549-11  816608 V1

1370. Accordingly, Volkswagen is liable to Plaintiff and New Mexico Subclass members for damages in an amount to be proven at trial.

1371. Volkswagen's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and New Mexico Subclass members' rights and the representations that Volkswagen made to them, in order to enrich Volkswagen. To the extent permitted under applicable law, Volkswagen's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

<div style="text-align:center">

**COUNT III**
**BREACH OF CONTRACT**
**(BASED ON NEW MEXICO LAW)**

</div>

1372. Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

1373. Plaintiff brings this Count on behalf of new vehicle or certified pre-owned vehicle purchasers in the New Mexico Subclass.

1374. Volkswagen's misrepresentations and omissions alleged herein, including Volkswagen's failure to disclose the existence of the CleanDiesel engine system's defect and/or defective design as alleged herein, caused Plaintiff and the other New Mexico Subclass members to make their purchases or leases of their Affected Vehicles. Absent those misrepresentations and omissions, Plaintiff and the other New Mexico Subclass members would not have purchased or leased these Affected Vehicles, would not have purchased or leased these Affected Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain the CleanDiesel engine system and which were not marketed as including such a system. Accordingly, Plaintiff and the other New Mexico Subclass members overpaid for their Affected Vehicles and did not receive the benefit of their bargain.

1375. Each and every sale or lease of an Affected Vehicle by an authorized Volkswagen dealer constitutes a contract between Volkswagen and the purchaser or lessee.  Volkswagen breached these contracts by selling or leasing Plaintiff and the other New Mexico Subclass members defective Affected Vehicles and by misrepresenting or failing to disclose the existence of the CleanDiesel engine system's defect and/or defective design, including information known to Volkswagen rendering each Affected Vehicle non EPA-compliant, and thus less valuable, than vehicles not equipped with a CleanDiesel engine system.

1376. As a direct and proximate result of Volkswagen's breach of contract, Plaintiff and the New Mexico Subclass have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

**HH.   Claims Brought on Behalf of the New York Subclass**

**COUNT I**
**VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349**
**(N.Y. GEN. BUS. LAW § 349)**

1377. Plaintiff Steven Kolpan ("Plaintiff," for purposes of all New York Subclass Counts) incorporates by reference all preceding allegations as though fully set forth herein.

1378. Plaintiffs bring this Count on behalf of the New York Subclass.

1379. New York's General Business Law § 349 makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce."

1380. In the course of Volkswagen's business, it willfully failed to disclose and actively concealed that the CleanDiesel engine system was non-EPA compliant, and the use of the "defeat device" in Affected Vehicles as described above.  Accordingly, Volkswagen engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices as defined in N.Y. GEN. BUS. LAW § 349, including representing that Affected Vehicles have characteristics, uses,

-350-

benefits, and qualities which they do not have; representing that Affected Vehicles are of a particular standard and quality when they are not; advertising Affected Vehicles with the intent not to sell them as advertised; and otherwise engaging in conduct likely to deceive.

1381. Volkswagen's actions as set forth above occurred in the conduct of trade or commerce.

1382. Because Volkswagen's deception takes place in the context of automobile safety, its deception affects the public interest.  Further, Volkswagen's unlawful conduct constitutes unfair acts or practices that have the capacity to deceive consumers, and that have a broad impact on consumers at large.

1383. Volkswagen's conduct proximately caused injuries to Plaintiffs and the other Class members.

1384. Plaintiffs and the other Class members were injured as a result of Volkswagen's conduct in that Plaintiffs and the other Class members overpaid for their Affected Vehicles and did not receive the benefit of their bargain, and their Affected Vehicles have suffered a diminution in value.  These injuries are the direct and natural consequence of Volkswagen's misrepresentations and omissions.

## COUNT II
## VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 350
### (N.Y. GEN. BUS. LAW § 350)

1385. Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

1386. Plaintiffs bring this Count on behalf of the New York Subclass.

1387. New York's General Business Law § 350 makes unlawful "[f]alse advertising in the conduct of any business, trade or commerce[.]"  False advertising includes "advertising, including labeling, of a commodity … if such advertising is misleading in a material respect," taking into account "the extent to which the

-351-

advertising fails to reveal facts material in the light of … representations [made] with respect to the commodity…." N.Y. GEN. BUS. LAW § 350-a.

1388. Volkswagen caused to be made or disseminated throughout New York, through advertising, marketing, and other publications, statements that were untrue or misleading, and which were known, or which by the exercise of reasonable care should have been known to Volkswagen, to be untrue and misleading to consumers, including Plaintiffs and the other Class members.

1389. Volkswagen has violated N.Y. GEN. BUS. LAW § 350 because the misrepresentations and omissions regarding that the CleanDiesel engine system was non-EPA compliant, and the use of the "defeat device" in Affected Vehicles as described above, as well as the inherently defective nature of the CleanDiesel engine system as designed and sold by Volkswagen, were material and likely to deceive a reasonable consumer.

1390. Plaintiffs and the other Class members have suffered injury, including the loss of money or property, as a result of Volkswagen's false advertising.  In purchasing or leasing their Affected Vehicles, Plaintiffs and the other Class members relied on the misrepresentations and/or omissions of Volkswagen with respect to the safety, quality, functionality, and reliability of the Affected Vehicles.  Volkswagen's representations turned out to be untrue because the CleanDiesel engine system installed in Affected Vehicles did not comply with EPA regulations.  Had Plaintiffs and the other Class members known this, they would not have purchased or leased their Affected Vehicles and/or paid as much for them.

1391. Accordingly, Plaintiffs and the other Class members overpaid for their Affected Vehicles and did not receive the benefit of the bargain for their Affected Vehicles, which have also suffered diminution in value.

1392. Plaintiffs, individually and on behalf of the other Class members, request that this Court enter such orders or judgments as may be necessary to enjoin

Volkswagen from continuing its unfair, unlawful and/or deceptive practices.  Plaintiffs and the other Class members are also entitled to recover their actual damages or $500, whichever is greater.  Because Volkswagen acted willfully or knowingly, Plaintiffs and the other Class members are entitled to recover three times actual damages, up to $10,000.

<div align="center">

**COUNT III**
**BREACH OF CONTRACT**
**(BASED ON NEW YORK LAW)**

</div>

1393. Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

1394. Plaintiff brings this Count on behalf of new vehicle or certified pre-owned vehicle purchasers in the New York Subclass.

1395. Volkswagen's misrepresentations and omissions alleged herein, including Volkswagen's failure to disclose the existence of the CleanDiesel engine system's defect and/or defective design as alleged herein, caused Plaintiff and the other New York Subclass members to make their purchases or leases of their Affected Vehicles. Absent those misrepresentations and omissions, Plaintiff and the other New York Subclass members would not have purchased or leased these Affected Vehicles, would not have purchased or leased these Affected Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain the CleanDiesel engine system and which were not marketed as including such a system.  Accordingly, Plaintiff and the other New York Subclass members overpaid for their Affected Vehicles and did not receive the benefit of their bargain.

1396. Each and every sale or lease of an Affected Vehicle by an authorized Volkswagen dealer constitutes a contract between Volkswagen and the purchaser or lessee.  Volkswagen breached these contracts by selling or leasing Plaintiff and the other New York Subclass members defective Affected Vehicles and by misrepresenting or failing to disclose the existence of the CleanDiesel engine system's

-353-

defect and/or defective design, including information known to Volkswagen rendering each Affected Vehicle non EPA-compliant, and thus less valuable, than vehicles not equipped with a CleanDiesel engine system.

1397. As a direct and proximate result of Volkswagen's breach of contract, Plaintiff and the New York Subclass have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

<div align="center">

**COUNT IV**
**FRAUDULENT CONCEALMENT**
**(BASED ON NEW YORK LAW)**

</div>

1398. Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

1399. Plaintiffs bring this Count on behalf of the New York Subclass.

1400. Volkswagen intentionally concealed that the CleanDiesel engine systems were not EPA-compliant and used a "defeat device," or acted with reckless disregard for the truth, and denied Plaintiffs and the other Class members information that is highly relevant to their purchasing decision.

1401. Volkswagen further affirmatively misrepresented to Plaintiffs in advertising and other forms of communication, including standard and uniform material provided with each car, that the Affected Vehicles it was selling were new, had no significant defects, complied with EPA regulations and would perform and operate properly when driven in normal usage.

1402. Volkswagen knew these representations were false when made.

1403. The Affected Vehicles purchased or leased by Plaintiffs and the other Class members were, in fact, defective, non-EPA compliant, unsafe, and unreliable because the Affected Vehicles contained faulty and defective CleanDiesel engine system, as alleged herein.

-354-

1404. Volkswagen had a duty to disclose that these Affected Vehicles were defective, unsafe, non-EPA compliant and unreliable in that certain crucial emissions functions of the Affected Vehicles would be rendered inoperative due to the "defeat device" installed in the defective CleanDiesel engine system, because Plaintiffs and the other Class members relied on Volkswagen's material representations that the Affected Vehicles they were purchasing were safe, environmentally clean, efficient and free from defects.

1405. The aforementioned concealment was material because if it had been disclosed Plaintiffs and the other Class members would not have bought or leased the Affected Vehicles, or would not have bought or leased those Vehicles at the prices they paid.

1406. The aforementioned representations were material because they were facts that would typically be relied on by a person purchasing or leasing a new motor vehicle.  Volkswagen knew or recklessly disregarded that its representations were false because it knew that it had to use the "defeat device" in order for Affected Vehicles to pass EPA emissions requirements.  Volkswagen intentionally made the false statements in order to sell Affected Vehicles.

1407. Plaintiffs and the other Class members relied on Volkswagen's reputation – along with Volkswagen's failure to disclose the faulty and defective nature of the CleanDiesel engine system and Volkswagen's affirmative assurance that its Affected Vehicles were safe and reliable, and complied with environmental regulations – in purchasing or leasing Volkswagen's Affected Vehicles.

1408. As a result of their reliance, Plaintiffs and the other Class members have been injured in an amount to be proven at trial, including, but not limited to, their lost benefit of the bargain and overpayment at the time of purchase or lease and/or the diminished value of their Affected Vehicles.

-355-

1409. Volkswagen's conduct was knowing, intentional, with malice, demonstrated a complete lack of care, and was in reckless disregard for the rights of Plaintiffs and the other Class members.  Plaintiffs and the other Class members are therefore entitled to an award of punitive damages.

## II.  Claims Brought on Behalf of the North Carolina Subclass

### COUNT I
### VIOLATIONS OF THE NORTH CAROLINA UNFAIR AND DECEPTIVE TRADE PRACTICES ACT
### (N.C. GEN. STAT. §§ 75-1.1, *et seq.*)

1410. Plaintiff Paul Puryear ("Plaintiff," for purposes of all North Carolina Class Counts) incorporates by reference all preceding allegations as though fully set forth herein.

1411. Plaintiff brings this Count on behalf of the North Carolina Subclass.

1412. North Carolina's Unfair and Deceptive Trade Practices Act, N.C. GEN. STAT. §§ 75-1.1, *et seq.* ("NCUDTPA"), prohibits a person from engaging in "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce[.]"  The NCUDTPA provides a private right of action for any person injured "by reason of any act or thing done by any other person, firm or corporation in violation of" the NCUDTPA.  N.C. GEN. STAT. § 75-16.

1413. Volkswagen's acts and practices complained of herein were performed in the course of Volkswagen's trade or business and thus occurred in or affected "commerce," as defined in N.C. GEN. STAT. § 75-1.1(b).

1414. In the course of Volkswagen's business, it willfully failed to disclose and actively concealed that the CleanDiesel Engine System was non-EPA compliant, and the use of the "defeat device" in Affected Vehicles as described above.  Accordingly, Volkswagen engaged in unlawful trade practices, including representing that Affected Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that Affected Vehicles are of a particular standard and quality when they

-356-

are not; advertising Affected Vehicles with the intent not to sell them as advertised; and otherwise engaging in conduct likely to deceive.

1415. Volkswagen's conduct proximately caused injuries to Plaintiff and the other Class members.

1416. Volkswagen acted with willful and conscious disregard of the rights and safety of others, subjecting Plaintiff and the other Class members to cruel and unjust hardship as a result, such that an award of punitive damages is appropriate.

1417. Plaintiff and the other Class members were injured as a result of Volkswagen's conduct in that Plaintiff and the other Class members overpaid for their Affected Vehicles and did not receive the benefit of their bargain, and their Affected Vehicles have suffered a diminution in value.  These injuries are the direct and natural consequence of Volkswagen's misrepresentations and omissions.

1418. Plaintiff, individually and on behalf of the other Class members, seeks treble damages pursuant to N.C. GEN. STAT. § 75-16, and an award of attorneys' fees pursuant to N.C. GEN. STAT. § 75-16.1.

## COUNT II
## BREACH OF CONTRACT
## (BASED ON NORTH CAROLINA LAW)

1419. Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

1420. Plaintiff brings this Count on behalf of new vehicle or certified pre-owned vehicle purchasers in the North Carolina Class.

1421. Volkswagen's misrepresentations and omissions alleged herein, including Volkswagen's failure to disclose the existence of the CleanDiesel engine system's defect and/or defective design as alleged herein, caused Plaintiff and the other North Carolina Class members to make their purchases or leases of their Affected Vehicles. Absent those misrepresentations and omissions, Plaintiff and the other North Carolina Class members would not have purchased or leased these Affected Vehicles, would

-357-

not have purchased or leased these Affected Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain the CleanDiesel engine system and which were not marketed as including such a system.  Accordingly, Plaintiff and the other North Carolina Class members overpaid for their Affected Vehicles and did not receive the benefit of their bargain.

1422. Each and every sale or lease of an Affected Vehicle by an authorized Volkswagen dealer constitutes a contract between Volkswagen and the purchaser or lessee.  Volkswagen breached these contracts by selling or leasing Plaintiff and the other North Carolina Class members defective Affected Vehicles and by misrepresenting or failing to disclose the existence of the CleanDiesel engine system's defect and/or defective design, including information known to Volkswagen rendering each Affected Vehicle non EPA-compliant, and thus less valuable, than vehicles not equipped with a CleanDiesel engine system.

1423. As a direct and proximate result of Volkswagen's breach of contract, Plaintiff and the North Carolina Class have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## COUNT III
## FRAUDULENT CONCEALMENT
## (BASED ON NORTH CAROLINA LAW)

1424. Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

1425. Plaintiff brings this Count on behalf of the North Carolina Class.

1426. Volkswagen intentionally concealed that the CleanDiesel engine systems were not EPA-compliant and used a "defeat device," or acted with reckless disregard for the truth, and denied Plaintiff and the other Class members information that is highly relevant to their purchasing decision.

-358-

1427. Volkswagen further affirmatively misrepresented to Plaintiff in advertising and other forms of communication, including standard and uniform material provided with each car, that the Affected Vehicles it was selling were new, had no significant defects, complied with EPA regulations and would perform and operate properly when driven in normal usage.

1428. Volkswagen knew these representations were false when made.

1429. The Affected Vehicles purchased or leased by Plaintiff and the other Class members were, in fact, defective, non-EPA compliant, unsafe, and unreliable because the Affected Vehicles contained faulty and defective CleanDiesel engine system, as alleged herein.

1430. Volkswagen had a duty to disclose that these Affected Vehicles were defective, unsafe, non-EPA compliant and unreliable in that certain crucial emissions functions of the Affected Vehicles would be rendered inoperative due to the "defeat device" installed in the defective CleanDiesel engine system, because Plaintiff and the other Class members relied on Volkswagen's material representations that the Affected Vehicles they were purchasing were safe, environmentally clean, efficient and free from defects.

1431. The aforementioned concealment was material because if it had been disclosed Plaintiff and the other Class members would not have bought or leased the Affected Vehicles, or would not have bought or leased those Vehicles at the prices they paid.

1432. The aforementioned representations were material because they were facts that would typically be relied on by a person purchasing or leasing a new motor vehicle. Volkswagen knew or recklessly disregarded that its representations were false because it knew that it had to use the "defeat device" in order for Affected Vehicles to pass EPA emissions requirements. Volkswagen intentionally made the false statements in order to sell Affected Vehicles.

-359-

1433. Plaintiff and the other Class members relied on Volkswagen's reputation – along with Volkswagen's failure to disclose the faulty and defective nature of the CleanDiesel engine system and Volkswagen's affirmative assurance that its Affected Vehicles were safe and reliable, and other similar false statements – in purchasing or leasing Volkswagen's Affected Vehicles.

1434. As a result of their reliance, Plaintiff and the other Class members have been injured in an amount to be proven at trial, including, but not limited to, their lost benefit of the bargain and overpayment at the time of purchase or lease and/or the diminished value of their Affected Vehicles.

1435. Volkswagen's conduct was knowing, intentional, with malice, demonstrated a complete lack of care, and was in reckless disregard for the rights of Plaintiff and the other Class members. Plaintiff and the other Class members are therefore entitled to an award of punitive damages.

## JJ.    Claims Brought on Behalf of the North Dakota Subclass

### COUNT I
### VIOLATION OF THE NORTH DAKOTA CONSUMER FRAUD ACT
### (N.D. CENT. CODE § 51-15-02)

1436. Plaintiff Michelle Gramling ("Plaintiff," for purposes of all North Dakota Subclass Counts) incorporates by reference all preceding allegations as though fully set forth herein.

1437. This claim is brought on behalf of North Dakota Subclass.

1438. Plaintiff, the North Dakota Subclass Members, and Volkswagen are "persons" within the meaning of N.D. CENT. CODE § 51-15-02(4).

1439. Volkswagen engaged in the "sale" of "merchandise" within the meaning of N.D. CENT. CODE § 51-15-02(3), (5).

1440. The North Dakota Consumer Fraud Act ("North Dakota CFA") makes unlawful "[t]he act, use, or employment by any person of any deceptive act or practice, fraud, false pretense, false promise, or misrepresentation, with the intent that

-360-

others rely thereon in connection with the sale or advertisement of any merchandise…." N.D. CENT. CODE § 51-15-02. As set forth above and below, Volkswagen committed deceptive acts or practices, with the intent that North Dakota Subclass Members rely thereon in connection with their purchase or lease of the Affected Vehicles.

1441. In the course of its business, Volkswagen installed the "defeat device" and concealed that its CleanDiesel systems failed EPA regulations as described herein and otherwise engaged in activities with a tendency or capacity to deceive. Volkswagen also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of Affected Vehicles.

1442. Volkswagen has known of its use of the "defeat device" and the true nature of its CleanDiesel engine system for at least six years, but concealed all of that information until recently.

1443. Volkswagen was also aware that it valued profits over environmental cleanliness, efficiency, and lawfulness, and that it was manufacturing, selling and distributing vehicles throughout the United States that did not comply with EPA regulations. Volkswagen concealed this information as well.

1444. By failing to disclose and by actively concealing the "defeat device" and the true cleanliness and performance of the CleanDiesel engine system, by marketing its vehicles as safe, reliable, environmentally clean, efficient, and of high quality, and by presenting itself as a reputable manufacturer that valued safety, environmental cleanliness and efficiency, and stood behind its vehicles after they were sold, Volkswagen engaged in deceptive business practices in violation of the North Dakota CFA.

-361-

1445. In the course of Volkswagen's business, it willfully failed to disclose and actively concealed the use of the "defeat device" and true cleanliness and efficiency of the CleanDiesel engine system and serious defects discussed above.  Volkswagen compounded the deception by repeatedly asserting that the Affected Vehicles were safe, reliable, environmentally clean, efficient, and of high quality, and by claiming to be a reputable manufacturer that valued safety, environmental cleanliness and efficiency, and stood behind its vehicles once they are on the road.

1446. Volkswagen's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff, about the true cleanliness and efficiency of the CleanDiesel engine system, the quality of the Volkswagen brand, the devaluing of environmental cleanliness and integrity at Volkswagen, and the true value of the Affected Vehicles.

1447. Volkswagen intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with an intent to mislead Plaintiff and the North Dakota Subclass.

1448. Volkswagen knew or should have known that its conduct violated the North Dakota CFA.

1449. As alleged above, Volkswagen made material statements about the safety, cleanliness, efficiency and reliability of the Affected Vehicles and the Volkswagen and Audi brands that were either false or misleading.

1450. Volkswagen owed Plaintiffs a duty to disclose the true safety, cleanliness, efficiency and reliability of the Affected Vehicles and the devaluing of environmental cleanliness and integrity at Volkswagen, because Volkswagen:

      a.      Possessed exclusive knowledge that it valued profits over environmental cleanliness, efficiency, and lawfulness, and that it was manufacturing, selling and distributing vehicles throughout the United States that did not comply with EPA regulations;

      b.      Intentionally concealed the foregoing from Plaintiffs; and/or

-362-

c.   Made incomplete representations about the safety, cleanliness, efficiency and reliability of the Affected Vehicles generally, and the use of the "defeat device" and true nature of the CleanDiesel engine system in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

1451. Because Volkswagen fraudulently concealed the "defeat device" and the true cleanliness and performance of the CleanDiesel engine system, resulting in a raft of negative publicity once the use of the "defeat device" and true characteristics of the CleanDiesel engine system finally began to be disclosed, the value of the Affected Vehicles has greatly diminished.  In light of the stigma attached to those vehicles by Volkswagen's conduct, they are now worth significantly less than they otherwise would be.

1452. Volkswagen's fraudulent use of the "defeat device" and its concealment of the true characteristics of the CleanDiesel engine system were material to Plaintiff and the North Dakota Subclass.  A vehicle made by a reputable manufacturer of environmentally friendly vehicles is worth more than an otherwise comparable vehicle made by a disreputable and dishonest manufacturer of polluting vehicles that conceals the amount its cars pollutes rather than make environmentally friendly vehicles.

1453. Plaintiff and the North Dakota Subclass suffered ascertainable loss caused by Volkswagen's misrepresentations and its concealment of and failure to disclose material information.  Class members who purchased Affected Vehicles either would have paid less for their vehicles or would not have purchased or leased them at all.

1454. Volkswagen had an ongoing duty to all Volkswagen and Audi customers to refrain from unfair and deceptive acts or practices under the North Dakota CFA.  And, in any event, they suffered ascertainable loss in the form of the diminished value of their vehicles as a result of Volkswagen's deceptive and unfair acts and practices that occurred in the course of Volkswagen's business.

-363-

1455. Volkswagen's violations present a continuing risk to Plaintiffs as well as to the general public.  Volkswagen's unlawful acts and practices complained of herein affect the public interest.

1456. As a direct and proximate result of Volkswagen's violations of the North Dakota CFA, Plaintiff and the North Dakota Subclass have suffered injury-in-fact and/or actual damage.

1457. North Dakota Subclass Members seek punitive damages against Volkswagen because Volkswagen's conduct was egregious.  Volkswagen's egregious conduct warrants punitive damages.

1458. Further, Volkswagen knowingly committed the conduct described above, and thus, under N.D. CENT. CODE § 51-15-09, Volkswagen is liable to Plaintiffs and the North Dakota Subclass for treble damages in amounts to be proven at trial, as well as attorneys' fees, costs, and disbursements.  Plaintiffs further seek an order enjoining Volkswagen's unfair and/or deceptive acts or practices, and other just and proper available relief under the North Dakota CFA.

## COUNT II
## FRAUD BY CONCEALMENT

1459. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1460. This claim is brought on behalf of the North Dakota Subclass.

1461. Volkswagen intentionally concealed and suppressed material facts concerning the quality of the Affected Vehicles.  As alleged in this Complaint, notwithstanding references in the very model names of the subject vehicles as "Clean Diesel," or to their engines as "TDI Clean Diesel" engines, Volkswagen engaged in a secret scheme to evade federal and state vehicle emissions standards by installing software designed to conceal its vehicles' emissions of the pollutant nitrogen oxide, which contributes to the creation of ozone and smog.  The software installed on the vehicles at issue was designed nefariously to kick-in during emissions certification

-364-

testing, such that the vehicles would show far lower emissions than when actually operating on the road.  The result was what Volkswagen intended: vehicles passed emissions certifications by way of deliberately induced false readings.  Reportedly, Volkswagen's deliberate, secret scheme resulted in noxious emissions from these vehicles at up to 40 times applicable standards.

1462.  Plaintiff and North Dakota Subclass members reasonably relied upon Volkswagen's false representations.  They had no way of knowing that Volkswagen's representations were false and gravely misleading.  As alleged herein, Volkswagen employed extremely sophisticated methods of deception.  Plaintiff and North Dakota Subclass members did not, and could not, unravel Volkswagen's deception on their own.

1463.  Volkswagen concealed and suppressed material facts concerning what is evidently the true culture of Volkswagen—one characterized by an emphasis on profits and sales above compliance with federal and state clean air laws, and emissions regulations that are meant to protect the public and consumers.  It also emphasized profits and sales over the trust that Plaintiff and North Dakota Subclass members placed in its representations.  As one customer, Priya Shah, put it in a quotation cited by the *Los Angeles Times* in a September 18, 2015 article, "It's just a blatant disregard and intentional manipulation of the system.  That's just a whole other level of not only lying to the government, but also lying to your consumer.  People buy diesel cars from Volkswagen because they feel they are clean diesel cars."  In the words of Ms. Shah, which no doubt reflect the sentiments of all other CleanDiesel vehicle buyers, "I don't want to be spewing noxious gases into the environment."

1464.  Necessarily, Volkswagen also took steps to ensure that its employees did not reveal the details of its scheme to regulators or consumers, including Plaintiff and North Dakota Subclass members.  Volkswagen did so in order to boost the reputations of its vehicles and to falsely assure purchasers and lessors of its vehicles, including

-365-

previously owned vehicles, that Volkswagen is a reputable manufacturer that complies with applicable law, including federal and state clean air laws and emissions regulations, and that its vehicles likewise comply with applicable law and regulations. Volkswagen's false representations were material to consumers, both because they concerned the quality of the Affected Vehicles, including their compliance with applicable federal and state laws and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles.  As Volkswagen well knew, its customers, including Plaintiff and North Dakota Subclass members, highly valued that the vehicles they were purchasing or leasing were *clean* diesel cars, and they paid accordingly.

1465. Volkswagen had a duty to disclose its emissions scheme because knowledge of the scheme and its details were known and/or accessible only to Volkswagen, because Volkswagen had exclusive knowledge as to implementation and maintenance of its scheme, and because Volkswagen knew the facts were not known to or reasonably discoverable by Plaintiff or North Dakota Subclass members. Volkswagen also had a duty to disclose because it made general affirmative representations about the qualities of its vehicles with respect to emissions standards, starting with references to them as *clean* diesel cars, or cars with *clean* diesel engines, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding its emissions scheme, the actual emissions of its vehicles, its actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and its actual practices with respect to the vehicles at issue.  Having volunteered to provide information to Plaintiffs, Volkswagen had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiff and North Dakota Subclass members.  Whether a manufacturer's products comply with federal and state

-366-

clean air laws and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certification testing their vehicles must pass.  Volkswagen represented to Plaintiff and North Dakota Subclass members that they were purchasing *clean* diesel vehicles, and certification testing appeared to confirm this—except that, secretly, Volkswagen had subverted the testing process thoroughly.

1466. Volkswagen actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Volkswagen money, and it did so at the expense of Plaintiff and North Dakota Subclass members.

1467. On information and belief, Volkswagen has still not made full and adequate disclosures, and continues to defraud Plaintiff and North Dakota Subclass members by concealing material information regarding the emissions qualities of its vehicles and its emissions scheme.

1468. Plaintiff and North Dakota Subclass members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly "clean" diesel cars manufactured by Volkswagen, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them.  Plaintiff's and North Dakota Subclass Members' actions were justified.  Volkswagen was in exclusive control of the material facts, and such facts were not known to the public, Plaintiff, or North Dakota Subclass members.

1469. Because of the concealment and/or suppression of the facts, Plaintiff and North Dakota Subclass members have sustained damage because they own vehicles

-367-

that are diminished in value as a result of Volkswagen's concealment of the true quality and quantity of those vehicles' emissions and Volkswagen's failure to timely disclose the actual emissions qualities and quantities of hundreds of thousands of Volkswagen- and Audi-branded vehicles and the serious issues engendered by Volkswagen's corporate policies.  Had Plaintiff and North Dakota Subclass members been aware of Volkswagen's emissions scheme, and the company's callous disregard for compliance with applicable federal and state laws and regulations, Plaintiff and North Dakota Subclass members who purchased or leased new or previously owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

1470. The value of Plaintiff's and North Dakota Subclass Members' vehicles has diminished as a result of Volkswagen's fraudulent concealment of its emissions scheme, which has greatly tarnished the Volkswagen and Audi brand names attached to Plaintiff's and North Dakota Subclass members' vehicles and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.  In addition, Class members are entitled to damages for loss of use, costs of additional fuel, costs of unused warranties, and other damages to be proved at trial.

1471. Accordingly, Volkswagen is liable to Plaintiff and North Dakota Subclass members for damages in an amount to be proven at trial.

1472. Volkswagen's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and North Dakota Subclass members' rights and the representations that Volkswagen made to them, in order to enrich Volkswagen.  To the extent permitted under applicable law, Volkswagen's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

-368-

1

2

### COUNT III
### BREACH OF CONTRACT
### (BASED ON NORTH DAKOTA LAW)

3       1473. Plaintiff incorporates by reference all preceding allegations as though

4   fully set forth herein.

5       1474. Plaintiff brings this Count on behalf of new vehicle or certified pre-

6   owned vehicle purchasers in the North Dakota Subclass.

7       1475. Volkswagen's misrepresentations and omissions alleged herein, including

8   Volkswagen's failure to disclose the existence of the CleanDiesel engine system's

9   defect and/or defective design as alleged herein, caused Plaintiff and the other North

10  Dakota Subclass members to make their purchases or leases of their Affected

11  Vehicles.  Absent those misrepresentations and omissions, Plaintiff and the other

12  North Dakota Subclass members would not have purchased or leased these Affected

13  Vehicles, would not have purchased or leased these Affected Vehicles at the prices

14  they paid, and/or would have purchased or leased less expensive alternative vehicles

15  that did not contain the CleanDiesel engine system and which were not marketed as

16  including such a system.  Accordingly, Plaintiff and the other North Dakota Subclass

17  members overpaid for their Affected Vehicles and did not receive the benefit of their

18  bargain.

19      1476. Each and every sale or lease of an Affected Vehicle by an authorized

20  Volkswagen dealer constitutes a contract between Volkswagen and the purchaser or

21  lessee.  Volkswagen breached these contracts by selling or leasing Plaintiff and the

22  other North Dakota Subclass members defective Affected Vehicles and by

23  misrepresenting or failing to disclose the existence of the CleanDiesel engine system's

24  defect and/or defective design, including information known to Volkswagen rendering

25  each Affected Vehicle non EPA-compliant, and thus less valuable, than vehicles not

26  equipped with a CleanDiesel engine system.

27

28

1477. As a direct and proximate result of Volkswagen's breach of contract, Plaintiff and the North Dakota Subclass have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

**KK.   Claims Brought on Behalf of the Ohio Subclass**

<div align="center">

**COUNT I**
**VIOLATIONS OF THE CONSUMER SALES PRACTICES ACT**
**(OHIO REV. CODE §§ 1345.01, *et seq.*)**

</div>

1478. Plaintiff David Pyle ("Plaintiff," for purposes of all Ohio Subclass Counts) incorporates by reference all preceding allegations as though fully set forth herein.

1479. Plaintiff brings this Count on behalf of the Ohio Subclass.

1480. Plaintiff and the other Ohio Subclass members are "consumers" as defined by the Ohio Consumer Sales Practices Act, Ohio Rev. Code § 1345.01 ("OCSPA"). Volkswagen is a "supplier" as defined by the OCSPA. Plaintiff's and the other Ohio Subclass members' purchases or leases of Affected Vehicles were "consumer transactions" as defined by the OCSPA.

1481. By failing to disclose and actively concealing that the CleanDiesel engine systems were not EPA-compliant and used a "defeat device" in the Affected Vehicles, Volkswagen engaged in deceptive business practices prohibited by the OCSPA, including (1) representing that Affected Vehicles have characteristics, uses, benefits, and qualities which they do not have, (2) representing that Affected Vehicles are of a particular standard, quality, and grade when they are not, (3) advertising Affected Vehicles with the intent not to sell them as advertised, and (4) engaging in acts or practices which are otherwise unfair, misleading, false, or deceptive to the consumer.

1482. As alleged above, Volkswagen made numerous material statements about the benefits and characteristics of the CleanDiesel engine system that were either false

<div align="center">-370-</div>

or misleading. Each of these statements contributed to the deceptive context of Volkswagen's unlawful advertising and representations as a whole.

1483. Volkswagen knew that the CleanDiesel engine system in the Affected Vehicles were defectively designed or manufactured, did not comply with EPA regulations and the Clean Air Act, and were not suitable for their intended use. Volkswagen nevertheless failed to warn Plaintiff about these defects despite having a duty to do so.

1484. Volkswagen owed Plaintiff a duty to disclose the defective nature of the CleanDiesel engine system in the Affected Vehicles, because Volkswagen:

    i)    Possessed exclusive knowledge of the defects rendering the Affected Vehicles more unreliable than similar vehicles;

    ii)    Intentionally concealed the use and installation of the "defeat device" that Volkswagen that it designed to hide the defects in the CleanDiesel engine system; and/or

    iii)    Made incomplete representations about the characteristics and performance of the CleanDiesel engine system generally, while purposefully withholding material facts from Plaintiff that contradicted these representations.

1485. Volkswagen's unfair or deceptive acts or practices were likely to, and did in fact, deceive reasonable consumers, including Plaintiff, about the true performance and characteristics of the CleanDiesel engine system.

1486. The Ohio Attorney General has made available for public inspection prior state court decisions which have held that the acts and omissions of Volkswagen in this Complaint, including, but not limited to, the failure to honor both implied warranties and express warranties, the making and distribution of false, deceptive, and/or misleading representations, and the concealment and/or non-disclosure of a dangerous defect, constitute deceptive sales practices in violation of the OCSPA. These cases include, but are not limited to, the following:

    a.    *Mason v. Mercedes Benz USA, LLC* (OPIF #10002382);

    b.    *State ex rel. Betty D. Montgomery v. Volkswagen Motor Co.* (OPIF #10002123);

-371-

c. *State ex rel. Betty D. Montgomery v. Bridgestone/Firestone, Inc.* (OPIF #10002025);

d. *Bellinger v. Hewlett-Packard Co.*, No. 20744, 2002 Ohio App. LEXIS 1573 (Ohio Ct. App. Apr. 10, 2002) (OPIF #10002077);

e. *Borror v. MarineMax of Ohio*, No. OT-06-010, 2007 Ohio App. LEXIS 525 (Ohio Ct. App. Feb. 9, 2007) (OPIF #10002388);

f. *State ex rel. Jim Petro v. Craftmatic Organization, Inc.* (OPIF #10002347);

g. *Mark J. Craw Volkswagen, et al. v. Joseph Airport Toyota, Inc.* (OPIF #10001586);

h. *State ex rel. William J. Brown v. Harold Lyons, et al.* (OPIF #10000304);

i. *Brinkman v. Mazda Motor of America, Inc.* (OPIF #10001427);

j. *Khouri v. Don Lewis* (OPIF #100001995);

k. *Mosley v. Performance Mitsubishi aka Automanage* (OPIF #10001326);

l. *Walls v. Harry Williams dba Butch's Auto Sales* (OPIF #10001524); and

m. *Brown v. Spears* (OPIF #10000403).

1487. As a result of its violations of the OCSPA, as detailed above, Volkswagen caused actual damage to Plaintiff and, if not stopped, will continue to harm Plaintiff. Plaintiff currently owns or leases, or within the class period has owned or leased, an Affected Vehicle that is defective. Defects associated with the CleanDiesel engine system have caused the value of Affected Vehicles to decrease.

1488. Plaintiff and the Class sustained damages as a result of Volkswagen's unlawful acts and are, therefore, entitled to damages and other relief as provided under the OCSPA.

1489. Plaintiff also seeks court costs and attorneys' fees as a result of Volkswagen's violations of the OCSPA as provided in Ohio Rev. Code § 1345.09.

-372-

**COUNT II**
**BREACH OF CONTRACT**
**(BASED ON OHIO LAW)**

1490. Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

1491. Plaintiff brings this Count on behalf of new vehicle or certified pre-owned vehicle purchasers in the Ohio Subclass.

1492. Volkswagen's misrepresentations and omissions alleged herein, including Volkswagen's failure to disclose the existence of the CleanDiesel engine system's defect and/or defective design as alleged herein, caused Plaintiff and the other Ohio Subclass members to make their purchases or leases of their Affected Vehicles. Absent those misrepresentations and omissions, Plaintiff and the other Ohio Subclass members would not have purchased or leased these Affected Vehicles, would not have purchased or leased these Affected Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain the CleanDiesel engine system and which were not marketed as including such a system. Accordingly, Plaintiff and the other Ohio Subclass members overpaid for their Affected Vehicles and did not receive the benefit of their bargain.

1493. Each and every sale or lease of an Affected Vehicle by an authorized Volkswagen dealer constitutes a contract between Volkswagen and the purchaser or lessee. Volkswagen breached these contracts by selling or leasing Plaintiff and the other Ohio Subclass members defective Affected Vehicles and by misrepresenting or failing to disclose the existence of the CleanDiesel engine system's defect and/or defective design, including information known to Volkswagen, rendering each Affected Vehicle non-EPA-compliant, and thus less valuable, than vehicles not equipped with a CleanDiesel engine system.

1494. As a direct and proximate result of Volkswagen's breach of contract, Plaintiff and the Ohio Subclass have been damaged in an amount to be proven at trial,

-373-

which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## COUNT III
## FRAUDULENT CONCEALMENT
## (BASED ON OHIO LAW)

1495. Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

1496. Plaintiff brings this Count on behalf of the Ohio Subclass.

1497. Volkswagen intentionally concealed that the CleanDiesel engine systems were not EPA-compliant and used a "defeat device," or acted with reckless disregard for the truth, and denied Plaintiff and the other Class members' information that is highly relevant to their purchasing decision.

1498. Volkswagen further affirmatively misrepresented to Plaintiff in advertising and other forms of communication, including standard and uniform material provided with each car, that the Affected Vehicles it was selling were new, had no significant defects, complied with EPA regulations and would perform and operate properly when driven in normal usage.

1499. Volkswagen knew these representations were false when made.

1500. The Affected Vehicles purchased or leased by Plaintiff and the other Class members were, in fact, defective, non-EPA compliant, unsafe, and unreliable because the Affected Vehicles contained the faulty and defective CleanDiesel engine system, as alleged herein.

1501. Volkswagen had a duty to disclose that these Affected Vehicles were defective, unsafe, non-EPA compliant and unreliable in that certain crucial emissions functions of the Affected Vehicles would be rendered inoperative due to the "defeat device" installed in the defective CleanDiesel engine system, because Plaintiff and the other Class members relied on Volkswagen's material representations that the

-374-

Affected Vehicles they were purchasing were safe, environmentally clean, efficient and free from defects.

1502. The aforementioned concealment was material because if it had been disclosed Plaintiff and the other Class members would not have bought or leased the Affected Vehicles, or would not have bought or leased those Vehicles at the prices they paid.

1503. The aforementioned representations were material because they were facts that would typically be relied on by a person purchasing or leasing a new motor vehicle.  Volkswagen knew or recklessly disregarded that its representations were false because it knew that it had to use the "defeat device" in order for Affected Vehicles to pass EPA emissions requirements.  Volkswagen intentionally made the false statements in order to sell Affected Vehicles.

1504. Plaintiff and the other Class members relied on Volkswagen's reputation – along with Volkswagen's failure to disclose the faulty and defective nature of the CleanDiesel engine system and Volkswagen's affirmative assurance that its Affected Vehicles were safe and reliable, and other similar false statements – in purchasing or leasing Volkswagen's Affected Vehicles.

1505. As a result of their reliance, Plaintiff and the other Class members have been injured in an amount to be proven at trial, including, but not limited to, their lost benefit of the bargain and overpayment at the time of purchase or lease and/or the diminished value of their Affected Vehicles.

1506. Volkswagen's conduct was knowing, intentional, with malice, demonstrated a complete lack of care, and was in reckless disregard for the rights of Plaintiff and the other Class members.  Plaintiff and the other Class members are therefore entitled to an award of punitive damages.

**LL.   Claims Brought on Behalf of the Oklahoma Subclass**

<div align="center">

**COUNT I**
**VIOLATION OF OKLAHOMA CONSUMER PROTECTION ACT**
**(OKLA. STAT. TIT. 15 § 751, *ET SEQ.*)**

</div>

1507.  Plaintiff Heather Greenfield ("Plaintiff," for purposes of all Oklahoma Subclass Counts) incorporates by reference all preceding allegations as though fully set forth herein.

1508.  This claim is brought on behalf of the Oklahoma Subclass.

1509.  Plaintiff and the Oklahoma Subclass Members are "persons" under the Oklahoma Consumer Protection Act ("Oklahoma CPA"), OKLA. STAT. TIT. 15 § 752.

1510.  Volkswagen is a "person," "corporation," or "association" within the meaning of OKLA. STAT. TIT. 15 § 15-751(1).

1511.  The sale or lease of the Affected Vehicles to the Oklahoma Subclass Members was a "consumer transaction" within the meaning of OKLA. STAT. TIT. 15 § 752, and Volkswagen's actions as set forth herein occurred in the conduct of trade or commerce.

1512.  The Oklahoma CPA declares unlawful, *inter alia*, the following acts or practices when committed in the course of business:  "mak[ing] a false or misleading representation, knowingly or with reason to know, as to the characteristics …, uses, [or] benefits, of the subject of a consumer transaction," or making a false representation, "knowingly or with reason to know, that the subject of a consumer transaction is of a particular standard, style or model, if it is of another or "[a]dvertis[ing], knowingly or with reason to know, the subject of a consumer transaction with intent not to sell it as advertised;" and otherwise committing "an unfair or deceptive trade practice."  *See* OKLA. STAT. TIT. 15, § 753.

1513.  By fraudulently installing the "defeat device" to make it appear that its CleanDiesel engine systems complied with EPA regulations, Volkswagen engaged in unfair and deceptive business practices prohibited by the Oklahoma CPA, including:

<div align="center">

-376-

</div>

representing that Affected Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that Affected Vehicles are of a particular standard, quality, and grade when they are not; and advertising Affected Vehicles with the intent not to sell or lease them as advertised; misrepresenting, omitting and engaging in other practices that have deceived or could reasonably be expected to deceive or mislead; and engaging in practices which offend established public policy or are immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.

1514.   In the course of its business, Volkswagen installed the "defeat device" and concealed that its CleanDiesel systems failed EPA regulations as described herein and otherwise engaged in activities with a tendency or capacity to deceive. Volkswagen also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of Affected Vehicles.

1515.   Volkswagen has known of its use of the "defeat device" and the true nature of its CleanDiesel engine system for at least six years, but concealed all of that information until recently.

1516.   Volkswagen was also aware that it valued profits over environmental cleanliness, efficiency, and lawfulness, and that it was manufacturing, selling and distributing vehicles throughout the United States that did not comply with EPA regulations.  Volkswagen concealed this information as well.

1517.   By failing to disclose and by actively concealing the "defeat device" and the true cleanliness and performance of the CleanDiesel engine system, by marketing its vehicles as safe, reliable, environmentally clean, efficient, and of high quality, and by presenting itself as a reputable manufacturer that valued safety, environmental

cleanliness and efficiency, and stood behind its vehicles after they were sold, Volkswagen engaged in deceptive trade practices in violation of the Oklahoma CPA.

1518. In the course of Volkswagen's business, it willfully failed to disclose and actively concealed the use of the "defeat device" and true cleanliness and efficiency of the CleanDiesel engine system and serious defects discussed above. Volkswagen compounded the deception by repeatedly asserting that the Affected Vehicles were safe, reliable, environmentally clean, efficient, and of high quality, and by claiming to be a reputable manufacturer that valued safety, environmental cleanliness and efficiency, and stood behind its vehicles once they are on the road.

1519. Volkswagen's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff, about the true cleanliness and efficiency of the CleanDiesel engine system, the quality of the Volkswagen and Audi brands, the devaluing of environmental cleanliness and integrity at Volkswagen, and the true value of the Affected Vehicles.

1520. Volkswagen intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with an intent to mislead Plaintiff and the Oklahoma Subclass.

1521. Volkswagen knew or should have known that its conduct violated the Oklahoma CPA.

1522. As alleged above, Volkswagen made material statements about the safety, cleanliness, efficiency and reliability of the Affected Vehicles and the Volkswagen and Audi brands that were either false or misleading.

1523. Volkswagen owed Plaintiff a duty to disclose the true safety, cleanliness, efficiency and reliability of the Affected Vehicles and the devaluing of environmental cleanliness and integrity at Volkswagen, because Volkswagen:

    a.    Possessed exclusive knowledge that it valued profits over environmental cleanliness, efficiency, and lawfulness, and that it was manufacturing, selling and distributing vehicles throughout the United States that did not comply with EPA regulations;

-378-

b.  Intentionally concealed the foregoing from Plaintiff; and/or

c.  Made incomplete representations about the safety, cleanliness, efficiency and reliability of the Affected Vehicles generally, and the use of the "defeat device" and true nature of the CleanDiesel engine system in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

1524.  Because Volkswagen fraudulently concealed the "defeat device" and the true cleanliness and performance of the CleanDiesel engine system, resulting in a raft of negative publicity once the use of the "defeat device" and true characteristics of the CleanDiesel engine system finally began to be disclosed, the value of the Affected Vehicles has greatly diminished.  In light of the stigma attached to those vehicles by Volkswagen's conduct, they are now worth significantly less than they otherwise would be.

1525.  Volkswagen's fraudulent use of the "defeat device" and its concealment of the true characteristics of the CleanDiesel engine system were material to Plaintiff and the Oklahoma Class.  A vehicle made by a reputable manufacturer of environmentally friendly vehicles is worth more than an otherwise comparable vehicle made by a disreputable and dishonest manufacturer of polluting vehicles that conceals the amount its cars pollutes rather than make environmentally friendly vehicles.

1526.  Plaintiff and the Oklahoma Class suffered ascertainable loss caused by Volkswagen's misrepresentations and its concealment of and failure to disclose material information.

1527.  Volkswagen's unlawful acts and practices complained of herein affect the public interest.

1528.  As a direct and proximate result of Volkswagen's violations of the Oklahoma CPA, Plaintiff and the Oklahoma Class have suffered injury-in-fact and/or actual damage.

-379-

1529. Volkswagen's conduct as alleged herein was unconscionable because (1) Volkswagen, knowingly or with reason to know, took advantage of consumers reasonably unable to protect their interests because of their age, physical infirmity, ignorance, illiteracy, inability to understand the language of an agreement or similar factor; (2) at the time the consumer transaction was entered into, Volkswagen knew or had reason to know that price grossly exceeded the price at which similar vehicles were readily obtainable in similar transactions by like consumers; and (3) Volkswagen knew or had reason to know that the transaction Volkswagen induced the consumer to enter into was excessively one-sided in favor of Volkswagen.

1530. Because Volkswagen's unconscionable conduct caused injury to Oklahoma Subclass Members, the Oklahoma Subclass seeks recovery of actual damages, discretionary penalties up to $2,000 per violation, punitive damages, and reasonable attorneys' fees, under OKLA. STAT. TIT. 15 § 761.1. The Oklahoma Subclass further seeks an order enjoining Volkswagen's unfair and/or deceptive acts or practices, and any other just and proper relief available under the Oklahoma CPA.

### COUNT II
### FRAUD BY CONCEALMENT

1531. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1532. This claim is brought on behalf of the Oklahoma Subclass.

1533. Volkswagen intentionally concealed and suppressed material facts concerning the quality of the Affected Vehicles. As alleged in this complaint, notwithstanding references in the very model names of the subject vehicles as "Clean Diesel," or to their engines as "TDI Clean Diesel" engines, Volkswagen engaged in a secret scheme to evade federal and state vehicle emissions standards by installing software designed to conceal its vehicles' emissions of the pollutant nitrogen oxide, which contributes to the creation of ozone and smog. The software installed on the vehicles at issue was designed nefariously to kick-in during emissions certification

-380-

testing, such that the vehicles would show far lower emissions than when actually operating on the road.  The result was what Volkswagen intended: vehicles passed emissions certifications by way of deliberately induced false readings.  Reportedly, Volkswagen's deliberate, secret scheme resulted in noxious emissions from these vehicles up to 40 times applicable standards.

1534.  Plaintiffs and Class members reasonably relied upon Volkswagen's false representations.  They had no way of knowing that Volkswagen's representations were false and gravely misleading.  As alleged herein, Volkswagen employed extremely sophisticated methods of deception.  Plaintiffs and Class members did not, and could not, unravel Volkswagen's deception on their own.

1535.  Volkswagen concealed and suppressed material facts concerning what is evidently the true culture of Volkswagen—one characterized by an emphasis on profits and sales above compliance with federal and state clean air laws, and emissions regulations that are meant to protect the public and consumers.  It also emphasized profits and sales over the trust that Plaintiffs and Class members placed in its representations.  As one customer, Priya Shah, put it in a quotation cited by the *Los Angeles Times* in a September 18, 2015 article, "It's just a blatant disregard and intentional manipulation of the system.  That's just a whole other level of not only lying to the government, but also lying to your consumer.  People buy diesel cars from Volkswagen because they feel they are clean diesel cars."  In the words of Ms. Shah, which no doubt reflect the sentiments of all other CleanDiesel vehicle buyers, "I don't want to be spewing noxious gases into the environment."

1536.  Necessarily, Volkswagen also took steps to ensure that its employees did not reveal the details of its scheme to regulators or consumers, including Plaintiffs and Class members.  Volkswagen did so in order to boost the reputations of its vehicles and to falsely assure purchasers and lessors of its vehicles, including previously owned vehicles, that Volkswagen is a reputable manufacturer that complies with applicable

-381-

law, including federal and state clean air laws and emissions regulations, and that its vehicles likewise comply with applicable law and regulations.  Volkswagen's false representations were material to consumers, both because they concerned the quality of the Affected Vehicles, including their compliance with applicable federal and state laws and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles.  As Volkswagen well knew, its customers, including Plaintiffs and Class members, highly valued that the vehicles they were purchasing or leasing were *clean* diesel cars, and they paid accordingly.

1537.  Volkswagen had a duty to disclose its emissions scheme because knowledge of the scheme and its details were known and/or accessible only to Volkswagen, because Volkswagen had exclusive knowledge as to implementation and maintenance of its scheme, and because Volkswagen knew the facts were not known to or reasonably discoverable by Plaintiffs or Class members.  Volkswagen also had a duty to disclose because it made general affirmative representations about the qualities of its vehicles with respect to emissions standards, starting with references to them as *clean* diesel cars, or cars with *clean* diesel engines, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding its emissions scheme, the actual emissions of its vehicles, its actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and its actual practices with respect to the vehicles at issue.  Having volunteered to provide information to Plaintiffs, Volkswagen had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiffs and Class members.  Whether a manufacturer's products comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are

-382-

1  material concerns to a consumer, including with respect to the emissions certification

2  testing their vehicles must pass.  Volkswagen represented to Plaintiffs and Class

3  members that they were purchasing *clean* diesel vehicles, and certification testing

4  appeared to confirm this—except that, secretly, Volkswagen had subverted the testing

5  process thoroughly.

6      1538. Volkswagen actively concealed and/or suppressed these material facts, in

7  whole or in part, to pad and protect its profits and to avoid the perception that its

8  vehicles did not or could not comply with federal and state laws governing clean air

9  and emissions, which perception would hurt the brand's image and cost Volkswagen

10  money, and it did so at the expense of Plaintiffs and Class members.

11      1539. On information and belief, Volkswagen has still not made full and

12  adequate disclosures, and continues to defraud Plaintiffs and Class members by

13  concealing material information regarding the emissions qualities of its vehicles and

14  its emissions scheme.

15      1540. Plaintiffs and Class members were unaware of the omitted material facts

16  referenced herein, and they would not have acted as they did if they had known of the

17  concealed and/or suppressed facts, in that they would not have purchased purportedly

18  "clean" diesel cars manufactured by Volkswagen, and/or would not have continued to

19  drive their heavily polluting vehicles, or would have taken other affirmative steps in

20  light of the information concealed from them.  Plaintiffs' and Class Members' actions

21  were justified.  Volkswagen was in exclusive control of the material facts, and such

22  facts were not known to the public, Plaintiffs, or Class members.

23      1541. Because of the concealment and/or suppression of the facts, Plaintiffs and

24  Class members have sustained damage because they own vehicles that are diminished

25  in value as a result of Volkswagen's concealment of the true quality and quantity of

26  those vehicles' emissions and Volkswagen's failure to timely disclose the actual

27  emissions qualities and quantities of hundreds of thousands of Volkswagen- and Audi-

28

-383-

branded vehicles and the serious issues engendered by Volkswagen's corporate policies.  Had Plaintiffs and Class members been aware of Volkswagen's emissions scheme, and the company's callous disregard for compliance with applicable federal and state laws and regulations, Plaintiffs and Class members who purchased or leased new or previously owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

1542.  The value of Plaintiffs' and Class Members' vehicles has diminished as a result of Volkswagen's fraudulent concealment of its emissions scheme, which has greatly tarnished the Volkswagen and Audi brand names attached to Plaintiffs' and Class members' vehicles and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.  In addition, Class members are entitled to damages for loss of use, costs of additional fuel, costs of unused warranties, and other damages to be proved at trial.

1543.  Accordingly, Volkswagen is liable to Plaintiffs and Class members for damages in an amount to be proven at trial.

1544.  Volkswagen's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and Class members' rights and the representations that Volkswagen made to them, in order to enrich Volkswagen.  To the extent permitted under applicable law, Volkswagen's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**COUNT III**
**BREACH OF CONTRACT**
**(BASED ON OKLAHOMA LAW)**

1545.  Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

-384-

1546. Plaintiff brings this Count on behalf of new vehicle or certified pre-owned vehicle purchasers in the Oklahoma Subclass.

1547. Volkswagen's misrepresentations and omissions alleged herein, including Volkswagen's failure to disclose the existence of the CleanDiesel engine system's defect and/or defective design as alleged herein, caused Plaintiff and the other Oklahoma Subclass members to make their purchases or leases of their Affected Vehicles.  Absent those misrepresentations and omissions, Plaintiff and the other Oklahoma Subclass members would not have purchased or leased these Affected Vehicles, would not have purchased or leased these Affected Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain the CleanDiesel engine system and which were not marketed as including such a system.  Accordingly, Plaintiff and the other Oklahoma Subclass members overpaid for their Affected Vehicles and did not receive the benefit of their bargain.

1548. Each and every sale or lease of an Affected Vehicle by an authorized Volkswagen dealer constitutes a contract between Volkswagen and the purchaser or lessee.  Volkswagen breached these contracts by selling or leasing Plaintiff and the other Oklahoma Subclass members defective Affected Vehicles and by misrepresenting or failing to disclose the existence of the CleanDiesel engine system's defect and/or defective design, including information known to Volkswagen rendering each Affected Vehicle non EPA-compliant, and thus less valuable, than vehicles not equipped with a CleanDiesel engine system.

1549. As a direct and proximate result of Volkswagen's breach of contract, Plaintiff and the Oklahoma Subclass have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

010549-11  816608 V1

**MM.  Claims Brought on Behalf of the Oregon Subclass**

## COUNT I
## VIOLATION OF THE OREGON UNLAWFUL TRADE PRACTICES ACT
### (OR. REV. STAT. §§ 646.605, *et seq.*)

1550. Plaintiff Kyle Boylan ("Plaintiff," for purposes of all Oregon Subclass Counts) incorporates by reference all preceding allegations as though fully set forth herein.

1551. This claim is brought only on behalf of the Oregon Subclass.

1552. Volkswagen is a person within the meaning of OR. REV. STAT. § 646.605(4).

1553. The Affected Vehicles at issue are "goods" obtained primarily for personal family or household purposes within the meaning of OR. REV. STAT. § 646.605(6).

1554. The Oregon Unfair Trade Practices Act ("Oregon UTPA") prohibits a person from, in the course of the person's business, doing any of the following: "(e) Represent[ing] that … goods … have … characteristics … uses, benefits, … or qualities that they do not have; (g) Represent[ing] that … goods … are of a particular standard [or] quality … if they are of another; (i) Advertis[ing] … goods or services with intent not to provide them as advertised;" and "(u) engag[ing] in any other unfair or deceptive conduct in trade or commerce."  OR. REV. STAT. § 646.608(1).

1555. Volkswagen engaged in unlawful trade practices, including representing that Affected Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that Affected Vehicles are of a particular standard and quality when they are not; advertising Affected Vehicles with the intent not to sell them as advertised; and engaging in other unfair or deceptive acts.

1556. Volkswagen also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such

-386-

concealment, suppression or omission, in connection with the sale of Affected Vehicles.

1557. Volkswagen's actions as set forth above occurred in the conduct of trade or commerce.

1558. Volkswagen has known of its use of the "defeat device" and the true nature of its CleanDiesel engine system for at least six years, but concealed all of that information until recently.

1559. Volkswagen was also aware that it valued profits over environmental cleanliness, efficiency, and lawfulness, and that it was manufacturing, selling and distributing vehicles throughout the United States that did not comply with EPA regulations. Volkswagen concealed this information as well.

1560. By failing to disclose and by actively concealing the "defeat device" and the true cleanliness and performance of the CleanDiesel engine system, by marketing its vehicles as safe, reliable, environmentally clean, efficient, and of high quality, and by presenting itself as a reputable manufacturer that valued safety, environmental cleanliness and efficiency, and stood behind its vehicles after they were sold, Volkswagen engaged in deceptive business practices in violation of the Oregon UTPA.

1561. In the course of Volkswagen's business, it willfully failed to disclose and actively concealed the use of the "defeat device" and true cleanliness and efficiency of the CleanDiesel engine system and serious defects discussed above. Volkswagen compounded the deception by repeatedly asserting that the Affected Vehicles were safe, reliable, environmentally clean, efficient, and of high quality, and by claiming to be a reputable manufacturer that valued safety, environmental cleanliness and efficiency, and stood behind its vehicles once they are on the road.

1562. Volkswagen's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff, about the true cleanliness

-387-

and efficiency of the CleanDiesel engine system, the quality of the Volkswagen and Audi brands, the devaluing of environmental cleanliness and integrity at Volkswagen, and the true value of the Affected Vehicles.

1563. Volkswagen intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with an intent to mislead Plaintiff and the Oregon Subclass.

1564. Volkswagen knew or should have known that its conduct violated the Oregon UTPA.

1565. As alleged above, Volkswagen made material statements about the safety, cleanliness, efficiency and reliability of the Affected Vehicles that were either false or misleading.

1566. Volkswagen owed Plaintiff a duty to disclose the true safety, cleanliness, efficiency and reliability of the Affected Vehicles, and the devaluing of environmental cleanliness and integrity at Volkswagen, because Volkswagen:

    a.    Possessed exclusive knowledge that it valued profits over environmental cleanliness, efficiency, and lawfulness, and that it was manufacturing, selling and distributing vehicles throughout the United States that did not comply with EPA regulations;

    b.    Intentionally concealed the foregoing from Plaintiff; and/or

    c.    Made incomplete representations about the safety, cleanliness, efficiency and reliability of the Affected Vehicles generally, and the use of the "defeat device" and true nature of the CleanDiesel engine system in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

1567. Because Volkswagen fraudulently concealed the "defeat device" and the true cleanliness and performance of the CleanDiesel engine system, resulting in a raft of negative publicity once the use of the "defeat device" and true characteristics of the CleanDiesel engine system finally began to be disclosed, the value of the Affected Vehicles has greatly diminished.  In light of the stigma attached to those vehicles by

-388-

Volkswagen's conduct, they are now worth significantly less than they otherwise would be.

1568. Volkswagen's fraudulent use of the "defeat device" and its concealment of the true characteristics of the CleanDiesel engine system were material to Plaintiff and the Oregon Subclass. A vehicle made by a reputable manufacturer of environmentally friendly vehicles is worth more than an otherwise comparable vehicle made by a disreputable and dishonest manufacturer of polluting vehicles that conceals the amount its cars pollutes rather than make environmentally friendly vehicles.

1569. Plaintiff and the Oregon Subclass suffered ascertainable loss caused by Volkswagen's misrepresentations and its concealment of and failure to disclose material information.

1570. Volkswagen had an ongoing duty to all Volkswagen and Audi customers to refrain from unfair and deceptive acts or practices under the Oregon UTPA. All owners of Affected Vehicles suffered ascertainable loss in the form of the diminished value of their vehicles as a result of Volkswagen's deceptive and unfair acts and practices that occurred in the course of Volkswagen's business.

1571. Volkswagen's violations present a continuing risk to Plaintiff as well as to the general public. Volkswagen's unlawful acts and practices complained of herein affect the public interest.

1572. As a direct and proximate result of Volkswagen's violations of the Oregon UTPA, Plaintiff and the Oregon Subclass have suffered injury-in-fact and/or actual damage.

1573. Plaintiff and the Oregon Subclass are entitled to recover the greater of actual damages or $200 pursuant to OR. REV. STAT. § 646.638(1). Plaintiff and the Oregon Subclass are also entitled to punitive damages because Volkswagen engaged in conduct amounting to a particularly aggravated, deliberate disregard of the rights of others.

## COUNT II
## FRAUD BY CONCEALMENT

1574. Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

1575. This claim is brought on behalf of the Oregon Subclass.

1576. Volkswagen intentionally concealed and suppressed material facts concerning the quality of the Affected Vehicles.  As alleged in this Complaint, notwithstanding references in the very model names of the subject vehicles as "Clean Diesel," or to their engines as "TDI Clean Diesel" engines, Volkswagen engaged in a secret scheme to evade federal and state vehicle emissions standards by installing software designed to conceal its vehicles' emissions of the pollutant nitrogen oxide, which contributes to the creation of ozone and smog.  The software installed on the vehicles at issue was designed nefariously to kick-in during emissions certification testing, such that the vehicles would show far lower emissions than when actually operating on the road.  The result was what Volkswagen intended: vehicles passed emissions certifications by way of deliberately induced false readings.  Reportedly, Volkswagen's deliberate, secret scheme resulted in noxious emissions from these vehicles at up to 40 times applicable standards.

1577. Plaintiffs and Class members reasonably relied upon Volkswagen's false representations.  They had no way of knowing that Volkswagen's representations were false and gravely misleading.  As alleged herein, Volkswagen employed extremely sophisticated methods of deception.  Plaintiffs and Class members did not, and could not, unravel Volkswagen's deception on their own.

1578. Volkswagen concealed and suppressed material facts concerning what is evidently the true culture of Volkswagen—one characterized by an emphasis on profits and sales above compliance with federal and state clean air laws, and emissions regulations that are meant to protect the public and consumers.  It also emphasized profits and sales over the trust that Plaintiffs and Class members placed in its

-390-

representations.  As one customer, Priya Shah, put it in a quotation cited by the *Los Angeles Times* in a September 18, 2015 article, "It's just a blatant disregard and intentional manipulation of the system.  That's just a whole other level of not only lying to the government, but also lying to your consumer.  People buy diesel cars from Volkswagen because they feel they are clean diesel cars."  In the words of Ms. Shah, which no doubt reflect the sentiments of all other CleanDiesel vehicle buyers, "I don't want to be spewing noxious gases into the environment."

1579.  Necessarily, Volkswagen also took steps to ensure that its employees did not reveal the details of its scheme to regulators or consumers, including Plaintiffs and Class members.  Volkswagen did so in order to boost the reputations of its vehicles and to falsely assure purchasers and lessors of its vehicles, including previously owned vehicles, that Volkswagen is a reputable manufacturer that complies with applicable law, including federal and state clean air laws and emissions regulations, and that its vehicles likewise comply with applicable laws and regulations.  Volkswagen's false representations were material to consumers, both because they concerned the quality of the Affected Vehicles, including their compliance with applicable federal and state laws and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles.  As Volkswagen well knew, its customers, including Plaintiffs and Class members, highly valued that the vehicles they were purchasing or leasing were *clean* diesel cars, and they paid accordingly.

1580.  Volkswagen had a duty to disclose its emissions scheme because knowledge of the scheme and its details were known and/or accessible only to Volkswagen, because Volkswagen had exclusive knowledge as to implementation and maintenance of its scheme, and because Volkswagen knew the facts were not known to or reasonably discoverable by Plaintiffs or Class members.  Volkswagen also had a duty to disclose because it made general affirmative representations about the qualities

of its vehicles with respect to emissions standards, starting with references to them as *clean* diesel cars, or cars with *clean* diesel engines, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding its emissions scheme, the actual emissions of its vehicles, its actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and its actual practices with respect to the vehicles at issue.  Having volunteered to provide information to Plaintiffs, Volkswagen had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiffs and Class members.  Whether a manufacturer's products comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certification testing their vehicles must pass.  Volkswagen represented to Plaintiffs and Class members that they were purchasing *clean* diesel vehicles, and certification testing appeared to confirm this—except that, secretly, Volkswagen had subverted the testing process thoroughly.

1581.  Volkswagen actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Volkswagen money, and it did so at the expense of Plaintiffs and Class members.

1582.  On information and belief, Volkswagen has still not made full and adequate disclosures, and continues to defraud Plaintiffs and Class members by concealing material information regarding the emission qualities of its vehicles and its emissions scheme.

-392-

1583. Plaintiffs and Class members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly "clean" diesel cars manufactured by Volkswagen, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them.  Plaintiffs' and Class members' actions were justified.  Volkswagen was in exclusive control of the material facts, and such facts were not known to the public, Plaintiffs, or Class members.

1584. Because of the concealment and/or suppression of the facts, Plaintiffs and Class members have sustained damage because they own vehicles that are diminished in value as a result of Volkswagen's concealment of the true quality and quantity of those vehicles' emissions and Volkswagen's failure to timely disclose the actual emission qualities and quantities of hundreds of thousands of Volkswagen- and Audi-branded vehicles and the serious issues engendered by Volkswagen's corporate policies.  Had Plaintiffs and Class members been aware of Volkswagen's emissions scheme, and the company's callous disregard for compliance with applicable federal and state laws and regulations, Plaintiffs and Class members who purchased or leased new or previously owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

1585. The value of Plaintiffs' and Class members' vehicles has diminished as a result of Volkswagen's fraudulent concealment of its emissions scheme, which has greatly tarnished the Volkswagen and Audi brand names attached to Plaintiffs' and Class members' vehicles and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.  In addition, Class members are entitled to damages for loss of use, costs of additional fuel, costs of unused warranties, and other damages to be proved at trial.

010549-11  816608 V1

1

2

1586. Accordingly, Volkswagen is liable to Plaintiffs and Class members for damages in an amount to be proven at trial.

3

4

5

6

7

8

1587. Volkswagen's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and Class members' rights and the representations that Volkswagen made to them, in order to enrich Volkswagen.  To the extent permitted under applicable law, Volkswagen's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

9

10

**COUNT III**
**BREACH OF CONTRACT**
**(BASED ON OREGON LAW)**

11

12

1588. Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

13

14

1589. Plaintiff brings this Count on behalf of new vehicle or certified pre-owned vehicle purchasers in the Oregon Subclass.

15

16

17

18

19

20

21

22

23

24

25

1590. Volkswagen's misrepresentations and omissions alleged herein, including Volkswagen's failure to disclose the existence of the CleanDiesel engine system's defect and/or defective design as alleged herein, caused Plaintiff and the other Oregon Subclass members to make their purchases or leases of their Affected Vehicles. Absent those misrepresentations and omissions, Plaintiff and the other Oregon Subclass members would not have purchased or leased these Affected Vehicles, would not have purchased or leased these Affected Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain the CleanDiesel engine system and which were not marketed as including such a system.  Accordingly, Plaintiff and the other Oregon Subclass members overpaid for their Affected Vehicles and did not receive the benefit of their bargain.

26

27

1591. Each and every sale or lease of an Affected Vehicle by an authorized Volkswagen dealer constitutes a contract between Volkswagen and the purchaser or

28

-394-

lessee.  Volkswagen breached these contracts by selling or leasing Plaintiff and the other Oregon Subclass members defective Affected Vehicles and by misrepresenting or failing to disclose the existence of the CleanDiesel engine system's defect and/or defective design, including information known to Volkswagen, rendering each Affected Vehicle non-EPA-compliant, and thus less valuable, than vehicles not equipped with a CleanDiesel engine system.

1592. As a direct and proximate result of Volkswagen's breach of contract, Plaintiff and the Oregon Subclass have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## NN.   Claims Brought on Behalf of the Pennsylvania Subclass

<div align="center">

**COUNT I**
**VIOLATION OF THE PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW**
**(73 P.S. § 201-1, *et seq.*)**

</div>

1593. Plaintiff Ralph Mendenhall ("Plaintiff," for purposes of all Pennsylvania Subclass Counts) incorporates by reference all preceding allegations as though fully set forth herein.

1594. This claim is brought only on behalf of the Pennsylvania Subclass.

1595. Plaintiffs purchased or leased their Affected Vehicles primarily for personal, family or household purposes within the meaning of 73 P.S. § 201-9.2.

1596. All of the acts complained of herein were perpetrated by Volkswagen in the course of trade or commerce within the meaning of 73 P.S. § 201-2(3).

1597. The Pennsylvania Unfair Trade Practices and Consumer Protection Law ("Pennsylvania CPL") prohibits unfair or deceptive acts or practices, including:  (i) "Representing that goods or services have … characteristics, ….  Benefits or qualities that they do not have;" (ii) "Representing that goods or services are of a particular standard, quality or grade … if they are of another;:" (iii) "Advertising goods or services with intent not to sell them as advertised;" and (iv) "Engaging in any other

<div align="center">-395-</div>

fraudulent or deceptive conduct which creates a likelihood of confusion or misunderstanding." 73 P.S. § 201-2(4).

1598. Volkswagen engaged in unlawful trade practices, including representing that Affected Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that Affected Vehicles are of a particular standard and quality when they are not; advertising Affected Vehicles with the intent not to sell them as advertised; and engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.

1599. In the course of its business, Volkswagen installed the "defeat device" and concealed that its CleanDiesel systems failed EPA regulations as described herein and otherwise engaged in activities with a tendency or capacity to deceive. Volkswagen also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of Affected Vehicles.

1600. Volkswagen has known of its use of the "defeat device" and the true nature of its CleanDiesel engine system for at least six years, but concealed all of that information until recently.

1601. Volkswagen was also aware that it valued profits over environmental cleanliness, efficiency, and lawfulness, and that it was manufacturing, selling and distributing vehicles throughout the United States that did not comply with EPA regulations. Volkswagen concealed this information as well.

1602. By failing to disclose and by actively concealing the "defeat device" and the true cleanliness and performance of the CleanDiesel engine system, by marketing its vehicles as safe, reliable, environmentally clean, efficient, and of high quality, and by presenting itself as a reputable manufacturer that valued safety, environmental cleanliness and efficiency, and stood behind its vehicles after they were sold,

-396-

Volkswagen engaged in unfair and deceptive business practices in violation of the Pennsylvania CPL.

1603. In the course of Volkswagen's business, it willfully failed to disclose and actively concealed the use of the "defeat device" and true cleanliness and efficiency of the CleanDiesel engine system and serious defects discussed above.  Volkswagen compounded the deception by repeatedly asserting that the Affected Vehicles were safe, reliable, environmentally clean, efficient, and of high quality, and by claiming to be a reputable manufacturer that valued safety, environmental cleanliness and efficiency, and stood behind its vehicles once they are on the road.

1604. Volkswagen's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff, about the true cleanliness and efficiency of the CleanDiesel engine system, the quality of the Volkswagen and Audi brands, the devaluing of environmental cleanliness and integrity at Volkswagen, and the true value of the Affected Vehicles.

1605. Volkswagen intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with an intent to mislead Plaintiff and the Pennsylvania Subclass.

1606. Volkswagen knew or should have known that its conduct violated the Pennsylvania CPL.

1607. As alleged above, Volkswagen made material statements about the safety, cleanliness, efficiency and reliability of the Affected Vehicles and the Volkswagen and Audi brands that were either false or misleading.

1608. Volkswagen owed Plaintiffs a duty to disclose the true safety, cleanliness, efficiency and reliability of the Affected Vehicles and the devaluing of environmental cleanliness and integrity at Volkswagen, because Volkswagen:

    a.    Possessed exclusive knowledge that it valued profits over environmental cleanliness, efficiency, and lawfulness, and that it was manufacturing, selling and distributing vehicles throughout the United States that did not comply with EPA regulations;

-397-

b.   Intentionally concealed the foregoing from Plaintiffs; and/or

c.   Made incomplete representations about the safety, cleanliness, efficiency and reliability of the Affected Vehicles generally, and the use of the "defeat device" and true nature of the CleanDiesel engine system in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

1609. Because Volkswagen fraudulently concealed the "defeat device" and the true cleanliness and performance of the CleanDiesel engine system, resulting in a raft of negative publicity once the use of the "defeat device" and true characteristics of the CleanDiesel engine system finally began to be disclosed, the value of the Affected Vehicles has greatly diminished.  In light of the stigma attached to those vehicles by Volkswagen's conduct, they are now worth significantly less than they otherwise would be.

1610. Volkswagen's fraudulent use of the "defeat device" and its concealment of the true characteristics of the CleanDiesel engine system were material to Plaintiffs and the Pennsylvania Subclass.  A vehicle made by a reputable manufacturer of environmentally friendly vehicles is worth more than an otherwise comparable vehicle made by a disreputable and dishonest manufacturer of polluting vehicles that conceals the amount its cars pollutes rather than make environmentally friendly vehicles.

1611. Plaintiffs and the Pennsylvania Subclass suffered ascertainable loss caused by Volkswagen's misrepresentations and its concealment of and failure to disclose material information.

1612. Volkswagen had an ongoing duty to all Volkswagen and Audi customers to refrain from unfair and deceptive acts or practices under the Pennsylvania CPL.  All owners of Affected Vehicles suffered ascertainable loss in the form of the diminished value of their vehicles as a result of Volkswagen's deceptive and unfair acts and practices that occurred in the course of Volkswagen's business.

1613. Volkswagen's violations present a continuing risk to Plaintiffs as well as to the general public.  Volkswagen's unlawful acts and practices complained of herein affect the public interest.

1614. As a direct and proximate result of Volkswagen's violations of the Pennsylvania CPL, Plaintiffs and the Pennsylvania Subclass have suffered injury-in-fact and/or actual damage.

1615. Volkswagen is liable to Plaintiffs and the Pennsylvania Subclass for treble their actual damages or $100, whichever is greater, and attorneys' fees and costs.  73 P.S. § 201-9.2(a).  Plaintiffs and the Pennsylvania Subclass are also entitled to an award of punitive damages given that Volkswagen's conduct was malicious, wanton, willful, oppressive, or exhibited a reckless indifference to the rights of others.

## COUNT II
## FRAUD BY CONCEALMENT

1616. Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

1617. This claim is brought on behalf of the Pennsylvania Subclass.

1618. Volkswagen intentionally concealed and suppressed material facts concerning the quality of the Affected Vehicles.  As alleged in this Complaint, notwithstanding references in the very model names of the subject vehicles as "Clean Diesel," or to their engines as "TDI Clean Diesel" engines, Volkswagen engaged in a secret scheme to evade federal and state vehicle emissions standards by installing software designed to conceal its vehicles' emissions of the pollutant nitrogen oxide, which contributes to the creation of ozone and smog.  The software installed on the vehicles at issue was designed nefariously to kick-in during emissions certification testing, such that the vehicles would show far lower emissions than when actually operating on the road.  The result was what Volkswagen intended: vehicles passed emissions certifications by way of deliberately induced false readings.  Reportedly,

-399-

Volkswagen's deliberate, secret scheme resulted in noxious emissions from these vehicles at up to 40 times applicable standards.

1619. Plaintiffs and Class members reasonably relied upon Volkswagen's false representations. They had no way of knowing that Volkswagen's representations were false and gravely misleading. As alleged herein, Volkswagen employed extremely sophisticated methods of deception. Plaintiffs and Class members did not, and could not, unravel Volkswagen's deception on their own.

1620. Volkswagen concealed and suppressed material facts concerning what is evidently the true culture of Volkswagen—one characterized by an emphasis on profits and sales above compliance with federal and state clean air laws, and emissions regulations that are meant to protect the public and consumers. It also emphasized profits and sales over the trust that Plaintiffs and Class members placed in its representations. As one customer, Priya Shah, put it in a quotation cited by the *Los Angeles Times* in a September 18, 2015 article, "It's just a blatant disregard and intentional manipulation of the system. That's just a whole other level of not only lying to the government, but also lying to your consumer. People buy diesel cars from Volkswagen because they feel they are clean diesel cars." In the words of Ms. Shah, which no doubt reflect the sentiments of all other CleanDiesel vehicle buyers, "I don't want to be spewing noxious gases into the environment."

1621. Necessarily, Volkswagen also took steps to ensure that its employees did not reveal the details of its scheme to regulators or consumers, including Plaintiffs and Class members. Volkswagen did so in order to boost the reputations of its vehicles and to falsely assure purchasers and lessors of its vehicles, including previously owned vehicles, that Volkswagen is a reputable manufacturer that complies with applicable law, including federal and state clean air laws and emissions regulations, and that its vehicles likewise comply with applicable law and regulations. Volkswagen's false representations were material to consumers, both because they concerned the quality

-400-

of the Affected Vehicles, including their compliance with applicable federal and state laws and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles.  As Volkswagen well knew, its customers, including Plaintiffs and Class members, highly valued that the vehicles they were purchasing or leasing were *clean* diesel cars, and they paid accordingly.

1622. Volkswagen had a duty to disclose its emissions scheme because knowledge of the scheme and its details were known and/or accessible only to Volkswagen, because Volkswagen had exclusive knowledge as to implementation and maintenance of its scheme, and because Volkswagen knew the facts were not known to or reasonably discoverable by Plaintiffs or Class members.  Volkswagen also had a duty to disclose because it made general affirmative representations about the qualities of its vehicles with respect to emissions standards, starting with references to them as *clean* diesel cars, or cars with *clean* diesel engines, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding its emissions scheme, the actual emissions of its vehicles, its actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and its actual practices with respect to the vehicles at issue.  Having volunteered to provide information to Plaintiffs, Volkswagen had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiffs and Class members.  Whether a manufacturer's products comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certification testing their vehicles must pass.  Volkswagen represented to Plaintiffs and Class members that they were purchasing *clean* diesel vehicles, and certification testing

appeared to confirm this—except that, secretly, Volkswagen had subverted the testing process thoroughly.

1623. Volkswagen actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Volkswagen money, and it did so at the expense of Plaintiffs and Class members.

1624. On information and belief, Volkswagen has still not made full and adequate disclosures, and continues to defraud Plaintiffs and Class members by concealing material information regarding the emission qualities of its vehicles and its emissions scheme.

1625. Plaintiffs and Class members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly "clean" diesel cars manufactured by Volkswagen, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them.  Plaintiffs' and Class members' actions were justified.  Volkswagen was in exclusive control of the material facts, and such facts were not known to the public, Plaintiffs, or Class members.

1626. Because of the concealment and/or suppression of the facts, Plaintiffs and Class members have sustained damage because they own vehicles that are diminished in value as a result of Volkswagen's concealment of the true quality and quantity of those vehicles' emissions and Volkswagen's failure to timely disclose the actual emission qualities and quantities of hundreds of thousands of Volkswagen- and Audi-branded vehicles and the serious issues engendered by Volkswagen's corporate policies.  Had Plaintiffs and Class members been aware of Volkswagen's emissions scheme, and the company's callous disregard for compliance with applicable federal

-402-

and state laws and regulations, Plaintiffs and Class members who purchased or leased new or previously owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

1627. The value of Plaintiffs' and Class members' vehicles has diminished as a result of Volkswagen's fraudulent concealment of its emissions scheme, which has greatly tarnished the Volkswagen and Audi brand names attached to Plaintiffs' and Class members' vehicles and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles. In addition, Class members are entitled to damages for loss of use, costs of additional fuel, costs of unused warranties, and other damages to be proved at trial.

1628. Accordingly, Volkswagen is liable to Plaintiffs and Class members for damages in an amount to be proven at trial.

1629. Volkswagen's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and Class members' rights and the representations that Volkswagen made to them, in order to enrich Volkswagen. To the extent permitted under applicable law, Volkswagen's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**COUNT III**
**BREACH OF CONTRACT**
**(BASED ON PENNSYLVANIA LAW)**

1630. Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

1631. Plaintiff brings this Count on behalf of new vehicle or certified pre-owned vehicle purchasers in the Pennsylvania Subclass.

1632. Volkswagen's misrepresentations and omissions alleged herein, including Volkswagen's failure to disclose the existence of the CleanDiesel engine system's

-403-

defect and/or defective design as alleged herein, caused Plaintiff and the other Pennsylvania Subclass members to make their purchases or leases of their Affected Vehicles.  Absent those misrepresentations and omissions, Plaintiff and the other Pennsylvania Subclass members would not have purchased or leased these Affected Vehicles, would not have purchased or leased these Affected Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain the CleanDiesel engine system and which were not marketed as including such a system.  Accordingly, Plaintiff and the other Pennsylvania Subclass members overpaid for their Affected Vehicles and did not receive the benefit of their bargain.

1633. Each and every sale or lease of an Affected Vehicle by an authorized Volkswagen dealer constitutes a contract between Volkswagen and the purchaser or lessee.  Volkswagen breached these contracts by selling or leasing Plaintiff and the other Pennsylvania Subclass members defective Affected Vehicles and by misrepresenting or failing to disclose the existence of the CleanDiesel engine system's defect and/or defective design, including information known to Volkswagen rendering each Affected Vehicle non-EPA-compliant, and thus less valuable, than vehicles not equipped with a CleanDiesel engine system.

1634. As a direct and proximate result of Volkswagen's breach of contract, Plaintiff and the Pennsylvania Subclass have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

010549-11  816608 V1

1

**OO.  Claims Brought on Behalf of the Rhode Island Subclass**

2

<div align="center">

**COUNT I**
**VIOLATION OF THE RHODE ISLAND UNFAIR TRADE PRACTICES**
**AND CONSUMER PROTECTION ACT**
**(R.I. GEN. LAWS § 6-13.1, *ET SEQ*.)**

</div>

3

4

5

1635. Plaintiff Alexander Baittinger ("Plaintiff," for purposes of all Rhode Island Subclass Counts) incorporates by reference all preceding allegations as though fully set forth herein.

6

7

1636. This claim is brought on behalf of the Rhode Island Subclass.

8

1637. Plaintiffs are persons who purchased or leased one or more Affected Vehicles primarily for personal, family, or household purposes within the meaning of R.I. GEN. LAWS § 6-13.1-5.2(a).

9

10

11

1638. Rhode Island's Unfair Trade Practices and Consumer Protection Act ("Rhode Island CPA") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce" including:  "(v) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have"; "(vii) Representing that goods or services are of a particular standard, quality, or grade …, if they are of another"; "(ix) Advertising goods or services with intent not to sell them as advertised"; "(xii) Engaging in any other conduct that similarly creates a likelihood of confusion or of misunderstanding"; "(xiii) Engaging in any act or practice that is unfair or deceptive to the consumer"; and "(xiv) Using any other methods, acts or practices which mislead or deceive members of the public in a material respect."  R.I. GEN. LAWS § 6-13.1-1(6).

12

13

14

15

16

17

18

19

20

21

22

1639. Volkswagen engaged in unlawful trade practices, including:  (1) representing that the Affected Vehicles have characteristics, uses, benefits, and qualities which they do not have; (2) representing that the Affected Vehicles are of a particular standard and quality when they are not; (3) advertising the Affected Vehicles with the intent not to sell them as advertised; and (4) otherwise engaging in conduct that is unfair or deceptive and likely to deceive.

23

24

25

26

27

28

<div align="center">-405-</div>

1640. Volkswagen's actions as set forth above occurred in the conduct of trade or commerce.

1641. In the course of its business, Volkswagen installed the "defeat device" and concealed that its CleanDiesel systems failed EPA regulations as described herein and otherwise engaged in activities with a tendency or capacity to deceive. Volkswagen also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of Affected Vehicles.

1642. Volkswagen has known of its use of the "defeat device" and the true nature of its CleanDiesel engine system for at least six years, but concealed all of that information until recently.

1643. Volkswagen was also aware that it valued profits over environmental cleanliness, efficiency, and lawfulness, and that it was manufacturing, selling and distributing vehicles throughout the United States that did not comply with EPA regulations. Volkswagen concealed this information as well.

1644. By failing to disclose and by actively concealing the "defeat device" and the true cleanliness and performance of the CleanDiesel engine system, by marketing its vehicles as safe, reliable, environmentally clean, efficient, and of high quality, and by presenting itself as a reputable manufacturer that valued safety, environmental cleanliness and efficiency, and stood behind its vehicles after they were sold, Volkswagen engaged in unfair and deceptive business practices in violation of the Rhode Island CPA.

1645. In the course of Volkswagen's business, it willfully failed to disclose and actively concealed the use of the "defeat device" and true cleanliness and efficiency of the CleanDiesel engine system and serious defects discussed above. Volkswagen compounded the deception by repeatedly asserting that the Affected Vehicles were

-406-

safe, reliable, environmentally clean, efficient, and of high quality, and by claiming to be a reputable manufacturer that valued safety, environmental cleanliness and efficiency, and stood behind its vehicles once they are on the road.

1646. Volkswagen's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true cleanliness and efficiency of the CleanDiesel engine system, the quality of the Volkswagen and Audi brands, the devaluing of environmental cleanliness and integrity at Volkswagen, and the true value of the Affected Vehicles.

1647. Volkswagen intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with an intent to mislead Plaintiffs and the Rhode Island Class.

1648. Volkswagen knew or should have known that its conduct violated the Rhode Island CPA.

1649. As alleged above, Volkswagen made material statements about the safety, cleanliness, efficiency and reliability of the Affected Vehicles and the Volkswagen and Audi brands that were either false or misleading.

1650. Volkswagen owed Plaintiffs a duty to disclose the true safety, cleanliness, efficiency and reliability of the Affected Vehicles and the devaluing of environmental cleanliness and integrity at Volkswagen, because Volkswagen:

    a.    Possessed exclusive knowledge that it valued profits over environmental cleanliness, efficiency, and lawfulness, and that it was manufacturing, selling and distributing vehicles throughout the United States that did not comply with EPA regulations;

    b.    Intentionally concealed the foregoing from Plaintiffs; and/or

    c.    Made incomplete representations about the safety, cleanliness, efficiency and reliability of the Affected Vehicles generally, and the use of the "defeat device" and true nature of the CleanDiesel engine system in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

-407-

1651. Because Volkswagen fraudulently concealed the "defeat device" and the true cleanliness and performance of the CleanDiesel engine system, resulting in a raft of negative publicity once the use of the "defeat device" and true characteristics of the CleanDiesel engine system finally began to be disclosed, the value of the Affected Vehicles has greatly diminished. In light of the stigma attached to those vehicles by Volkswagen's conduct, they are now worth significantly less than they otherwise would be.

1652. Volkswagen's fraudulent use of the "defeat device" and its concealment of the true characteristics of the CleanDiesel engine system were material to Plaintiffs and the Rhode Island Class. A vehicle made by a reputable manufacturer of environmentally friendly vehicles is worth more than an otherwise comparable vehicle made by a disreputable and dishonest manufacturer of polluting vehicles that conceals the amount its cars pollutes rather than make environmentally friendly vehicles.

1653. Plaintiffs and the Rhode Island Class suffered ascertainable loss caused by Volkswagen's misrepresentations and its concealment of and failure to disclose material information. Plaintiffs who purchased the Affected Vehicles either would have paid less for their vehicles or would not have purchased or leased them at all.

1654. Volkswagen's unlawful acts and practices complained of herein affect the public interest.

1655. As a direct and proximate result of Volkswagen's violations of the Rhode Island CPA, Plaintiffs and the Rhode Island Class have suffered injury-in-fact and/or actual damage.

1656. Plaintiffs and the Rhode Island Class are entitled to recover the greater of actual damages or $200 pursuant to R.I. GEN. LAWS § 6-13.1-5.2(a). Plaintiffs also seek punitive damages in the discretion of the Court because of Volkswagen's egregious disregard of consumer and public safety and its long-running concealment of the serious safety defects and their tragic consequences.

<div align="center">

**COUNT II**
**FRAUD BY CONCEALMENT**

</div>

1657. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1658. This claim is brought on behalf of the Rhode Island Subclass.

1659. Volkswagen intentionally concealed and suppressed material facts concerning the quality of the Affected Vehicles.  As alleged in this Complaint, notwithstanding references in the very model names of the subject vehicles as "Clean Diesel," or to their engines as "TDI Clean Diesel" engines, Volkswagen engaged in a secret scheme to evade federal and state vehicle emissions standards by installing software designed to conceal its vehicles' emissions of the pollutant nitrogen oxide, which contributes to the creation of ozone and smog.  The software installed on the vehicles at issue was designed nefariously to kick-in during emissions certification testing, such that the vehicles would show far lower emissions than when actually operating on the road.  The result was what Volkswagen intended: vehicles passed emissions certifications by way of deliberately induced false readings.  Reportedly, Volkswagen's deliberate, secret scheme resulted in noxious emissions from these vehicles up to 40 times applicable standards.

1660. Plaintiffs and Class members reasonably relied upon Volkswagen's false representations.  They had no way of knowing that Volkswagen's representations were false and gravely misleading.  As alleged herein, Volkswagen employed extremely sophisticated methods of deception.  Plaintiffs and Class members did not, and could not, unravel Volkswagen's deception on their own.

1661. Volkswagen concealed and suppressed material facts concerning what is evidently the true culture of Volkswagen—one characterized by an emphasis on profits and sales above compliance with federal and state clean air laws, and emissions regulations that are meant to protect the public and consumers.  It also emphasized profits and sales over the trust that Plaintiffs and Class members placed in its

<div align="center">-409-</div>

representations.  As one customer, Priya Shah, put it in a quotation cited by the *Los Angeles Times* in a September 18, 2015 article, "It's just a blatant disregard and intentional manipulation of the system.  That's just a whole other level of not only lying to the government, but also lying to your consumer.  People buy diesel cars from Volkswagen because they feel they are clean diesel cars."  In the words of Ms. Shah, which no doubt reflect the sentiments of all other CleanDiesel vehicle buyers, "I don't want to be spewing noxious gases into the environment."

1662.  Necessarily, Volkswagen also took steps to ensure that its employees did not reveal the details of its scheme to regulators or consumers, including Plaintiffs and Class members.  Volkswagen did so in order to boost the reputations of its vehicles and to falsely assure purchasers and lessors of its vehicles, including previously owned vehicles, that Volkswagen is a reputable manufacturer that complies with applicable law, including federal and state clean air laws and emissions regulations, and that its vehicles likewise comply with applicable law and regulations.  Volkswagen's false representations were material to consumers, both because they concerned the quality of the Affected Vehicles, including their compliance with applicable federal and state laws and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles.  As Volkswagen well knew, its customers, including Plaintiffs and Class members, highly valued that the vehicles they were purchasing or leasing were *clean* diesel cars, and they paid accordingly.

1663.  Volkswagen had a duty to disclose its emissions scheme because knowledge of the scheme and its details were known and/or accessible only to Volkswagen, because Volkswagen had exclusive knowledge as to implementation and maintenance of its scheme, and because Volkswagen knew the facts were not known to or reasonably discoverable by Plaintiffs or Class members.  Volkswagen also had a duty to disclose because it made general affirmative representations about the qualities

of its vehicles with respect to emissions standards, starting with references to them as *clean* diesel cars, or cars with *clean* diesel engines, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding its emissions scheme, the actual emissions of its vehicles, its actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and its actual practices with respect to the vehicles at issue.  Having volunteered to provide information to Plaintiffs, Volkswagen had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiffs and Class members.  Whether a manufacturer's products comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certification testing their vehicles must pass.  Volkswagen represented to Plaintiffs and Class members that they were purchasing *clean* diesel vehicles, and certification testing appeared to confirm this—except that, secretly, Volkswagen had subverted the testing process thoroughly.

1664. Volkswagen actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Volkswagen money, and it did so at the expense of Plaintiffs and Class members.

1665. On information and belief, Volkswagen has still not made full and adequate disclosures, and continues to defraud Plaintiffs and Class members by concealing material information regarding the emissions qualities of its vehicles and its emissions scheme.

-411-

1666. Plaintiffs and Class members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly "clean" diesel cars manufactured by Volkswagen, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them.  Plaintiffs' and Class Members' actions were justified.  Volkswagen was in exclusive control of the material facts, and such facts were not known to the public, Plaintiffs, or Class members.

1667. Because of the concealment and/or suppression of the facts, Plaintiffs and Class members have sustained damage because they own vehicles that are diminished in value as a result of Volkswagen's concealment of the true quality and quantity of those vehicles' emissions and Volkswagen's failure to timely disclose the actual emissions qualities and quantities of hundreds of thousands of Volkswagen- and Audi-branded vehicles and the serious issues engendered by Volkswagen's corporate policies.  Had Plaintiffs and Class members been aware of Volkswagen's emissions scheme, and the company's callous disregard for compliance with applicable federal and state laws and regulations, Plaintiffs and Class members who purchased or leased new or previously owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

1668. The value of Plaintiffs' and Class Members' vehicles has diminished as a result of Volkswagen's fraudulent concealment of its emissions scheme, which has greatly tarnished the Volkswagen and Audi brand names attached to Plaintiffs' and Class members' vehicles and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.  In addition, Class members are entitled to damages for loss of use, costs of additional fuel, costs of unused warranties, and other damages to be proved at trial.

-412-

1669.  Accordingly, Volkswagen is liable to Plaintiffs and Class members for damages in an amount to be proven at trial.

1670.  Volkswagen's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and Class members' rights and the representations that Volkswagen made to them, in order to enrich Volkswagen.  To the extent permitted under applicable law, Volkswagen's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT III
## BREACH OF CONTRACT
## (BASED ON RHODE ISLAND LAW)

1671.  Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

1672.  Plaintiff brings this Count on behalf of new vehicle or certified pre-owned vehicle purchasers in the Rhode Island Subclass.

1673.  Volkswagen's misrepresentations and omissions alleged herein, including Volkswagen's failure to disclose the existence of the CleanDiesel engine system's defect and/or defective design as alleged herein, caused Plaintiff and the other Rhode Island Subclass members to make their purchases or leases of their Affected Vehicles. Absent those misrepresentations and omissions, Plaintiff and the other Rhode Island Subclass members would not have purchased or leased these Affected Vehicles, would not have purchased or leased these Affected Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain the CleanDiesel engine system and which were not marketed as including such a system.  Accordingly, Plaintiff and the other Rhode Island Subclass members overpaid for their Affected Vehicles and did not receive the benefit of their bargain.

1674.  Each and every sale or lease of an Affected Vehicle by an authorized Volkswagen dealer constitutes a contract between Volkswagen and the purchaser or

-413-

lessee.  Volkswagen breached these contracts by selling or leasing Plaintiff and the other Rhode Island Subclass members defective Affected Vehicles and by misrepresenting or failing to disclose the existence of the CleanDiesel engine system's defect and/or defective design, including information known to Volkswagen rendering each Affected Vehicle non EPA-compliant, and thus less valuable, than vehicles not equipped with a CleanDiesel engine system.

1675.  As a direct and proximate result of Volkswagen's breach of contract, Plaintiff and the Rhode Island Subclass have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

**PP.    Claims on Behalf of the South Carolina Subclass**

**COUNT I**
**VIOLATIONS OF THE SOUTH CAROLINA**
**UNFAIR TRADE PRACTICES ACT**
**(S.C. CODE ANN. § 39-5-10, *ET SEQ.*)**

1676.  Plaintiff Andrew Bell ("Plaintiff," for purposes of all South Carolina Subclass Counts) incorporates by reference all preceding allegations as though fully set forth herein.

1677.  This claim is brought on behalf of the South Carolina Subclass.

1678.  Defendants are each a "person" under S.C. CODE ANN. § 39-5-10.

1679.  The South Carolina Unfair Trade Practices Act ("South Carolina UTPA") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce . . . ."  S.C. CODE ANN. § 39-5-20(a).  Volkswagen engaged in unfair and deceptive acts or practices and violated the South Carolina UTPA by fraudulently installing the "defeat device" to make it appear that its CleanDiesel engine systems complied with EPA regulations.

1680.  Volkswagen's actions as set forth above occurred in the conduct of trade or commerce.

-414-

1681. In the course of its business, Volkswagen installed the "defeat device" and concealed that its CleanDiesel systems failed EPA regulations as described herein and otherwise engaged in activities with a tendency or capacity to deceive. Volkswagen also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of Affected Vehicles.

1682. Volkswagen has known of its use of the "defeat device" and the true nature of its CleanDiesel engine system for at least six years, but concealed all of that information until recently.

1683. Volkswagen was also aware that it valued profits over environmental cleanliness, efficiency, and lawfulness, and that it was manufacturing, selling and distributing vehicles throughout the United States that did not comply with EPA regulations.  Volkswagen concealed this information as well.

1684. By failing to disclose and by actively concealing the "defeat device" and the true cleanliness and performance of the CleanDiesel engine system, by marketing its vehicles as safe, reliable, environmentally clean, efficient, and of high quality, and by presenting itself as a reputable manufacturer that valued safety, environmental cleanliness and efficiency, and stood behind its vehicles after they were sold, Volkswagen engaged in unfair and deceptive business practices in violation of the South Carolina UTPA.

1685. In the course of Volkswagen's business, it willfully failed to disclose and actively concealed the use of the "defeat device" and true cleanliness and efficiency of the CleanDiesel engine system and serious defects discussed above.  Volkswagen compounded the deception by repeatedly asserting that the Affected Vehicles were safe, reliable, environmentally clean, efficient, and of high quality, and by claiming to

-415-

be a reputable manufacturer that valued safety, environmental cleanliness and efficiency, and stood behind its vehicles once they are on the road.

1686. Volkswagen's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff, about the true cleanliness and efficiency of the CleanDiesel engine system, the quality of the Volkswagen and Audi brands, the devaluing of environmental cleanliness and integrity at Volkswagen, and the true value of the Affected Vehicles.

1687. Volkswagen intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with an intent to mislead Plaintiff and the South Carolina Class.

1688. Volkswagen knew or should have known that its conduct violated the South Carolina UTPA.

1689. As alleged above, Volkswagen made material statements about the safety, cleanliness, efficiency and reliability of the Affected Vehicles and the Volkswagen and Audi brands that were either false or misleading.

1690. Volkswagen owed Plaintiff a duty to disclose the true safety, cleanliness, efficiency and reliability of the Affected Vehicles and the devaluing of environmental cleanliness and integrity at Volkswagen, because Volkswagen:

    a. Possessed exclusive knowledge that it valued profits over environmental cleanliness, efficiency, and lawfulness, and that it was manufacturing, selling and distributing vehicles throughout the United States that did not comply with EPA regulations;

    b. Intentionally concealed the foregoing from Plaintiff; and/or

    c. Made incomplete representations about the safety, cleanliness, efficiency and reliability of the Affected Vehicles, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

1691. Because Volkswagen fraudulently concealed the "defeat device" and the true cleanliness and performance of the CleanDiesel engine system, resulting in a raft

-416-

of negative publicity once the use of the "defeat device" and true characteristics of the CleanDiesel engine system finally began to be disclosed, the value of the Affected Vehicles has greatly diminished. In light of the stigma attached to those vehicles by Volkswagen's conduct, they are now worth significantly less than they otherwise would be.

1692. Volkswagen's fraudulent use of the "defeat device" and its concealment of the true characteristics of the CleanDiesel engine system were material to Plaintiffs and the South Carolina Class. A vehicle made by a reputable manufacturer of environmentally friendly vehicles is worth more than an otherwise comparable vehicle made by a disreputable and dishonest manufacturer of polluting vehicles that conceals the amount its cars pollutes rather than make environmentally friendly vehicles.

1693. Plaintiff and the South Carolina Class suffered ascertainable loss caused by Volkswagen's misrepresentations and its concealment of and failure to disclose material information. Plaintiffs who purchased the Affected Vehicles either would have paid less for their vehicles or would not have purchased or leased them at all.

1694. Volkswagen's unlawful acts and practices complained of herein affect the public interest.

1695. As a direct and proximate result of Volkswagen's violations of the South Carolina UTPA, Plaintiff and the South Carolina Class have suffered injury-in-fact and/or actual damage.

1696. Pursuant to S.C. CODE ANN. § 39-5-140(a), Plaintiffs seek monetary relief against Volkswagen to recover for their economic losses. Because Volkswagen's actions were willful and knowing, Plaintiffs' damages should be trebled. *Id.*

1697. Plaintiff further alleges that Volkswagen's malicious and deliberate conduct warrants an assessment of punitive damages because Volkswagen carried out despicable conduct with willful and conscious disregard of the rights and safety of others, subjecting Plaintiffs and the Class to cruel and unjust hardship as a result.

-417-

Volkswagen's intentionally and willfully misrepresented the safety, cleanliness, efficiency and reliability of the Affected Vehicles, deceived Plaintiffs and concealed material facts that only Volkswagen knew.  Volkswagen's unlawful conduct constitutes malice, oppression, and fraud warranting punitive damages.

1698. Plaintiff further seeks an order enjoining Volkswagen's unfair or deceptive acts or practices.

<div align="center">

**COUNT II**
**VIOLATIONS OF THE SOUTH CAROLINA REGULATION OF**
**MANUFACTURERS, DISTRIBUTORS, AND DEALERS ACT**
**(S.C. CODE ANN. § 56-15-10, *et seq.*)**

</div>

1699. Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

1700. This claim is brought only on behalf of the South Carolina Subclass.

1701. Volkswagen was a "manufacturer" as set forth in S.C. CODE ANN. § 56-15-10, as it was engaged in the business of manufacturing or assembling new and unused motor vehicles.

1702. Volkswagen committed unfair or deceptive acts or practices that violated the South Carolina Regulation of Manufacturers, Distributors, and Dealers Act ("Dealers Act"), S.C. CODE ANN. § 56-15-30.

1703. Volkswagen engaged in actions which were arbitrary, in bad faith, unconscionable, and which caused damage to Plaintiff, the South Carolina Subclass, and to the public.

1704. Volkswagen's bad faith and unconscionable actions include, but are not limited to:  (1) representing that Affected Vehicles have characteristics, uses, benefits, and qualities which they do not have, (2) representing that Affected Vehicles are of a particular standard, quality, and grade when they are not, (3) advertising Affected Vehicles with the intent not to sell them as advertised, (4) representing that a transaction involving Affected Vehicles confers or involves rights, remedies, and obligations which it does not, and (5) representing that the subject of a transaction

<div align="center">-418-</div>

involving Affected Vehicles has been supplied in accordance with a previous representation when it has not.

1705. Volkswagen resorted to and used false and misleading advertisements in connection with its business.  As alleged above, Volkswagen made numerous material statements about the safety, cleanliness, efficiency and reliability of the Affected Vehicles that were either false or misleading.  Each of these statements contributed to the deceptive context of Volkswagen's unlawful advertising and representations as a whole.

1706. Pursuant to S.C. CODE ANN. § 56-15-110(2), Plaintiffs bring this action on behalf of themselves and the South Carolina Class, as the action is one of common or general interest to many persons and the parties are too numerous to bring them all before the court.

1707. Plaintiff and the South Carolina Class are entitled to double their actual damages, the cost of the suit, attorney's fees pursuant to S.C. CODE ANN. § 56-15-110.  Plaintiff also seeks injunctive relief under S.C. CODE ANN. § 56-15-110.  Plaintiff also seeks treble damages because Volkswagen acted maliciously.

## COUNT III
## FRAUD BY CONCEALMENT

1708. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1709. This claim is brought on behalf of the South Carolina Subclass.

1710. Volkswagen intentionally concealed and suppressed material facts concerning the quality of the Affected Vehicles.  As alleged in this Complaint, notwithstanding references in the very model names of the subject vehicles as "Clean Diesel," or to their engines as "TDI Clean Diesel" engines, Volkswagen engaged in a secret scheme to evade federal and state vehicle emissions standards by installing software designed to conceal its vehicles' emissions of the pollutant nitrogen oxide, which contributes to the creation of ozone and smog.  The software installed on the

-419-

vehicles at issue was designed nefariously to kick-in during emissions certification testing, such that the vehicles would show far lower emissions than when actually operating on the road.  The result was what Volkswagen intended: vehicles passed emissions certifications by way of deliberately induced false readings.  Reportedly, Volkswagen's deliberate, secret scheme resulted in noxious emissions from these vehicles up to 40 times applicable standards.

1711.  Plaintiffs and Class members reasonably relied upon Volkswagen's false representations.  They had no way of knowing that Volkswagen's representations were false and gravely misleading.  As alleged herein, Volkswagen employed extremely sophisticated methods of deception.  Plaintiffs and Class members did not, and could not, unravel Volkswagen's deception on their own.

1712.  Volkswagen concealed and suppressed material facts concerning what is evidently the true culture of Volkswagen—one characterized by an emphasis on profits and sales above compliance with federal and state clean air laws, and emissions regulations that are meant to protect the public and consumers.  It also emphasized profits and sales over the trust that Plaintiffs and Class members placed in its representations.  As one customer, Priya Shah, put it in a quotation cited by the *Los Angeles Times* in a September 18, 2015 article, "It's just a blatant disregard and intentional manipulation of the system.  That's just a whole other level of not only lying to the government, but also lying to your consumer.  People buy diesel cars from Volkswagen because they feel they are clean diesel cars."  In the words of Ms. Shah, which no doubt reflect the sentiments of all other CleanDiesel vehicle buyers, "I don't want to be spewing noxious gases into the environment."

1713.  Necessarily, Volkswagen also took steps to ensure that its employees did not reveal the details of its scheme to regulators or consumers, including Plaintiffs and Class members.  Volkswagen did so in order to boost the reputations of its vehicles and to falsely assure purchasers and lessors of its vehicles, including previously owned

-420-

vehicles, that Volkswagen is a reputable manufacturer that complies with applicable law, including federal and state clean air laws and emissions regulations, and that its vehicles likewise comply with applicable law and regulations.  Volkswagen's false representations were material to consumers, both because they concerned the quality of the Affected Vehicles, including their compliance with applicable federal and state laws and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles.  As Volkswagen well knew, its customers, including Plaintiffs and Class members, highly valued that the vehicles they were purchasing or leasing were *clean* diesel cars, and they paid accordingly.

1714. Volkswagen had a duty to disclose its emissions scheme because knowledge of the scheme and its details were known and/or accessible only to Volkswagen, because Volkswagen had exclusive knowledge as to implementation and maintenance of its scheme, and because Volkswagen knew the facts were not known to or reasonably discoverable by Plaintiffs or Class members.  Volkswagen also had a duty to disclose because it made general affirmative representations about the qualities of its vehicles with respect to emissions standards, starting with references to them as *clean* diesel cars, or cars with *clean* diesel engines, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding its emissions scheme, the actual emissions of its vehicles, its actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and its actual practices with respect to the vehicles at issue.  Having volunteered to provide information to Plaintiffs, Volkswagen had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiffs and Class members.  Whether a manufacturer's products comply with federal and state clean air laws and emissions regulations, and whether that

-421-

manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certification testing their vehicles must pass.  Volkswagen represented to Plaintiffs and Class members that they were purchasing *clean* diesel vehicles, and certification testing appeared to confirm this—except that, secretly, Volkswagen had subverted the testing process thoroughly.

1715. Volkswagen actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Volkswagen money, and it did so at the expense of Plaintiffs and Class members.

1716. On information and belief, Volkswagen has still not made full and adequate disclosures, and continues to defraud Plaintiffs and Class members by concealing material information regarding the emissions qualities of its vehicles and its emissions scheme.

1717. Plaintiffs and Class members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly "clean" diesel cars manufactured by Volkswagen, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them.  Plaintiffs' and Class Members' actions were justified.  Volkswagen was in exclusive control of the material facts, and such facts were not known to the public, Plaintiffs, or Class members.

1718. Because of the concealment and/or suppression of the facts, Plaintiffs and Class members have sustained damage because they own vehicles that are diminished in value as a result of Volkswagen's concealment of the true quality and quantity of those vehicles' emissions and Volkswagen's failure to timely disclose the actual

emissions qualities and quantities of hundreds of thousands of Volkswagen- and Audi-branded vehicles and the serious issues engendered by Volkswagen's corporate policies.  Had Plaintiffs and Class members been aware of Volkswagen's emissions scheme, and the company's callous disregard for compliance with applicable federal and state laws and regulations, Plaintiffs and Class members who purchased or leased new or previously owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

1719. The value of Plaintiffs' and Class Members' vehicles has diminished as a result of Volkswagen's fraudulent concealment of its emissions scheme, which has greatly tarnished the Volkswagen and Audi brand names attached to Plaintiffs' and Class members' vehicles and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.  In addition, Class members are entitled to damages for loss of use, costs of additional fuel, costs of unused warranties, and other damages to be proved at trial.

1720. Accordingly, Volkswagen is liable to Plaintiffs and Class members for damages in an amount to be proven at trial.

1721. Volkswagen's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and Class members' rights and the representations that Volkswagen made to them, in order to enrich Volkswagen.  To the extent permitted under applicable law, Volkswagen's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**COUNT IV**
**BREACH OF CONTRACT**
**(BASED ON SOUTH CAROLINA LAW)**

1722. Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

-423-

1723. Plaintiff brings this Count on behalf of new vehicle or certified pre-owned vehicle purchasers in the South Carolina Subclass.

1724. Volkswagen's misrepresentations and omissions alleged herein, including Volkswagen's failure to disclose the existence of the CleanDiesel engine system's defect and/or defective design as alleged herein, caused Plaintiff and the other South Carolina Subclass members to make their purchases or leases of their Affected Vehicles. Absent those misrepresentations and omissions, Plaintiff and the other South Carolina Subclass members would not have purchased or leased these Affected Vehicles, would not have purchased or leased these Affected Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain the CleanDiesel engine system and which were not marketed as including such a system. Accordingly, Plaintiff and the other South Carolina Subclass members overpaid for their Affected Vehicles and did not receive the benefit of their bargain.

1725. Each and every sale or lease of an Affected Vehicle by an authorized Volkswagen dealer constitutes a contract between Volkswagen and the purchaser or lessee. Volkswagen breached these contracts by selling or leasing Plaintiff and the other South Carolina Subclass members defective Affected Vehicles and by misrepresenting or failing to disclose the existence of the CleanDiesel engine system's defect and/or defective design, including information known to Volkswagen rendering each Affected Vehicle non EPA-compliant, and thus less valuable, than vehicles not equipped with a CleanDiesel engine system.

1726. As a direct and proximate result of Volkswagen's breach of contract, Plaintiff and the South Carolina Subclass have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law

## QQ.  Claims on Behalf of the South Dakota Subclass

<div align="center">

**COUNT I**
**VIOLATION OF THE SOUTH DAKOTA**
**DECEPTIVE TRADE PRACTICES AND CONSUMER PROTECTION LAW**
**(S.D. CODIFIED LAWS § 37-24-6)**

</div>

1727. Plaintiff Gary Van Guilder ("Plaintiff," for purposes of all South Dakota Subclass Counts) incorporates by reference all preceding allegations as though fully set forth herein.

1728. This claim is brought on behalf of the South Dakota Subclass.

1729. The South Dakota Deceptive Trade Practices and Consumer Protection Law ("South Dakota CPL") prohibits deceptive acts or practices, which are defined for relevant purposes to include "[k]nowingly and intentionally act, use, or employ any deceptive act or practice, fraud, false pretense, false promises, or misrepresentation or to conceal, suppress, or omit any material fact in connection with the sale or advertisement of any merchandise, regardless of whether any person has in fact been misled, deceived, or damaged thereby [.]"  S.D. CODIFIED LAWS § 37-24-6(1).  The conduct of Volkswagen as set forth herein constitutes deceptive acts or practices, fraud, false promises, misrepresentation, concealment, suppression and omission of material facts in violation of S.D. Codified Laws § 37-24-6 and 37-24-31, including, but not limited to, Volkswagen's misrepresentations and omissions regarding the safety, cleanliness, efficiency and reliability of the Affected Vehicles, and Volkswagen's misrepresentations concerning a host of other defects and safety issues.

1730. Volkswagen's actions as set forth above occurred in the conduct of trade or commerce.

1731. In the course of its business, Volkswagen installed the "defeat device" and concealed that its CleanDiesel systems failed EPA regulations as described herein and otherwise engaged in activities with a tendency or capacity to deceive. Volkswagen also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or

<div align="center">-425-</div>

omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Affected Vehicles.

1732. Volkswagen has known of its use of the "defeat device" and the true nature of its CleanDiesel engine system for at least six years, but concealed all of that information until recently.

1733. Volkswagen was also aware that it valued profits over environmental cleanliness, efficiency, and lawfulness, and that it was manufacturing, selling and distributing vehicles throughout the United States that did not comply with EPA regulations.  Volkswagen concealed this information as well.

1734. By failing to disclose and by actively concealing the "defeat device" and the true cleanliness and performance of the CleanDiesel engine system, by marketing its vehicles as safe, reliable, environmentally clean, efficient, and of high quality, and by presenting itself as a reputable manufacturer that valued safety, environmental cleanliness and efficiency, and stood behind its vehicles after they were sold, Volkswagen engaged in deceptive business practices in violation of the South Dakota CPL.

1735. In the course of Volkswagen's business, it willfully failed to disclose and actively concealed the use of the "defeat device" and true cleanliness and efficiency of the CleanDiesel engine system and serious defects discussed above.  Volkswagen compounded the deception by repeatedly asserting that the Affected Vehicles were safe, reliable, environmentally clean, efficient, and of high quality, and by claiming to be a reputable manufacturer that valued safety, environmental cleanliness and efficiency, and stood behind its vehicles once they are on the road.

1736. Volkswagen's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff, about the true cleanliness and efficiency of the CleanDiesel engine system, the quality of the Volkswagen brand,

-426-

the devaluing of environmental cleanliness and integrity at Volkswagen, and the true value of the Affected Vehicles.

1737. Volkswagen intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with an intent to mislead Plaintiff and the South Dakota Class.

1738. Volkswagen knew or should have known that its conduct violated the South Dakota CPL.

1739. As alleged above, Volkswagen made material statements about the safety, cleanliness, efficiency and reliability of the Affected Vehicles and the Volkswagen and Audi brands that were either false or misleading.

1740. Volkswagen owed Plaintiff a duty to disclose the true safety, cleanliness, efficiency and reliability of the Affected Vehicles and the devaluing of environmental cleanliness and integrity at Volkswagen, because Volkswagen:

    a.    Possessed exclusive knowledge that it valued profits over environmental cleanliness, efficiency, and lawfulness, and that it was manufacturing, selling and distributing vehicles throughout the United States that did not comply with EPA regulations;

    b.    Intentionally concealed the foregoing from Plaintiff; and/or

    c.    Made incomplete representations about the safety, cleanliness, efficiency and reliability of the Affected Vehicles generally, and the use of the "defeat device" and true nature of the CleanDiesel engine system in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

1741. Because Volkswagen fraudulently concealed the "defeat device" and the true cleanliness and performance of the CleanDiesel engine system, resulting in a raft of negative publicity once the use of the "defeat device" and true characteristics of the CleanDiesel engine system finally began to be disclosed, the value of the Affected Vehicles has greatly diminished.  In light of the stigma attached to those vehicles by

-427-

Volkswagen's conduct, they are now worth significantly less than they otherwise would be.

1742. Volkswagen's fraudulent use of the "defeat device" and its concealment of the true characteristics of the CleanDiesel engine system were material to Plaintiff and the South Dakota Class. A vehicle made by a reputable manufacturer of environmentally friendly vehicles is worth more than an otherwise comparable vehicle made by a disreputable and dishonest manufacturer of polluting vehicles that conceals the amount its cars pollutes rather than make environmentally friendly vehicles.

1743. Plaintiff and the South Dakota Subclass suffered ascertainable loss caused by Volkswagen's misrepresentations and its concealment of and failure to disclose material information. Plaintiffs who purchased the Affected Vehicles either would have paid less for their vehicles or would not have purchased or leased them at all.

1744. Volkswagen's unlawful acts and practices complained of herein affect the public interest.

1745. As a direct and proximate result of Volkswagen's violations of the South Dakota CPL, Plaintiff and the South Dakota Class have suffered injury-in-fact and/or actual damage.

1746. Under S.D. CODIFIED LAWS § 37-24-31, Plaintiff and the South Dakota Class are entitled to a recovery of their actual damages suffered as a result of Volkswagen's acts and practices.

## COUNT II
## FRAUD BY CONCEALMENT

1747. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1748. This claim is brought on behalf of the South Dakota Subclass.

1749. Volkswagen intentionally concealed and suppressed material facts concerning the quality of the Affected Vehicles. As alleged in this Complaint,

-428-

notwithstanding references in the very model names of the subject vehicles as "Clean Diesel," or to their engines as "TDI Clean Diesel" engines, Volkswagen engaged in a secret scheme to evade federal and state vehicle emissions standards by installing software designed to conceal its vehicles' emissions of the pollutant nitrogen oxide, which contributes to the creation of ozone and smog.  The software installed on the vehicles at issue was designed nefariously to kick-in during emissions certification testing, such that the vehicles would show far lower emissions than when actually operating on the road.  The result was what Volkswagen intended: vehicles passed emissions certifications by way of deliberately induced false readings.  Reportedly, Volkswagen's deliberate, secret scheme resulted in noxious emissions from these vehicles up to 40 times applicable standards.

1750. Plaintiffs and Class members reasonably relied upon Volkswagen's false representations.  They had no way of knowing that Volkswagen's representations were false and gravely misleading.  As alleged herein, Volkswagen employed extremely sophisticated methods of deception.  Plaintiffs and Class members did not, and could not, unravel Volkswagen's deception on their own.

1751. Volkswagen concealed and suppressed material facts concerning what is evidently the true culture of Volkswagen—one characterized by an emphasis on profits and sales above compliance with federal and state clean air laws, and emissions regulations that are meant to protect the public and consumers.  It also emphasized profits and sales over the trust that Plaintiffs and Class members placed in its representations.  As one customer, Priya Shah, put it in a quotation cited by the *Los Angeles Times* in a September 18, 2015 article, "It's just a blatant disregard and intentional manipulation of the system.  That's just a whole other level of not only lying to the government, but also lying to your consumer.  People buy diesel cars from Volkswagen because they feel they are clean diesel cars."  In the words of Ms. Shah,

1   which no doubt reflect the sentiments of all other CleanDiesel vehicle buyers, "I don't

2   want to be spewing noxious gases into the environment."

3       1752. Necessarily, Volkswagen also took steps to ensure that its employees did

4   not reveal the details of its scheme to regulators or consumers, including Plaintiffs and

5   Class members.  Volkswagen did so in order to boost the reputations of its vehicles

6   and to falsely assure purchasers and lessors of its vehicles, including previously owned

7   vehicles, that Volkswagen is a reputable manufacturer that complies with applicable

8   law, including federal and state clean air laws and emissions regulations, and that its

9   vehicles likewise comply with applicable law and regulations.  Volkswagen's false

10  representations were material to consumers, both because they concerned the quality

11  of the Affected Vehicles, including their compliance with applicable federal and state

12  laws and regulations regarding clean air and emissions, and also because the

13  representations played a significant role in the value of the vehicles.  As Volkswagen

14  well knew, its customers, including Plaintiffs and Class members, highly valued that

15  the vehicles they were purchasing or leasing were *clean* diesel cars, and they paid

16  accordingly.

17      1753. Volkswagen had a duty to disclose its emissions scheme because

18  knowledge of the scheme and its details were known and/or accessible only to

19  Volkswagen, because Volkswagen had exclusive knowledge as to implementation and

20  maintenance of its scheme, and because Volkswagen knew the facts were not known

21  to or reasonably discoverable by Plaintiffs or Class members.  Volkswagen also had a

22  duty to disclose because it made general affirmative representations about the qualities

23  of its vehicles with respect to emissions standards, starting with references to them as

24  *clean* diesel cars, or cars with *clean* diesel engines, which were misleading, deceptive,

25  and incomplete without the disclosure of the additional facts set forth above regarding

26  its emissions scheme, the actual emissions of its vehicles, its actual philosophy with

27  respect to compliance with federal and state clean air laws and emissions regulations,

28

<div align="center">-430-</div>

and its actual practices with respect to the vehicles at issue.  Having volunteered to provide information to Plaintiffs, Volkswagen had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiffs and Class members.  Whether a manufacturer's products comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certification testing their vehicles must pass.  Volkswagen represented to Plaintiffs and Class members that they were purchasing *clean* diesel vehicles, and certification testing appeared to confirm this—except that, secretly, Volkswagen had subverted the testing process thoroughly.

1754. Volkswagen actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Volkswagen money, and it did so at the expense of Plaintiffs and Class members.

1755. On information and belief, Volkswagen has still not made full and adequate disclosures, and continues to defraud Plaintiffs and Class members by concealing material information regarding the emissions qualities of its vehicles and its emissions scheme.

1756. Plaintiffs and Class members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly "clean" diesel cars manufactured by Volkswagen, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them.  Plaintiffs' and Class Members' actions

were justified. Volkswagen was in exclusive control of the material facts, and such facts were not known to the public, Plaintiffs, or Class members.

1757. Because of the concealment and/or suppression of the facts, Plaintiffs and Class members have sustained damage because they own vehicles that are diminished in value as a result of Volkswagen's concealment of the true quality and quantity of those vehicles' emissions and Volkswagen's failure to timely disclose the actual emissions qualities and quantities of hundreds of thousands of Volkswagen- and Audi-branded vehicles and the serious issues engendered by Volkswagen's corporate policies. Had Plaintiffs and Class members been aware of Volkswagen's emissions scheme, and the company's callous disregard for compliance with applicable federal and state laws and regulations, Plaintiffs and Class members who purchased or leased new or previously owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

1758. The value of Plaintiffs' and Class Members' vehicles has diminished as a result of Volkswagen's fraudulent concealment of its emissions scheme, which has greatly tarnished the Volkswagen and Audi brand names attached to Plaintiffs' and Class members' vehicles and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles. In addition, Class members are entitled to damages for loss of use, costs of additional fuel, costs of unused warranties, and other damages to be proved at trial.

1759. Accordingly, Volkswagen is liable to Plaintiffs and Class members for damages in an amount to be proven at trial.

1760. Volkswagen's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and Class members' rights and the representations that Volkswagen made to them, in order to enrich Volkswagen. To the extent permitted under applicable law, Volkswagen's

1 conduct warrants an assessment of punitive damages in an amount sufficient to deter

2 such conduct in the future, which amount is to be determined according to proof.

### COUNT III
### BREACH OF CONTRACT
### (BASED ON SOUTH DAKOTA LAW)

5 1761. Plaintiff incorporates by reference all preceding allegations as though

6 fully set forth herein.

7 1762. Plaintiff brings this Count on behalf of new vehicle or certified pre-

8 owned vehicle purchasers in the South Dakota Subclass.

9 1763. Volkswagen's misrepresentations and omissions alleged herein, including

10 Volkswagen's failure to disclose the existence of the CleanDiesel engine system's

11 defect and/or defective design as alleged herein, caused Plaintiff and the other South

12 Dakota Subclass members to make their purchases or leases of their Affected

13 Vehicles.  Absent those misrepresentations and omissions, Plaintiff and the other

14 South Dakota Subclass members would not have purchased or leased these Affected

15 Vehicles, would not have purchased or leased these Affected Vehicles at the prices

16 they paid, and/or would have purchased or leased less expensive alternative vehicles

17 that did not contain the CleanDiesel engine system and which were not marketed as

18 including such a system.  Accordingly, Plaintiff and the other South Dakota Subclass

19 members overpaid for their Affected Vehicles and did not receive the benefit of their

20 bargain.

21 1764. Each and every sale or lease of an Affected Vehicle by an authorized

22 Volkswagen dealer constitutes a contract between Volkswagen and the purchaser or

23 lessee.  Volkswagen breached these contracts by selling or leasing Plaintiff and the

24 other South Dakota Subclass members defective Affected Vehicles and by

25 misrepresenting or failing to disclose the existence of the CleanDiesel engine system's

26 defect and/or defective design, including information known to Volkswagen rendering

-433-

each Affected Vehicle non EPA-compliant, and thus less valuable, than vehicles not equipped with a CleanDiesel engine system.

1765. As a direct and proximate result of Volkswagen's breach of contract, Plaintiff and the South Dakota Subclass have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

**RR.   Claims Brought on Behalf of the Tennessee Subclass**

<div align="center">

**COUNT I**
**VIOLATION OF TENNESSEE CONSUMER PROTECTION ACT**
**(TENN. CODE ANN. § 47-18-101, *ET SEQ.*)**

</div>

1766. Plaintiff Barry Cross ("Plaintiff," for purposes of all Tennessee Subclass Counts) incorporates by reference all preceding allegations as though fully set forth herein.

1767. This claim is brought on behalf of the Tennessee Subclass.

1768. Plaintiff and the Tennessee Class are "natural persons" and "consumers" within the meaning of TENN. CODE ANN. § 47-18-103(2).

1769. Defendants are each a "person" within the meaning of TENN. CODE ANN. § 47-18-103(2).

1770. Volkswagen's conduct complained of herein affected "trade," "commerce" or "consumer transactions" within the meaning of TENN. CODE ANN. § 47-18-103(19).

1771. The Tennessee Consumer Protection Act ("Tennessee CPA") prohibits "[u]nfair or deceptive acts or practices affecting the conduct of any trade or commerce," including but not limited to:  "Representing that goods or services have … characteristics, [or] … benefits … that they do not have…;" "Representing that goods or services are of a particular standard, quality or grade… if they are of another;" and "Advertising goods or services with intent not to sell them as advertised."  TENN. CODE ANN. § 47-18-104.  Volkswagen violated the Tennessee

-434-

CPA by engaging in unfair or deceptive acts, including representing that Affected Vehicles have characteristics or benefits that they did not have; representing that Affected Vehicles are of a particular standard, quality, or grade when they are of another; and advertising Affected Vehicles with intent not to sell them as advertised.

1772. In the course of its business, Volkswagen installed the "defeat device" and concealed that its CleanDiesel systems failed EPA regulations as described herein and otherwise engaged in activities with a tendency or capacity to deceive. Volkswagen also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of Affected Vehicles.

1773. Volkswagen has known of its use of the "defeat device" and the true nature of its CleanDiesel engine system for at least six years, but concealed all of that information until recently.

1774. Volkswagen was also aware that it valued profits over environmental cleanliness, efficiency, and lawfulness, and that it was manufacturing, selling and distributing vehicles throughout the United States that did not comply with EPA regulations.  Volkswagen concealed this information as well.

1775. By failing to disclose and by actively concealing the "defeat device" and the true cleanliness and performance of the CleanDiesel engine system, by marketing its vehicles as safe, reliable, environmentally clean, efficient, and of high quality, and by presenting itself as a reputable manufacturer that valued safety, environmental cleanliness and efficiency, and stood behind its vehicles after they were sold, Volkswagen engaged in unfair and deceptive business practices in violation of the Tennessee CPA.

1776. In the course of Volkswagen's business, it willfully failed to disclose and actively concealed the use of the "defeat device" and true cleanliness and efficiency of

the CleanDiesel engine system and serious defects discussed above.  Volkswagen compounded the deception by repeatedly asserting that the Affected Vehicles were safe, reliable, environmentally clean, efficient, and of high quality, and by claiming to be a reputable manufacturer that valued safety, environmental cleanliness and efficiency, and stood behind its vehicles once they are on the road.

1777. Volkswagen's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff, about the true cleanliness and efficiency of the CleanDiesel engine system, the quality of the Volkswagen and Audi brands, the devaluing of environmental cleanliness and integrity at Volkswagen, and the true value of the Affected Vehicles.

1778. Volkswagen intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with an intent to mislead Plaintiff and the Tennessee Class.

1779. Volkswagen knew or should have known that its conduct violated the Tennessee CPA.

1780. As alleged above, Volkswagen made material statements about the safety, cleanliness, efficiency and reliability of the Affected Vehicles and the Volkswagen and Audi brands that were either false or misleading.

1781. Volkswagen owed Plaintiff a duty to disclose the true safety, cleanliness, efficiency and reliability of the Affected Vehicles and the devaluing of environmental cleanliness and integrity at Volkswagen, because Volkswagen:

    a.    Possessed exclusive knowledge that it valued profits over environmental cleanliness, efficiency, and lawfulness, and that it was manufacturing, selling and distributing vehicles throughout the United States that did not comply with EPA regulations;

    b.    Intentionally concealed the foregoing from Plaintiff; and/or

    c.    Made incomplete representations about the safety, cleanliness, efficiency and reliability of the Affected Vehicles generally, and the use of the "defeat device" and true nature of the CleanDiesel engine system in

-436-

particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

1782. Because Volkswagen fraudulently concealed the "defeat device" and the true cleanliness and performance of the CleanDiesel engine system, resulting in a raft of negative publicity once the use of the "defeat device" and true characteristics of the CleanDiesel engine system finally began to be disclosed, the value of the Affected Vehicles has greatly diminished.  In light of the stigma attached to those vehicles by Volkswagen's conduct, they are now worth significantly less than they otherwise would be.

1783. Volkswagen's fraudulent use of the "defeat device" and its concealment of the true characteristics of the CleanDiesel engine system were material to Plaintiff and the Tennessee Class.  A vehicle made by a reputable manufacturer of environmentally friendly vehicles is worth more than an otherwise comparable vehicle made by a disreputable and dishonest manufacturer of polluting vehicles that conceals the amount its cars pollutes rather than make environmentally friendly vehicles.

1784. Plaintiff and the Tennessee Class suffered ascertainable loss caused by Volkswagen's misrepresentations and its concealment of and failure to disclose material information.  Plaintifs who purchased the Affected Vehicles either would have paid less for their vehicles or would not have purchased or leased them at all.

1785. Volkswagen's unlawful acts and practices complained of herein affect the public interest.

1786. As a direct and proximate result of Volkswagen's violations of the Tennessee CPA, Plaintiff and the Tennessee Class have suffered injury-in-fact and/or actual damage.

1787. Pursuant to TENN. CODE § 47-18-109(a), Plaintiff and the Tennessee Class seek monetary relief against Volkswagen measured as actual damages in an amount to be determined at trial, treble damages as a result of Volkswagen's willful or

-437-

knowing violations, and any other just and proper relief available under the Tennessee CPA.

## COUNT II
## FRAUD BY CONCEALMENT

1788. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1789. This claim is brought on behalf of the Tennessee Subclass.

1790. Volkswagen intentionally concealed and suppressed material facts concerning the quality of the Affected Vehicles.  As alleged in this Complaint, notwithstanding references in the very model names of the subject vehicles as "Clean Diesel," or to their engines as "TDI Clean Diesel" engines, Volkswagen engaged in a secret scheme to evade federal and state vehicle emissions standards by installing software designed to conceal its vehicles' emissions of the pollutant nitrogen oxide, which contributes to the creation of ozone and smog.  The software installed on the vehicles at issue was designed nefariously to kick-in during emissions certification testing, such that the vehicles would show far lower emissions than when actually operating on the road.  The result was what Volkswagen intended: vehicles passed emissions certifications by way of deliberately induced false readings.  Reportedly, Volkswagen's deliberate, secret scheme resulted in noxious emissions from these vehicles up to 40 times applicable standards.

1791. Plaintiffs and Class members reasonably relied upon Volkswagen's false representations.  They had no way of knowing that Volkswagen's representations were false and gravely misleading.  As alleged herein, Volkswagen employed extremely sophisticated methods of deception.  Plaintiffs and Class members did not, and could not, unravel Volkswagen's deception on their own.

1792. Volkswagen concealed and suppressed material facts concerning what is evidently the true culture of Volkswagen—one characterized by an emphasis on profits and sales above compliance with federal and state clean air laws, and emissions

-438-

regulations that are meant to protect the public and consumers.  It also emphasized profits and sales over the trust that Plaintiffs and Class members placed in its representations.  As one customer, Priya Shah, put it in a quotation cited by the *Los Angeles Times* in a September 18, 2015 article, "It's just a blatant disregard and intentional manipulation of the system.  That's just a whole other level of not only lying to the government, but also lying to your consumer.  People buy diesel cars from Volkswagen because they feel they are clean diesel cars."  In the words of Ms. Shah, which no doubt reflect the sentiments of all other CleanDiesel vehicle buyers, "I don't want to be spewing noxious gases into the environment."

1793.  Necessarily, Volkswagen also took steps to ensure that its employees did not reveal the details of its scheme to regulators or consumers, including Plaintiffs and Class members.  Volkswagen did so in order to boost the reputations of its vehicles and to falsely assure purchasers and lessors of its vehicles, including previously owned vehicles, that Volkswagen is a reputable manufacturer that complies with applicable law, including federal and state clean air laws and emissions regulations, and that its vehicles likewise comply with applicable law and regulations.  Volkswagen's false representations were material to consumers, both because they concerned the quality of the Affected Vehicles, including their compliance with applicable federal and state laws and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles.  As Volkswagen well knew, its customers, including Plaintiffs and Class members, highly valued that the vehicles they were purchasing or leasing were *clean* diesel cars, and they paid accordingly.

1794.  Volkswagen had a duty to disclose its emissions scheme because knowledge of the scheme and its details were known and/or accessible only to Volkswagen, because Volkswagen had exclusive knowledge as to implementation and maintenance of its scheme, and because Volkswagen knew the facts were not known

to or reasonably discoverable by Plaintiffs or Class members.  Volkswagen also had a duty to disclose because it made general affirmative representations about the qualities of its vehicles with respect to emissions standards, starting with references to them as *clean* diesel cars, or cars with *clean* diesel engines, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding its emissions scheme, the actual emissions of its vehicles, its actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and its actual practices with respect to the vehicles at issue.  Having volunteered to provide information to Plaintiffs, Volkswagen had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiffs and Class members.  Whether a manufacturer's products comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certification testing their vehicles must pass.  Volkswagen represented to Plaintiffs and Class members that they were purchasing *clean* diesel vehicles, and certification testing appeared to confirm this—except that, secretly, Volkswagen had subverted the testing process thoroughly.

1795. Volkswagen actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Volkswagen money, and it did so at the expense of Plaintiffs and Class members.

1796. On information and belief, Volkswagen has still not made full and adequate disclosures, and continues to defraud Plaintiffs and Class members by

-440-

concealing material information regarding the emissions qualities of its vehicles and its emissions scheme.

1797. Plaintiffs and Class members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly "clean" diesel cars manufactured by Volkswagen, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them. Plaintiffs' and Class Members' actions were justified. Volkswagen was in exclusive control of the material facts, and such facts were not known to the public, Plaintiffs, or Class members.

1798. Because of the concealment and/or suppression of the facts, Plaintiffs and Class members have sustained damage because they own vehicles that are diminished in value as a result of Volkswagen's concealment of the true quality and quantity of those vehicles' emissions and Volkswagen's failure to timely disclose the actual emissions qualities and quantities of hundreds of thousands of Volkswagen- and Audi-branded vehicles and the serious issues engendered by Volkswagen's corporate policies. Had Plaintiffs and Class members been aware of Volkswagen's emissions scheme, and the company's callous disregard for compliance with applicable federal and state laws and regulations, Plaintiffs and Class members who purchased or leased new or previously owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

1799. The value of Plaintiffs' and Class Members' vehicles has diminished as a result of Volkswagen's fraudulent concealment of its emissions scheme, which has greatly tarnished the Volkswagen and Audi brand names attached to Plaintiffs' and Class members' vehicles and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles. In addition, Class members are entitled to damages for loss of

-441-

use, costs of additional fuel, costs of unused warranties, and other damages to be proved at trial.

1800. Accordingly, Volkswagen is liable to Plaintiffs and Class members for damages in an amount to be proven at trial.

1801. Volkswagen's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and Class members' rights and the representations that Volkswagen made to them, in order to enrich Volkswagen.  To the extent permitted under applicable law, Volkswagen's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT III
## BREACH OF CONTRACT
## (BASED ON TENNESSEE LAW)

1802. Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

1803. Plaintiff brings this Count on behalf of new vehicle or certified pre-owned vehicle purchasers in the Tennessee Subclass.

1804. Volkswagen's misrepresentations and omissions alleged herein, including Volkswagen's failure to disclose the existence of the CleanDiesel engine system's defect and/or defective design as alleged herein, caused Plaintiff and the other Tennessee Subclass members to make their purchases or leases of their Affected Vehicles.  Absent those misrepresentations and omissions, Plaintiff and the other Tennessee Subclass members would not have purchased or leased these Affected Vehicles, would not have purchased or leased these Affected Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain the CleanDiesel engine system and which were not marketed as including such a system.  Accordingly, Plaintiff and the other Tennessee Subclass

010549-11  816608 V1

members overpaid for their Affected Vehicles and did not receive the benefit of their bargain.

1805. Each and every sale or lease of an Affected Vehicle by an authorized Volkswagen dealer constitutes a contract between Volkswagen and the purchaser or lessee.  Volkswagen breached these contracts by selling or leasing Plaintiff and the other Tennessee Subclass members defective Affected Vehicles and by misrepresenting or failing to disclose the existence of the CleanDiesel engine system's defect and/or defective design, including information known to Volkswagen rendering each Affected Vehicle non EPA-compliant, and thus less valuable, than vehicles not equipped with a CleanDiesel engine system.

1806. As a direct and proximate result of Volkswagen's breach of contract, Plaintiff and the Tennessee Subclass have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

**SS.    Claims Brought on Behalf of the Texas Subclass**

<div align="center">

**COUNT I**
**VIOLATIONS OF THE DECEPTIVE TRADE PRACTICES ACT**
**(TEX. BUS. & COM. CODE §§ 17.41, *et seq.*)**

</div>

1807. Plaintiff Justin Holloway ("Plaintiff," for purposes of all Texas Subclass Counts) incorporate by reference all preceding allegations as though fully set forth herein.

1808. Plaintiff intends to assert a claim under the Texas Deceptive Trade Practices Act ("TDTPA"), which makes it unlawful to commit "[f]alse, misleading, or deceptive acts or practices in the conduct of any trade or commerce." TEX. BUS. & COM. CODE § 17.46.  Plaintiffs will make a demand in satisfaction of TEX. BUS. & COM. CODE § 17.45(2), and may amend this Complaint to assert claims under the TDTPA once the required 60 days have elapsed.  This paragraph is included for

<div align="center">

-443-

</div>

purposes of notice only and is not intended to actually assert a claim under the TDTPA.

### COUNT II
### BREACH OF CONTRACT
### (BASED ON TEXAS LAW)

1809. Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

1810. Plaintiff brings this Count on behalf of new vehicle or certified pre-owned vehicle purchasers in the Texas Subclass.

1811. Volkswagen's misrepresentations and omissions alleged herein, including Volkswagen's failure to disclose the existence of the CleanDiesel engine system's defect and/or defective design as alleged herein, caused Plaintiffs and the other Texas Subclass members to make their purchases or leases of their Affected Vehicles. Absent those misrepresentations and omissions, Plaintiffs and the other Texas Subclass members would not have purchased or leased these Affected Vehicles, would not have purchased or leased these Affected Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain the CleanDiesel engine system and which were not marketed as including such a system. Accordingly, Plaintiff and the other Texas Subclass members overpaid for their Affected Vehicles and did not receive the benefit of their bargain.

1812. Each and every sale or lease of an Affected Vehicle by an authorized Volkswagen dealer constitutes a contract between Volkswagen and the purchaser or lessee. Volkswagen breached these contracts by selling or leasing Plaintiff and the other Texas Subclass members defective Affected Vehicles and by misrepresenting or failing to disclose the existence of the CleanDiesel engine system's defect and/or defective design, including information known to Volkswagen rendering each Affected Vehicle non EPA-compliant, and thus less valuable, than vehicles not equipped with a CleanDiesel engine system.

-444-

1813. As a direct and proximate result of Volkswagen's breach of contract, Plaintiff and the Texas Subclass have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## COUNT III
## FRAUD BY CONCEALMENT

1814. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1815. This claim is brought on behalf of the Texas Subclass.

1816. Volkswagen intentionally concealed and suppressed material facts concerning the quality of the Affected Vehicles. As alleged in this Complaint, notwithstanding references in the very model names of the subject vehicles as "Clean Diesel," or to their engines as "TDI Clean Diesel" engines, Volkswagen engaged in a secret scheme to evade federal and state vehicle emissions standards by installing software designed to conceal its vehicles' emissions of the pollutant nitrogen oxide, which contributes to the creation of ozone and smog. The software installed on the vehicles at issue was designed nefariously to kick-in during emissions certification testing, such that the vehicles would show far lower emissions than when actually operating on the road. The result was what Volkswagen intended: vehicles passed emissions certifications by way of deliberately induced false readings. Reportedly, Volkswagen's deliberate, secret scheme resulted in noxious emissions from these vehicles at up to 40 times applicable standards.

1817. Plaintiffs and Class members reasonably relied upon Volkswagen's false representations. They had no way of knowing that Volkswagen's representations were false and gravely misleading. As alleged herein, Volkswagen employed extremely sophisticated methods of deception. Plaintiffs and Class members did not, and could not, unravel Volkswagen's deception on their own.

1818. Volkswagen concealed and suppressed material facts concerning what is evidently the true culture of Volkswagen—one characterized by an emphasis on profits and sales above compliance with federal and state clean air laws, and emissions regulations that are meant to protect the public and consumers.  It also emphasized profits and sales over the trust that Plaintiffs and Class members placed in its representations.  As one customer, Priya Shah, put it in a quotation cited by the *Los Angeles Times* in a September 18, 2015 article, "It's just a blatant disregard and intentional manipulation of the system.  That's just a whole other level of not only lying to the government, but also lying to your consumer.  People buy diesel cars from Volkswagen because they feel they are clean diesel cars."  In the words of Ms. Shah, which no doubt reflect the sentiments of all other CleanDiesel vehicle buyers, "I don't want to be spewing noxious gases into the environment."

1819. Necessarily, Volkswagen also took steps to ensure that its employees did not reveal the details of its scheme to regulators or consumers, including Plaintiffs and Class members.  Volkswagen did so in order to boost the reputations of its vehicles and to falsely assure purchasers and lessors of its vehicles, including previously owned vehicles, that Volkswagen is a reputable manufacturer that complies with applicable law, including federal and state clean air laws and emissions regulations, and that its vehicles likewise comply with applicable law and regulations.  Volkswagen's false representations were material to consumers, both because they concerned the quality of the Affected Vehicles, including their compliance with applicable federal and state laws and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles.  As Volkswagen well knew, its customers, including Plaintiffs and Class members, highly valued that the vehicles they were purchasing or leasing were *clean* diesel cars, and they paid accordingly.

-446-

1820. Volkswagen had a duty to disclose its emissions scheme because knowledge of the scheme and its details were known and/or accessible only to Volkswagen, because Volkswagen had exclusive knowledge as to implementation and maintenance of its scheme, and because Volkswagen knew the facts were not known to or reasonably discoverable by Plaintiffs or Class members.  Volkswagen also had a duty to disclose because it made general affirmative representations about the qualities of its vehicles with respect to emissions standards, starting with references to them as *clean* diesel cars, or cars with *clean* diesel engines, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding its emissions scheme, the actual emissions of its vehicles, its actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and its actual practices with respect to the vehicles at issue.  Having volunteered to provide information to Plaintiffs, Volkswagen had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiffs and Class members.  Whether a manufacturer's products comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certification testing their vehicles must pass.  Volkswagen represented to Plaintiffs and Class members that they were purchasing *clean* diesel vehicles, and certification testing appeared to confirm this—except that, secretly, Volkswagen had subverted the testing process thoroughly.

1821. Volkswagen actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles did not or could not comply with federal and state laws governing clean air

-447-

and emissions, which perception would hurt the brand's image and cost Volkswagen money, and it did so at the expense of Plaintiffs and Class members.

1822. On information and belief, Volkswagen has still not made full and adequate disclosures, and continues to defraud Plaintiffs and Class members by concealing material information regarding the emission qualities of its vehicles and its emissions scheme.

1823. Plaintiffs and Class members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly "clean" diesel cars manufactured by Volkswagen, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them.  Plaintiffs' and Class members' actions were justified.  Volkswagen was in exclusive control of the material facts, and such facts were not known to the public, Plaintiffs, or Class members.

1824. Because of the concealment and/or suppression of the facts, Plaintiffs and Class members have sustained damage because they own vehicles that are diminished in value as a result of Volkswagen's concealment of the true quality and quantity of those vehicles' emissions and Volkswagen's failure to timely disclose the actual emission qualities and quantities of hundreds of thousands of Volkswagen- and Audi-branded vehicles and the serious issues engendered by Volkswagen's corporate policies.  Had Plaintiffs and Class members been aware of Volkswagen's emissions scheme, and the company's callous disregard for compliance with applicable federal and state laws and regulations, Plaintiffs and Class members who purchased or leased new or previously owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

1825. The value of Plaintiffs' and Class members' vehicles has diminished as a result of Volkswagen's fraudulent concealment of its emissions scheme, which has

-448-

greatly tarnished the Volkswagen and Audi brand names attached to Plaintiffs' and Class members' vehicles and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.  In addition, Class members are entitled to damages for loss of use, costs of additional fuel, costs of unused warranties, and other damages to be proved at trial.

1826.  Accordingly, Volkswagen is liable to Plaintiffs and Class members for damages in an amount to be proven at trial.

1827.  Volkswagen's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and Class members' rights and the representations that Volkswagen made to them, in order to enrich Volkswagen.  To the extent permitted under applicable law, Volkswagen's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**TT.   Claims Brought on Behalf of the Utah Subclass**

<div align="center">

**COUNT I**
**VIOLATION OF UTAH CONSUMER SALES PRACTICES ACT**
**(UTAH CODE ANN. § 13-11-1, *ET SEQ.*)**

</div>

1828.  Plaintiff Kelly King ("Plaintiff," for purposes of all Utah Subclass Counts) incorporates by reference all preceding allegations as though fully set forth herein.

1829.  This claim is brought on behalf of the Utah Class.

1830.  Volkswagen is a "supplier" under the Utah Consumer Sales Practices Act ("Utah CSPA"), UTAH CODE ANN. § 13-11-3.

1831.  Utah Class Members are "persons" under UTAH CODE ANN. § 13-11-3.

1832.  The sale of the Affected Vehicles to the Utah Class Members was a "consumer transaction" within the meaning of UTAH CODE ANN. § 13-11-3.

<div align="center">-449-</div>

1833. The Utah CSPA makes unlawful any "deceptive act or practice by a supplier in connection with a consumer transaction" under UTAH CODE ANN. § 13-11-4. Specifically, "a supplier commits a deceptive act or practice if the supplier knowingly or intentionally: (a) indicates that the subject of a consumer transaction has sponsorship, approval, performance characteristics, accessories, uses, or benefits, if it has not" or "(b) indicates that the subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if it is not." UTAH CODE ANN. § 13-11-4. "An unconscionable act or practice by a supplier in connection with a consumer transaction" also violates the Utah CSPA. UTAH CODE ANN. § 13-11-5.

1834. Volkswagen committed deceptive acts or practices in the conduct of trade or commerce, by, among other things, engaging in unconscionable acts, representing that the Affected Vehicles have characteristics, uses, benefits, and qualities which they do not have; and representing that the Affected Vehicles are of a particular standard, quality, and grade when they are not

1835. In the course of its business, Volkswagen installed the "defeat device" and concealed that its CleanDiesel systems failed EPA regulations as described herein and otherwise engaged in activities with a tendency or capacity to deceive. Volkswagen also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of Affected Vehicles.

1836. Volkswagen has known of its use of the "defeat device" and the true nature of its CleanDiesel engine system for at least six years, but concealed all of that information until recently.

1837. Volkswagen was also aware that it valued profits over environmental cleanliness, efficiency, and lawfulness, and that it was manufacturing, selling and

-450-

distributing vehicles throughout the United States that did not comply with EPA regulations.  Volkswagen concealed this information as well.

1838. By failing to disclose and by actively concealing the "defeat device" and the true cleanliness and performance of the CleanDiesel engine system, by marketing its vehicles as safe, reliable, environmentally clean, efficient, and of high quality, and by presenting itself as a reputable manufacturer that valued safety, environmental cleanliness and efficiency, and stood behind its vehicles after they were sold, Volkswagen engaged in deceptive business practices in violation of the Utah CSPA.

1839. In the course of Volkswagen's business, it willfully failed to disclose and actively concealed the use of the "defeat device" and true cleanliness and efficiency of the CleanDiesel engine system and serious defects discussed above.  Volkswagen compounded the deception by repeatedly asserting that the Affected Vehicles were safe, reliable, environmentally clean, efficient, and of high quality, and by claiming to be a reputable manufacturer that valued safety, environmental cleanliness and efficiency, and stood behind its vehicles once they are on the road.

1840. Volkswagen's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true cleanliness and efficiency of the CleanDiesel engine system, the quality of the Volkswagen brand, the devaluing of environmental cleanliness and integrity at Volkswagen, and the true value of the Affected Vehicles.

1841. Volkswagen intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with an intent to mislead Plaintiffs and the Utah Class.

1842. Volkswagen knew or should have known that its conduct violated the Utah CSPA.

010549-11 816608 V1

1843. As alleged above, Volkswagen made material statements about the safety, cleanliness, efficiency and reliability of the Affected Vehicles and the Volkswagen and Audi brands that were either false or misleading.

1844. Volkswagen owed Plaintiffs a duty to disclose the true safety, cleanliness, efficiency and reliability of the Affected Vehicles and the devaluing of environmental cleanliness and integrity at Volkswagen, because Volkswagen:

    a.    Possessed exclusive knowledge that it valued profits over environmental cleanliness, efficiency, and lawfulness, and that it was manufacturing, selling and distributing vehicles throughout the United States that did not comply with EPA regulations;

    b.    Intentionally concealed the foregoing from Plaintiffs; and/or

    c.    Made incomplete representations about the safety, cleanliness, efficiency and reliability of the Affected Vehicles generally, and the use of the "defeat device" and true nature of the CleanDiesel engine system in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

1845. Because Volkswagen fraudulently concealed the "defeat device" and the true cleanliness and performance of the CleanDiesel engine system, resulting in a raft of negative publicity once the use of the "defeat device" and true characteristics of the CleanDiesel engine system finally began to be disclosed, the value of the Affected Vehicles has greatly diminished.  In light of the stigma attached to those vehicles by Volkswagen's conduct, they are now worth significantly less than they otherwise would be.

1846. Volkswagen's fraudulent use of the "defeat device" and its concealment of the true characteristics of the CleanDiesel engine system were material to Plaintiffs and the Utah Class.  A vehicle made by a reputable manufacturer of environmentally friendly vehicles is worth more than an otherwise comparable vehicle made by a disreputable and dishonest manufacturer of polluting vehicles that conceals the amount its cars pollutes rather than make environmentally friendly vehicles.

-452-

1847. Plaintiffs and the Utah Class suffered ascertainable loss caused by Volkswagen's misrepresentations and its concealment of and failure to disclose material information. Plaintiffs who purchased the Affected Vehicles either would have paid less for their vehicles or would not have purchased or leased them at all.

1848. Volkswagen had an ongoing duty to all Volkswagen and Audi customers to refrain from unfair and deceptive acts or practices under the Utah CSPA. All owners of Affected Vehicles suffered ascertainable loss in the form of the diminished value of their vehicles as a result of Volkswagen's deceptive and unfair acts and practices that occurred in the course of Volkswagen's business.

1849. Volkswagen's violations present a continuing risk to Plaintiffs as well as to the general public. Volkswagen's unlawful acts and practices complained of herein affect the public interest.

1850. As a direct and proximate result of Volkswagen's violations of the Utah CSPA, Plaintiffs and the Utah Class have suffered injury-in-fact and/or actual damage.

1851. Pursuant to UTAH CODE ANN. § 13-11-4, Plaintiffs and the Utah Class seek monetary relief against Volkswagen measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $2,000 for each Plaintiff and each Utah Class member, reasonable attorneys' fees, and any other just and proper relief available under the Utah CSPA.

## COUNT II
## FRAUD BY CONCEALMENT

1852. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1853. This claim is brought on behalf of the Utah Subclass.

1854. Volkswagen intentionally concealed and suppressed material facts concerning the quality of the Affected Vehicles. As alleged in this Complaint, notwithstanding references in the very model names of the subject vehicles as "Clean Diesel," or to their engines as "TDI Clean Diesel" engines, Volkswagen engaged in a

-453-

secret scheme to evade federal and state vehicle emissions standards by installing software designed to conceal its vehicles' emissions of the pollutant nitrogen oxide, which contributes to the creation of ozone and smog. The software installed on the vehicles at issue was designed nefariously to kick-in during emissions certification testing, such that the vehicles would show far lower emissions than when actually operating on the road. The result was what Volkswagen intended: vehicles passed emissions certifications by way of deliberately induced false readings. Reportedly, Volkswagen's deliberate, secret scheme resulted in noxious emissions from these vehicles at up to 40 times applicable standards.

1855. Plaintiffs and Class members reasonably relied upon Volkswagen's false representations. They had no way of knowing that Volkswagen's representations were false and gravely misleading. As alleged herein, Volkswagen employed extremely sophisticated methods of deception. Plaintiffs and Class members did not, and could not, unravel Volkswagen's deception on their own.

1856. Volkswagen concealed and suppressed material facts concerning what is evidently the true culture of Volkswagen—one characterized by an emphasis on profits and sales above compliance with federal and state clean air laws, and emissions regulations that are meant to protect the public and consumers. It also emphasized profits and sales over the trust that Plaintiffs and Class members placed in its representations. As one customer, Priya Shah, put it in a quotation cited by the *Los Angeles Times* in a September 18, 2015 article, "It's just a blatant disregard and intentional manipulation of the system. That's just a whole other level of not only lying to the government, but also lying to your consumer. People buy diesel cars from Volkswagen because they feel they are clean diesel cars." In the words of Ms. Shah, which no doubt reflect the sentiments of all other CleanDiesel vehicle buyers, "I don't want to be spewing noxious gases into the environment."

1857. Necessarily, Volkswagen also took steps to ensure that its employees did not reveal the details of its scheme to regulators or consumers, including Plaintiffs and Class members.  Volkswagen did so in order to boost the reputations of its vehicles and to falsely assure purchasers and lessors of its vehicles, including previously owned vehicles, that Volkswagen is a reputable manufacturer that complies with applicable law, including federal and state clean air laws and emissions regulations, and that its vehicles likewise comply with applicable law and regulations.  Volkswagen's false representations were material to consumers, both because they concerned the quality of the Affected Vehicles, including their compliance with applicable federal and state laws and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles.  As Volkswagen well knew, its customers, including Plaintiffs and Class members, highly valued that the vehicles they were purchasing or leasing were *clean* diesel cars, and they paid accordingly.

1858. Volkswagen had a duty to disclose its emissions scheme because knowledge of the scheme and its details were known and/or accessible only to Volkswagen, because Volkswagen had exclusive knowledge as to implementation and maintenance of its scheme, and because Volkswagen knew the facts were not known to or reasonably discoverable by Plaintiffs or Class members.  Volkswagen also had a duty to disclose because it made general affirmative representations about the qualities of its vehicles with respect to emissions standards, starting with references to them as *clean* diesel cars, or cars with *clean* diesel engines, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding its emissions scheme, the actual emissions of its vehicles, its actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and its actual practices with respect to the vehicles at issue.  Having volunteered to provide information to Plaintiffs, Volkswagen had the duty to disclose not just the

-455-

partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiffs and Class members.  Whether a manufacturer's products comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certification testing their vehicles must pass.  Volkswagen represented to Plaintiffs and Class members that they were purchasing *clean* diesel vehicles, and certification testing appeared to confirm this—except that, secretly, Volkswagen had subverted the testing process thoroughly.

1859.  Volkswagen actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Volkswagen money, and it did so at the expense of Plaintiffs and Class members.

1860.  On information and belief, Volkswagen has still not made full and adequate disclosures, and continues to defraud Plaintiffs and Class members by concealing material information regarding the emissions qualities of its vehicles and its emissions scheme.

1861.  Plaintiffs and Class members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly "clean" diesel cars manufactured by Volkswagen, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them.  Plaintiffs' and Class Members' actions were justified.  Volkswagen was in exclusive control of the material facts, and such facts were not known to the public, Plaintiffs, or Class members.

1862. Because of the concealment and/or suppression of the facts, Plaintiffs and Class members have sustained damage because they own vehicles that are diminished in value as a result of Volkswagen's concealment of the true quality and quantity of those vehicles' emissions and Volkswagen's failure to timely disclose the actual emissions qualities and quantities of hundreds of thousands of Volkswagen- and Audi-branded vehicles and the serious issues engendered by Volkswagen's corporate policies. Had Plaintiffs and Class members been aware of Volkswagen's emissions scheme, and the company's callous disregard for compliance with applicable federal and state laws and regulations, Plaintiffs and Class members who purchased or leased new or previously owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

1863. The value of Plaintiffs' and Class Members' vehicles has diminished as a result of Volkswagen's fraudulent concealment of its emissions scheme, which has greatly tarnished the Volkswagen and Audi brand names attached to Plaintiffs' and Class members' vehicles and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles. In addition, Class members are entitled to damages for loss of use, costs of additional fuel, costs of unused warranties, and other damages to be proved at trial.

1864. Accordingly, Volkswagen is liable to Plaintiffs and Class members for damages in an amount to be proven at trial.

1865. Volkswagen's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and Class members' rights and the representations that Volkswagen made to them, in order to enrich Volkswagen. To the extent permitted under applicable law, Volkswagen's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

-457-

**COUNT III**
**BREACH OF CONTRACT**
**(BASED ON UTAH LAW)**

1866. Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

1867. Plaintiff brings this Count on behalf of new vehicle or certified pre-owned vehicle purchasers in the Utah Subclass.

1868. Volkswagen's misrepresentations and omissions alleged herein, including Volkswagen's failure to disclose the existence of the CleanDiesel engine system's defect and/or defective design as alleged herein, caused Plaintiff and the other Utah Subclass members to make their purchases or leases of their Affected Vehicles. Absent those misrepresentations and omissions, Plaintiff and the other Utah Subclass members would not have purchased or leased these Affected Vehicles, would not have purchased or leased these Affected Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain the CleanDiesel engine system and which were not marketed as including such a system. Accordingly, Plaintiff and the other Utah Subclass members overpaid for their Affected Vehicles and did not receive the benefit of their bargain.

1869. Each and every sale or lease of an Affected Vehicle by an authorized Volkswagen dealer constitutes a contract between Volkswagen and the purchaser or lessee. Volkswagen breached these contracts by selling or leasing Plaintiff and the other Utah Subclass members defective Affected Vehicles and by misrepresenting or failing to disclose the existence of the CleanDiesel engine system's defect and/or defective design, including information known to Volkswagen rendering each Affected Vehicle non EPA-compliant, and thus less valuable, than vehicles not equipped with a CleanDiesel engine system.

1870. As a direct and proximate result of Volkswagen's breach of contract, Plaintiff and the Utah Subclass have been damaged in an amount to be proven at trial,

-458-

which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

**UU.   Claims Brought on Behalf of the Vermont Subclass**

**COUNT I**
**VIOLATION OF VERMONT CONSUMER FRAUD ACT**
**(VT. STAT. ANN. TIT. 9, § 2451 *ET SEQ*.)**

1871. Plaintiff Karen Norman ("Plaintiff," for purposes of all Vermont Subclass Counts) incorporates by reference all preceding allegations as though fully set forth herein.

1872. This claim is brought on behalf of the Vermont Subclass.

1873. Volkswagen is a seller within the meaning of VT. STAT. ANN. TIT. 9, § 2451(a)(c).

1874. The Vermont Consumer Fraud Act ("Vermont CFA") makes unlawful "[u]nfair methods of competition in commerce, and unfair or deceptive acts or practices in commerce.…"  VT. STAT. ANN. TIT. 9, § 2453(a).  Volkswagen engaged in unfair and deceptive acts or practices in trade or commerce in violation of the Vermont CFA by fraudulently installing the "defeat device" to make it appear that its CleanDiesel engine systems complied with EPA regulations.

1875. In the course of its business, Volkswagen installed the "defeat device" and concealed that its CleanDiesel systems failed EPA regulations as described herein and otherwise engaged in activities with a tendency or capacity to deceive. Volkswagen also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of Affected Vehicles.

1876. Volkswagen has known of its use of the "defeat device" and the true nature of its CleanDiesel engine system for at least six years, but concealed all of that information until recently.

-459-

1877. Volkswagen was also aware that it valued profits over environmental cleanliness, efficiency, and lawfulness, and that it was manufacturing, selling and distributing vehicles throughout the United States that did not comply with EPA regulations.  Volkswagen concealed this information as well.

1878. By failing to disclose and by actively concealing the "defeat device" and the true cleanliness and performance of the CleanDiesel engine system, by marketing its vehicles as safe, reliable, environmentally clean, efficient, and of high quality, and by presenting itself as a reputable manufacturer that valued safety, environmental cleanliness and efficiency, and stood behind its vehicles after they were sold, Volkswagen engaged in unfair and deceptive business practices in violation of the Vermont CFA.

1879. In the course of Volkswagen's business, it willfully failed to disclose and actively concealed the use of the "defeat device" and true cleanliness and efficiency of the CleanDiesel engine system and serious defects discussed above.  Volkswagen compounded the deception by repeatedly asserting that the Affected Vehicles were safe, reliable, environmentally clean, efficient, and of high quality, and by claiming to be a reputable manufacturer that valued safety, environmental cleanliness and efficiency, and stood behind its vehicles once they are on the road.

1880. Volkswagen's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff, about the true cleanliness and efficiency of the CleanDiesel engine system, the quality of the Volkswagen and Audi brands, the devaluing of environmental cleanliness and integrity at Volkswagen, and the true value of the Affected Vehicles.

1881. Volkswagen intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with an intent to mislead Plaintiff and the Vermont Subclass.

-460-

1882. Volkswagen knew or should have known that its conduct violated the Vermont CFA.

1883. As alleged above, Volkswagen made material statements about the safety, cleanliness, efficiency and reliability of the Affected Vehicles and the Volkswagen and Audi brands that were either false or misleading.

1884. Volkswagen owed Plaintiff a duty to disclose the true safety, cleanliness, efficiency and reliability of the Affected Vehicles and the devaluing of environmental cleanliness and integrity at Volkswagen, because Volkswagen:

    a.   Possessed exclusive knowledge that it valued profits over environmental cleanliness, efficiency, and lawfulness, and that it was manufacturing, selling and distributing vehicles throughout the United States that did not comply with EPA regulations;

    b.   Intentionally concealed the foregoing from Plaintiff; and/or

    c.   Made incomplete representations about the safety, cleanliness, efficiency and reliability of the Affected Vehicles generally, and the use of the "defeat device" and true nature of the CleanDiesel engine system in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

1885. Because Volkswagen fraudulently concealed the "defeat device" and the true cleanliness and performance of the CleanDiesel engine system, resulting in a raft of negative publicity once the use of the "defeat device" and true characteristics of the CleanDiesel engine system finally began to be disclosed, the value of the Affected Vehicles has greatly diminished.  In light of the stigma attached to those vehicles by Volkswagen's conduct, they are now worth significantly less than they otherwise would be.

1886. Volkswagen's fraudulent use of the "defeat device" and its concealment of the true characteristics of the CleanDiesel engine system were material to Plaintiff and the Vermont Class.  A vehicle made by a reputable manufacturer of environmentally friendly vehicles is worth more than an otherwise comparable vehicle

-461-

made by a disreputable and dishonest manufacturer of polluting vehicles that conceals the amount its cars pollutes rather than make environmentally friendly vehicles.

1887. Plaintiff and the Vermont Subclass suffered ascertainable loss caused by Volkswagen's misrepresentations and its concealment of and failure to disclose material information.  Plaintiffs who purchased the Affected Vehicles either would have paid less for their vehicles or would not have purchased or leased them at all.

1888. Volkswagen had an ongoing duty to all Volkswagen and Audi customers to refrain from unfair and deceptive acts or practices under the Vermont CFA.  All owners of Affected Vehicles suffered ascertainable loss in the form of the diminished value of their vehicles as a result of Volkswagen's deceptive and unfair acts and practices that occurred in the course of Volkswagen's business.

1889. Volkswagen's violations present a continuing risk to Plaintiff as well as to the general public.  Volkswagen's unlawful acts and practices complained of herein affect the public interest.

1890. As a direct and proximate result of Volkswagen's violations of the Vermont CFA, Plaintiff and the Vermont Subclass have suffered injury-in-fact and/or actual damage.

1891. Plaintiff and the Vermont Subclass are entitled to recover "appropriate equitable relief" and "the amount of [their] damages, or the consideration or the value of the consideration given by [them], reasonable attorney's fees, and exemplary damages not exceeding three times the value of the consideration given by [them]" pursuant to VT. STAT. ANN. TIT. 9, § 2461(b).

## COUNT II
## FRAUD BY CONCEALMENT

1892. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1893. This claim is brought on behalf of the Vermont Subclass.

-462-

1894. Volkswagen intentionally concealed and suppressed material facts concerning the quality of the Affected Vehicles.  As alleged in this Complaint, notwithstanding references in the very model names of the subject vehicles as "Clean Diesel," or to their engines as "TDI Clean Diesel" engines, Volkswagen engaged in a secret scheme to evade federal and state vehicle emissions standards by installing software designed to conceal its vehicles' emissions of the pollutant nitrogen oxide, which contributes to the creation of ozone and smog.  The software installed on the vehicles at issue was designed nefariously to kick-in during emissions certification testing, such that the vehicles would show far lower emissions than when actually operating on the road.  The result was what Volkswagen intended: vehicles passed emissions certifications by way of deliberately induced false readings.  Reportedly, Volkswagen's deliberate, secret scheme resulted in noxious emissions from these vehicles up to 40 times applicable standards.

1895. Plaintiffs and Class members reasonably relied upon Volkswagen's false representations.  They had no way of knowing that Volkswagen's representations were false and gravely misleading.  As alleged herein, Volkswagen employed extremely sophisticated methods of deception.  Plaintiffs and Class members did not, and could not, unravel Volkswagen's deception on their own.

1896. Volkswagen concealed and suppressed material facts concerning what is evidently the true culture of Volkswagen—one characterized by an emphasis on profits and sales above compliance with federal and state clean air laws, and emissions regulations that are meant to protect the public and consumers.  It also emphasized profits and sales over the trust that Plaintiffs and Class members placed in its representations.  As one customer, Priya Shah, put it in a quotation cited by the *Los Angeles Times* in a September 18, 2015 article, "It's just a blatant disregard and intentional manipulation of the system.  That's just a whole other level of not only lying to the government, but also lying to your consumer.  People buy diesel cars from

-463-

Volkswagen because they feel they are clean diesel cars." In the words of Ms. Shah, which no doubt reflect the sentiments of all other CleanDiesel vehicle buyers, "I don't want to be spewing noxious gases into the environment."

1897. Necessarily, Volkswagen also took steps to ensure that its employees did not reveal the details of its scheme to regulators or consumers, including Plaintiffs and Class members. Volkswagen did so in order to boost the reputations of its vehicles and to falsely assure purchasers and lessors of its vehicles, including previously owned vehicles, that Volkswagen is a reputable manufacturer that complies with applicable law, including federal and state clean air laws and emissions regulations, and that its vehicles likewise comply with applicable law and regulations. Volkswagen's false representations were material to consumers, both because they concerned the quality of the Affected Vehicles, including their compliance with applicable federal and state laws and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles. As Volkswagen well knew, its customers, including Plaintiffs and Class members, highly valued that the vehicles they were purchasing or leasing were *clean* diesel cars, and they paid accordingly.

1898. Volkswagen had a duty to disclose its emissions scheme because knowledge of the scheme and its details were known and/or accessible only to Volkswagen, because Volkswagen had exclusive knowledge as to implementation and maintenance of its scheme, and because Volkswagen knew the facts were not known to or reasonably discoverable by Plaintiffs or Class members. Volkswagen also had a duty to disclose because it made general affirmative representations about the qualities of its vehicles with respect to emissions standards, starting with references to them as *clean* diesel cars, or cars with *clean* diesel engines, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding its emissions scheme, the actual emissions of its vehicles, its actual philosophy with

-464-

respect to compliance with federal and state clean air laws and emissions regulations, and its actual practices with respect to the vehicles at issue. Having volunteered to provide information to Plaintiffs, Volkswagen had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiffs and Class members. Whether a manufacturer's products comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certification testing their vehicles must pass. Volkswagen represented to Plaintiffs and Class members that they were purchasing *clean* diesel vehicles, and certification testing appeared to confirm this—except that, secretly, Volkswagen had subverted the testing process thoroughly.

1899. Volkswagen actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Volkswagen money, and it did so at the expense of Plaintiffs and Class members.

1900. On information and belief, Volkswagen has still not made full and adequate disclosures, and continues to defraud Plaintiffs and Class members by concealing material information regarding the emissions qualities of its vehicles and its emissions scheme.

1901. Plaintiffs and Class members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly "clean" diesel cars manufactured by Volkswagen, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in

-465-

light of the information concealed from them.  Plaintiffs' and Class Members' actions were justified.  Volkswagen was in exclusive control of the material facts, and such facts were not known to the public, Plaintiffs, or Class members.

1902.  Because of the concealment and/or suppression of the facts, Plaintiffs and Class members have sustained damage because they own vehicles that are diminished in value as a result of Volkswagen's concealment of the true quality and quantity of those vehicles' emissions and Volkswagen's failure to timely disclose the actual emissions qualities and quantities of hundreds of thousands of Volkswagen- and Audi-branded vehicles and the serious issues engendered by Volkswagen's corporate policies.  Had Plaintiffs and Class members been aware of Volkswagen's emissions scheme, and the company's callous disregard for compliance with applicable federal and state laws and regulations, Plaintiffs and Class members who purchased or leased new or previously owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

1903.  The value of Plaintiffs' and Class members' vehicles has diminished as a result of Volkswagen's fraudulent concealment of its emissions scheme, which has greatly tarnished the Volkswagen and Audi brand names attached to Plaintiffs' and Class members' vehicles and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.  In addition, Class members are entitled to damages for loss of use, costs of additional fuel, costs of unused warranties, and other damages to be proved at trial.

1904.  Accordingly, Volkswagen is liable to Plaintiffs and Class members for damages in an amount to be proven at trial.

1905.  Volkswagen's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and Class members' rights and the representations that Volkswagen made to them, in order to

-466-

1
2
3

enrich Volkswagen.  To the extent permitted under applicable law, Volkswagen's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

4
5

### COUNT III
### BREACH OF CONTRACT
### (BASED ON VERMONT LAW)

6
7

1906. Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

8
9

1907. Plaintiff brings this Count on behalf of new vehicle or certified pre-owned vehicle purchasers in the Vermont Subclass.

10
11
12
13
14
15
16
17
18
19
20
21

1908. Volkswagen's misrepresentations and omissions alleged herein, including Volkswagen's failure to disclose the existence of the CleanDiesel engine system's defect and/or defective design as alleged herein, caused Plaintiff and the other Vermont Subclass members to make their purchases or leases of their Affected Vehicles.  Absent those misrepresentations and omissions, Plaintiff and the other Vermont Subclass members would not have purchased or leased these Affected Vehicles, would not have purchased or leased these Affected Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain the CleanDiesel engine system and which were not marketed as including such a system.  Accordingly, Plaintiff and the other Vermont Subclass members overpaid for their Affected Vehicles and did not receive the benefit of their bargain.

22
23
24
25
26
27

1909. Each and every sale or lease of an Affected Vehicle by an authorized Volkswagen dealer constitutes a contract between Volkswagen and the purchaser or lessee.  Volkswagen breached these contracts by selling or leasing Plaintiff and the other Vermont Subclass members defective Affected Vehicles and by misrepresenting or failing to disclose the existence of the CleanDiesel engine system's defect and/or defective design, including information known to Volkswagen rendering each

28

-467-

Affected Vehicle non EPA-compliant, and thus less valuable, than vehicles not equipped with a CleanDiesel engine system.

1910. As a direct and proximate result of Volkswagen's breach of contract, Plaintiff and the Vermont Subclass have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## VV.   Claims Brought on Behalf of the Washington Subclass

### COUNT I
### VIOLATION OF THE WASHINGTON CONSUMER PROTECTION ACT
(WASH. REV. CODE ANN. §§ 19.86.010, *ET SEQ*.)

1911. Plaintiff Troy Ponto ("Plaintiff," for purposes of all Washington Subclass Counts) incorporates by reference all preceding allegations as though fully set forth herein.

1912. Plaintiff brings this Count on behalf of the Washington Subclass.

1913. Volkswagen, Plaintiff, and the Washington Subclass are a "person" under WASH. REV. CODE ANN. § 19.86.010(1) ("Washington CPA").

1914. Volkswagen engaged in "trade" or "commerce" under WASH. REV. CODE ANN. § 19.86.010(2).

1915. In the course of its business, Volkswagen installed the "defeat device" and concealed that its CleanDiesel systems failed EPA regulations as described herein and otherwise engaged in activities with a tendency or capacity to deceive. Volkswagen also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of Affected Vehicles.

1916. Volkswagen has known of its use of the "defeat device" and the true nature of its CleanDiesel engine system for at least six years, but concealed all of that information until recently.

-468-

1917. Volkswagen was also aware that it valued profits over environmental cleanliness, efficiency, and lawfulness, and that it was manufacturing, selling and distributing vehicles throughout the United States that did not comply with EPA regulations. Volkswagen concealed this information as well.

1918. By failing to disclose and by actively concealing the "defeat device" and the true cleanliness and performance of the CleanDiesel engine system, by marketing its vehicles as safe, reliable, environmentally clean, efficient, and of high quality, and by presenting itself as a reputable manufacturer that valued safety, environmental cleanliness and efficiency, and stood behind its vehicles after they were sold, Volkswagen engaged in deceptive business practices in violation of the Washington CPA.

1919. In the course of Volkswagen's business, it willfully failed to disclose and actively concealed the use of the "defeat device" and true cleanliness and efficiency of the CleanDiesel engine system and serious defects discussed above. Volkswagen compounded the deception by repeatedly asserting that the Affected Vehicles were safe, reliable, environmentally clean, efficient, and of high quality, and by claiming to be a reputable manufacturer that valued safety, environmental cleanliness and efficiency, and stood behind its vehicles once they are on the road.

1920. Volkswagen's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true cleanliness and efficiency of the CleanDiesel engine system, the quality of the Volkswagen and Audi brands, the devaluing of environmental cleanliness and integrity at Volkswagen, and the true value of the Affected Vehicles.

1921. Volkswagen intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with an intent to mislead Plaintiff and the Wyoming Subclass.

-469-

1922. Volkswagen knew or should have known that its conduct violated the Washington CPA.

1923. As alleged above, Volkswagen made material statements about the safety, cleanliness, efficiency and reliability of the Affected Vehicles and the Volkswagen and Audi brands that were either false or misleading.

1924. Volkswagen owed Plaintiffs a duty to disclose the true safety, cleanliness, efficiency, and reliability of the Affected Vehicles and the devaluing of environmental cleanliness and integrity at Volkswagen, because Volkswagen:

    a.    Possessed exclusive knowledge that it valued profits over environmental cleanliness, efficiency, and lawfulness, and that it was manufacturing, selling and distributing vehicles throughout the United States that did not comply with EPA regulations;

    b.    Intentionally concealed the foregoing from Plaintiffs; and/or

    c.    Made incomplete representations about the safety, cleanliness, efficiency and reliability of the Affected Vehicles generally, and the use of the "defeat device" and true nature of the CleanDiesel engine system in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

1925. Because Volkswagen fraudulently concealed the "defeat device" and the true cleanliness and performance of the CleanDiesel engine system, resulting in a raft of negative publicity once the use of the "defeat device" and true characteristics of the CleanDiesel engine system finally began to be disclosed, the value of the Affected Vehicles has greatly diminished.  In light of the stigma attached to those vehicles by Volkswagen's conduct, they are now worth significantly less than they otherwise would be.

1926. Volkswagen's fraudulent use of the "defeat device" and its concealment of the true characteristics of the CleanDiesel engine system were material to Plaintiffs and the Washington Subclass.  A vehicle made by a reputable manufacturer of

environmentally friendly vehicles is worth more than an otherwise comparable vehicle made by a disreputable and dishonest manufacturer of polluting vehicles that conceals the amount its cars pollutes rather than make environmentally friendly vehicles.

1927. Plaintiffs and the Washington Subclass suffered ascertainable loss caused by Volkswagen's misrepresentations and its concealment of and failure to disclose material information.  Plaintiffs who purchased the Affected Vehicles either would have paid less for their vehicles or would not have purchased or leased them at all.

1928. Volkswagen's actions constituted a generalized course of deception that impacts the public interest because Plaintiffs and the Washington Subclass members were injured in exactly the same way as millions of others purchasing and/or leasing Volkswagen vehicles, and the failure to follow the practices pertaining to motor vehicle warranties in WASH. REV. CODE § 19.118 is recognized by statute as matters vitally affecting the public interest.  All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Volkswagen's business and has the potential for repetition.

1929. As a direct and proximate result of Volkswagen's violations of the Washington CPA, Plaintiffs and the Washington Subclass have suffered injury-in-fact and/or actual damage.

1930. Volkswagen's actions as set forth above induced Plaintiffs and the Washington Subclass members to purchase their Affected Vehicles from Volkswagen and/or pay a higher price for their Affected Vehicles than they otherwise would have.

1931. Plaintiffs and the Washington Class members were injured as a result of Volkswagen's conduct.  Due to Volkswagen's deceptive or unfair conduct, Plaintiffs and the Washington Class members overpaid for their Affected Vehicles and did not receive the benefit of their bargain.  Their vehicles have also suffered a diminution in value.

-471-

1932. Pursuant to WASH. REV. CODE § 19.86.095, Plaintiffs will serve the Washington Attorney General with a copy of this complaint as Plaintiffs and the Washington Class members seek injunctive relief.

1933. As a direct and proximate result of Volkswagen's breach of contract, Plaintiff and the Washington Class have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, attorneys' fees, costs, treble damages, and other damages allowed by law.

## COUNT III
## FRAUD BY CONCEALMENT

1934. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1935. This claim is brought on behalf of the Washington Subclass.

1936. Volkswagen intentionally concealed and suppressed material facts concerning the quality of the Affected Vehicles.  As alleged in this Complaint, notwithstanding references in the very model names of the subject vehicles as "Clean Diesel," or to their engines as "TDI Clean Diesel" engines, Volkswagen engaged in a secret scheme to evade federal and state vehicle emissions standards by installing software designed to conceal its vehicles' emissions of the pollutant nitrogen oxide, which contributes to the creation of ozone and smog.  The software installed on the vehicles at issue was designed nefariously to kick-in during emissions certification testing, such that the vehicles would show far lower emissions than when actually operating on the road.  The result was what Volkswagen intended: vehicles passed emissions certifications by way of deliberately induced false readings.  Reportedly, Volkswagen's deliberate, secret scheme resulted in noxious emissions from these vehicles up to 40 times applicable standards.

1937. Plaintiffs and Class members reasonably relied upon Volkswagen's false representations.  They had no way of knowing that Volkswagen's representations were

-472-

false and gravely misleading.  As alleged herein, Volkswagen employed extremely sophisticated methods of deception.  Plaintiffs and Class members did not, and could not, unravel Volkswagen's deception on their own.

1938. Volkswagen concealed and suppressed material facts concerning what is evidently the true culture of Volkswagen—one characterized by an emphasis on profits and sales above compliance with federal and state clean air laws, and emissions regulations that are meant to protect the public and consumers.  It also emphasized profits and sales over the trust that Plaintiffs and Class members placed in its representations.  As one customer, Priya Shah, put it in a quotation cited by the *Los Angeles Times* in a September 18, 2015 article, "It's just a blatant disregard and intentional manipulation of the system.  That's just a whole other level of not only lying to the government, but also lying to your consumer.  People buy diesel cars from Volkswagen because they feel they are clean diesel cars."  In the words of Ms. Shah, which no doubt reflect the sentiments of all other CleanDiesel vehicle buyers, "I don't want to be spewing noxious gases into the environment."

1939. Necessarily, Volkswagen also took steps to ensure that its employees did not reveal the details of its scheme to regulators or consumers, including Plaintiffs and Class members.  Volkswagen did so in order to boost the reputations of its vehicles and to falsely assure purchasers and lessors of its vehicles, including previously owned vehicles, that Volkswagen is a reputable manufacturer that complies with applicable law, including federal and state clean air laws and emissions regulations, and that its vehicles likewise comply with applicable law and regulations.  Volkswagen's false representations were material to consumers, both because they concerned the quality of the Affected Vehicles, including their compliance with applicable federal and state laws and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles.  As Volkswagen well knew, its customers, including Plaintiffs and Class members, highly valued that

-473-

the vehicles they were purchasing or leasing were *clean* diesel cars, and they paid accordingly.

1940. Volkswagen had a duty to disclose its emissions scheme because knowledge of the scheme and its details were known and/or accessible only to Volkswagen, because Volkswagen had exclusive knowledge as to implementation and maintenance of its scheme, and because Volkswagen knew the facts were not known to or reasonably discoverable by Plaintiffs or Class members.  Volkswagen also had a duty to disclose because it made general affirmative representations about the qualities of its vehicles with respect to emissions standards, starting with references to them as *clean* diesel cars, or cars with *clean* diesel engines, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding its emissions scheme, the actual emissions of its vehicles, its actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and its actual practices with respect to the vehicles at issue.  Having volunteered to provide information to Plaintiffs, Volkswagen had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiffs and Class members.  Whether a manufacturer's products comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certification testing their vehicles must pass.  Volkswagen represented to Plaintiffs and Class members that they were purchasing *clean* diesel vehicles, and certification testing appeared to confirm this—except that, secretly, Volkswagen had subverted the testing process thoroughly.

1941. Volkswagen actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its

-474-

vehicles did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Volkswagen money, and it did so at the expense of Plaintiffs and Class members.

1942. On information and belief, Volkswagen has still not made full and adequate disclosures, and continues to defraud Plaintiffs and Class members by concealing material information regarding the emissions qualities of its vehicles and its emissions scheme.

1943. Plaintiffs and Class members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly "clean" diesel cars manufactured by Volkswagen, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them.  Plaintiffs' and Class Members' actions were justified.  Volkswagen was in exclusive control of the material facts, and such facts were not known to the public, Plaintiffs, or Class members.

1944. Because of the concealment and/or suppression of the facts, Plaintiffs and Class members have sustained damage because they own vehicles that are diminished in value as a result of Volkswagen's concealment of the true quality and quantity of those vehicles' emissions and Volkswagen's failure to timely disclose the actual emissions qualities and quantities of hundreds of thousands of Volkswagen- and Audi-branded vehicles and the serious issues engendered by Volkswagen's corporate policies.  Had Plaintiffs and Class members been aware of Volkswagen's emissions scheme, and the company's callous disregard for compliance with applicable federal and state laws and regulations, Plaintiffs and Class members who purchased or leased new or previously owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

010549-11  816608 V1

1945. The value of Plaintiffs' and Class Members' vehicles has diminished as a result of Volkswagen's fraudulent concealment of its emissions scheme, which has greatly tarnished the Volkswagen and Audi brand names attached to Plaintiffs' and Class members' vehicles and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.  In addition, Class members are entitled to damages for loss of use, costs of additional fuel, costs of unused warranties, and other damages to be proved at trial.

1946. Accordingly, Volkswagen is liable to Plaintiffs and Class members for damages in an amount to be proven at trial.

1947. Volkswagen's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and Class members' rights and the representations that Volkswagen made to them, in order to enrich Volkswagen.  To the extent permitted under applicable law, Volkswagen's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**COUNT III**
**BREACH OF CONTRACT**
**(BASED ON WASHINGTON LAW)**

1948. Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

1949. Plaintiff brings this Count on behalf of new vehicle or certified pre-owned vehicle purchasers in the Washington Subclass.

1950. Volkswagen's misrepresentations and omissions alleged herein, including Volkswagen's failure to disclose the existence of the CleanDiesel engine system's defect and/or defective design as alleged herein, caused Plaintiff and the other Washington Subclass members to make their purchases or leases of their Affected Vehicles.  Absent those misrepresentations and omissions, Plaintiff and the other

-476-

1   Washington Subclass members would not have purchased or leased these Affected

2   Vehicles, would not have purchased or leased these Affected Vehicles at the prices

3   they paid, and/or would have purchased or leased less expensive alternative vehicles

4   that did not contain the CleanDiesel engine system and which were not marketed as

5   including such a system.  Accordingly, Plaintiff and the other Washington Subclass

6   members overpaid for their Affected Vehicles and did not receive the benefit of their

7   bargain.

8        1951. Each and every sale or lease of an Affected Vehicle by an authorized

9   Volkswagen dealer constitutes a contract between Volkswagen and the purchaser or

10   lessee.  Volkswagen breached these contracts by selling or leasing Plaintiff and the

11   other Washington Subclass members defective Affected Vehicles and by

12   misrepresenting or failing to disclose the existence of the CleanDiesel engine system's

13   defect and/or defective design, including information known to Volkswagen rendering

14   each Affected Vehicle non EPA-compliant, and thus less valuable, than vehicles not

15   equipped with a CleanDiesel engine system.

16   **WW. Claims Brought on Behalf of the West Virginia Subclass**

17                                   **COUNT I**
     **VIOLATIONS OF THE CONSUMER CREDIT AND PROTECTION ACT**
18                   **(W. VA. CODE § 46A-1-101, *ET SEQ*.)**

19        1952. Plaintiff Scott Taylor ("Plaintiff," for purposes of all West Virginia

20   Subclass Counts) incorporates by reference all preceding allegations as though fully

21   set forth herein.

22        1953. Plaintiff intends to assert a claim under the West Virginia Consumer

23   Credit and Protection Act ("West Virginia CCPA") which prohibits "unfair or

24   deceptive acts or practices in the conduct of any trade or commerce …."  W. VA.

25   CODE § 46A-6-104.  Plaintiff will make a demand in satisfaction of W. VA. CODE §

26   46A-6-106(b), and may amend this Complaint to assert claims under the CCPA once

27

28

                                         -477-

the required 20 days have elapsed.  This paragraph is included for purposes of notice only and is not intended to actually assert a claim under the CCPA.

## COUNT II
## FRAUD BY CONCEALMENT

1954. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1955. This claim is brought on behalf of the West Virginia Subclass.

1956. Volkswagen intentionally concealed and suppressed material facts concerning the quality of the Affected Vehicles.  As alleged in this Complaint, notwithstanding references in the very model names of the subject vehicles as "Clean Diesel," or to their engines as "TDI Clean Diesel" engines, Volkswagen engaged in a secret scheme to evade federal and state vehicle emissions standards by installing software designed to conceal its vehicles' emissions of the pollutant nitrogen oxide, which contributes to the creation of ozone and smog.  The software installed on the vehicles at issue was designed nefariously to kick-in during emissions certification testing, such that the vehicles would show far lower emissions than when actually operating on the road.  The result was what Volkswagen intended: vehicles passed emissions certifications by way of deliberately induced false readings.  Reportedly, Volkswagen's deliberate, secret scheme resulted in noxious emissions from these vehicles up to 40 times applicable standards.

1957. Plaintiffs and Class members reasonably relied upon Volkswagen's false representations.  They had no way of knowing that Volkswagen's representations were false and misleading.  As alleged herein, Volkswagen employed extremely sophisticated methods of deception.  Plaintiffs and Class members did not, and could not, unravel Volkswagen's deception on their own.

1958. Volkswagen concealed and suppressed material facts concerning what is evidently the true culture of Volkswagen—one characterized by an emphasis on profits and sales above compliance with federal and state clean air laws, and emissions

-478-

regulations that are meant to protect the public and consumers.  It also emphasized profits and sales over the trust that Plaintiffs and Class members placed in its representations.  As one customer, Priya Shah, put it in a quotation cited by the *Los Angeles Times* in a September 18, 2015 article, "It's just a blatant disregard and intentional manipulation of the system.  That's just a whole other level of not only lying to the government, but also lying to your consumer.  People buy diesel cars from Volkswagen because they feel they are clean diesel cars."  In the words of Ms. Shah, which no doubt reflect the sentiments of all other CleanDiesel vehicle buyers, "I don't want to be spewing noxious gases into the environment."

1959.  Necessarily, Volkswagen also took steps to ensure that its employees did not reveal the details of its scheme to regulators or consumers, including Plaintiffs and Class members.  Volkswagen did so in order to boost the reputations of its vehicles and to falsely assure purchasers and lessors of its vehicles, including previously owned vehicles, that Volkswagen is a reputable manufacturer that complies with applicable law, including federal and state clean air laws and emissions regulations, and that its vehicles likewise comply with applicable law and regulations.  Volkswagen's false representations were material to consumers, both because they concerned the quality of the Affected Vehicles, including their compliance with applicable federal and state laws and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles.  As Volkswagen well knew, its customers, including Plaintiffs and Class members, highly valued that the vehicles they were purchasing or leasing were *clean* diesel cars, and they paid accordingly.

1960.  Volkswagen had a duty to disclose its emissions scheme because knowledge of the scheme and its details were known and/or accessible only to Volkswagen, because Volkswagen had exclusive knowledge as to implementation and maintenance of its scheme, and because Volkswagen knew the facts were not known

to or reasonably discoverable by Plaintiffs or Class members. Volkswagen also had a duty to disclose because it made general affirmative representations about the qualities of its vehicles with respect to emissions standards, starting with references to them as *clean* diesel cars, or cars with *clean* diesel engines, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding its emissions scheme, the actual emissions of its vehicles, its actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and its actual practices with respect to the vehicles at issue. Having volunteered to provide information to Plaintiffs, Volkswagen had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiffs and Class members. Whether a manufacturer's products comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certification testing their vehicles must pass. Volkswagen represented to Plaintiffs and Class members that they were purchasing *clean* diesel vehicles, and certification testing appeared to confirm this—except that, secretly, Volkswagen had subverted the testing process thoroughly.

1961. Volkswagen actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Volkswagen money, and it did so at the expense of Plaintiffs and Class members.

1962. On information and belief, Volkswagen has still not made full and adequate disclosures, and continues to defraud Plaintiffs and Class members by

-480-

1    concealing material information regarding the emissions qualities of its vehicles and

2    its emissions scheme.

3         1963. Plaintiffs and Class members were unaware of the omitted material facts

4    referenced herein, and they would not have acted as they did if they had known of the

5    concealed and/or suppressed facts, in that they would not have purchased purportedly

6    "clean" diesel cars manufactured by Volkswagen, and/or would not have continued to

7    drive their heavily polluting vehicles, or would have taken other affirmative steps in

8    light of the information concealed from them.  Plaintiffs' and Class Members' actions

9    were justified.  Volkswagen was in exclusive control of the material facts, and such

10   facts were not known to the public, Plaintiffs, or Class members.

11        1964. Because of the concealment and/or suppression of the facts, Plaintiffs and

12   Class members have sustained damage because they own vehicles that are diminished

13   in value as a result of Volkswagen's concealment of the true quality and quantity of

14   those vehicles' emissions and Volkswagen's failure to timely disclose the actual

15   emissions qualities and quantities of hundreds of thousands of Volkswagen- and Audi-

16   branded vehicles and the serious issues engendered by Volkswagen's corporate

17   policies.  Had Plaintiffs and Class members been aware of Volkswagen's emissions

18   scheme, and the company's callous disregard for compliance with applicable federal

19   and state laws and regulations, Plaintiffs and Class members who purchased or leased

20   new or previously owned vehicles would have paid less for their vehicles or would not

21   have purchased or leased them at all.

22        1965. The value of Plaintiffs' and Class Members' vehicles has diminished as a

23   result of Volkswagen's fraudulent concealment of its emissions scheme, which has

24   greatly tarnished the Volkswagen and Audi brand names attached to Plaintiffs' and

25   Class members' vehicles and made any reasonable consumer reluctant to purchase any

26   of the Affected Vehicles, let alone pay what otherwise would have been fair market

27   value for the vehicles.  In addition, Class members are entitled to damages for loss of

28

-481-

1    use, costs of additional fuel, costs of unused warranties, and other damages to be

2    proved at trial.

3         1966. Accordingly, Volkswagen is liable to Plaintiffs and Class members for

4    damages in an amount to be proven at trial.

5         1967. Volkswagen's acts were done wantonly, maliciously, oppressively,

6    deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and Class

7    members' rights and the representations that Volkswagen made to them, in order to

8    enrich Volkswagen.  To the extent permitted under applicable law, Volkswagen's

9    conduct warrants an assessment of punitive damages in an amount sufficient to deter

10   such conduct in the future, which amount is to be determined according to proof.

11
<div align="center">

**COUNT III**
**BREACH OF CONTRACT**
**(BASED ON WEST VIRGINIA LAW)**
</div>

12

13        1968. Plaintiff incorporates by reference all preceding allegations as though

14   fully set forth herein.

15        1969. Plaintiff brings this Count on behalf of new vehicle or certified pre-

16   owned vehicle purchasers in the West Virginia Subclass.

17        1970. Volkswagen's misrepresentations and omissions alleged herein, including

18   Volkswagen's failure to disclose the existence of the CleanDiesel engine system's

19   defect and/or defective design as alleged herein, caused Plaintiff and the other West

20   Virginia Subclass members to make their purchases or leases of their Affected

21   Vehicles.  Absent those misrepresentations and omissions, Plaintiff and the other West

22   Virginia Subclass members would not have purchased or leased these Affected

23   Vehicles, would not have purchased or leased these Affected Vehicles at the prices

24   they paid, and/or would have purchased or leased less expensive alternative vehicles

25   that did not contain the CleanDiesel engine system and which were not marketed as

26   including such a system.  Accordingly, Plaintiff and the other West Virginia Subclass

27

28
<div align="center">-482-</div>

members overpaid for their Affected Vehicles and did not receive the benefit of their bargain.

1971. Each and every sale or lease of an Affected Vehicle by an authorized Volkswagen dealer constitutes a contract between Volkswagen and the purchaser or lessee.  Volkswagen breached these contracts by selling or leasing Plaintiff and the other West Virginia Subclass members defective Affected Vehicles and by misrepresenting or failing to disclose the existence of the CleanDiesel engine system's defect and/or defective design, including information known to Volkswagen rendering each Affected Vehicle non EPA-compliant, and thus less valuable, than vehicles not equipped with a CleanDiesel engine system.

1972. As a direct and proximate result of Volkswagen's breach of contract, Plaintiff and the West Virginia Subclass have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## XX.   Claims Brought on Behalf of the Wisconsin Subclass

### COUNT I
### VIOLATIONS OF THE WISCONSIN
### DECEPTIVE TRADE PRACTICES ACT
### (WIS. STAT. § 110.18)

1973. Plaintiff Carlos Ortiz ("Plaintiff," for purposes of all Wisconsin Subclass Counts) incorporates by reference all preceding allegations as though fully set forth herein.

1974. This claim is brought only on behalf of the Wisconsin Subclass.

1975. Volkswagen is a "person, firm, corporation or association" within the meaning of WIS. STAT. § 100.18(1).

1976. Plaintiff and Wisconsin Subclass Members are members of "the public" within the meaning of WIS. STAT. § 100.18(1).  Plaintiff and Wisconsin Subclass Members purchased or leased one or more Affected Vehicles.

1977. The Wisconsin Deceptive Trade Practices Act ("Wisconsin DTPA") prohibits a "representation or statement of fact which is untrue, deceptive or misleading." WIS. STAT. § 100.18(1).  By fraudulently installing the "defeat device" to make it appear that its CleanDiesel engine systems complied with EPA regulations, Volkswagen engaged in unfair and deceptive acts and practices and violated the Wisconsin DTPA.

1978. In the course of its business, Volkswagen installed the "defeat device" and concealed that its CleanDiesel systems failed EPA regulations as described herein and otherwise engaged in activities with a tendency or capacity to deceive. Volkswagen also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of Affected Vehicles.

1979. Volkswagen has known of its use of the "defeat device" and the true nature of its CleanDiesel engine system for at least six years, but concealed all of that information until recently.

1980. Volkswagen was also aware that it valued profits over environmental cleanliness, efficiency, and lawfulness, and that it was manufacturing, selling and distributing vehicles throughout the United States that did not comply with EPA regulations.  Volkswagen concealed this information as well.

1981. By failing to disclose and by actively concealing the "defeat device" and the true cleanliness and performance of the CleanDiesel engine system, by marketing its vehicles as safe, reliable, environmentally clean, efficient, and of high quality, and by presenting itself as a reputable manufacturer that valued safety, environmental cleanliness and efficiency, and stood behind its vehicles after they were sold, Volkswagen engaged in deceptive business practices in violation of the Wisconsin DTPA.

-484-

1982. In the course of Volkswagen's business, it willfully failed to disclose and actively concealed the use of the "defeat device" and true cleanliness and efficiency of the CleanDiesel engine system and serious defects discussed above.  Volkswagen compounded the deception by repeatedly asserting that the Affected Vehicles were safe, reliable, environmentally clean, efficient, and of high quality, and by claiming to be a reputable manufacturer that valued safety, environmental cleanliness and efficiency, and stood behind its vehicles once they are on the road.

1983. Volkswagen's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff about the true cleanliness and efficiency of the CleanDiesel engine system, the quality of the Volkswagen and Audi brands, the devaluing of environmental cleanliness and integrity at Volkswagen, and the true value of the Affected Vehicles.

1984. Volkswagen intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with an intent to mislead Plaintiff and the Wisconsin Subclass.

1985. Volkswagen knew or should have known that its conduct violated the Wisconsin DTPA.

1986. As alleged above, Volkswagen made material statements about the safety, cleanliness, efficiency and reliability of the Affected Vehicles and the Volkswagen and Audi brands that were either false or misleading.

1987. Volkswagen owed Plaintiffs a duty to disclose the true safety, cleanliness, efficiency and reliability of the Affected Vehicles and the devaluing of environmental cleanliness and integrity at Volkswagen, because Volkswagen:

      a.     Possessed exclusive knowledge that it valued profits over environmental cleanliness, efficiency, and lawfulness, and that it was manufacturing, selling and distributing vehicles throughout the United States that did not comply with EPA regulations;

      b.     Intentionally concealed the foregoing from Plaintiffs; and/or

-485-

> c. Made incomplete representations about the safety, cleanliness, efficiency and reliability of the Affected Vehicles generally, and the use of the "defeat device" and true nature of the CleanDiesel engine system in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

1988. Because Volkswagen fraudulently concealed the "defeat device" and the true cleanliness and performance of the CleanDiesel engine system, resulting in a raft of negative publicity once the use of the "defeat device" and true characteristics of the CleanDiesel engine system finally began to be disclosed, the value of the Affected Vehicles has greatly diminished. In light of the stigma attached to those vehicles by Volkswagen's conduct, they are now worth significantly less than they otherwise would be.

1989. Volkswagen's fraudulent use of the "defeat device" and its concealment of the true characteristics of the CleanDiesel engine system were material to Plaintiffs and the Wisconsin Subclass. A vehicle made by a reputable manufacturer of environmentally clean vehicles is worth more than an otherwise comparable vehicle made by a disreputable and dishonest manufacturer of polluting vehicles that conceals the amount its cars pollutes rather than make environmentally friendly vehicles.

1990. Plaintiff and the Wisconsin Subclass suffered ascertainable loss caused by Volkswagen's misrepresentations and its concealment of and failure to disclose material information.

1991. Volkswagen had an ongoing duty to all Volkswagen and Audi customers to refrain from unfair and deceptive acts or practices under the Wisconsin DTPA. All owners of Affected Vehicles suffered ascertainable loss in the form of the diminished value of their vehicles as a result of Volkswagen's deceptive and unfair acts and practices that occurred in the course of Volkswagen's business.

1992. Volkswagen' violations present a continuing risk to Plaintiffs as well as to the general public. Volkswagen's unlawful acts and practices complained of herein affect the public interest.

1993. As a direct and proximate result of Volkswagen's violations of the Wisconsin DTPA, Plaintiff and the Wisconsin Subclass have suffered injury-in-fact and/or actual damage.

1994. Plaintiff and the Wisconsin Subclass are entitled to damages and other relief provided for under WIS. STAT. § 100.18(11)(b)(2). Because Volkswagen's conduct was committed knowingly and/or intentionally, Plaintiff and the Wisconsin Subclass are entitled to treble damages.

1995. Plaintiff and the Wisconsin Subclass also seek court costs and attorneys' fees under WIS. STAT. § 110.18(11)(b)(2).

### COUNT II
### FRAUD BY CONCEALMENT

1996. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1997. This claim is brought on behalf of the Wisonsin Subclass.

1998. Volkswagen intentionally concealed and suppressed material facts concerning the quality of the Affected Vehicles. As alleged in this Complaint, notwithstanding references in the very model names of the subject vehicles as "Clean Diesel," or to their engines as "TDI Clean Diesel" engines, Volkswagen engaged in a secret scheme to evade federal and state vehicle emissions standards by installing software designed to conceal its vehicles' emissions of the pollutant nitrogen oxide, which contributes to the creation of ozone and smog. The software installed on the vehicles at issue was designed nefariously to kick-in during emissions certification testing, such that the vehicles would show far lower emissions than when actually operating on the road. The result was what Volkswagen intended: vehicles passed emissions certifications by way of deliberately induced false readings. Reportedly,

-487-

Volkswagen's deliberate, secret scheme resulted in noxious emissions from these vehicles at up to 40 times applicable standards.

1999. Plaintiffs and Class members reasonably relied upon Volkswagen's false representations.  They had no way of knowing that Volkswagen's representations were false and gravely misleading.  As alleged herein, Volkswagen employed extremely sophisticated methods of deception.  Plaintiffs and Class members did not, and could not, unravel Volkswagen's deception on their own.

2000. Volkswagen concealed and suppressed material facts concerning what is evidently the true culture of Volkswagen—one characterized by an emphasis on profits and sales above compliance with federal and state clean air laws, and emissions regulations that are meant to protect the public and consumers.  It also emphasized profits and sales over the trust that Plaintiffs and Class members placed in its representations.  As one customer, Priya Shah, put it in a quotation cited by the *Los Angeles Times* in a September 18, 2015 article, "It's just a blatant disregard and intentional manipulation of the system.  That's just a whole other level of not only lying to the government, but also lying to your consumer.  People buy diesel cars from Volkswagen because they feel they are clean diesel cars."  In the words of Ms. Shah, which no doubt reflect the sentiments of all other CleanDiesel vehicle buyers, "I don't want to be spewing noxious gases into the environment."

2001. Necessarily, Volkswagen also took steps to ensure that its employees did not reveal the details of its scheme to regulators or consumers, including Plaintiffs and Class members.  Volkswagen did so in order to boost the reputations of its vehicles and to falsely assure purchasers and lessors of its vehicles, including previously owned vehicles, that Volkswagen is a reputable manufacturer that complies with applicable law, including federal and state clean air laws and emissions regulations, and that its vehicles likewise comply with applicable law and regulations.  Volkswagen's false representations were material to consumers, both because they concerned the quality

-488-

of the Affected Vehicles, including their compliance with applicable federal and state laws and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles.  As Volkswagen well knew, its customers, including Plaintiffs and Class members, highly valued that the vehicles they were purchasing or leasing were *clean* diesel cars, and they paid accordingly.

2002. Volkswagen had a duty to disclose its emissions scheme because knowledge of the scheme and its details were known and/or accessible only to Volkswagen, because Volkswagen had exclusive knowledge as to implementation and maintenance of its scheme, and because Volkswagen knew the facts were not known to or reasonably discoverable by Plaintiffs or Class members.  Volkswagen also had a duty to disclose because it made general affirmative representations about the qualities of its vehicles with respect to emissions standards, starting with references to them as *clean* diesel cars, or cars with *clean* diesel engines, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding its emissions scheme, the actual emissions of its vehicles, its actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and its actual practices with respect to the vehicles at issue.  Having volunteered to provide information to Plaintiffs, Volkswagen had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiffs and Class members.  Whether a manufacturer's products comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certification testing their vehicles must pass.  Volkswagen represented to Plaintiffs and Class members that they were purchasing *clean* diesel vehicles, and certification testing

-489-

appeared to confirm this—except that, secretly, Volkswagen had subverted the testing process thoroughly.

2003. Volkswagen actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Volkswagen money, and it did so at the expense of Plaintiffs and Class members.

2004. On information and belief, Volkswagen has still not made full and adequate disclosures, and continues to defraud Plaintiffs and Class members by concealing material information regarding the emission qualities of its vehicles and its emissions scheme.

2005. Plaintiffs and Class members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly "clean" diesel cars manufactured by Volkswagen, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them. Plaintiffs' and Class Members' actions were justified. Volkswagen was in exclusive control of the material facts, and such facts were not known to the public, Plaintiffs, or Class members.

2006. Because of the concealment and/or suppression of the facts, Plaintiffs and Class members have sustained damage because they own vehicles that are diminished in value as a result of Volkswagen's concealment of the true quality and quantity of those vehicles' emissions and Volkswagen's failure to timely disclose the actual emission qualities and quantities of hundreds of thousands of Volkswagen- and Audi-branded vehicles and the serious issues engendered by Volkswagen's corporate policies. Had Plaintiffs and Class members been aware of Volkswagen's emissions scheme, and the company's callous disregard for compliance with applicable federal

and state laws and regulations, Plaintiffs and Class members who purchased or leased new or previously owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

2007. The value of Plaintiffs' and Class members' vehicles has diminished as a result of Volkswagen's fraudulent concealment of its emissions scheme, which has greatly tarnished the Volkswagen and Audi brand names attached to Plaintiffs' and Class members' vehicles and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.  In addition, Class members are entitled to damages for loss of use, costs of additional fuel, costs of unused warranties, and other damages to be proved at trial.

2008. Accordingly, Volkswagen is liable to Plaintiffs and Class members for damages in an amount to be proven at trial.

2009. Volkswagen's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and Class members' rights and the representations that Volkswagen made to them, in order to enrich Volkswagen.  To the extent permitted under applicable law, Volkswagen's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**COUNT III**
**BREACH OF CONTRACT**
**(BASED ON WISCONSIN LAW)**

2010. Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

2011. Plaintiff brings this Count on behalf of new vehicle or certified pre-owned vehicle purchasers in the Wisconsin Subclass.

2012. Volkswagen's misrepresentations and omissions alleged herein, including Volkswagen's failure to disclose the existence of the CleanDiesel engine system's

-491-

defect and/or defective design as alleged herein, caused Plaintiff and the other Wisconsin Subclass members to make their purchases or leases of their Affected Vehicles.  Absent those misrepresentations and omissions, Plaintiff and the other Wisconsin Subclass members would not have purchased or leased these Affected Vehicles, would not have purchased or leased these Affected Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain the CleanDiesel engine system and which were not marketed as including such a system.  Accordingly, Plaintiff and the other Wisconsin Subclass members overpaid for their Affected Vehicles and did not receive the benefit of their bargain.

2013. Each and every sale or lease of an Affected Vehicle by an authorized Volkswagen dealer constitutes a contract between Volkswagen and the purchaser or lessee.  Volkswagen breached these contracts by selling or leasing Plaintiff and the other Wisconsin Subclass members defective Affected Vehicles and by misrepresenting or failing to disclose the existence of the CleanDiesel engine system's defect and/or defective design, including information known to Volkswagen rendering each Affected Vehicle non EPA-compliant, and thus less valuable, than vehicles not equipped with a CleanDiesel engine system.

2014. As a direct and proximate result of Volkswagen's breach of contract, Plaintiff and the Wisconsin Subclass have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

**YY.   Claims Brought on Behalf of the Wyoming Subclass**

<div align="center">

**COUNT I**
**VIOLATION OF THE WYOMING CONSUMER PROTECTION ACT**
**(WYO. STAT. §§ 40-12-101, *ET SEQ.*)**

</div>

2015. Plaintiff Brian Mills ("Plaintiff," for purposes of all Wyoming Subclass Counts) incorporates by reference all preceding allegations as though fully set forth herein.

2016. Plaintiff intends to assert a claim under the Wyoming Consumer Protection Act ("Wyoming CPA"), which makes it unlawful for a person, in the course of its business and in connection with a consumer transaction, to knowingly: "(iii) Represents that merchandise is of a particular standard, grade, style or model, if it is not"; "(v) Represents that merchandise has been supplied in accordance with a previous representation, if it has not…"; "(viii) Represents that a consumer transaction involves a warranty, a disclaimer of warranties, particular warranty terms, or other rights, remedies or obligations if the representation is false"; "(x) Advertises merchandise with intent not to sell it as advertised"; or "(xv) Engages in unfair or deceptive acts or practices."  WYO. STAT. § 45-12-105.  Plaintiff will make a demand in satisfaction of WYO. STAT. § 40-12-109, and may amend this Complaint to assert claims under the CPA once the required time period has elapsed.  This paragraph is included for purposes of notice only and is not intended to actually assert a claim under the CPA.

<div align="center">

**COUNT II**
**FRAUD BY CONCEALMENT**

</div>

2017. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

2018. This claim is brought on behalf of the Wyoming Subclass.

2019. Volkswagen intentionally concealed and suppressed material facts concerning the quality of the Affected Vehicles.  As alleged in this Complaint, notwithstanding references in the very model names of the subject vehicles as "Clean

<div align="center">

-493-

</div>

Diesel," or to their engines as "TDI Clean Diesel" engines, Volkswagen engaged in a secret scheme to evade federal and state vehicle emissions standards by installing software designed to conceal its vehicles' emissions of the pollutant nitrogen oxide, which contributes to the creation of ozone and smog. The software installed on the vehicles at issue was designed nefariously to kick-in during emissions certification testing, such that the vehicles would show far lower emissions than when actually operating on the road. The result was what Volkswagen intended: vehicles passed emissions certifications by way of deliberately induced false readings. Reportedly, Volkswagen's deliberate, secret scheme resulted in noxious emissions from these vehicles up to 40 times applicable standards.

2020. Plaintiffs and Class members reasonably relied upon Volkswagen's false representations. They had no way of knowing that Volkswagen's representations were false and gravely misleading. As alleged herein, Volkswagen employed extremely sophisticated methods of deception. Plaintiffs and Class members did not, and could not, unravel Volkswagen's deception on their own.

2021. Volkswagen concealed and suppressed material facts concerning what is evidently the true culture of Volkswagen—one characterized by an emphasis on profits and sales above compliance with federal and state clean air laws, and emissions regulations that are meant to protect the public and consumers. It also emphasized profits and sales over the trust that Plaintiffs and Class members placed in its representations. As one customer, Priya Shah, put it in a quotation cited by the *Los Angeles Times* in a September 18, 2015 article, "It's just a blatant disregard and intentional manipulation of the system. That's just a whole other level of not only lying to the government, but also lying to your consumer. People buy diesel cars from Volkswagen because they feel they are clean diesel cars." In the words of Ms. Shah, which no doubt reflect the sentiments of all other CleanDiesel vehicle buyers, "I don't want to be spewing noxious gases into the environment."

-494-

2022. Necessarily, Volkswagen also took steps to ensure that its employees did not reveal the details of its scheme to regulators or consumers, including Plaintiffs and Class members.  Volkswagen did so in order to boost the reputations of its vehicles and to falsely assure purchasers and lessors of its vehicles, including previously owned vehicles, that Volkswagen is a reputable manufacturer that complies with applicable law, including federal and state clean air laws and emissions regulations, and that its vehicles likewise comply with applicable law and regulations.  Volkswagen's false representations were material to consumers, both because they concerned the quality of the Affected Vehicles, including their compliance with applicable federal and state laws and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles.  As Volkswagen well knew, its customers, including Plaintiffs and Class members, highly valued that the vehicles they were purchasing or leasing were *clean* diesel cars, and they paid accordingly.

2023. Volkswagen had a duty to disclose its emissions scheme because knowledge of the scheme and its details were known and/or accessible only to Volkswagen, because Volkswagen had exclusive knowledge as to implementation and maintenance of its scheme, and because Volkswagen knew the facts were not known to or reasonably discoverable by Plaintiffs or Class members.  Volkswagen also had a duty to disclose because it made general affirmative representations about the qualities of its vehicles with respect to emissions standards, starting with references to them as *clean* diesel cars, or cars with *clean* diesel engines, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding its emissions scheme, the actual emissions of its vehicles, its actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and its actual practices with respect to the vehicles at issue.  Having volunteered to provide information to Plaintiffs, Volkswagen had the duty to disclose not just the

-495-

partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiffs and Class members.  Whether a manufacturer's products comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certification testing their vehicles must pass.  Volkswagen represented to Plaintiffs and Class members that they were purchasing *clean* diesel vehicles, and certification testing appeared to confirm this—except that, secretly, Volkswagen had subverted the testing process thoroughly.

2024. Volkswagen actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Volkswagen money, and it did so at the expense of Plaintiffs and Class members.

2025. On information and belief, Volkswagen has still not made full and adequate disclosures, and continues to defraud Plaintiffs and Class members by concealing material information regarding the emissions qualities of its vehicles and its emissions scheme.

2026. Plaintiffs and Class members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly "clean" diesel cars manufactured by Volkswagen, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them.  Plaintiffs' and Class Members' actions were justified.  Volkswagen was in exclusive control of the material facts, and such facts were not known to the public, Plaintiffs, or Class members.

2027.  Because of the concealment and/or suppression of the facts, Plaintiffs and Class members have sustained damage because they own vehicles that are diminished in value as a result of Volkswagen's concealment of the true quality and quantity of those vehicles' emissions and Volkswagen's failure to timely disclose the actual emissions qualities and quantities of hundreds of thousands of Volkswagen- and Audi-branded vehicles and the serious issues engendered by Volkswagen's corporate policies.  Had Plaintiffs and Class members been aware of Volkswagen's emissions scheme, and the company's callous disregard for compliance with applicable federal and state laws and regulations, Plaintiffs and Class members who purchased or leased new or previously owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

2028.  The value of Plaintiffs' and Class Members' vehicles has diminished as a result of Volkswagen's fraudulent concealment of its emissions scheme, which has greatly tarnished the Volkswagen and Audi brand names attached to Plaintiffs' and Class members' vehicles and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.  In addition, Class members are entitled to damages for loss of use, costs of additional fuel, costs of unused warranties, and other damages to be proved at trial.

2029.  Accordingly, Volkswagen is liable to Plaintiffs and Class members for damages in an amount to be proven at trial.

2030.  Volkswagen's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and Class members' rights and the representations that Volkswagen made to them, in order to enrich Volkswagen.  To the extent permitted under applicable law, Volkswagen's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

# COUNT III
# BREACH OF CONTRACT
# (BASED ON WYOMING LAW)

2031. Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

2032. Plaintiff brings this Count on behalf of new vehicle or certified pre-owned vehicle purchasers in the Wyoming Subclass.

2033. Volkswagen's misrepresentations and omissions alleged herein, including Volkswagen's failure to disclose the existence of the CleanDiesel engine system's defect and/or defective design as alleged herein, caused Plaintiff and the other Wyoming Subclass members to make their purchases or leases of their Affected Vehicles. Absent those misrepresentations and omissions, Plaintiff and the other Wyoming Subclass members would not have purchased or leased these Affected Vehicles, would not have purchased or leased these Affected Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain the CleanDiesel engine system and which were not marketed as including such a system. Accordingly, Plaintiff and the other Wyoming Subclass members overpaid for their Affected Vehicles and did not receive the benefit of their bargain.

2034. Each and every sale or lease of an Affected Vehicle by an authorized Volkswagen dealer constitutes a contract between Volkswagen and the purchaser or lessee. Volkswagen breached these contracts by selling or leasing Plaintiff and the other Wyoming Subclass members defective Affected Vehicles and by misrepresenting or failing to disclose the existence of the CleanDiesel engine system's defect and/or defective design, including information known to Volkswagen rendering each Affected Vehicle non EPA-compliant, and thus less valuable, than vehicles not equipped with a CleanDiesel engine system.

-498-

2035.  As a direct and proximate result of Volkswagen's breach of contract, Plaintiff and the Wyoming Subclass have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

<div align="center">

**REQUEST FOR RELIEF**

</div>

WHEREFORE, Plaintiffs, individually and on behalf of members of the Nationwide Class and the Subclasses, respectfully request that the Court enter judgment in their favor and against Defendants, as follows:

A.      Certification of the proposed Nationwide Class and Subclasses, including appointment of Plaintiffs' counsel as Class Counsel;

B.      An order temporarily and permanently enjoining Volkswagen from continuing the unlawful, deceptive, fraudulent, and unfair business practices alleged in this Complaint;

C.      Injunctive relief in the form of a recall or free replacement program;

D.      Injunctive relief in the form of environmental remediation to offset the harm caused by the illegal emissions of the CleanDiesel engine systems;

E.      Costs, restitution, damages, including punitive damages, and disgorgement in an amount to be determined at trial;

F.      An order requiring Volkswagen to pay both pre- and post-judgment interest on any amounts awarded;

G.      An award of costs and attorneys' fees; and

H.      Such other or further relief as may be appropriate.

<div align="center">

**DEMAND FOR JURY TRIAL**

</div>

Plaintiffs hereby demand a jury trial for all claims so triable.

DATED:  September 28, 2015

HAGENS BERMAN SOBOL SHAPIRO LLP

By  /s/ Thomas E. Loeser
Steve W. Berman (*pro hac vice to be filed*)
Thomas E. Loeser (BAR NO. 202724)
1918 8th Avenue, Suite 3300
Seattle, Washington  98101
Telephone:  (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com
toml@hbsslaw.com

QUINN EMANUEL URQUHART &
SULLIVAN, LLP
JOHN B. QUINN (BAR NO. 090378)
SHON MORGAN (BAR NO. 187736)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone:  (213) 443 3000
Facsimile:   (213) 443 3100
shonmorgan@quinnemanuel.com

Lee Gordon (BAR NO. 174168)
HAGENS BERMAN SOBOL SHAPIRO LLP
301 N. Lake Avenue, Suite 203
Pasadena, CA 91101
Telephone:  (213) 330-7150
Facsimile:  (213) 330-7152
lee@hbsslaw.com

Peter B. Fredman
LAW OFFICE OF PETER FREDMAN
125 University Ave., Suite 102
Berkeley, CA 94710
Telephone: (510) 868-2626
Facsimile:  (510) 868-2627
peter@peterfredmanlaw.com

*Attorneys for Plaintiffs and the proposed class
and subclasses*

-500-

HAGENS BERMAN SOBOL SHAPIRO LLP
STEVE W. BERMAN (*pro hac vice*)
THOMAS E. LOESER (BAR NO. 202724)
1918 Eighth Avenue, Suite 330
Seattle, WA  98101
Telephone: (206) 623-7292
Facsimile:  (206) 623-0594 (fax)
toml@hbsslaw.com

QUINN EMANUEL URQUHART & SULLIVAN, LLP
JOHN B. QUINN (BAR NO. 090378)
SHON MORGAN (BAR NO. 187736)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone:  (213) 443 3000
Facsimile:  (213) 443 3100
shonmorgan@quinnemanuel.com

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| JESS HILL, KEVIN JENTES, MALIA SIAS, ARTHUR SCHAREIN, MICHAEL BOZINE, CLIFFORD BROUSSARD, VICTORIA MCCLELLAND, JEREMIAH HOLDEN, HILDEGARD REISER, M.D., SPENCER MOORE, JOHN GAUGER, HANAA RIFAEY, DEBORAH MARKWARD, JOHN BROWN, CHRISTINA PAOLICCHI, ADAM FRUGOLI, TRACEY ROSEN, JEFFREY BRADY, BOUALIVANH PHANHPHONGSANE, BRENDA PENNEY, MICHAEL ANTIS, ALEX ARCENEAUX, G. KEATING PEPPER, DEVAN WANG, ROBERT HOOKER, MATTHEW OLOVSON, WILLIAM MACKEY, EDWARD SIMMONS, | No. **MALIA SIAS DECLARATION RE: CLRA VENUE** |

MALIA SIAS DECLARATION RE: CLRA VENUE

010549-11  816830 V1

CHARLES HALL, KOTAB HOLDINGS
LLC, ALAN BRANTING, CHAD
RAMOS, STEVEN BOLDUC, JOSEPH
AVENA, ANDREW MASTERS,
STEVEN KOLPAN, PAUL PURYEAR,
MICHELLE GRAMLING, DAVID
PYLE, HEATHER GREENFIELD,
KYLE BOYLAN, RALPH
MENDENHALL, ALEXANDER
BAITTINGER, ANDREW BELL, GARY
VAN GUILDER, BARRY CROSS,
JUSTIN HOLLOWAY, KELLY KING,
KAREN NORMAN, ANDREW
VENTURA, TROY PONTO, SCOTT
TAYLOR, CARLOS ORTIZ, and BRIAN
MILLS, on behalf of themselves and all
others similarly situated,

        Plaintiffs,

  v.

VOLKSWAGEN GROUP OF
AMERICA, INC., a New Jersey
Corporation, and VOLKSWAGEN AG, a
corporation organized under the laws of
Germany,

        Defendants.

---

**MALIA SIAS DECLARATION RE: CLRA VENUE**

010549-11  816830 V1

1    I, MALIA SIAS, hereby declare and state as follows:

2    1.    I have personal knowledge of the facts stated herein and, if necessary,

3  could competently testify thereto.

4    2.    I am a Plaintiff in the above-entitled action.

5    3.    Pursuant to Cal. Civ. Code § 1780(d), I make this declaration in support

6  of the Class Action Complaint and the claim therein for relief under Cal. Civ. Code

7  § 1780(a).

8    4.    This action for relief under Cal. Civ. Code § 1780(a) has been

9  commenced in a county that is a proper place for trial of this action because

10  Defendants do business in this District (the Central District of California) and

11  throughout the State of California.

12    5.    The Complaint filed in this matter contains causes of action for violations

13  of the Consumers Legal Remedies Act against Defendants Volkswagen Group of

14  America, Inc., a company doing business nationwide and organized under the laws of

15  the State of New Jersey and Volkswagen Aktiengesellschaft, a company doing

16  business as Volkswagen Group and/or Volkswagen AG ("Volkswagen AG"), with its

17  principal place of business in Wolfsburg, Germany and organized under the laws of

18  Germany.  Volkswagen AG is the parent corporation of Volkswagen Group of

19  America, Inc.

20    6.    I own a 2011 VW Golf TDI which I purchased new in Santa Ana,

21  California.

1    I declare under penalty of perjury under the laws of the State of California that

2    the foregoing Declaration is true and correct, and was executed by me in the city of

3    Los Angeles, California, on September 29 , 2015.

4

5

6    By _____

     MALIA SIAS

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

010549-11  816830 V1

HAGENS BERMAN SOBOL SHAPIRO LLP
STEVE W. BERMAN (*pro hac vice to be filed*)
THOMAS E. LOESER (BAR NO. 202724)
1918 Eighth Avenue, Suite 330
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com
toml@hbsslaw.com

QUINN EMANUEL URQUHART & SULLIVAN, LLP
JOHN B. QUINN (BAR NO. 090378)
SHON MORGAN (BAR NO. 187736)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443 3000
Facsimile: (213) 443 3100
shonmorgan@quinnemanuel.com

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| JESS HILL, KEVIN JENTES, MALIA SIAS, ARTHUR SCHAREIN, MICHAEL BOZINE, CLIFFORD BROUSSARD, VICTORIA MCCLELLAND, JEREMIAH HOLDEN, HILDEGARD REISER, M.D., SPENCER MOORE, JOHN GAUGER, HANAA RIFAEY, DEBORAH MARKWARD, JOHN BROWN, CHRISTINA PAOLICCHI, ADAM FRUGOLI, TRACEY ROSEN, JEFFREY BRADY, BOUALIVANH PHANHPHONGSANE, BRENDA PENNEY, MICHAEL ANTIS, ALEX ARCENEAUX, G. KEATING PEPPER, DEVAN WANG, ROBERT HOOKER, MATTHEW OLOVSON, WILLIAM | No. **KEVIN JENTES DECLRATION RE: CLRA VENUE** |

KEVIN JENTES DECLARATION RE: CLRA VENUE

010549-11 816830 V1

MACKEY, EDWARD SIMMONS, CHARLES HALL, KOTAB HOLDINGS LLC, ALAN BRANTING, CHAD RAMOS, STEVEN BOLDUC, JOSEPH AVENA, ANDREW MASTERS, STEVEN KOLPAN, PAUL PURYEAR, MICHELLE GRAMLING, DAVID PYLE, HEATHER GREENFIELD, KYLE BOYLAN, RALPH MENDENHALL, ALEXANDER BAITTINGER, ANDREW BELL, GARY VAN GUILDER, BARRY CROSS, JUSTIN HOLLOWAY, KELLY KING, KAREN NORMAN, ANDREW VENTURA, TROY PONTO, SCOTT TAYLOR, CARLOS ORTIZ, and BRIAN MILLS, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

VOLKSWAGEN GROUP OF AMERICA, INC., a New Jersey Corporation, and VOLKSWAGEN AG, a corporation organized under the laws of Germany,

Defendants.

KEVIN JENTES DECLARATION RE: CLRA VENUE

010549-11  816830 V1

I, KEVIN JENTES, hereby declare and state as follows:

1.      I have personal knowledge of the facts stated herein and, if necessary, could competently testify thereto.

2.      I am a Plaintiff in the above-entitled action.

3.      Pursuant to Cal. Civ. Code § 1780(d), I make this declaration in support of the Class Action Complaint and the claim therein for relief under Cal. Civ. Code § 1780(a).

4.      This action for relief under Cal. Civ. Code § 1780(a) has been commenced in a county that is a proper place for trial of this action because Defendants do business in this District (the Central District of California) and throughout the State of California.

5.      The Complaint filed in this matter contains causes of action for violations of the Consumers Legal Remedies Act against Defendants Volkswagen Group of America, Inc., a company doing business nationwide and organized under the laws of the State of New Jersey and Volkswagen Aktiengesellschaft, a company doing business as Volkswagen Group and/or Volkswagen AG ("Volkswagen AG"), with its principal place of business in Wolfsburg, Germany and organized under the laws of Germany.  Volkswagen AG is the parent corporation of Volkswagen Group of America, Inc.

6.      I own a 2014 VW Passat TDI SE which I purchased used in Santa Cruz, California.

I declare under penalty of perjury under the laws of the State of California that the foregoing Declaration is true and correct, and was executed by me in the city of Ben Lomond, California, on September 18 , 2015.

By _____

KEVIN JENTES